April 2012 Email Thread

EXHIBIT 31

| From: | Gil Mucke |
|---|---|
| To: | Sanders, Jessica B. \(CMS/OAGM\); Schultz, Theresa A. \(CMS/OAGM\) |
| Cc: | Christopher Mucke |
| Subject: | RE: ACLR Response: Contract No. GS-23F-0074W / Task Order No. HHSM-500-2011-00006G / Modification No. 000004 (RAC Part D) |
| Date: | Wednesday, April 04, 2012 2:15:38 PM |

Jessica,

  Based on our discussion, here are the answers to your questions:

What is the $1.8m figure:  ACLR financials provided on the REA (Submitted 19Dec11) displayed all costs associated throughout the base contract period at $1.3m.  Actual costs were approx $1.5m after extension to 31Jan12.  Based on laying off employees and still maintaining support services (support expenses "note REA" and CMS requirements for work "payroll" as required) requires an average burn rate of $25-35k per month.

Does referencing the REA mean the REA would be off the table if an agreement on terms is made?  No, the REA (submitted only for delay) referenced an approx 7 month delay on the base contract timetable.  A total REA becomes adjustment for the significant scope reduction that has not been fully realized either way.  ACLR was legally contracted (base year contract) to perform recovery auditing of all issues including collection of payments with submission of findings to CMS.  To date, not one issue including capturing recoveries has been authorized and we are still working to get notification letters out with added processes continuing post award by CMS.

Is there a possibility to get the REA off the table?  Does not appear to be from the government's discussion to date.  In one decision, an approx 65 percent reduction took place on recoveries.  Currently, a 12% fee of the current data provides for approx $1.3m after the GSA funding fee and that is only assuming 100 percent approval by CMS/DVC.  Based on decision processes within the law, by CMS and OIG, there is additional risks to further decision reductions.  There is also a significant risk of appeals based on the lack of a completely defined CMS appeal process and there is no cost associated with an appeal.  It is apparent that we have no means to predict what will happen until the DVC is done, notification letters are sent, and providers respond with or without appeals.

  ACLR wants nothing more than to make this a viable contract.  Unless there is someone that can predict the final DVC amount and the percentage of providers filing appeals, there is no cost figure to analyze other than the assumption of unknown risks.  Our 35 percent contingency fee considers these risks, as best as we can determine, and is considered by us to be fair and equitable.  If the government does not agree, we recognize the authority under the FAR for the government to issue an unilateral agreement.

Respectfully,

Gil Mucke

From: Sanders, Jessica B. (CMS/OAGM)

I2AR067

A02978

**Sent:** Wed 4/4/2012 11:16 AM
**To:** Gil Mucke; Schultz, Theresa A. (CMS/OAGM)
**Cc:** Christopher Mucke
**Subject:** RE: ACLR Response: Contract No. GS-23F-0074W  / Task Order No. HHSM-500-2011-00006G / Modification No. 000004 (RAC Part D)

Hi Gil,

I am having trouble locating your referenced statement in the contract terms and conditions:

*"No contingency fees shall be paid after the end of the period of performance"*

Can you please direct me on where I can locate this so that I can address it with the Program Office?


Thank you,

Jessica B. Sanders
Contract Specialist
Centers for Medicare and Medicaid Services
7500 Security Blvd.
Baltimore, MD  21244-1850
Mail Stop B2-44-21
410-786-1076
jessica.sanders@cms.hhs.gov

IMPORTANT: This e-mail, including all attachments, constitute Federal Government records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.


---

**From:** Gil Mucke [mailto:gmucke@aclrsbs.com]
**Sent:** Wednesday, April 04, 2012 8:01 AM
**To:** Schultz, Theresa A. (CMS/OAGM)
**Cc:** Sanders, Jessica B. (CMS/OAGM); Christopher Mucke
**Subject:** ACLR Response: Contract No. GS-23F-0074W / Task Order No. HHSM-500-2011-00006G / Modification No. 000004 (RAC Part D)

Theresa,

        ACLR has reviewed and has provided comments on the attached modification document.  ACLR is also requesting the contingency fee for this modification to be increased to 35% with the following equitable adjustment justification:

        - CMS/OIG findings that define limiting parameters of the review within the law not provided prior to the contract modification.

        - DVC not being able to meet the CMS approved timetable on the

12AR068

modification.

    - CMS contract statement "No contingency fees shall be paid after the end of the period of performance" significantly increases risks to ACLR as it is widely anticipated that improper claims will be appealed due to a lack of a CMS approved appeals process subsequently impacting possible recoveries on valid claims.

    - Reduction of scope in base contract and subsequent modification to date has not provided relief to ACLR current contract costs of $1.8m through modification period without profit consideration.

      ACLR was clear with the initial delay REA and discussions through the previous modifications that increasing costs associated with Modification 000003 was not achievable outside the baseline parameters agreed to by all parties.  Adding draft SOW requirements and subsequent additional costs and delays on this simple timetable modification does not appear ethical based on prior agreements and we seriously request CMS reconsider based on comments provided.

Respectfully,

Gil Mucke

---

**From:** Sanders, Jessica B. (CMS/OAGM)
**Sent:** Tue 4/3/2012 3:09 PM
**To:** Christopher Mucke; gmucke@aclrsbs.com
**Cc:** Schultz, Theresa A. (CMS/OAGM); Chartier, Frank D. (CMS/OFM); Strauss, Lauren R. (CMS/CPI); Downs, Tanette N. (CMS/CPI)
**Subject:** Contract No. GS-23F-0074W  / Task Order No. HHSM-500-2011-00006G / Modification No. 000004 (RAC Part D)

Good Afternoon,

I have attached a copy of <u>Modification No. 000004</u> to <u>Task Order No. HHSM-500-2011-00006G</u> under <u>Contract No. GS-23F-0074W</u> with ACLR, LLC. Please have an authorized representative of your company review, sign and return to me as soon as possible.

Please feel free to contact me if you have any questions or concerns regarding this matter.

Please confirm receipt.

Thank you,

*Jessica B. Sanders*

Contract Specialist
Office of Acquisition & Grants Management (OAGM)
Centers for Medicare & Medicaid Services
Mailing Address: 7500 Security Boulevard, Mail Stop B2-14-21, Baltimore, MD 21244-1850
Physical Address: 7111 Security Boulevard, 2nd Floor Cube B2-12-24, Baltimore, MD 21244-1850
☎ (410) 786-1076
🖷 (410) 786-9088
✉ jessica.sanders@cms.hhs.gov

12AR069

A02980

**IMPORTANT:** This e-mail, including all attachments, constitute Federal Government records and property that is intended only for the use of the individual or entity to which it is addressed. It also may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this e-mail transmission is not the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this e-mail or its contents is strictly prohibited. If you have received this e-mail in error, please notify the sender by responding to the e-mail and then delete the e-mail immediately.

12AR070

**April 26, 2012 Letter Denying REA**

**EXHIBIT 32**

A03011

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C2-21-15
Baltimore, Maryland 21244-1850



**Office of Acquisition and Grants Management**

April 26, 2012

Christopher Mucke
Managing Principal
ACLR, LLC
38705 7 Mile Rd, Suite 460
Livonia, Michigan 48152-3975

SUBJECT:     Contract No. GS-23F-0074W  / Task Order No. HHSM-500-2011-00006G – Recovery
Audit Contractor (RAC) for Medicare Part D – Request for Equitable Adjustment dated
December 19, 2011

Dear Mr. Mucke:

CMS reviewed ACLR's Request for Equitable Adjustment, under the subject contract, for costs of
$662,972.83. ACLR states the costs are related to associated delays between May 2, 2011 through January
12, 2012 with ACLR's task order award for Recovery Audit Services in Support of Medicare Part D.

I was hopeful we would be able to successfully negotiate with you and reach a mutual agreement regarding
the Part D RAC work and your request for equitable adjustment. In fact, your recent projections on the
potential recoveries are encouraging and appear to indicate that you may be able to recover a substantial
amount through our negotiated increased contingency fee.

That being said, however, the terms of the Task Order are consistent with the statutory authority for the
Recovery Audit Contractor (RAC) program for Medicare Part D. The Agency is authorized to enter into
contracts with entities on a contingency fee basis. The Task Order executed by ACLR provided at Section
5, Terms and Conditions, indicates that payments would be made only on a contingency fee basis. The
Task Order further stipulated that there would be no payment unless funds were recovered or collected.
Section 5 specifically states "the recovery audit contractor shall not receive any payments for the
identification of the underpayments or overpayments not recovered/collected."

In sum, based upon the terms of the contract and applicable federal law, we are unable to approve the
reimbursement of costs requested in your December 19, 2011 request for equitable adjustment.

We are looking forward to working with ACLR in your recovery activities this year and in the year to
come.

Sincerely,

THERESA SCHULTZ
Contracting Officer

Cc:
Frank Chartier
Lauren Strauss
Tanette Downs

101

**Part D RAC Contract, Modification 4**

**EXHIBIT 33**

A00437

# MEDICARE PART D
# RECOVERY AUDIT SERVICES

CONTRACT NO GS-23F-0074W
TASK ORDER NO: HHSM-500-2011-00006G

MODIFICATION 000004
EXECUTION DATE - 04.06.12

86

A540

A00438

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 4 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) |
|---|---|---|---|---|
| 000004 | See Block 16C | | | |

| 6. ISSUED BY | CODE | ASG - DPIFMC | 7. ADMINISTERED BY (If other than Item 6) | CODE | AGG/JS |
|---|---|---|---|---|---|

CMS, OAGM, ASG, DPIFMC
7500 SECURITY BLVD., MS: C2-21-15
BALTIMORE MD 21244-1850

Jessica Sanders
Contract Specialist
(410) 786-1076

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

ACLR, LLC
Attn: CHRIS MUCKE
550 FOREST AVENUE
SUITE 15-2
PLYMOUTH MI 481703793

9B. DATED (SEE ITEM 11)

| x | 10A. MODIFICATION OF CONTRACT/ORDER NO. GS-23F-0074W |
|---|---|

HHSM-500-2011-00006G

10B. DATED (SEE ITEM 13)

| CODE | 780272873 | FACILITY CODE | | 01/13/2011 |
|---|---|---|---|---|

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) |
|---|
| See Schedule |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |
| X | FAR 43.103 (a) (3) and mutual agreement of the parties |

E. IMPORTANT:  Contractor ☐ is not. ☒ is required to sign this document and return _____1_____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

Tax ID Number:  20-2662374
DUNS Number:  780272873
The purpose of this modification to Task Order No. HHSM-500-2011-00006G under GSA Contract
No. GS-23F-0074W is to extend the base period of performance through September 30, 2012;

To that effect, the following sections of this task order are hereby modified as follows:

Refer to pages 2-4.

All other terms and conditions remain unchanged.
Period of Performance: 01/13/2011 to 09/30/2012

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|
| GILBERT MUCKE (ACLR COMPLIANCE OFFICER) | THERESA A. SCHULTZ | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 4/5/12 | (Signature of Contracting Officer) | 4/6/12 |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

87

A541

A. **Section 3. PERIOD OF PERFORMANCE,** is hereby modified to extend the base period of performance through September 30, 2012, and reads as follows:

The base period of the task order is from <u>January 13, 2011</u> through <u>September 30, 2012</u>. The task order also includes four (4) 12-month optional periods.

B. **The timeline provided on Modification No. 000003 is hereby removed in its entirety and replaced with the following, note this is a best case scenario:**

C.

| Process | Date |
|---|---|
| ➢ RAC submits final data | 2/15/2012 |
| ➢ RAC resubmits final data | 3/29/2012 |
| ➢ DVC Reviews and accepts or disputes data | 4/9/2012 thru 5/25/2012* |
| ➢ Potential Disputes between RAC/DVC | 4/9/2012 thru 6/1/2012** |
| ➢ RAC finalizes packages and calculations of impact | 4/16/2012 thru completion |
| ➢ RAC sends notification letter | 4/17/2012 thru completion |
| ➢ RAC is available for Sponsoring Organization (SO) inquiries, appeals and provides communication and administrative support on behalf of CMS. | 4/17/2012 thru appeal |

**\*DVC reviews will be conducted and accepted/disputed on a rolling basis.**
**\*\*DVC and RAC have 7 days per dispute to come to a resolution before CMS makes a final determination.**

D. **Improper payment Reporting and Tracking:**
After the RAC identifies an improper payment, it compiles an Improper Payment Review Package (IPRP) which contains the Improper Payment File and the supporting documentation identifying improper payments corresponding to a particular audit issue by contract. A unique ID is assigned to a Package and will be included on and associated with all future tracking reports and letters such as Validation Findings, Notification Letters, Appeal Notifications, Monthly Plan Payment Adjustments, and Invoices. The IPRPs will be unique for each contract, for each year for each audit issue

E. **Potential Disputes between RAC/DVC:**
The RAC is required to send these IPRP packages to CMS and the DVC. The RAC will review all disagreements identified by the DVC and either accept or reject the DVC's validation findings. When the RAC agrees with a rejected IPRP Validation finding, the file is considered validated; all associated PDE records will be removed. The RAC must show support for their findings and offer assistance in understanding the process behind decisions to exclude these disputed PDEs. The RAC must collaborate with the DVC to attempt resolution of any dispute within 7 days. If the RAC and DVC cannot come to a resolution, CMS shall make the final decision, which cannot be reviewed or contested by either the

RAC or DVC. The RAC shall submit a new package with the final updated, CMS approved, PDE and reconciliation data.

**F. Notification of Improper Payment Letters:**
The RAC is required to issue a Notification of Improper Payment Letter to the SO once an improper payment is identified and validated.  The RAC shall get the notification letter format approved by CMS. Electronic or hardcopies must be sent to CMS. In order to allow the plan the full appeals window, the RAC is required to date the Notification of Improper Payment letter and keep a record as to when letters are sent.

The SO has 30 days to respond to any Notification of Improper Payment Letter from the date of receipt. If an appeal with supporting documentation is not received within 30 days, payment collection will be immediately initiated. If an appeal with supporting documentation is submitted, all recoupment efforts are put on hold until such cases are fully resolved.

**G. Progress Reports:**
At the request of CMS, the RAC shall provide a progress report that states at a minimum:
   a.  Administrative Actions
   b.  Progress status by audit issue
   c.  Summaries of  applicable meetings (internal and external)
   d.  Areas of concern requiring CMS action/attention
   e.  Any unresolved issues
   f.  List of activities completed to date
   g.  List of upcoming activities
   h.  Summary of improper payments (by contract) to date
   i.  Listing of any concerns from Plans
   j.  Any and all work papers supporting RAC activities including databases, fields, processes, internal protocols, or any other documentation/databases used for RAC activities.

CMS will conduct RAC oversight at either the RAC's site or at the appropriate CMS office.  CMS has the right to request/review any work performed by the contractor at any time; this includes work papers, reports, etc.  After completion of the engagement, CMS may hold a conference with the RAC to discuss any issues. CMS may choose to visit the RAC site to assess their performance.

**H. Quality Assurance:**
CMS will utilize a number of quality assurance procedures to ensure contractor compliance with this contract.  Examples include inspection of deliverables, review of reports, progress meetings, performance evaluations, audit protocol review and acceptance, audit finding review and acceptance, etc.

A00441

Contractors shall develop and maintain quality assurance procedures for work paper reviews, IT requirements, PDEs, etc.  Contractors shall also ensure that data is physically secured and Personal Health Information (PHI) data is handled confidentially.  This is required for subcontractors as well. These should be provided to CMS upon request.

I.  **SO communication via FTP, Website, or other CMS approved method of communicating PHI information securely to plans (to be approved by CMS):**
The Part D RAC will develop and maintain a website/FTP site or other method for communicating PDE/PHI information on findings with effected Part D plans and Sponsoring Organizations or other interested entities. Communication includes: answering questions, support for findings and general administrative duties.  The website/FTP or other secure method shall be developed and maintained in accordance with CMS standards and guidelines for contractor communication of PHI information.

The period of performance is extended through 9/30/2012 to allow for appeals by Sponsoring Organizations and the submission of the invoice by the RAC.

**END OF MODIFICATION**

July 9, 2012 Email

**EXHIBIT 34**

A02496

| From: | Chartier, Frank D. \(CMS/CPI\) |
|---|---|
| To: | Christopher Mucke |
| Subject: | RE: Answers |
| Date: | Thursday, July 19, 2012 10:03:02 AM |

Chris,

We don't want any impact from a previously identified excluded provider that is deemed to be a legitimate servicing/prescribing provider to impact any contracts. So, if there is a reversal on the decision, it will impact any contract that previously included it in the PDE records. So, it should be removed from all contracts, even if the plan didn't appeal.

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Tuesday, July 17, 2012 4:26 PM
**To:** Chartier, Frank D. (CMS/CPI)
**Subject:** RE: Answers

Frank,

Is the "removed from all contracts" inclusive of those contracts that did not appeal or only for those that did?

*Christopher Mucke | Managing Principal | ACLR, LLC*
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 📠(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

**From:** Chartier, Frank D. (CMS/CPI) [mailto:Frank.Chartier@cms.hhs.gov]
**Sent:** Tuesday, July 17, 2012 10:55 AM
**To:** Christopher Mucke
**Subject:** Answers

Chris,

See below, my answers are in red.

Also, CMS wanted you to know some additional information regarding these appeals. As neither the OIG nor CMS want any doctors/pharmacies to be hit or black listed due to their inclusion in your findings, if one of the servicing/prescribing excluded providers is deemed to be legitimate, then their inclusion must be removed from all contracts. This was not told to the plans as each plan had to support their own PDEs; however, CMS cannot preclude the inclusion of these PDEs on just the plans that submit appeals. Also, I'm not in charge of what is deemed frivolous or not in a plan appeal, that's for the appeals reviewer to decide. So, I would be sure to outline exactly why and how they were determined to be excluded, regardless of what support the plan provided.

Here are the plans that have extensions that I know of right now:

| H1032 | WELL CARE OF FLORIDA, INC. |
|---|---|
| H3361 | WELLCARE OF NEW YORK, INC. |
| H5850 | COVENTRY SUMMIT HEALTH PLAN, INC. |
| S5569 | CAMBRIDGE LIFE INSURANCE COMPANY |
| S5584 | BLUE CROSS BLUE SHIELD OF MICHIGAN |
| S5660 | MEDCO CONTAINMENT LIFE INSURANCE COMPANY |
| S5670 | COVENTRY HEALTH AND LIFE INSURANCE COMPANY |
| S5768 | FIRST HEALTH LIFE & HEALTH INSURANCE COMPANY |
| S5967 | WELLCARE PRESCRIPTION INSURANCE, INC. |
| S5983 | MEDCO CONTAINMENT INSURANCE COMPANY OF NEW YORK |

I was told that this list does not include plans that requested an extension _and_ provided support for their appeals. CMS will be

EP1052

A02497

getting a more detailed list by COB today. So, I can share that with you as soon as I get it. Seeing as though some plans were granted an extension, I believe the RAC will have 7 days from their submission of support to supply your support.

If you have any additional questions, please let me know.

Thanks,

Frank

---

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Tuesday, July 17, 2012 9:16 AM
**To:** Chartier, Frank D. (CMS/CPI)
**Subject:** RE: Meeting at 10am

Thanks Frank, I did have two additional items:

1) Can you confirm that we have until this Friday to submit our rebuttal package? The RAC will have until this Friday to submit all their support. So, final submission should be July 20th. This changes if the plan requested an extension, then you have 7 days after their submission of their appeal. So, the last date you could potentially be submitting support is July 27th.

2) How (or to which email address) do we submit our rebuttal? Should I copy the SO (it appeared from the appeal process that we should)? You can send your finding support to the same appeals email address that the plans did. But, please organize the information/documentation in such a way that there are individual packages/emails for each individual contract. The subject line should read "H1234 ACLR Support"

Thanks, Chris.

**Christopher Mucke | Managing Principal | ACLR, LLC**
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 📠(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

---

**From:** Chartier, Frank D. (CMS/CPI) [mailto:Frank.Chartier@cms.hhs.gov]
**Sent:** Tuesday, July 17, 2012 8:53 AM
**To:** Christopher Mucke
**Subject:** Meeting at 10am

Chris,

I was out of the office yesterday, but I'll get to your email questions this morning. Besides those questions, do you have anything else to discuss?

Thanks,

*Frank D. Chartier*

Centers for Medicare & Medicaid Services
Center for Program Integrity
Division of Plan Oversight and Accountability
7500 Security Blvd.
Baltimore, MD 21244
Location: AR-15-11
Mailstop: AR-18-50
T - (410) 786-8075
Frank.Chartier@cms.hhs.gov

INFORMATION NOT RELEASABLE TO THE PUBLIC UNLESS AUTHORIZED BY LAW.

EPI053

A02498

This information has not been publicly disclosed and may be privileged and confidential. It is for internal government use only and must not be disseminated, distributed, or copied to persons not authorized to receive the information. Unauthorized disclosure may result in prosecution to the full extent of the law.

EPI054

# Process Delay Chart

**EXHIBIT 35**

A04126

Part D RAC
ACLR
Claim Exhibits

Process Delays

**Recovery Audits:**

| Issue | Duty | Excluded Providers | | | Unauthorized Prescribers | | DEA Schedule Refill Errors | | Duplicate Payments | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | PY07 | PY08-PY09 | PY10-PY11 | PY10-PY11 | PY12 | PY10-PY11 | PY12-PY13 | PY10 | PY11-PY12 |
| NAIRP | CMS | N/A | N/A | N/A | N/A | | 97 | 310 | 83 | 83 |
| Plan Sponsor RFI Submission | CMS | | | | | | 32 | | 63 | |
| DVC Validation | DVC | 51 | 112 | 119 | 7 | -6 | 40 | Pending - CMS Response | Pending | Pending - COR Release |
| NIP Submission | CMS | 10 | -3 | 20 | 2 | -2 | 80 | | | |
| Appeal Findings | CMS | -5 | 45 | 19 | 6 | 3 | | | | |
| Administrative | CMS | 203 | -12 | -12 | 3 | 4 | | | | |
| CMS Contract Deviations | | 259 | 142 | 146 | 18 | -1 | 249 | 310 | 146 | 83 |
| ACLR Compliance | | -5 | -12 | -19 | -21 | -17 | -9 | 0 | -15 | 0 |
| Net Delays | | 254 | 130 | 127 | -3 | -18 | 240 | 310 | 131 | 83 |

**NAIRP Denials:**

| Issue | Plan Years | Decision Timeline | Start | Decision | Timeline | Variance |
|---|---|---|---|---|---|---|
| Excluded Pharmacists | PY09-PY11 | 104 | 01/02/14 | 02/19/14 | 48 | -56 |
| Home Hospice | PY09-PY11 | 104 | 03/07/14 | 04/18/14 | 42 | -62 |
| DEA Schedule Refill - LTC | PY09-PY11 | 104 | 02/04/14 | 04/21/14 | 76 | -28 |
| Deactivated Prescribers | PY09-PY11 | 104 | 02/04/14 | 05/19/14 | 104 | 0 |
| Incarcerated Beneficiaries | PY09-PY11 | 104 | 03/07/14 | 05/22/14 | 76 | -28 |
| DIR | PY10-PY12 | 104 | 04/10/14 | 07/14/14 | 95 | -9 |

| | |
|---|---|
| NAIRP Approvals - Average Delays | 90 |
| NAIRP Denials - Average Delays | -30.5 |

**Part D RAC Contract, Modification 6**

**EXHIBIT 36**

A00119

# MEDICARE PART D
# RECOVERY AUDIT SERVICES

CONTRACT NO GS-23F-0074W
TASK ORDER NO: HHSM-500-2011-00006G

MODIFICATION 000006
EXECUTION DATE - 02.06.13

A552

A00450

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 4 |
| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (If applicable) | |
| 000006 | See Block 16C | N/A | | | |
| 6. ISSUED BY                    CODE | ASG – DPIFMC | 7. ADMINISTERED BY (If other than item 6)     CODE | | AGG/JM | |

CMS, OAGM, ASG, DPIFMC
7500 SECURITY BLVD., MS: C2-21-15
BALTIMORE MD 21244-1850

Justin Menefee
Contract Specialist

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|

ACLR, LLC
Attn: CHRIS MUCKE
550 FOREST AVENUE
SUITE 15-2
PLYMOUTH MI 481703793

9B. DATED (SEE ITEM 11)

x  10A. MODIFICATION OF CONTRACT/ORDER NO.
GS-23F-0074W
HHSM-500-2011-00006G

10B. DATED (SEE ITEM 13)
01/13/2011

| CODE   780272873 | FACILITY CODE |
|---|---|

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers   ☐ is extended.   ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
N/A

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | | |
|---|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. | |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). | |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: | |
| X | D. OTHER (Specify type of modification and authority) FAR 43.103 (a) (3) and mutual agreement of the parties | |

E. IMPORTANT:   Contractor   ☐ is not.   ☒ is required to sign this document and return   1   copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Tax ID Number:  20-2662374
DUNS Number:   780272873
The purpose of this modification to Task Order No. HHSM-500-2011-00006G under GSA Contract No. GS-23F-0074W is to include the requirement for the review of 2008-11 PDE data related to potential excluded pharmacies/prescribers.

To that effect, the following sections of this task order are hereby modified as follows:
Refer to pages 2-4.
All other terms and conditions remain unchanged.
Period of Performance: 01/13/2011 to 03/31/2013

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Christopher Mucke, Managing Principal | | Nicole Hoey | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | 02/06/13 | (Signature of Contracting Officer) | |

NSN 7540-01-152-8070
Previous edition unusable

STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

A00451

Contract No. GS-23F-0074W
Task Order No. HHSM-500-2011-00006G
Modification No. 000006

**A. The timeline provided on Modification No. 000005- is hereby removed in its entirety and replaced with the following:**

| Process | Date |
|---|---|
| ➤ RAC submits findings data to the Data Validation | |
| ➤ Contractor (DVC) | February through completion |
| ➤ DVC reviews and accepts or rejects findings data | February through completion |
| ➤ RAC resubmits Prescription Drug Event (PDE) | |
| ➤ data with agreed DVC findings | February through completion |
| ➤ Potential disputes between RAC and DVC | February through completion |
| RAC recalculates and finalizes Improper Payment | |
| ➤ Review Packages (IPRPs) | February through completion |
| ➤ RAC sends Notification of Improper | |
| ➤ Payment (NIP) | February through completion |
| | |
| ➤ RAC is available for Sponsoring Organization (SO) inquiries, appeals and provides communication and administrative support on behalf of CMS. | February thru appeal process |
| ➤ RAC reruns PDE information from appeal decisions and creates  new Improper Payment Review Packages (IPRPs) with revised impacts by contract number | .      March thru completion |
| ➤ RAC submits revised IPRP packages to the DVC | March thru completion |
| ➤ DVC validates RACs updated IPRPs from appeal decisions and communicates results to the RAC | March thru completion |
| ➤ RAC sends revised Notification of Improper Payment letters to SOs with updated PDE information | March thru completion |

**\*DVC reviews will be conducted and accepted/disputed on a rolling basis.**
**\*\*DVC and RAC have 7 days per dispute to come to a resolution before CMS makes a final determination.**

**B. Improper payment Reporting and Tracking:**
Prior to invoicing, the RAC must submit the Improper Payment Review Package into the Payment Recovery Information System (PRIS) . After the RAC identifies an improper payment, it compiles an IPRP which contains the Improper Payment File and the supporting documentation identifying improper payments corresponding to a particular audit issue by contract. A unique ID is assigned to a Package and will be included on and associated with all future tracking reports and letters such as Validation Findings, Notification Letters, Appeal Notifications, Monthly Plan Payment Adjustments, and Invoices. The IPRPs will be unique for each contract, for each year for each audit issue.
The IPRP must be updated to reflect appeal decisions.

Page 2 of 4

100

A554

Contract No. GS-23F-0074W
Task Order No. HHSM-500-201 I-00006G
Modification No. 000006

## C. Potential Disputes between RAC/DVC:

The RAC is required to review all disagreements identified by the DVC and either accept or reject the DVC's validation findings. When the RAC agrees with a rejected IPRP Validation finding, the file is considered validated; all associated PDE records will be removed by the RAC. The RAC should submit a new package with updated PDEs and the calculated Medicare impact amount once issues are resolved.

The RAC must collaborate with the DVC to attempt resolution of any dispute. The RAC and DVC should attempt to resolve any disputes within 7 calendar days. If the RAC and DVC cannot come to a resolution, CMS makes the final decision, which cannot be contested or reviewed by the RAC or DVC for any reason.

## D. Notification of Improper Payment Letters:

The RAC is required to issue a NIP etter to the SO once an improper payment is identified and validated. The RAC shall get the notification letter approved by CMS. Electronic or hardcopies must be sent to CMS. In order to allow the plan the full appeals window, the RAC is required to date the NIP letter and keep a record as to when letters are sent.

The SO has 30 days to respond to any Notification of Improper Payment Letter. The response period is based on the date that appears on the Notification of Improper Payment Letter. Updated Notification of Improper Payment Letters must be sent to SOs to reflect appeal decisions. The excluded provider audit may have an impact on SOs that did not appeal. If a SO did not appeal, but is affected by another SOs appeal decision, both SOs IPRPS and Notification of Improper Payment Letters must reflect the final appealed decision. Therefore, a revised Notification of Improper Payment Letter must be sent to the SO with the PDE supporting the revisions. CMS will not recoup overpayments until all excluded providers with a SO are validated and the appeal process is complete.

## E. Progress Reports:

At the request of CMS, the RAC shall provide a progress report that states at a minimum:

    a. Administrative Actions
    b. Progress status by audit issue
    c. Summaries of applicable meetings (internal and external)
    d. Areas of concern requiring CMS action/attention
    e. Any unresolved issues
    f. List of activities completed to date
    g. List of upcoming activities
    h. Summary of improper payments (by contract) to date
    i. Listing of any concerns from Plans

Contract No. GS-23F-0074W
Task Order No. HHSM-500-2011-00006G
Modification No. 000006

    j.  Any and all work papers supporting RAC activities including databases, fields, processes, internal protocols, or any other documentation/databases used for RAC activities.

CMS will conduct RAC oversight at either the RAC's site or at the appropriate CMS office. CMS has the right to request/review any work performed by the contractor at any time; this includes work papers, reports, etc. After completion of the engagement, CMS may hold a conference with the RAC to discuss any issues. CMS may choose to visit the RAC site to assess their performance.

**F.  Quality Assurance:**
CMS will utilize a number of quality assurance procedures to ensure contractor compliance with this contract. Examples include inspection of deliverables, review of reports, progress meetings, performance evaluations, audit protocol review and acceptance, audit finding review and acceptance, etc.

Contractors shall develop and maintain quality assurance procedures for work paper reviews, IT requirements, PDEs, etc. Contractors shall also ensure that data is physically secured and Personal Health Information (PHI) data is handled confidentially. This is required for subcontractors as well. These should be provided to CMS upon request.

**G.  SO communication via FTP, Website, or other CMS approved method of communicating PHI information securely to plans (to be approved by CMS):**
The Part D RAC will develop and maintain a website/FTP or other method for viewing PDE/PHI by Part D plans and sponsoring organizations and or other interested entities. The website/FTP or other secure method shall be developed and maintained in accordance with CMS standards and guidelines for contractor websites and will contain various types of information related to the RAC and the RAC Program. The FTP, Website or other method shall allow Part D plans to gain access to RAC audit issues related to its contract. CMS will approve content and links posted on the RAC's website.

The period of performance is extended through 3/31/2013 to allow for appeals by Sponsoring Organizations and the submission of the invoice by the RAC.

## END OF MODIFICATION

Page 4 of 4

102

A556

# 2013 Annual Report

## EXHIBIT 37

A03016

# 2013 ANNUAL REPORT
# RECOVERY AUDIT SERVICES IN SUPPORT OF PART D

CONTRACTOR: <u>ACLR, LLC</u>
CONTRACT #: <u>GS-23F-0074W</u>
TASK ORDER #: <u>HHSM-500-2011-00006G</u>
CONTRACT START DATE: <u>JANUARY 13, 2011</u>
OY1 SOW EXECUTED: <u>DECEMBER 31, 2013</u>

TOTAL OVERPAYMENTS IDENTIFIED: <u>$1,050,170,811</u>
TOTAL AMOUNTS COLLECTED: <u>$1,865,110</u>

## OVERVIEW:

This report summarizes all key events related to the execution of Contract No. GS-23F-0074W/Task Order No. HHSM-S00-2011-00006G and subsequent Statement of Work approved for Option Year 1[1] for the CMS Medicare Part D Recovery Audit Contractor Program (Part D) during Calendar Year 2013[2].

## SUMMARY OF KEY EVENTS:

- CMS' proposed BPM/PRIS remained undefined at the conclusion of 2013;
- CMS reported PY12 Part D improper payments of $2.1 billion (3.7% of plan payments);
- CMS issued a not approved order upon ACLR commencement of improper payment recoveries of $1 billion;
- CMS collected $1,865,110 in 2013;
- Estimated recoveries identified for PY08-PY11 Excluded Provider Audit total $2.7 million and $6.6 million for the PY09-PY11 Unauthorized Prescriber Audit;
- CMS OAGM rescinded initial base period extensions and told ACLR they would not provide the option year unless ACLR provided certification of equitable adjustment and rescinded requests for alternative dispute resolution;
- No ACLR or Livanta testing of PRIS was required during 2013;
- ACLR met or exceeded all contracted deadlines;
- CMS contracted deliverable delays at year end totaled 475 days.

## BACKGROUND:

Under the 2010 Patient Protection and Affordable Care Act (ACA) legislation enacted in March 2010, CMS was required to expand the Recovery Audit Contractor Program to Part D. Section 6411(b) of the ACA required that CMS enter into contracts to conduct recovery audits in Part D "not later than December 31, 2010" and that such contracts include the requirement that recovery audit contractors:

- Ensure prescription drug plans implemented anti-fraud plans and to review the effectiveness of such plans;
- Examine claims for reinsurance payments to ascertain whether incurred costs were in excess of allowable costs;

---

[1] *Please see A00475-A00515.*
[2] *Evidence location references pertaining specifically to this annual report are preceded by 13AR and may be found in the attached report; additional references have multi-year applicability and are separately referenced.*

- Review estimates pertaining to the enrollment of high cost beneficiaries against actual beneficiaries enrolled.

**CONTRACT SOLICITATION & AWARD:**

On December 2, 2010, ACLR received RFQ # CMS-RFQ-2011-110462, Recovery Audit Services in Support of Medicare Part D (Part D RAC) and associated Statement of Objectives (SOO) (A00021-A00130). The SOO required that the contractor submit a Performance Work Statement (PWS) that meets the SOO and fully explains "a well-thought-out approach for accomplishing the work in a timely and accurate manner" (A00027). In response to ACLR questions related to the "governing directive that details the process map and timetables for recovering improper payments" referenced in the SSO (A00132), CMS replied that "a process, process map, and time table have not yet been established except for the date of December 31, 2010. CMS anticipates that Performance Work Statements (PWS) submitted with proposals will include a description of the processes/methodologies for improper payments as well as timelines for collecting the overpayments" (A00293). Based on these responses, its review of the SOO, and its understanding of recovery audits and Medicare Part D, ACLR submitted a bid and detailed PWS outlining its recovery audit methodology (A00134-A00291 & A000342-A00350).

The Part D RAC was awarded to ACLR on January 13, 2011 and ACLR's PWS was incorporated into the final contract award in its original and unaltered form. During 2012, CMS executed four contract modifications, which ultimately extended the Base Year period of the awarded contract through March 31, 2013. During 2013, CMS executed 8 contract modifications and continued its extension of the base year period of ACLR's original contract pending the final development of its Part D RAC Business Process Model (BPM) and Payment Recovery Information System (PRIS) through December 31, 2013. On December 31, 2013, CMS incorporated its proposed BPM/PRIS[3] into ACLR's 1st option year[4].

Key personnel assigned to the Part D RAC are listed below:

CMS Key Personnel:

*Contract Office - Office of Acquisition & Management (OAGM):*

- Contracting Officer (CO):       Nicole Hoey
- Contract Specialists:           Jessica Sanders, Justin Menefee

*Program Office - Center for Program Integrity (CPI)[5]:*

- Director, DPOA                  Tanette Downs
- COTR                            Sonia Brown

ACLR Key Personnel:

- Project Manager                 Thais Thompson; Sean Donaghy

---

[3] *The BPM/PRIS remained incomplete.*
[4] *By CMS design, this action also eliminated the effect of any base period extensions negotiated by the RAC and approved by CMS in previous years.*
[5] *Division of Plan Oversight and Accountability (DPOA) and Contracting Officer Technical Representative (COTR).*

- Contract Compliance Officer (CCO)   Gilbert Mucke[6]
- Audit Manager                       Jason Barnes
- Systems Security Officer (SSO)       Bruce Dixon

## CONTRACT EXECUTION:

The original contract awarded by CMS to the ACLR provided for the unrestricted review and recovery of improper payments and development of all Part D RAC processes by ACLR.  As outlined in ACLR's *Part D RAC - 2011 Final Report*, OAGM CO Wheeler terminated ACLR recovery audit activities as outlined in the PWS on November 30, 2011.

As noted in its *PART D RAC - 2011 ANNUAL REPORT*, the RAC outlined the development of a Business Process Model (BPM) and a Payment Information Recovery System (PRIS) by CMS and other outside contractors.  ACLR was directed to participate in testing for CMS' interim solution to PRIS and was subsequently informed that PRIS had entered into production, which would have permitted CMS to successfully execute the Part D RAC.  ACLR; however, was not authorized to submit improper payment determinations via PRIS during 2012[7].  Similarly, ACLR was not authorized to submit via PRIS during 2013 and learned on February 4, 2014 that PRIS had not received its "Authority to Operate" (13AR002)[8].

As discussed in greater detail below, CMS and the RAC executed 8 contract modifications and engaged in ongoing discussions related to CMS Part D BPM/PRIS development solely as it pertained to SOW revisions.  The RAC also attempted to engage CMS in attempting to resolve contractually related issues; all of which were ignored.  In the end, OAGM attempted to add language to the Option Year 1 task order, which released "*the Government from any and all liability under this contract for further equitable adjustments*" and told ACLR the contract would be terminated if it was not signed.

### Contract Modifications:

There were 8 contract modifications, which occurred during 2013:

- Modification 000006; February 6, 2013 (A00449-A00453):  Expanded the excluded provider audit to incorporate PY08-PY11 improper payments.
- Modification 000007; April 1, 2013 (A00454-A00463):  Extended the base period of performance through September 30, 2013.
- Modification Number 000008; July 15, 2013 (A00464-A00466): Authorized ACLR to conduct 2009 duplicate payment reviews for three plans
- Modification Number 000009; September 27, 2013(A00467-A00468): Extended the base period of performance through October 31, 2013.
- Modification Number 000010; November 1, 2013(A00469-A00470): Extended the base period of performance through November 30, 2013.
- Modification Number 000011; November 19, 2013 (A00471-A00472): Increased the contingency fee to 16% for improper payments identified in the PY08-PY11 Excluded Provider Audit.
- Modification Number 000012; November 27, 2013 (A00473-A00474): Extended the base period of performance through December 31, 2013.

---

[6] *Senior Naval Officer, 32 years of active service, 24 years COR experience and training, DAU Level 3 qualifications.*
[7] *Please see Part D RAC - 2012 Final Report.*
[8] *CMS' execution of the OY1 SOW on December 31, 2014 contained express language regarding utilization of PRIS.*

A03019

- Modification Number 000013; December 31, 2013 (A00475-A00515): Award of Option Year 1 with a new SOW and the following significant changes to the Terms and Conditions[9]:

  ➢ Elimination of previous base year period extensions;
  ➢ Provision of one remaining Option years and an Administrative and Appeals Option year.
  ➢ Modified contingency fees as follows:  Excluded Provider 2008-2011 (28%), Scheduled Drugs (contingent upon approval) 20%, Approved new issues - up to $10m in recoveries (15%), Unauthorized Prescribers (12%), and all approved issues – after first $10m in recoveries (12%)

Initial commitments by OAGM in 2011 to secure an executable SOW evaporated with the commencement of 2012 and efforts to resolve contractually related issues and to ensure the implementation of an executable contract were unsuccessful and a modification extending the base period through March 31, 2013 was executed[10].

As discussed in greater detail under *Revised SOW Development* below, CMS informed ACLR of its intent to exercise Option Year 1 to commence on April 1, 2013.  Unresolved issues; however related to CMS' BPM/PRIS implementation, a key component of CMS' new SOW, resulted in each of the subsequent base period extension and contingency fee revisions noted above.

**Contract Administrative Requirements:**

ACLR completed its contingency plan test and 1/3[rd] audit testing of security protocols as required under the Federal Information Security Management Act of 2002.  ACLR also implemented CMS' continuing monitoring system and resolved findings as they were identified.

**Revised SOW Development:**

As noted in its *Part D RAC - 2011 Final Report* and its *Part D RAC - 2012 Final Report*, CMS contracted with Booz Allen Hamilton (BAH) to execute and implement ACLR Part D RAC requirements and ACLR was provided with a draft Statement of Work (SOW) on December 9, 2011 and revised SOWs on January 4, 2012 and again on April 9, 2012[11].  CMS' second attempt to execute Option Year 1 (OY1) occurred on March 31, 2013 and a 4th revision to the SOW was provided to ACLR (13AR003-13AR031).  ACLR personnel review the draft SOW and submitted its list of questions for CMS consideration (13AR032). CMS responded to ACLR questions on March 28, 2013 (13AR033-13AR035) and one key point of concern was raised:

- No clear timetable for issue approval was defined[12].

As ACLR had "no intention of signing an option year contract" which did not give a "possibility of being paid during the contracted period" or for signing a contract where "the potential for recoupment

---

[9] CO Hoey and OAGM personnel Theresa Schultz also verbally committed to move forward with ACLR's request for Alternative Dispute Resolution.

[10] Please see PART D RAC - 2012 ANNUAL REPORT.

[11] This was CMS' first attempt to execute Option Year 1.

[12] CMS' response noted continuing discussions regarding Duplicate Payments and Direct & Indirect Remuneration approval to commence recovery audit activities; two years after the issues were publically approved in 2011.

A03020

remains undetermined" (13AR036), Modification 000007 was executed (A00454-A00463) to permit CMS additional time to ensure that a SOW, which could be executed upon award could be developed.

After CMS' second failed attempt to execute a working SOW, ACLR took a more active and direct role with OAGM in finalizing the SOW so that OY1 could be executed (13AR038). When it became apparent the RAC would be without any work by the end of June 2013, ACLR redoubled its efforts (13AR039-13AR040). In the end, CO Hoey scheduled a June 17, 2013 conference call where CMS' inability to maintain accountability to contracted deadlines and internally developed processes, CPI's unilateral decision to split  the PY08-PY11 Excluded Provider Audit due to concerns related to DVC execution, and the ongoing negative financial impact inflicted upon the ACLR by CMS were discussed (13AR041-13AR046).

During this call, and despite specifically contracted terms and conditions stating otherwise, DPOA Director Downs informed the RAC that CPI was well within its authority to take any actions on process changes and extensions as they pertained to the PY08-PY11 Excluded Provider Audit. Ms. Downs also emphasized ACLR's ignorance pertaining to the magnitude of getting processes approved from other stakeholders within CMS[13]. Absent OAGM support in ensuring the successful implementation of its executed contract, ACLR was without further recourse and OAGM Director Pamela Collins tasked ACLR to propose a resolution towards Alternative Dispute Resolution (ADR) and financial restitution. ACLR's formal ADR included (13AR047-13AR054):

- Issuing a SOW with sufficient CMS accountability to ensure successful execution and
- Resolution for increased delay costs of $1.8 million.

OAGM did not respond and CPI commenced an unsupported and factually inaccurate campaign of attacking ACLR's quality of work. Ultimately, its campaign ended when ACLR provided detailed evidentiary support demonstrating the errors were solely the responsibility of CPI personnel (13AR055-13AR057).

Concerned about the current direction of the contract and increasing CPI hostility, ACLR made repeated attempts to resolve contractual differences with OAGM (13AR055 & 13AR058). In a conference call on August 20, 2013, ACLR informed OAGM of its willingness to execute OY1 and a revised SOW so long as clearly defined timetables and deadlines were included with the SOW and two audit issues were approved for immediate execution at signing. On August 28, 2013, COR Brown, noting the possibility of adding "1-2 new issues" and the addition of "new sections", forwarded CMS' 5th SOW revision to ACLR (13AR060-13AR088). After continuing discussions with OAGM on the difference with audit issue approval and the authority to execute with approved processes, OAGM and ACLR were required to execute two modifications subsequently extending the base period through November 30, 2013.

As ongoing efforts to secure any movement from OAGM on contractual matters, any effort on the part of CPI to engage in discourse related to the approval of potential audit issues upon execution of OY1, and the failure of OAGM to resolve the termination of key express requirements of the original PWS, ACLR informed CMS and CMS Administrator Marilyn Tavenner of ACLR's intent to immediately issue notification of improper payment letters totaling $1.05 billion to plan sponsors (13AR094). In response, a conference call, which included OAGM leadership and CO Hoey, CPI leadership consisting of Acting Director Mark Majestic and CPI Acting Director for Operations Brenda Thew, and ACLR personnel was

---

[13] *Attempts by the RAC to obtain additional information related to these "other entities" were ignored.*

held on November 26, 2013. During this call, Part D RAC execution was discussed and that the upcoming SOW revision would include the approval of two audit issues (13AR097-13AR099)[14].

As calendar year 2013 closed, ACLR and CMS worked steadily to resolve issues pertaining to undefined SOW deliverables such as the development of clearly defined timetables, appeal processes, and additional RAC efforts during appeal and OAGM.

Concurrently with these efforts, ACLR and OAGM continued to address ongoing delays in execution and the negative cost impact of these delays to the RAC. On December 13, 2013 conference call scheduled to discuss equitable adjustment, CO Hoey informed RAC CCO Mucke that CMS was rescinding its Base Period extensions and would and that CMS would only proceed with 2 option year periods; the first to be executed on the next modification. As the SOW had reached maturity, CMS had refused any attempts towards complete equitable adjustment, and ACLR was no longer in a financial position to exist without remuneration related to its efforts on the PY08-PY11 Excluded Provider Audit, the RAC agreed to execute OY1 as written. The RAC also requested, and received verbal approval from CO Hoey and OAGM personnel Theresa Schultz to engage in Alternative Dispute Resolution (ADR), resolve the loss of option years, address ongoing equitable adjustments related to past losses, and the lack of two audit issue approvals previously addressed by Mr. Majestic and Ms. Thew.

Despite ACLR's request to be covered in ADR and OAGM's commitment to participate, OAGM's made a contentious decision in the execution of its contract on December 31, 2013 when ACLR received the finalized SOW and Task Order, to include a certification statement (13AR117-13AR123):

> K. Contractor's Statement of Release. In consideration of the modification agreed to herein, as complete equitable adjustments for the Contractors request for an equitable adjustment, the contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments. Attributable to such facts or circumstances given rise to the contractors request.

ACLR CCO Mucke contacted CO Hoey and Ms. Schultz noting that its inclusion directly contradicted all OAGM assurances to work in good faith. In response, Ms. Schultz informed CCO Mucke that CMS would not execute any agreement unless the language was included[15]. Believing these actions to be unethical and inconsistent with previous OAGM assertions, CCO Mucke informed ACLR's Managing Principal of the need to terminate the contract. The Managing Principal subsequently contacted CO Nicole Hoey and Theresa Schultz and informed them that ACLR would not execute the contract in its current form and the language was removed[16].

Modification Number 000013 noting the Award of Option Year 1 and a new SOW was executed on December 31, 2013 (A00475-A00515).

**PART D RAC RECOVERY AUDIT ACTIVITIES:**

---

[14] *CPI immediately began to retreat from its original verbal commitments.*

[15] *CMS implied breach of contract.*

[16] *OAGM also attempted to execute an additional "base period extension". This request was denied after OAGM was reminded that an additional extension would only result in the loss of additional option years due to OAGM's recent decision to rescind all previous base year extensions.*

A03022

On January 31, 2012, CMS modified the existing contract to permit a recovery audit of improper payments related to providers excluded from participation in Medicare for the 2007 plan year (PY07 Excluded Provider Audit)[17]. The initial process required that ACLR submit improper payment findings to a Data Validation Contractor (DVC), which would review and validate RAC findings. Upon completion of the validation process, the RAC was required to send a Notification Letter and a report of all improper payments identified (IPRP) to each plan sponsor who was provided a 30 day period of time to appeal RAC findings; any amounts that were not appealed would be immediately collected by CMS and the RAC would be paid for services rendered. This review, which commenced in 2012, was expanded to include improper payments identified during plan years 2008 through 2011 (PY08-PY11 Excluded Provider Audit)[18]. In addition, CMS engaged ACLR to commence a recovery audit for duplicate payments of 3 contracts for plan year 2009 Part D payment data (PY09 Duplicate Payment Audit)[19] and for unauthorized prescribers for 2009-2011 payments (PY09-PY11 Unauthorized Prescriber Review).

CMS delays continued to hinder recovery audit efforts in 2013. On November 13, 2013 and," in the interests of expediting contract discussions and to move the issue approval process from an academic discussion to one demonstrating the consequences of inaction", ACLR prepared and submitted IPRPs totaling $1,050,170,811 in illegally dispensed and legally recoverable improper payments as follows (13AR092-13AR093):

| Description | PY09 | PY10 | PY11 | Totals |
|---|---|---|---|---|
| Invalid Prescribers | 519,724,748 | 423,860,896 | 67,447,548 | 1,011,033,192 |
| Deactivated Prescribers | 1,907,320 | 2,942,787 | 2,471,945 | 7,322,052 |
| Unauthorized Prescribers | 2,060,277 | 1,463,482 | 1,662,728 | 5,186,487 |
| DEA Schedule Refill Errors | 10,253,033 | 7,108,489 | 9,267,558 | 26,629,080 |
| Totals | 533,945,378 | 435,375,654 | 80,849,779 | 1,050,170,811 |

Upon notification that ACLR intended to commence the immediate recovery of these improper payments (13AR094), CO Hoey issued a not approved order on this contract (13AR095) and CMS continued a delayed execution of the contract:

- PY07 Excluded Provider Audit: Payment occurred on April 26, 2013; 254 days after it's initially contracted deadline.[20]
- PY09-PY11 Excluded Provider Audit: Ongoing audit delays of 145 days at year end.

During 2013, CMS achieved collections of $1,865,110; the status of pending recovery audits is outlined in greater detail below.

### PY07-PY11 Excluded Provider Audits:

As outlined in its *RAC Part D - 2012 Annual Report*, the RAC commenced recovery audits related to section 1862(e)(1) of the Medicare Prescription Drug, Improvement, and Modernization Act (MMA) of 2003, amended Title XVIII of the Social Security Act (SSA), and federal regulations at 42 C.F.R. § 1001.1901(b)(1), which precluded Medicare payments for items and services furnished by an excluded

---

[17] (A00431-A00436)
[18] (A00450-A00453)
[19] (A00465-A00466)
[20] *Please see RAC Report of Findings - PY07 Excluded Provider Audit.*

A03023

provider or entity or on the prescription of an excluded physician[21] for plan years 2007 through 2011. To conducts these review, the RAC obtained information from CMS and other federal agency databases to develop a list of likely excluded provider identifiers which it then used to match against Prescription Drug Event (PDE) payment data submitted to CMS by plan sponsors, which was then submitted to the Data Validation Contractor (DVC) for review and validation. Amounts owing were submitted to plan sponsors who concurred or appealed RAC findings. Recoveries related to the PY07 Excluded Provider Audit totaled $1,865,110 and total collections were finalized in May 2013; 2S4 days after initially contracted deadlines. The excluded provider audit for plan years 2008 through 2011 was scheduled to be completed no later than December 30, 2013. Subsequent delays by CMS and errors made by its appeals contractor postponed collections until 2014 (13AR108-13AR116). Total recoveries for the PY08-PY11 Excluded Provider Audit based on initial appeal findings were estimated at $2.3 million.

### PY09 Duplicate Payment Audit:

CMS authorized the RAC to conduct a recovery audit for duplicate payments on July 15, 2013 (A00465-A00466). This process was conducted in accordance with CMS' 2011 published approval of the issue and in accordance with CMS directed processes established on December 9, 2011[22] and in 2012[23], the RAC commenced a recovery audit of three contracts selected by CMS and sent a Request for Information requesting information pertaining to specifically identified duplicative PDE. In response, one plan submitted no documentation and two plans responded with assertions containing no evidentiary support. The RAC attempted sending Notification of Improper Payment letters to each of the plans requesting payment on October 22, 2013; no further action by CMS; however, was taken. Improper payments identified through this review totaled $0.5 million.

### PY09-PY11 Unauthorized Prescriber Audit:

The Medicare Part D covers prescription drugs that meet certain requirements and are used for medically accepted indications, per section 1860D-2(e) of the Social Security Act. A drug is considered to be "prescription" if the Food and Drug Administration (FDA) has determined it must be labeled "Rx only," which means it cannot be dispensed without a prescription from a practitioner who is licensed to prescribe such drugs. As further outlined in section 1927(k)(2) of the Social Security Act and 21 USC S3S, to be covered under Medicare Part D, drugs must be dispensed only upon a prescription of a health care provider that has the authority to prescribe drugs. Initial discussions between CMS and the RAC on improper payments related to individuals that did not have the authority to prescribe drugs commenced in October 2013 and the RAC began developing review protocols as directed by CMS. The review protocols were limited to "Taxonomy Codes", which are used to categorize the type, classification, and/or specialization of health care providers (13AR089-13AR091). ACLR review protocols were submitted to CMS. After review and consultation with CMS and the DVC, the RAC submitted a Revised New Audit Issue Review Package (NAIRP) on December 11, 2013 (13AR100-13AR106) and the issue was approved by CMS on December 13, 2013. The RAC submitted Improper Payment Review Packages (IPRPs) totaling $6.6 million to the DVC on December 18, 2013 (13AR107).

### CONCLUSIONS:

---

[21] Please see RAC Report of Findings - PY07 Excluded Provider Issue and RAC Report of Findings - PY08-PY11 Excluded Provider Issue for additional details related to each of these audits.

[22] PART D RAC - 2011 ANNUAL REPORT at 11AR216.

[23] RAC DRAFT REPORT OF FINDINGS - DUPLICATE PAYMENTS at DP1227–DP1136.

A03024

The following summarizes ACLR's conclusions of CMS' efforts to successfully implement and execute the Part D RAC PWS during the 2013 Base Year extension.

*CONTRACTUAL COMPLIANCE:*

CMS was unable to complete a SOW that could be executed until December 31, 2013 and OAGM continued to disregard repeated attempts by ACLR to interface and, despite the knowledge that ACLR was faced with continuing financial hardship and the possibility of bankruptcy, continued to permit CMS to delay contract execution and executed subsequent modifications without equitable relief to ACLR.  In addition, OAGM attempted to achieve ACLR signature on a contract that would have eliminated any possibility of equitable relief after having eliminating through CMS CPI actions all previous equitable relief pertaining to Base Period extensions.

CMS express warranty breaches:

- CMS CPI unilateral decision to split the PY08-PY11 Excluded Provider Audit;
- CMS' failure to not recover PY09 Duplicate Payment;
- PRIS was not operational during 2013.

*ACA REQUIREMENTS AND CMS STEWARDSHIP:*

It is clear, having achieved the ACA requirements of contracting a RAC and its ongoing efforts to hinder same, that CMS will go to great lengths to "minimize the impact to plan sponsors" and not recover "too much money" (A04143).  This is further manifested by OAGM's continuing responses to address unilateral CMS CPI decisions to delay and add additional responsibilities to express contractual requirements by incorporating ex post facto modifications:

- Without remuneration to ACLR for increased costs and lost revenues.
- Eliminating deadlines and deliverables to remove CMS CPI accountability.

These actions, coupled with OAGM's execution of Modification 000008 authorizing a PY09 Duplicate Payment audit with no intent to pay ACLR for services rendered, have created an environment whereby any accountability to contractual compliance is not a priority.  By recognizing the severity of ACLR's financial position, burdened further by CMS CPI unilateral scope reductions and delayed payment cycles, OAGM clearly sought to capitalize on ACLR's willingness to work in good faith on this contract; a conclusion made more clear by its attempt to surreptitiously insert language releasing the government from future equitable adjustment after having previously agreed to additional ADR.

In fact, ACLR's attempts to get equitable adjustment on the only issue approved, Unauthorized Prescribers, OAGM refused and placed the adjustment on DEA Schedule Refill review which was the most significantly impacted and delayed issue post approval in the Part D RAC history as detailed in the *2014 Annual Report*.

**April 2013 Email Thread**

**EXHIBIT 38**

A02526

| From: | Thomas, India M. \(CMS/CPI\) |
|---|---|
| To: | Christopher Mucke |
| Cc: | Brown, Sonja J. \(CMS/CPI\) |
| Subject: | RE: Excluded Prescriber Impact |
| Date: | Wednesday, April 17, 2013 9:06:36 AM |
| Attachments: | image001.png |
| | image002.png |

Thank you.

*India M. Thomas*
Health Insurance Specialist
CMS/CPI/MPIG/DPOA
ext 61152

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Wednesday, April 17, 2013 8:56 AM
**To:** Thomas, India M. (CMS/CPI)
**Cc:** Brown, Sonja J. (CMS/CPI)
**Subject:** RE: Excluded Prescriber Impact

| Year | Contracts | PDE Records |
|---|---|---|
| 2008 | 364 | 71260 |
| 2009 | 389 | 51432 |
| 2010 | 335 | 28659 |
| 2011 | 245 | 17948 |

*Christopher Mucke | Managing Principal | ACLR, LLC*
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 🖷(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

**From:** Thomas, India M. (CMS/CPI) [mailto:India.Thomas@cms.hhs.gov]
**Sent:** Tuesday, April 16, 2013 3:19 PM
**To:** Christopher Mucke
**Cc:** Brown, Sonja J. (CMS/CPI)
**Subject:** RE: Excluded Prescriber Impact

Chris,

Please provide us the information on how many contracts and PDE records are not impacted by this one prescriber.

*India M. Thomas*
Health Insurance Specialist
CMS/CPI/MPIG/DPOA
ext 61152

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Tuesday, April 16, 2013 2:07 PM
**To:** Thomas, India M. (CMS/CPI)
**Cc:** Brown, Sonja J. (CMS/CPI)
**Subject:** RE: Excluded Prescriber Impact

India, here are the totals by year. Please note that these totals do not include amounts for inactive contracts but X0001 is still included for plan years 2010 (11 PDE) and 2011 (40 PDE]. As an update, we completed our review of the excluded provider issue for each of the plan years. Spreadsheets for each of the plan years have been copied to CDs (3 copies) and sent overnight to Sonja; they should be delivered tomorrow by 10:30am. Please let me know if you need anything else, Chris.

EP2003

A02527

| Year | Contracts | PDE Records |
|------|-----------|-------------|
| 2008 | 10 | 2,121 |
| 2009 | 14 | 5,208 |
| 2010 | 15 | 6,026 |
| 2011 | 21 | 6,827 |
| Avg | 15 | 5,046 |

*Christopher Mucke | **Managing Principal** | ACLR, LLC*
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 📠(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure  If you are not the intended recipient,
or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of
distribution of, copying of, or taking action in reliance on this communication is strictly prohibited  If you have received this communication in error,
please notify the sender immediately by replying to the message and deleting it from your computer

**From:** Thomas, India M. (CMS/CPI) [mailto:India.Thomas@cms.hhs.gov]
**Sent:** Tuesday, April 16, 2013 1:39 PM
**To:** Christopher Mucke
**Cc:** Brown, Sonja J. (CMS/CPI)
**Subject:** Excluded Prescriber Impact

Chris,

I understand that we're waiting on a response from OIG in regards to whether or not a particular prescriber is excluded.  Can
you please tell me how many contracts are impacted by this one prescriber?

*India M. Thomas*
Health Insurance Specialist
Division of Plan Oversight & Accountability
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244
Mail Stop AR-18-50
410.786.1152 desk
410.922.2625 ads
410.786.0711 fax
India.Thomas@cms.hhs.gov

EP2004

June 7, 2013 Email

**EXHIBIT 39**

From:        Christopher Mucke
To:          Brown, Sonja J. \(CMS/CPI\)
Subject:     RE: Excluded Service Providers
Date:        Friday, June 07, 2013 2:11:00 PM
Attachments: image001.png
             CMS Service Provider Request.pdf
             image002.png

Sonja,

I have provided the updated address and name information on the attached.  As I mentioned in my earlier email, we do not have access to EIN information (non-public companies) so this data can be achieved through the IRS unless available at CMS.

As for the request, please be clear that we determine this effort to be a delay in schedule with no anticipated return on investment.  As discussed previously, our internal processes were revised to include OIG parameters when our last process yielded a 100% error rate on this issue.  We determined, based on those parameters, that no service providers were deemed excluded.  Indeed, the evidence supporting exclusion for these providers is much less substantive than that for those providers the OIG overturned in the last review.  Considering CMS stated initiative to reduce appeals, this effort does not seem worthy of the delay and will not achieve an appeal reduction goal.  Particularly as it will add another 2 months to a timeline that is already behind schedule.

Please note that my comment regarding a July 1st notification letter was not based an internal timeline (the MOD timeline is open); but rather an attempt to maintain some accountability to CMS' proposed timeline.  As shown below, we are currently 15 days past schedule.  As we discussed last week, this review involves a very simple issue and already we've encountered problems that will delay the process (service providers and the DVC's rebuttal of its own previous findings).

| CMS Proposed Process | | | | |
| --- | --- | --- | --- | --- |
| Description | Days | Actual (Estimated) | Proposed Timeline | Variance |
| RAC - Additional Documentation Request | 1 | | | |
| Plan - Documentation Submission | 30 | | | |
| RAC Review | 30 | | | |
| RAC Submits Findings to DVC | | 02/19/13 | | |
| DVC Reviews & Accepts/Rejects Findings | | 04/04/13 | 04/05/13 | |
| Submit IPRP to RVC (RAC Resubmits PDE with Agreed DVC Findings -inclusive of Dispute Resolution) | 1 | 04/16/13 | 04/12/13 | -5 |
| RVC Review | 45 | 06/10/13 | 05/27/13 | -10 |
| RAC/RVC Dispute Resolution | 7 | 06/17/13 | 06/03/13 | |
| Notification Letter | 1 | 06/18/13 | 06/04/13 | |
| Redetermination Request (RAC Rebuttal - 15 Days) | 60 | 08/17/13 | 08/03/13 | |
| CMS - Redetermination Response | 30 | 09/16/13 | 09/02/13 | |
| Reconsideration Request | 15 | 10/01/13 | 09/17/13 | |
| Reconsideration Decision | 30 | 10/31/13 | 10/17/13 | |
| Recoupment Submission | 25 | 11/25/13 | 11/11/13 | |
| Recoupment | 15 | 12/10/13 | 11/26/13 | |
| Invoice | 20 | 12/30/13 | 12/16/13 | |
| RAC Payment | 50 | 01/29/14 | 01/15/14 | |
| Total Days | 279 | 300 | 285 | 15 |

My overriding concern is making sure that the next contract contains a viable and executable timeline.  In other words, if we cannot meet these deadlines with a very simple issue how can we expect to meet them with a more complicated issue such as duplicate payments.  In short, I believe it we may have to consider revising the current proposed timeline.

*Christopher Mucke | Managing Principal | ACLR, LLC*
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 🖷(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

**June 12, 2013 Email**

**EXHIBIT 40**

A02537

| | |
|---|---|
| **From:** | Brown, Sonia J. \(CMS/CPI\) |
| **To:** | Christopher Mucke |
| **Subject:** | RE: DVC Review |
| **Date:** | Wednesday, June 12, 2013 4:59:33 PM |

Chris,

You should receive Livanta's results by the end of the week. The meeting to discuss the results was moved to tomorrow so we should be ready to send you everything at the conclusion of that meeting. Once you receive the data, we will schedule a call with Livanta and ACLR to discuss any issues that you may have with their results.

As for the 2010-2011 review, it is true that Livanta has not completed its review. CMS instructed Livanta to complete only the 2008-2009 review before beginning 2010-2011. CMS thought that it would be somewhat of a huge undertaking to perform a review of all four years at once given some of the issues that we faced during the last review.

I will provide an update tomorrow once we've spoken to Livanta.

Thanks,

Sonja

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Wednesday, June 12, 2013 8:58 AM
**To:** Brown, Sonja J. (CMS/CPI)
**Subject:** DVC Review

Sonja,

I'm just following up on the status of Livanta's review. When can I expect to receive the data? On the last IDR call, Livanta mentioned that they had yet to complete its review of 2010-2011. Is that true? Thanks, Chris.

*Christopher Mucke | Managing Principal | ACLR, LLC*
38705 7 Mile Rd, Ste 460 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 🖷(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

EP2014