# November 13, 2013 Email

# EXHIBIT 71

| From: | Christopher Mucke |
|---|---|
| To: | Brown, Sonja J. \(CMS/CPI\) |
| Cc: | Hoey, Nicole E. \(CMS/OAGM\); Collins, Pamela K. \(CMS/OAGM\) |
| Subject: | IPRP Submissions - Total Amounts Identified |
| Date: | Wednesday, November 13, 2013 9:16:17 PM |
| Importance: | High |

Sonja,

In the interests of expediting contract discussions and to move the issue approval process from an academic discussion to one demonstrating the consequences of inaction, we have completed and submitted IPRPs (in accordance with CMS' proposed SOW) for all current issues. Each issue listed below is facially improper and represent overpayments as specifically outlined by federal law. Each issue has been previously identified/targeted by the OIG; amounts identified and submitted exceed $1.05 billion for plan years 2009-2011. While the amounts identified seem high, please keep in mind that these amounts are significantly less (approximately 1.75% error rate) than amounts already published by CMS as being improper.

As previously discussed, the audit cycle time dictates that 2009 recovery audits begin upon commencement of the new contract at the end of the month or we risk losing recoveries associated with that plan year. These amounts are currently calculated at $533,945,378 (not including the direct subsidy portion) and will be deemed unrecoverable if not approved this month.

Each issue is summarized below:

*DEA Schedule Refill Issues (ACLR NAIRP Submission - August 21, 2013):*  This issue pertains to violations of refill protocols associated with controlled substances.  The issue was submitted as two separate IPRPs to account for differing laws associated with Long Term Care (LTC) facilities.  While LTC errors with respect to this issue are typically high, the law does permit varying standards for Schedule II drugs.  As such, we deemed it necessary to obtain additional information prior to issuing a NIP for these records.  The remaining IPRPs are facially in error and submitted as an automated review accordingly.  See also, OEI002-09-00605.

*Invalid Prescriber Identifiers (ACLR NAIRP Submission – August 29, 2013):*  Due to varying issues attendant with this issue, four separate IPRPs files have been submitted; Deactivated Prescriber Errors, Improper Prescriber Submission Errors; NPI Matching Errors, and DEA Matching Errors.  See also, OEI-03-09-00140.

- **Deactivated Prescriber Errors:**  As outlined previously, we obtained the deactivated identifier listing from NPPES.  In accordance with OIG/CMS standard guidelines regarding these providers, we calculated an "Allowable Date" window by adding one year to each deactivated prescriber's deactivation date.  We then identified all PDE records occurring after the Allowable Date window to complete the IPRPs.
- **Improper Prescriber ID Submission Errors:**  This issue pertains solely to prescriber identifier submissions that conform to no known permissible identification code.  These data contain prescribers identified as "BATCHCLAIM", "NA", "DEA Needed", blank submissions, or other more obscure data.  In an effort to obtain identifier matches, we attempted many iterations of the data such as eliminating spaces, dashes, as well as other approaches to no avail.
- **NPI Matching Errors:**  Errors included within this submission consist of NPIs that do not match the NPPES database yet pass the Luhn Algorithm test.  As CMS tracks all NPIs, including those no longer in service we submitted this as an automated revoew.  Errors also include known invalid submissions identified by the OIG in previous reviews; NPI 1234567893 is an example.
- **DEA Matching Errors:**  These errors are identical to that of the NPI issue outlined above.  In this case, DEA numbers passed the "Check Digit" algorithm yet could not be matched to the official DEA database.  However, as controls sufficient to warrant a precise review are not available with this database it has been submitted as a complex review item.  Please note that most of the errors associated with this issue arise from known submission errors (known as "push codes") such as AA0000000 identified by the OIG in previous reviews.  Errors associated with this issue may also be subject to further False Claims Act review.

*Unauthorized Prescriber Issue (CMS Issue Submission - November 1, 2013):*  This issue was completed upon request by CMS.  To conduct this review, we identified all prescribers that matched CMS provided taxonomy group codes (excepting only veterinarians, which were previously recovered by the MEDIC) and conducted additional reviews to determine whether additional data existed that indicated prescribing authority.  See also, OEI-02-09-00608.

A summary of each issue, reconciled amounts owing, and PDE counts are listed below:

11

A741

| Total Amounts Due | Review Type | PY09 | PY10 | PY11 | Totals |
|---|---|---|---|---|---|
| DEA Schedule Refill Errors - All Other | Automated | 4,000,309 | 3,342,798 | 4,171,776 | 11,514,883 |
| DEA Schedule Refill Errors - LTC | Complex | 6,252,724 | 3,765,691 | 5,095,782 | 15,114,197 |
| Deactivated Prescriber Errors | Automated | 1,907,320 | 2,942,787 | 2,471,945 | 7,322,052 |
| Unauthorized Prescriber Errors | Automated | 2,060,277 | 1,463,482 | 1,662,728 | 5,186,487 |
| Improper Prescriber ID Submission Errors | Automated | 220,888,591 | 282,001,985 | 9,882,941 | 512,773,517 |
| NPI Matching Errors | Automated | 1,958,257 | 2,409,852 | 1,985,685 | 6,353,795 |
| DEA Matching Errors | Complex | 296,877,899 | 139,449,059 | 55,578,922 | 491,905,880 |
| Totals | | 533,945,378 | 435,375,654 | 80,849,779 | 1,050,170,811 |

| Counts | Review Type | PY09 | PY10 | PY11 | Totals |
|---|---|---|---|---|---|
| DEA Schedule Refill Errors - All Other | Automated | 142,912 | 155,867 | 217,559 | 516,338 |
| DEA Schedule Refill Errors - LTC | Complex | 196,712 | 116,458 | 158,864 | 472,034 |
| Deactivated Prescriber Errors | Automated | 44,028 | 87,030 | 69,600 | 200,658 |
| Unauthorized Prescriber Errors | Automated | 67,084 | 66,462 | 49,791 | 183,337 |
| Improper Prescriber ID Submission Errors | Automated | 13,040,033 | 13,921,324 | 954,648 | 27,916,005 |
| NPI Matching Errors | Automated | 61,605 | 58,470 | 49,457 | 169,532 |
| DEA Matching Errors | Complex | 11,035,835 | 5,230,317 | 2,054,307 | 18,320,459 |
| Totals | | 24,588,209 | 19,635,928 | 3,554,226 | 47,778,363 |

Please let me know if I may be of further assistance, Chris.

**Christopher Mucke | Managing Principal | ACLR, LLC**
38705 7 Mile Rd, Ste 251 | Livonia, Michigan 48152-3975 | ☎(734) 744 - 4401 | 📠(734) 744 - 4150 | ✉
mailto:cmucke@aclrabs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

12

A742

**Excerpts from 2007 Prescription Drug Event
Participation Guide**

**EXHIBIT 72**



# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... I-1

**MODULE 1 – PART D PAYMENT METHODOLOGY** ............................................. 1-1
1.1         Overview ..................................................................................................... 1-1
1.2         Payment Methodologies ............................................................................. 1-1
1.2.1       Covered Drugs ........................................................................................... 1-2
1.2.2       Gross Covered Drug Cost .......................................................................... 1-3
1.2.2.1     Drug Cost Subject to Part D Payment ....................................................... 1-3
1.3         The Four Payment Mechanisms Related to the Defined Standard Benefit ..... 1-4
1.3.1       The Defined Standard Benefit .................................................................... 1-4
1.3.2       Other Benefit Types: Year-to-Date Gross Covered Drug Cost and the Out-of-Pocket
            (OOP) Threshold .................................................................................. 1-9
1.3.3       Payment Methodologies in Relation to the Defined Standard Benefit ......... 1-9
1.4         General Summary of Part D Payment Reconciliation ................................. 1-10
1.4.1       Payment Timetable and Part D Payment Reconciliation Status ................. 1-10
1.4.2       Data Collection for Part D ......................................................................... 1-10
1.4.2.1     Prescription Drug Event (PDE) ................................................................. 1-10
1.4.2.2     Direct and Indirect Remuneration (DIR) ................................................... 1-11
1.5         Part D Payment Reconciliation ................................................................. 1-12
1.5.1       Direct Subsidy .......................................................................................... 1-12
1.5.1.1     Timing of Payment – Monthly .................................................................. 1-12
1.5.1.2     Risk Adjustment Model ............................................................................ 1-12
1.5.1.2.1   Overview ................................................................................................... 1-12
1.5.1.2.2   Rx-HCC Model .......................................................................................... 1-13
1.5.1.2.3   Hierarchical Condition Categories (HCCs) ............................................... 1-13
1.5.1.2.4   Base Year Diseases Predict Payment Year Costs .................................... 1-14
1.5.1.2.5   Interactions .............................................................................................. 1-15
1.5.1.2.6   Low Income Subsidy and Institutionalized Beneficiaries ......................... 1-15
1.5.1.2.6.1 Systems Reporting LIS and LTI Status ..................................................... 1-16
1.5.1.2.7   Plan Liability Model .................................................................................. 1-16
1.5.1.2.8   Implementation of the Rx-HCC Model ...................................................... 1-17
1.5.1.2.8.1 Factor Calculation – Data Collection Periods ........................................... 1-17
1.5.1.2.8.1.1 Risk Factor Examples ............................................................................. 1-17
1.5.1.3     Calculate Monthly Direct Subsidy ............................................................ 1-19
1.5.2       Low Income Cost-Sharing Subsidy .......................................................... 1-20
1.5.2.1     Timing of Payment .................................................................................... 1-20
1.5.2.2     LICS Reported on Individual PDEs ........................................................... 1-20
1.5.2.3     LICS Calculation/Reconciliation ............................................................... 1-20
1.5.2.3.1   Monthly Prospective Low Income Cost-Sharing Subsidy ......................... 1-20
1.5.2.3.2   LICS Reconciliation Calculation ............................................................... 1-21
1.5.3       Reinsurance Subsidy ................................................................................ 1-21
1.5.3.1     Plans with Special Reinsurance Provisions .............................................. 1-21
1.5.3.2     Prospective Reinsurance Subsidy ............................................................ 1-22
1.5.3.3     Unadjusted Reinsurance Costs ................................................................ 1-22
1.5.3.4     Reinsurance Subsidy Calculation ............................................................. 1-22

HHS2_007204



TrOOP costs below the OOP threshold, moving the beneficiary back into a pre-catastrophic phase of the benefit. This scenario is discussed further in Module 5, Calculating and Reporting TrOOP.

### 4.2.2  Financial Fields

Eleven financial fields on the PDE report either drug costs or payments. For a given PDE, DDPS edits typically ensure that the sum of the cost fields equals the sum of the payment fields. Several of the payment fields document payment by other sources of coverage or LICS payment on a beneficiary's behalf; this module does not address these fields but rather begins with the eight PDE fields that apply to the simplest case where the beneficiary is in a Basic plan and has no other source of payment.

### 4.2.2.1  Gross Drug Cost (Slide 16)

Plans must follow regulatory and sub-regulatory guidance issued by CMS when determining the total cost of the drug to report on the PDE record. For a covered drug, this cost is referred to as "gross covered drug cost" (see Module 1). The term "gross drug cost" refers to the total cost of a covered or non-covered drug on the PDE. On the PDE record, there are detail cost fields and summary cost fields that report the gross drug cost. These fields distinguish the cost of the drug itself from any dispensing fee or applicable sales tax and they identify drug costs that are eligible for reinsurance payment.

### 4.2.2.1.1  Detail Cost Fields

There are three detail cost fields: Ingredient Cost Paid, Dispensing Fee Paid, and Total Amount Attributed to Sales Tax. For all events, the gross drug cost is a sum total of these three detail fields in the PDE record.

Gross Drug Cost = Ingredient Cost Paid + Dispensing Fee Paid + Total Amount Attributed to Sales Tax.

### 4.2.2.1.2  Summary Cost Fields

For covered drugs, the gross drug cost is also represented in two summary cost fields: Gross Covered Drug Cost Below the OOP Threshold (GDCB) and Gross Covered Drug Cost Above the OOP Threshold (GDCA). These two fields distinguish costs for covered drugs that fall above or below the OOP threshold, so that covered drug costs above the OOP threshold are identified for payment under the reinsurance subsidy

 For non-covered drugs, both GDCA and GDCB must be populated with a zero dollar amount ($0.00). GDCA and GDCB only track the cost of covered drugs to note their location and indicate the beneficiary's status with respect to the OOP threshold.

### 4.2.2.1.2.1  Gross Drug Cost Below OOP Threshold (GDCB)

The GDCB field represents the gross covered drug cost that is below or at the OOP threshold. For covered drugs, the GDCB field always has a positive dollar amount if the OOP threshold is not yet reached (Catastrophic Coverage Code=blank) or if the threshold is reached during this event (Catastrophic Coverage Code=A). Once the beneficiary exceeds the OOP threshold (Catastrophic Coverage Code=C) plans must populate the GDCB field with a zero dollar value.

HHS2_007289

**Defendant's Responses to
Plaintiff's First Set of Interrogatories**

**EXHIBIT 73**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACLR, LLC | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 16-309C** |
| v. | ) | **(Senior Judge Merow)** |
| | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S RESPONSES TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Rules of the United States Court of Federal Claims, defendant responds and objects as follows to Plaintiff's First Set of Interrogatories.

### GENERAL OBJECTIONS

The following general objections are stated with respect to each document request regardless of whether specifically identified in response thereto:

1.   Defendant objects to each request to the extent that plaintiff's "Definitions" and "Instructions" seek to impose upon defendant burdens that are inconsistent with, or not otherwise authorized by, the Rules of the Court of Federal Claims or any order entered by this Court. Defendant will construe and respond to the document requests in a manner consistent with the Rules of the Court of Federal Claims, and not otherwise.

2. Defendant's responses are based upon present knowledge of, and information provided to, counsel. Discovery proceedings are continuing, and defendant will provide additional non-privileged information responsive to these requests as it becomes known and available to counsel. In addition, defendant reserves the right to assert legal or factual contentions, including any applicable objections, not set forth in its present responses.

1

## RESPONSES TO INTERROGTORIES

### INTERROGATORY NO. 1

Define your interpretation of the terms "audit issue" and "audit methodology" as identified in Section 1.1 of the Statement of Work attached to Modification 13 of the Part D RAC and describe the factual basis for your interpretation.

### RESPONSE

Defendant objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges, and/or seeks a legal interpretation or conclusion. Subject to and without waiving the foregoing objections, defendant responds as follows: An "audit issue" is the area of focus for the audit, e.g., an excluded provider audit issue is focused on improper payments made as a result of prescriptions written by excluded providers. In accordance with Section 2 of the Statement of Work included with Modification 13 of the Part D RAC contract, an "audit methodology" details in a step-by-step fashion, the process used to identify improper payments in accordance with the applicable regulations.

### INTERROGATORY NO.2

Define your interpretation of the term "corrected/reimbursed" as articulated in Section 1.2.3 of the SOW and describe the factual basis for your interpretation.

### RESPONSE

Defendant objects on the ground that the interrogatory is vague and ambiguous as the term "SOW" is undefined. Defendant further objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges, and/or seeks a legal interpretation or conclusion. Subject to and without waiving the foregoing

2

objections, defendant responds as follows:  An improper payment is considered

"corrected/reimbursed" when the corresponding improper Prescription Drug Event (PDE) record

has been deleted by the Medicare Advantage Prescription Drug Plan (MA-PD) or stand-alone

Prescription Drug Plan (PDP) sponsor from the CMS Integrated Data Repository (IDR), and is no

longer considered improper.

## INTERROGATORY NO. 3

Describe your interpretation of the phrase "open and active" as articulated by CMS

Contracting Officer Representative (COR) Sonja Brown in her email entitled "PY12-PY13

NAIRP - Sales Tax Errors" to Christopher Mucke on September 03, 2015 and describe the

factual basis for your interpretation.

## RESPONSE

Defendant objects on the ground that the information sought by this interrogatory is not

relevant to any party's claim or defense.  Defendant further objects to the extent that plaintiff's

request seeks information protected by attorney-client, work product or other governmental

privileges, and/or seeks a legal interpretation or conclusion.  Subject to and without waiving the

foregoing objections, defendant responds as follows:  an "open and active" audit issue is one that

has been approved by CMS and on which work is actively being done. An open and active audit

issue has not yet been finalized and closed out.

## INTERROGATORY NO. 4

Describe your interpretation of the term "fraud and abuse work" utilized by Contracting

Officer (CO) Nicole Hoey in her January 15, 2016 "Claim of ACLR Under Contract Number

GS-23F-0074W/Task Order HHSM-500-201 1-00006G" letter to Christopher Mucke and

describe the factual basis for your interpretation.

3

**RESPONSE**

Defendant objects on the ground that the information sought by this interrogatory is not relevant to any party's claim or defense. Defendant further objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges, and/or seeks a legal interpretation or conclusion. Subject to and without waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d), the answer to this interrogatory may be determined from records that will be provided to plaintiff as part of defendant's response to plaintiff's Request for Production of Documents. Such documents include HHSM-500-2005-00010I, Medicare Prescription Drug Integrity Contractor (MEDIC) Statement of Work, April 2005, file name "J-1-A U-SOW.pdf" defining "fraud" and "abuse".

**INTERROGATORY NO. 5**

Describe the audit methodology, as defined by CMS in its response to Interrogatory No. 1 above, that was utilized by the NBI MEDIC to review the "audit issue" referred to by COR Sonja Brown in her email entitled "PY12-PY13 NAIRP - Sales Tax Errors" to Christopher Mucke on September 03, 2015; include the citations of all state sales and use tax laws utilized by the NBI MEDIC to conduct the review of this "audit issue."

**RESPONSE**

Defendant objects on the ground that the information sought by this interrogatory is not relevant to any party's claim or defense. Defendant further objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges. Defendant also objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d), the answer to this interrogatory may be determined from records that will be provided to plaintiff as part of

4

A750

defendant's response to plaintiff's Request for Production of Documents. Such documents include: Unallowable Sales Tax Payments Vulnerability Executive Summary and Sales Tax Payments - Louisiana.

## INTERROGATORY NO. 6

Describe the audit methodology, as defined by CMS in its response to Interrogatory No. 1 above, that was utilized by the NBI MEDIC to commence "fraud and abuse work" referred to by CO Hoey in her January 15, 2016 "Claim of ACLR Under Contract Number GS-23F-0074Wffask Order HHSM-500-2011-00006G" letter to Christopher Mucke; include the citations of all state sales and use tax laws utilized by the NBI MEDIC to conduct the "fraud and abuse work."

## RESPONSE

Defendant objects on the ground that the information sought by this interrogatory is not relevant to any party's claim or defense. Defendant further objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges. Defendant also objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: See Defendant's Response to Interrogatory No. 5 above.

## INTERROGATORY NO. 7

Describe CMS's rationale for permitting the recovery of improper payments associated with prescriptions written by veterinarians in ACLR's performance of Part D RAC recovery audit activities of the approved audit issue for unauthorized prescribers for Medicare Part D plan year 2009, 2010, 2011, and 2012 payments when such payments had already been reviewed and "deleted" by the NBI MEDIC as articulated in COR Brown's November 1, 2013

5

and November 4, 2013 emails to Christopher Mucke entitled "Unauthorized Prescriber Issue."

**RESPONSE**

Defendant objects on the ground that the term "CMS" is defined to include any employee or agent of the United States, and if construed as such, the request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Defendant further objects to the extent that plaintiff's request seeks information protected by attorney-client, work product or other governmental privileges. Defendant also objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: CMS permitted ACLR to recover improper payments pertaining to veterinarians, previously conducted by the NBI MEDIC, but not for the same PDE records during the same period of review. The NBI MEDIC previously conducted and completed a review identifying veterinarians who were prescribing Part D drugs during a time period of 1/1/2006 through 3/31/2011 and 1/1/2009 through 4/30/2012. Because the NBI MEDIC's review had been completed and they were not going to perform the review on subsequent contract years, ACLR was permitted to identify for recovery improper payments related to veterinarians or other unauthorized prescribers through their own Unauthorized Prescriber audit for contract years 2009-2012, excluding PDE records that the NBI MEDIC had previously identified. The e-mail from ACLR to CMS with the subject line 'IPRP Submissions – Total Amounts Identified" from 11/13/2013 states that ACLR's Unauthorized Prescriber review included "all prescribers that matched CMS provided taxonomy group codes (excepting only veterinarians, which were previously recovered by the MEDIC)... ."

**INTERROGATORY NO. 8**

Identify by year, amount, and source all Part D improper payments collected by CMS

6

A752

related to improper sales tax charges.

**RESPONSE**

Defendant objects on the ground that the term "CMS" is defined to include any employee or agent of the United States, and if construed as such, the request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Defendant further objects on the ground that the interrogatory contains no time limitation, and therefore seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case. Subject to and without waiving the foregoing objections, defendant responds as follows: At this time, CMS has not collected any improper sales tax charges.

**INTERROGATORY NO. 9**

For amounts identified in response to interrogatory number 8 that were not collected through the efforts of ACLR, describe how such improper payments were identified and collected.

**RESPONSE**

See defendant's objections and response to Interrogatory No. 8.

**INTERROGATORY NO. 10**

Describe all communications between or among CMS, Health Integrity, LLC, and the National Benefit Integrity Medicare Drug Integrity Contractor ("NBI MEDIC") pertaining to plan year 2012 and plan year 2013 sales tax improper payments.

**RESPONSE**

Defendant objects on the ground that the term "CMS" is defined to include any employee or agent of the United States, and if construed as such, the request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case.

Defendant further objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d), the answer to this interrogatory may be determined from records that will be provided to plaintiff as part of defendant's response to plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 11**

Describe all internal CMS communications regarding ACLR pursuing recoveries pertaining to veterinarian written prescriptions that had been previously identified by NBI MEDIC.

**RESPONSE**

Defendant objects on the ground that the term "CMS" is defined to include any employee or agent of the United States, and if construed as such, the request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Subject to and without waiving the foregoing objections, defendant responds as follows: CMS did not permit ACLR to pursue recoveries for veterinarians written prescriptions that had previously been identified by the NBI MEDIC during the same period of review. ACLR was permitted to pursue recoveries for veterinarians and other unauthorized prescribers for contract years not previously reviewed by the NBI MEDIC. See e-mail from response to Interrogatory No. 7.

**INTERROGATORY NO. 12**

Provide a detailed listing of prescription drug event (PDE) data, as defined by Part D RAC Modification13 Statement of Work Section 1.1, associated with the "PY 2012-2013 Sales Tax Errors" audit issue that "are already identified, being audited, and have been corrected/reimbursed elsewhere in CMS" as articulated by CMS Contracting Officer Representative (COR) Sonja Brown in her email entitled "PY12-PY13 NAIRP - Sales Tax

8

A754

Errors" to Christopher Mucke on September 03, 2015, identify the individual status of each

PDE record as "already identified," "being audited," or "corrected/reimbursed."

**RESPONSE**

Defendant objects on the ground that the information sought by this interrogatory is not

relevant to any party's claim or defense. Defendant also objects to this request to the extent that

it seeks information that is not within the custody or control of defendant. Subject to and without

waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d),

the answer to this interrogatory may be determined from records that will be provided to plaintiff

as part of defendant's response to plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 13**

Provide a detailed listing of prescription drug event (PDE) data, as defined by Part D

RAC Modification 13 Statement of Work Section 1.1, associated with the identification of

prescriptions written by veterinarians and deleted PDEs as articulated by COR Brown in her

November 4, 2013 email to Christopher Mucke entitled "Unauthorized Prescriber Issue."

**RESPONSE**

Defendant objects on the ground that the interrogatory is vague and ambiguous as the

phrase "associated with the identification of prescriptions written by veterinarians" is undefined.

Subject to and without waiving the foregoing objections, defendant responds as follows: As

provided by RCFC 33(d), the answer to this interrogatory may be determined from records that

will be provided to plaintiff as part of defendant's response to plaintiff's Request for Production of

Documents.

**INTERROGATORY NO.14**

Identify all contracts or agreements, including any task orders, between you and NBI

MEDIC.

9

**RESPONSE**

Defendant objects on the grounds that the interrogatory contains no time limitation and the information sought by this interrogatory is not relevant to any party's claim or defense. Defendant also objects to this request because it defines "you" to include any entity acting on behalf of the United States, and thus purports to require defendant to produce any contract, agreement, or task order between NBI MEDIC and entities having no relevance to the issues in this case. Subject to and without waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d), the answer to this interrogatory may be determined from records that will be provided to plaintiff as part of defendant's response to plaintiff's Request for Production of Documents.

**INTERROGATORY NO. 15**

Describe in detail any work NBI MEDIC performed as to fraud and abuse work with respect to the Sales Tax Error Audit.

**RESPONSE**

Defendant objects on the ground that the interrogatory is vague and ambiguous as the phrase "Sales Tax Error Audit" is undefined. Defendant also objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: See Response to Interrogatory No. 5.

**INTERROGATORY NO. 16**

Describe all communications between you and NBI MEDIC regarding NBI MEDIC's work with respect to the Sales Tax Error Audit, including any direction to NBI MEDIC to not expend any additional resources on the audit.

10

A756

## RESPONSE

Defendant objects to this request because it defines "you" to include any entity acting on behalf of the United States, and thus purports to require defendant to produce any communication between any employee or entity of the United States with NBI MEDIC. As such, the request seeks information that is neither relevant to any party's claim or defense nor proportional to the needs of the case. Defendant further objects on the ground that the interrogatory is vague and ambiguous as the phrase "Sales Tax Error Audit" is undefined. Defendant also objects to this request to the extent that it seeks information that is not within the custody or control of defendant. Subject to and without waiving the foregoing objections, defendant responds as follows: As provided by RCFC 33(d), the answer to this interrogatory may be determined from records that will be provided to plaintiff as part of defendant's response to plaintiff's Request for Production of Documents, including the document titled Vulnerability_PDE Records - Inappropriate Use of the Sales Tax Field_20150810 .

## INTERROGATORY NO. 17

Describe the factual basis for your denial of the allegation in paragraph 12 of the Complaint.

## RESPONSE

Subject to and without waiving the foregoing objections, defendant responds as follows: Prior to ACLR's submission of their NAIRP for Sales Tax Errors the NBI MEDIC completed their own review of sales tax issues for the same contract years.

## INTERROGATORY NO. 18

Describe the factual basis for any of your defenses to ACLR's claims.

11

A757

**RESPONSE**

      Defendant objects on the ground that the interrogatory is vague and ambiguous as the

phrase "any of your defenses to ACLR's claims" is undefined. Defendant also objects to the

extent that plaintiff's request seeks information protected by attorney-client, work product or

other governmental privileges. Subject to and without waiving the foregoing objections,

defendant responds as follows: The contract Statement of Work provides at Section 1.2.3:

"CMS/CPI consistently ensures RAC efforts are not duplicative and do not focus on improper

payments that are already identified, being audited, and have been corrected/reimbursed

elsewhere in CMS for the same audit issue". CMS actions have been consistent with the

contract.

                      BENJAMIN C. MIZER
                      Principal Deputy Assistant Attorney General

                      ROBERT E. KIRSCHMAN, JR.
                      Director

                      MARTIN F. HOCKEY, JR.
                      Assistant Director

OF COUNSEL:

                      MARK E. PORADA

| | |
|---|---|
| Lucy Mac Gabhann | Trial Attorney |
| Attorney | Commercial Litigation Branch |
| U.S. Department of Health and Human | Civil Division |
|   Services | Department of Justice |
| Office of the General Counsel | P.O. Box 480 |
| General Law Division | Ben Franklin Station |
| Procurement, Fiscal and Information | Washington, DC  20044 |
|   Law Branch | Tel:  (202) 305-3622 |
| 7500 Security Boulevard | Fax: (202) 307-0972 |
| Baltimore, MD  21244-1850 | mark.e.porada@usdoj.gov |
| | |
| January 5, 2017 | Attorneys for Defendant |

## VERIFICATION OF RESPONSES TO INTERROGATORIES

I, Sonja J. Brown, am a Supervisory Health Insurance Specialist for the Centers for Medicare & Medicaid Services, U.S. Department of Health and Human Services. I believe, based on reasonable inquiry, that the foregoing answers and statements to Interrogatories Numbers 1-3, 5-13, 15-18, are true and correct to the best of my knowledge, information and belief. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, and thus far discovered in the course of preparing these responses.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2017

_____
Sonja J. Brown

13

A759

## VERIFICATION OF RESPONSES TO INTERROGATORIES

I, Nicole Hoey, am a Contracting Officer for the Centers for Medicare & Medicaid Services, U.S. Department of Health and Human Services. I believe, based on reasonable inquiry, that the foregoing answers and statements to Interrogatories Numbers 4, 14, are true and correct to the best of my knowledge, information and belief. These responses, subject to inadvertent and undiscovered errors, are based upon, and necessarily limited by, the records and information still in existence, able to be located, presently recollected, and thus far discovered in the course of preparing these responses.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on January 5, 2017

Nicole Hoey -S    Digitally signed by Nicole Hoey -S
                   Date: 2017.01.05 16:58:37 -05'00'

Nicole Hoey

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 5th day of January 2017, I caused to

be sent by United States mail (first class mail, postage prepaid) a copy of Defendant's Responses

to Plaintiff's First Set of Interrogatories, addressed as follows:

> Thomas K. David, Esq.
> David, Brody & Dondershine, LLP
> 12355 Sunrise Valley Drive, Suite 650
> Reston, VA  20191

Mark E. Porada

A761

**December 28, 2015 Email**

**EXHIBIT 74**



| | |
|---|---|
| **From:** | Scott, Jamie (CMS/CPI) |
| **Sent:** | Monday, December 28, 2015 1:04 PM |
| **To:** | Howard, Dominca (CMS/CPI); Harris, Monique (CMS/CPI); Brady, Elizabeth A. (CMS/CPI) |
| **Cc:** | Brown, Sonja J. (CMS/CPI); Brown, Camille J. (CMS/CPI); Wheeler, David (CMS/CPI) |
| **Subject:** | Self Audits ROI |
| **Attachments:** | Part D MEDIC Data Analysis Detailed Data FY_2015 Cumulative ROI.xlsx |

Good morning,

We need to establish a ROI measure for the MEDIC self-audits. Particularly we need to identify the event when amounts are considered identified. In the RAC audits amounts are considered identified on the date of the original NIP and for the data analysis projects amounts are identified at the date of the original memo to the plans. I have attached the ROI template for the data analysis projects. I believe the self-audits will be similar except for the identified tab and definitions. Please take a look at the data analysis template and provide suggested revisions needed to create a self-audits ROI template. I will set up an internal meeting for later this week or next to discuss.

Also, please forward along to anyone involved with the self-audits that I missed.

Thank you!

**Jamie E. Scott, CPA, MS**
Auditor
Division of Plan Oversight & Accountability
Investigations & Audits Group
Center for Program Integrity
Centers for Medicare & Medicaid Services
410.786.0978 desk
Jamie.Scott@cms.hhs.gov

1

CMS_EMAIL003272

A763

**Part D MEDIC Data Analysis: Total FY 2015 Identified and Actual Savings Values**

| Savings Indicator | All Payers | Medicare |
|---|---|---|
| Part D Data Analysis Identified Amounts | $0.00 | $0.00 |
| Part D Data Analysis Actual Recoveries | $0.00 | $0.00 |

| Project Description | Project ID |
|---|---|
| | |
| Medicare Advantage-Prescription Drug (MA-PD) plan sponsors that submitted Transmucosal Immediate-Release Fentanyl (TIRF) drugs to beneficiaries who did not have a documented medically accepted indication | TIRF MA-PD |
| Identified Part D payments for EPO/Aranesp that should have been covered under Medicare Part B | End Stage Renal Disease (ESRD) |
| Louisiana exempts sales tax on Part D drugs | Louisiana Sales |
| Identified Part D payments for Medicare Part A Skilled Nursing Facility (SNF) | SNF |

Part D MEDIC Data Analysis: Definitions for the FY 2015 Identified and Actual Detailed Data Fields

| Field Name | Identified/Actual | Definition |
|---|---|---|
| Parent Organization | Identified and Actual | The name of the parent organization |
| Project ID | Identified and Actual | The identifier for the data analysis project |
| Contract ID | Identified and Actual | The updated contract identifier using the CMS plan crosswalk |
| Original Date of Memo | Identified | Date the original Memo was sent to the plan |
| Original Memo Amount - All Payers | Identified | Original amount identified on the Memo (total amount across all payers) |
| Original Memo Amount - Medicare Only | Identified | Original amount identified on the Memo (total amount for Medicare only) |
| Amounts Recovered - All Payers | Actual | Total savings from deleted prescription drug event (PDE) records (for all payers) |
| Amounts Recovered - Medicare Only | Actual | Total savings from deleted PDE records (for Medicare only) |
| Date of Recovery | Actual | Date the parent organization deleted the PDE records |

Part D MEDIC Data Analysis: FY 2015 Identified Amounts

| Parent Organization | Project ID | Original Date of Memo | Contract ID | Original Memo Amount All Payers | Original Memo Amount Medicare Only |
|---|---|---|---|---|---|
| | | Total | | $0 | $0 |
| | | | | | |

Part D MEDIC Data Analysis: FY 2015 Actual Amounts

| Parent Organization | Project ID | Date of Recovery | Contract ID | Amounts Recovered All Payers | Amounts Recovered Medicare Only |
|---|---|---|---|---|---|
| | | Total | | $0.00 | $0.00 |

A01381

| From: | Thomas, India M. (CMS/CPI) |
|---|---|
| To: | Christopher Mucke |
| Cc: | Brown, Sonja J. (CMS/CPI); Abankwah, Rosalind M. (CMS/CPI); Tetkoski, Frank (CMS/CPI); Kenya, Dominca (CMS/CPI); Brandenburg, Sara M. (CMS/CPI); Newkirk, Delois J. (CMS/CPI); Thais Thompson |
| Subject: | Approved Revised Duplicate Payment NAIRP |
| Date: | Wednesday, May 28, 2014 9:04:52 AM |

Good Morning,

CMS approves the Duplicate Payment Revised NAIRP submitted on May 13th. CMS is reviewing the RFI for this audit review and will provide comments. Please submit the PDE records associated with the Duplicate Payment review via Quickr prior to sending to plan sponsors. Let me know if you have any questions.

Thank you,

*India M. Thomas*
Health Insurance Specialist
CMS/CPI/MPIG/DPOA
ext 61152

---

**From:** Christopher Mucke [mailto:cmucke@aclrsbs.com]
**Sent:** Tuesday, May 13, 2014 1:54 PM
**To:** Thomas, India M. (CMS/CPI)
**Cc:** Brown, Sonja J. (CMS/CPI); Abankwah, Rosalind M. (CMS/CPI); Tetkoski, Frank (CMS/CPI); Kenya, Dominca (CMS/CPI); Brandenburg, Sara M. (CMS/CPI); Newkirk, Delois J. (CMS/CPI); Thais Thompson
**Subject:** RE: Revised Duplicate Payment Decision Notice

India,

I have attached a copy of the Revised NAIRP, which incorporates CMS' request for a complex review. I have also attached a copy of a draft RFI that will be submitted to the SOs upon final CMS approval of the issue. Please let me know if you have any questions, Chris.

---

*Christopher Mucke | Managing Principal | ACLR, LLC*
38705 7 Mile Rd, Ste 251 | Livonia, Michigan 48152-3975 | ☏(734) 744 - 4401 | 🖷(734) 744 - 4150 | ✉
mailto:cmucke@aclrsbs.com

The information contained in this message may be privileged and confidential and protected from disclosure. If you are not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination of, distribution of, copying of, or taking action in reliance on this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer.

---

**From:** Thomas, India M. (CMS/CPI) [mailto:India.Thomas@cms.hhs.gov]
**Sent:** Tuesday, May 06, 2014 11:39 AM
**To:** Sean Donaghy; Christopher Mucke
**Cc:** Brown, Sonja J. (CMS/CPI); Abankwah, Rosalind M. (CMS/CPI); Tetkoski, Frank (CMS/CPI); Kenya, Dominca (CMS/CPI); Brandenburg, Sara M. (CMS/CPI); Newkirk, Delois J. (CMS/CPI)
**Subject:** Revised Duplicate Payment Decision Notice

Good Morning,

Attached is CMS' revised decision on the Duplicate Payment NAIRP. Please review and submit your updated NAIRP for final approval by COB 5/13/14. Let us know if you have any questions.

Thank you,

*India M. Thomas*
Health Insurance Specialist
Division of Plan Oversight & Accountability
Centers for Medicare & Medicaid Services
7500 Security Boulevard
Baltimore, Maryland 21244
Mail Stop AR-18-50

87

# Defendant's Response to Plaintiff's First Requests for Admission

**EXHIBIT 75**

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ACLR, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 16-309C** |
| **v.** | ) | **(Judge Campbell-Smith)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

Pursuant to Rule 36 of the Rules of the United States Court of Federal Claims, defendant responds and objects as follows to plaintiff's First Requests for Admissions.

### GENERAL OBJECTIONS

The following general objections are stated with respect to each request for admission regardless of whether specifically identified in response thereto:

1.      Defendant objects to each request to the extent that plaintiff's requests or "Definitions" seek to impose upon defendant burdens that are inconsistent with, or not otherwise authorized by, the Rules of the Court of Federal Claims or any order entered by this Court. Defendant will construe and respond to the document requests in a manner consistent with the Rules of the Court of Federal Claims, and not otherwise.

2.      Defendant's responses are based upon present knowledge of, and information provided to, counsel. Discovery proceedings are continuing, and defendant will provide additional non-privileged information responsive to these requests as it becomes known and available to counsel. In addition, defendant reserves the right to assert legal or factual contentions, including any applicable objections, not set forth in its present responses.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST NO. 1**

Admit that CMS Contracting Officer Sonja Brown (COR Brown) denied ACLR's Sales Tax NAIRP on September 3, 2015 on the basis that the "audit issue is currently open and active with another CMS contractor. According to Section 1.2.3 of the SOW, "CMS/CPI consistently ensures RAC efforts are not duplicative and do not focus on improper payments that are already identified, being audited, and have been corrected/reimbursed elsewhere in CMS for the same audit issue".

**RESPONSE:**

Qualified.  Defendant admits that Section 1.2.3 of the SOW states in part that "CMS/CPI consistently ensures RAC efforts are not duplicative and do not focus on improper payments that are already identified, being audited, and have been corrected/reimbursed elsewhere in CMS for the same audit issue," and that Centers for Medicare and Medicaid Services (CMS) Contracting Officer's Representative Sonja Brown informed ACLR on September 3, 2015, that CMS was denying ACLR's Sales Tax NAIRP on the basis that the "audit issue is currently open and active with another CMS contractor."

**REQUEST NO. 2**

Admit that the "CMS Contractor" referred to in Brown's September 3, 2015 denial of ACLR's Sales Tax NAIRP was Health Integrity, LLC; CMS' National Benefit Integrity Medicare Drug Integrity Contractor (NBI MEDIC).

**RESPONSE:**

Admitted.

**REQUEST NO. 3**

Admit that CMS permitted ACLR to recover improper payments associated with

2

A771

prescriptions written by veterinarians that had been previously identified by the NBI MEDIC and deleted by plan sponsors prior to CMS' [sic].

**RESPONSE:**

Defendant cannot admit or deny this request, because the request appears to be missing part of its sentence, and therefore is vague and confusing. The request does not state what action of CMS plaintiff intended to convey after the phrase "prior to CMS' ...." Without knowing what plaintiff intended, defendant cannot answer the request.

**REQUEST NO. 4**

Admit that CMS did not instruct, require, or otherwise direct the Data Validation Contractor to reject ACLR identified improper payments associated with prescriptions written by veterinarians that had been previously identified by the NBI MEDIC and deleted by plan sponsors as outlined in Section 2.2 of the SOW.

**RESPONSE:**

Admitted.

**REQUEST NO. 5**

Admit that CMS contractor Acumen, LLC audited "CY 2013 PDE records" to "identify health care providers not authorized to prescribe Part D drugs" (unauthorized prescribers) and "sent notification letters to plan sponsors" prior to July 11, 2014.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what a third-party may have known or identified as of any particular date.

**REQUEST NO. 6**

Admit that CMS approved ACLR's recovery audit of CY 2013 PDE records to identify PDE records prescribed [by] unauthorized prescribers on November 9, 2015.

3

**RESPONSE:**

Admitted.

**REQUEST NO. 7**

Admit that during the period December 1, 2014 and December 31, 2014 that both the NBI MEDIC and CMS contractor StrategicHealthSolutions had been authorized to work on the erroneous sales tax charges by Minnesota and Louisiana pharmacies.

**RESPONSE:**

Qualified. Defendant admits the request as to the NBI MEDIC, but denies the request as to StrategicHealthSolutions.

**REQUEST NO. 8**

Admit that Booz Allen Hamilton, the NBI MEDIC and/or other CMS contractors had conducted audits of excluded providers prior to CMS approval of ACLR audits of same.

**RESPONSE:**

Denied.

**REQUEST NO. 9**

Admit that CMS recoups Part D improper payments as articulated in Section 3.2 of the SOW and that such a mechanism was not used to recoup erroneous state tax payments identified by the NBI MEDIC or any other CMS contractor.

**RESPONSE:**

Qualified. Defendant admits that Section 3.2 of the SOW outlines the payment adjustment process to be used for the recoupment of any payment adjustments made pursuant to the Contract between CMS and plaintiff. Defendant denies the second part of the request.

4

**REQUEST NO. 10**

Admit that CMS payments to ACLR, as outlined in Section 3.2 of the SOW, included improper payments calculated on PDE records that were not "corrected/reimbursed" during the periods of SOW execution.

**RESPONSE:**

Qualified.  Defendant admits that ACLR may have received payments associated with improper payments calculated on PDE records which were later corrected/reimbursed for additional reasons, as plans could submit new records after the date of ACLR's payment.

**REQUEST NO. 11**

Admit that CMS did not notify ACLR that PDE records associated with erroneous sales tax charges were "unavailable for review" as outlined in Section 1.2.3 of the SOW.

**RESPONSE:**

Denied.

**REQUEST NO. 12**

Admit that prior to September 3, 2015, CMS did not notify ACLR that the NBI MEDIC was reviewing erroneous sales tax charges.

**RESPONSE:**

Admitted.

**REQUEST NO. 13**

Admit that during the period of January 1, 2014 and December 31, 2015, the NBI MEDIC requested that CMS include ACLR in meetings that included in part, a discussion of ongoing audits to eliminate or otherwise reduce the likelihood of "duplicative reviews."

**RESPONSE:**

Denied.

**REQUEST NO. 14**

Admit that during the period of January 1, 2014 and December 31, 2015, CMS did not include ACLR in meetings with the NBI MEDIC to discuss ongoing audits to eliminate or otherwise reduce the likelihood of "duplicative reviews" or for any other matter affecting the mutual efforts of each contractor.

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity (CPI), Division of Plan Oversight and Accountability, did not convene such meetings between ACLR and the NBI MEDIC during that time period.

**REQUEST NO. 15**

Admit the NBI MEDIC does not "retrieve reconciled PDE records from the Integrated Data Repository (IDR) system via CMS Office of Information Systems (OIS)" as outlined in Section 2.1 of the SOW.

**RESPONSE:**

Admitted.

**REQUEST NO. 16**

Admit that plan sponsors are not provided an appeals process similar to that articulated in Section 3.1 of the SOW for improper payments identified by the NBI MEDIC.

**RESPONSE:**

Admitted.

6

**REQUEST NO. 17**

Admit that as of September 3, 2015, CMS did not have a contract vehicle with NBI MEDIC to allow it to recoup, recover, or otherwise be reimbursed for Part D improper payments identified for "reconciled PDE records" as referenced in Section 1.2.3 of the SOW and prior to "any subsequent reopening of the final reconciliation" as articulated in Appendix C of the SOW.

**RESPONSE:**

Admitted.

**REQUEST NO. 18**

Admit that as of September 3, 2015, the NBI MEDIC or CMS contractors were not reviewing erroneous sales tax charges occurring in states which did not impose sales taxes as articulated in ACLR's Sales Tax NAIRP.

**RESPONSE:**

Defendant objects to this request because, as written, it purports to ask the defendant to admit to the accuracy of plaintiff's assertion that no contractor which ever performed any work for CMS, at any time prior to September 3, 2015, had ever undertaken any other examination of any issue regarding state sales tax charges in the states identified in ACLR's Sales Tax NAIRP, whether related to the issues in ACLR's Sales Tax NAIRP or otherwise, for any entity. Defendant cannot admit or deny this request as written, because defendant lacks foundation to know every project on which every CMS contractor has ever worked.

**REQUEST NO. 19**

Admit that as of September 3, 2015, the NBI MEDIC or other CMS contractors had not reviewed erroneous sales tax charges arising from excessive state and local sales tax rate application as articulated in ACLR's Sales Tax NAIRP.

7

A776

**RESPONSE:**

Denied.

**REQUEST NO. 20**

Admit that as of September 3, 2015, the NBI MEDIC or other CMS contractors had not identified any erroneous sales tax charges arising from excessive state and local sales tax rate application as articulated in ACLR's Sales Tax NAIRP.

**RESPONSE:**

Denied.

**REQUEST NO. 21**

Admit that CMS, the NBI MEDIC, or any other CMS contractor did not request, review, or otherwise obtain any documentation such as invoices, receipts, or other similar records supporting sales tax charges for all PDEs submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-parties may have undertaken apart from any specific request made by CMS. Subject to the foregoing objection, qualified. Defendant admits that CMS did not request that the NBI MEDIC or any other contractor request, review, or otherwise obtain any documentation such as invoices, receipts, or other similar records supporting sales tax charges for all PDEs submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP.

**REQUEST NO. 22**

Admit that CMS, the NBI MEDIC, or any other CMS contractor did not request, review, or otherwise obtain any documentation such as invoices, receipts, or other similar records

supporting sales tax charges for all PDEs submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP to determine or otherwise distinguish whether such charges were associated with Minnesota state and local sales taxes as codified under MINN. STAT. §297 A.62 or MINN. ST AT. §295.52 taxes.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-parties may have undertaken apart from any specific request made by CMS.  Subject to the foregoing objection, defendant admits that CMS did not request that the NBI MEDIC or any other contractor request, review, or otherwise obtain any documentation such as invoices, receipts, or other similar records supporting sales tax charges for all PDEs submitted pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP.

**REQUEST NO. 23**

Admit that the NBI MEDIC did not review each PDE record the NBI MEDIC identified in its review of sales tax charges billed by Minnesota pharmacies to distinguish amounts that did not equal 2% of the ingredient cost submitted in the PDE record to CMS for Part D payment.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-party NBI MEDIC may have undertaken apart from any specific request made by CMS.

**REQUEST NO. 24**

Admit that the NBI MEDIC did not review all PDE records associated with sales tax charges by Minnesota pharmacies to distinguish whether local sales taxes had been improperly applied to the PDE records during plan years 2012 and 2013.

9

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-party NBI MEDIC may have undertaken apart from any specific request made by CMS.

**REQUEST NO. 25**

Admit that the NBI MEDIC did not review all PDE records associated with sales tax charges by Minnesota pharmacies to distinguish whether local sales taxes had been improperly applied to the PDE records during plan years 2012 and 2013.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-party NBI MEDIC may have undertaken apart from any specific request made by CMS.

**REQUEST NO. 26**

Admit the NBI MEDIC did not review all PDE records the NBI MEDIC identified in its review of sales tax charges billed by Minnesota pharmacies to determine the type of tax billed in the sales tax column submitted to CMS for Part D payment.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-party NBI MEDIC may have undertaken apart from any specific request made by CMS.

**REQUEST NO. 27**

Admit the NBI MEDIC did not review all PDE records the NBI MEDIC identified in its review of sales tax charges billed by Minnesota pharmacies to determine whether such amounts represent Minnesota state and/or local taxes.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what actions third-party NBI MEDIC may have undertaken apart from any specific request made by CMS.

10

A779

**REQUEST NO. 28**

Admit that CMS never issued, sent, submitted, or otherwise notified plan sponsors that Minnesota sales taxes had or may have been improperly billed.

**RESPONSE:**

Qualified. Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 29**

Admit that CMS never advised, notified, directed, or otherwise informed Part D plan sponsors that some Minnesota pharmacies had or may have erroneously applied Minnesota tax to Part D claims submitted for reimbursement during plan years 2010 through and 2013.

**RESPONSE:**

Qualified. Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 30**

Admit that CMS never advised prescription drug plans in writing that Minnesota sales taxes for prescription drugs provided to Medicare beneficiaries would not be paid for by the Medicare part D program as a Part D benefit.

**RESPONSE:**

Qualified. Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 31**

Admit that CMS never issued, sent, submitted, or otherwise notified plan sponsors that Delaware, Alaska, New Hampshire, Montana, and Oregon sales taxes had or may have been improperly billed.

11

A780

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 32**

Admit that CMS never advised, notified, directed, or otherwise informed Part D plan sponsors that some pharmacies had or may have erroneously applied Delaware, Alaska, New Hampshire, Montana, and Oregon sales taxes to Part D claims submitted for reimbursement during plan years 2010 through and 2013.

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 33**

Admit that CMS never advised prescription drug plans in writing that Delaware, Alaska, New Hampshire, Montana, and Oregon sales tax for prescription drugs provided to Medicare beneficiaries would not be paid for by the Medicare part D program as a Part D benefit[.]

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 34**

Admit that CMS never issued, sent, submitted, or otherwise notified plan sponsors that Minnesota sales taxes had or may have been improperly billed.

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

12

A781

**REQUEST NO. 35**

Admit that CMS never advised, notified, directed, informed or otherwise required Part D plan sponsors that some Minnesota pharmacies had or may have erroneously applied Minnesota tax to Part D claims submitted for reimbursement during plan years 2010 through and 2013.

**RESPONSE:**

Defendant objects on the ground that the request is ambiguous, in that the word "required" does not make sense in the context of the request, thereby rendering the request confusing and ambiguous. Subject to the foregoing objection, defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 36**

Admit that CMS never advised prescription drug plans in writing that Minnesota sales taxes for prescription drugs provided to Medicare beneficiaries would not be paid for by the Medicare [P]art D program as a Part D benefit.

**RESPONSE:**

Qualified.  Defendant admits that the CMS Center for Program Integrity, Division of Plan Oversight and Accountability did not issue such notifications.

**REQUEST NO. 37**

Admit that by January 1, 2011, CMS was aware that some Minnesota pharmacies were charging Minnesota taxes for prescription drugs provided to Medicare beneficiaries, submitting such amounts in PDE records for payment by Part D.

**RESPONSE:**

Denied.

13

A782

**REQUEST NO. 38**

Admit that by 2011, CMS was aware that Minnesota sales taxes paid by prescription drug plans were being passed on for reimbursement by the Part D Program.

**RESPONSE:**

Denied.

**REQUEST NO. 39**

Admit that since at least from January 2009 through December 31, 2016, Minnesota state and local sales taxes cannot legally be charged on Medicare Part D prescriptions at the point of sale.

**RESPONSE:**

Defendant objects on the ground that the request seeks a pure legal conclusion or for defendant to admit the truth of a legal conclusion, and therefore is not an appropriate request for admission.

**REQUEST NO. 40**

Admit that since at least from January 2009 through December 31, 2016, Minnesota provider, and wholesaler taxes as imposed under Minn. Stat. § 297 A cannot legally be charged on Medicare Part D prescriptions.

**RESPONSE:**

Defendant objects on the ground that the request seeks a pure legal conclusion or for defendant to admit the truth of a legal conclusion, and therefore is not an appropriate request for admission.

**REQUEST NO. 41**

Admit that by 2011, CMS was aware that plan sponsors were being reimbursed for Minnesota Taxes billed on PDE records in the Part D program.

14

**RESPONSE:**

Denied.

**REQUEST NO. 42**

Admit that since at least from January 2009 through December 31, 2016, Minnesota provider, and wholesaler taxes as imposed under Minn. Stat. § 297 A cannot legally be charged on Medicare Part D prescriptions.

**RESPONSE:**

Defendant objects on the ground that the request seeks a pure legal conclusion or for defendant to admit the truth of a legal conclusion, and therefore is not an appropriate request for admission.

**REQUEST NO. 43**

Admit that, with the exception of erroneous Louisiana sales tax Part D claims, CMS has never recouped or otherwise been reimbursed for Part D claims for which CMS, the NBI MEDIC, or other related contractor/entity has asserted that erroneous sales tax charges had been billed on Part D PDE claims. (JB 8) [sic]

**RESPONSE:**

Denied.

**REQUEST NO. 44**

Admit that since ACLR's Complaint filing on March 9, 2016, CMS has taken no further action to notify plan sponsors, Minnesota pharmacies, and Medicare beneficiaries of erroneous Minnesota tax charges being billed on PDE records in Medicare.

**RESPONSE:**

Admitted.

15

**REQUEST NO. 45**

Admit that on June 2, 2016, CMS advised the NBI MEDIC that the "executive summary" submitted by the NBI MEDIC on August 10, 2015 was "under CMS review" and that "CMS advised this can be moved to the 'parking'".

**RESPONSE:**

Qualified. Defendant admits that Data Analysis Plan Meeting Minutes from a June 2, 2016, meeting, prepared by Health Integrity, LLC, reference "PDE Records – Inappropriate Use of the Sales Tax Field," and state that "The executive summary was submitted August 10, 2015. This vulnerability speaks to the inappropriate use of the sales tax field in general. The findings are under CMS review. CMS advised this can be moved to the 'parking lot.'"

**REQUEST NO. 46**

Admit that the improper Minnesota sales tax charges submitted by ACLR in its Sales Tax have not been audited and corrected/reimbursed elsewhere in CMS for the same audit issue.

**RESPONSE:**

Qualified. Defendant admits that some of the sales tax charges identified by ACLR may have been corrected or changed by the plans themselves. Defendant further responds that simply because there is an amount identified in the sales tax field of PDE records does not mean that such a charge is improper.

**REQUEST NO. 47**

Admit that not all of the improper Minnesota sales tax charges in identified in ACLR's Sales Tax NAIRP have been audited and corrected/reimbursed elsewhere in CMS for the same audit issue.

16

A785

**RESPONSE:**

Defendant lacks knowledge or information to admit or deny this request. Defendant has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 48**

Admit that the PDE records submitted for sales tax charges submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP have not been audited and corrected/reimbursed elsewhere in CMS for the same audit issue as articulated in Section 1.2.3 of the SOW.

**RESPONSE:**

Defendant lacks knowledge or information to admit or deny this request. Defendant has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 49**

Admit that not all of the PDE records submitted for sales tax charges submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP have been audited and corrected/reimbursed elsewhere in CMS for the same audit issue as articulated in Section 1.2.3 of the SOW.

**RESPONSE:**

Defendant lacks knowledge or information to admit or deny this request. Defendant has made reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this request.

**REQUEST NO. 50**

Admit that the PDE records submitted for sales tax charges submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP have not been deleted.

**RESPONSE:**

Defendant objects on the ground that the request does not identify which PDE records the request is referring to, and whether ACLR is asking about the disposition of every PDE with an amount in the Sales Tax field in the State of Minnesota for the time period identified in the NAIRP. The request as written is vague and confusing, and therefore the defendant cannot not admit or deny this request.

**REQUEST NO. 51**

Admit that not all of the PDE records submitted for sales tax charges submitted by pharmacies located in the State of Minnesota during the periods identified in ACLR's Sales Tax NAIRP have been deleted.

**RESPONSE:**

Defendant objects on the ground that the request does not identify which PDE records the request is referring to, and whether ACLR is asking about the disposition of every PDE with an amount in the Sales Tax field in the State of Minnesota for the time period identified in the NAIRP. The request as written is vague and confusing, and therefore the defendant cannot not admit or deny this request.

**REQUEST NO. 52**

Admit that before August 21, 2015, NBI MEDIC completed its review of the issue of erroneous Minnesota sales tax charges on Medicare Part D prescriptions.

18

**RESPONSE:**

Denied.

**REQUEST NO. 53**

Admit that NBI MEDIC has not pursued the recovery of improper payments related to erroneous Minnesota sales tax charges on Medicare Part D prescriptions.

**RESPONSE:**

Defendant objects on the ground that it lacks the foundation to admit or deny what a third-party may have pursued, independent of any request by CMS. Subject to the foregoing objection, qualified. Defendant admits that CMS has not requested that NBI MEDIC pursue the recovery of any allegedly improper payments related to erroneous Minnesota sales tax charges on Medicare Part D prescriptions.

**REQUEST NO. 54**

Admit that CMS did not offer ACLR the opportunity to refine the Sales Tax NAIRP prior to denying it.

**RESPONSE:**

Qualified. Defendant admits that it did not request any clarification from ACLR on the NAIRP prior to denying it.

**REQUEST NO. 55**

Admit that CMS did not work with ACLR on the Sales Tax NAIRP between the time it was submitted to CMS and the time it was denied.

**RESPONSE:**

Qualified. Defendant admits that after ACLR submitted the NAIRP, ACLR did not

19

A788

communicate with the CMS Center for Program Integrity prior to the contracting officer's representative's denial of the NAIRP.

CHAD A. READLER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Deputy Director

MARK E. PORADA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-3622
Fax: (202) 307-0972
mark.e.porada@usdoj.gov

OF COUNSEL:

Lucy Mac Gabhann
Attorney
U.S. Department of Health and Human Services
Office of the General Counsel
General Law Division
Procurement, Fiscal and Information Law Branch
7500 Security Boulevard
Baltimore, MD 21244-1850

March 17, 2017

Attorneys for Defendant

20

A789

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 17th day of March 2017, I caused

to be sent by United States mail (first class mail, postage prepaid) a copy of Defendant's

Response To Plaintiff's First Requests For Admissions, addressed as follows:

> Thomas K. David, Esq.
> David, Brody & Dondershine, LLP
> 12355 Sunrise Valley Drive, Suite 650
> Reston, VA 20191

Mark E. Porada

21

A790