Nos. 15-767C & 16-309C
(Judge Campbell-Smith)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

ACLR, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S SUPPLEMENTAL SUR-REPLY BRIEF IN
SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

---

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL:

LUCY MAC GABHANN
Attorney
Department of Health and Human Services
Office of the General Counsel
General Law Division
Procurement, Fiscal and Information Law Branch
7500 Security Boulevard
Baltimore, MD  21244-1850

ADAM E. LYONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 353-2345
Fax: (202) 307-0972
adam.e.lyons@usdoj.gov
Attorneys for Defendant

September 13, 2019

TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

I.    The Parties' Contract Expressly Conveys To CMS Inspection, Rejection, and
      Termination Rights And ACLR's Warranty Of Services ................................................. 3

      A.    *Torncello* Expressly Recognizes The Government's Right To Terminate For
            Convenience And Is Limited To A Factual Situation Not Present Here ..................... 4

      B.    The Plain Terms Of The Schedule Contract Resolve ACLR's Arguments Under The
            Covenant Of Good Faith And Fair Dealing ................................................................. 6

II.   ACLR Ignores CMS's Had Express Powers To Inspect, Reject, And Terminate ACLR's
      Provision Of Services ...................................................................................................... 9

III.  ACLR Has No Legitimate Claim That Its Litigation Conduct Immunizes It Against The
      Terms Of The Schedule Contract ................................................................................... 11

IV.   ACLR Has No Claim That Delay In Establishing A Recoupment Mechanism Was An
      Act Of Bad Faith ............................................................................................................ 12

V.    *CGI* Does Not Support A Claim Under The Covenant Of Good Faith And Fair Dealing
      ........................................................................................................................................ 13

VI.   The Government Appropriately Relies Upon Constructive Termination For
      Convenience Where It Did Not Contemporaneously Terminate The Contract ............. 16

VII.  There Is No Factual Issue Precluding Summary Judgment ........................................... 18

      A.    ACLR Cannot Avoid Summary Judgment Through A Vague Assertion Of Needing
            Additional Facts ........................................................................................................ 18

      B.    Constructive Termination For Convenience Is Not A Factual Issue That Cannot Be
            Resolved On Summary Judgment .............................................................................. 19

Conclusion ......................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Advanced Materials, Inc. v. United States*, 34 Fed. Cl. 480 (1995) ............................................... 19

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) .................................. 14

*Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356 (Fed. Cir. 2002) ........... 13

*Century Exploration New Orleans LLC v. United States*, 745 F.3d 1168 (Fed. Cir. 2014) ....... 7, 8

*CGI Federal Inc. v. United States*, 779 F.3d 1346 (Fed. Cir. 2015) ............................ 2, 13, 14, 15

*Clear Creek Cmty. Servs. Dist. v. United States*, 100 Fed. Cl. 78 (2011) ................................... 18

*Erwin v. United States*, 19 Cl. Ct. 47 (1989) ........................................................................ 17, 19

*In re Poston Logging*, AGBCA No. 97-168-1, 99-1 B.C.A. (CCH) ¶ 30188 (Dec. 15, 1998) .... 17

*Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003) .................... 14

*Jianglin Zhou v. United States*, 727 F. App'x 651 (Fed. Cir. 2018) ............................................. 18

*Kalvar Corp. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976) .................................................. 7, 19

*Keebler Co. v. Murray Bakery Prods* ......................................................................................... 18

*M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) ............. 13

*Maxima Corp. v. United States*, 847 F.2d 1549 (Fed. Cir. 1988) ................................. 7, 17, 19, 20

*Metcalf Const. Co. v. United States*, 742 F.3d 984 (Fed. Cir. 2014) ............................................. 6

*Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817 (Fed. Cir. 2010) ..................... 6, 14

*Servidone Constr. Corp. v. United States*, 931 F.2d 860 (Fed. Cir. 1991) ................................... 13

*Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982) ..................................................... 4, 5, 6

*Zip-O-Log Mills, Inc. v. United States*, 113 Fed. Cl. 24 (2013) ................................................... 7

## Regulations

FAR 12.301 ............................................................................................................................ 15, 16

FAR 52.212-4 ......................................................................................................................... 10, 16

FAR 52.249-2 ............................................................................................................................... 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACLR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Nos. 15-767C & 16-309C |
| | ) | (Judge Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL SUR-REPLY BRIEF IN
SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's June 26, 2019 order, defendant, the United States, files its

supplemental sur-reply brief in support of its cross-motion for summary judgment on all counts

of the complaint in these two consolidated cases.

## **INTRODUCTION**

After four separate briefs arguing against any oversight rights, ACLR finally appears to

agree there are express inspection, rejection, termination, and warranty provisions in its contract

with CMS.  Oddly, it does not expressly acknowledge that this has any impact on how the Court

should resolve the parties' dispute.  It does, however, abandon its argument of its absolute

discretion to act as it felt appropriate, but then attempts to bolster its good faith and fair dealing

argument, in the hope that it can still evade the rights and obligations it now agrees the parties

had.

No amount of hiding from the plain language of the parties' contract can avail ACLR.

When CMS stopped ACLR from engaging in invalid and improper audits, it was acting within its

contractual powers and consistent with fundamental principles of Government oversight of

contractor performance.  CMS did so in good faith.

For its contrary arguments, ACLR misrepresents the facts of record, misreads the law, or

both.  It is inaccurate to assert, as ACLR does, that it previously produced the Schedule Contract, and ACLR's implication that the Schedule Contract should not be considered is without merit. Sup. Reply [ECF no. 73] at 2, 10 n.1.  Contrary to ACLR's position, it has never produced the Schedule Contract, and, in any event, ACLR gives no valid reason for the Court to ignore the express language therein that gave CMS the rights it exercised here.  ACLR also engages in an inapt examination of *CGI Federal Inc. v. United States*, 779 F.3d 1346 (Fed. Cir. 2015).  Sup. Reply [ECF no. 73] at 7-10.  *CGI*, a pre-award bid protest asserting that certain payment terms were not commercially acceptable and had to be revised, has no application to whether CMS acted in good faith when it prevented ACLR from continuing with its invalid audits.  In another misreading of the law, ACLR misconstrues FAR provisions concerning notice of termination for convenience and cases on termination after contractual performance in an attempt to evade the inescapable conclusion that its claims are without merit.  Sup. Reply [ECF no. 73] at 10-13. CMS's point, however, is that the agency took actions during contractual performance that now support a constructive termination for convenience, a point these regulations and cases do not address.  In light of CMS's actions at the time, notice of termination for convenience is not required.

Finally, ACLR engages in a last-ditch attempt to reopen discovery in the hope of finding some fact that will support its claims.  Sup. Reply [ECF no. 73] at 2-3.  Its attempt does not comply with RCFC 56(d).  In addition, it does so to address a point of law on which additional discovery could not be relevant.  As with the other positions ACLR raises in its supplemental response, this argument is entirely without merit.

CMS acted in good faith and in accordance with powers ACLR expressly agreed to in the parties' contract.  ACLR's contrary arguments fail.  Summary judgment against ACLR on each

of its claims in these combined cases is appropriate.

## I.   The Parties' Contract Expressly Conveys To CMS Inspection, Rejection, and Termination Rights And ACLR's Warranty Of Services

As we set forth in our supplemental response, the Schedule Contract created a body of rights and responsibilities under which CMS was entitled to reject ACLR's nonconforming services.  Supp. Resp. [ECF no. 70] at 4-19.  For example, the Schedule Contract includes an express termination for convenience provision, allowing CMS to terminate the contract "or any part hereof, for its sole convenience," and under the terms of which CMS was entitled to stop ACLR's invalid audits.  SA778.  That is in addition to the unilateral right of either party to cancel the contract, in whole or in part, upon 30 days written notice.  SA855.  The Schedule Contract also gave CMS the right "to inspect or test" any tendered service and to reject that service if CMS determined that replacement "will not correct the defects or is not possible," independent powers that also justify CMS's actions.  SA775.[1]  Further, all services ACLR tendered came with ACLR's express warranty of fitness, which ACLR's actions breached.  *Id.* Under any and all of these provisions, CMS was entitled to do exactly what it did here:  reject services when those services failed to meet the contractual purpose of "the efficient detection and collection of overpayments, the identification of underpayments, and the implementation of actions that will prevent future improper payments."  Supp. Resp. [ECF no. 70] at 7.[2]

---

[1]  ACLR argues that CMS cannot rely on this contractual power because CMS did not allow ACLR to attempt further corrections to its 2010 duplicate payment audit.  Supp. Reply [ECF no. 73] at 9.  The facts are that CMS did allow ACLR multiple attempts to repair this faulty audit. Def. Cross-Mot. [ECF no. 52] at 27-30.  CMS required correction in good faith, because of the high number of false positives ACLR's methodology was returning.  *Id.*  ACLR, however, refused to use the repair CMS proposed.  *Id.* at 29-30.  At that point, CMS was entitled to reject the services outright because repair "will not correct the defects or is not possible."  SA775.

[2]  It is because the contract expressly states the points that would otherwise be incorporated through the *Christian* doctrine that we do not believe it is necessary for the Court to rely on the *Christian* doctrine to resolve this case.  We have not, however, abandoned the *Christian* doctrine

3

At no point in its supplemental reply does ACLR dispute that these provisions are part of the Schedule Contract or that CMS has properly interpreted them as granting it the powers it exercised here.[3]  Instead, it asserts the "frivolity" of these points.  Supp. Reply [ECF no. 73] at 2. What ACLR appears to mean is that it can ignore the Schedule Contract either because (1) it purportedly believes CMS never intended to allow contract performance, *id.* at 3 (citing *Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982)), or (2) it claims CMS acted in bad faith. Both contentions fail.

### A.  *Torncello* Expressly Recognizes The Government's Right To Terminate For Convenience And Is Limited To A Factual Situation Not Present Here

ACLR ignores the factual record to argue that this Court can read *Torncello* to show that CMS never intended to allow it to perform under the Schedule Contract.  To the contrary, as we have previously demonstrated, ACLR in fact performed under the contract.  Supp. Resp. [ECF no. 70] at 11.  For that performance, ACLR received more than $800,000 in fees.  *Id*.  Not only does ACLR ignore these points, it also ignores that it supports its argument with its purported fact nos. 13 and 16, which the record does not support and CMS denied.  Supp. Reply [ECF no.

---

argument as ACLR would have it.  Supp. Reply [ECF no. 73] at 1.  To the contrary, there are additional fundamental principles of Federal contracting that the Court could look to under the *Christian* doctrine and that further justify CMS's actions.  *See* Supp. Resp. [ECF no. 70] at 27-30.  We simply believe that the express terms of the parties' contract are sufficient to resolve this dispute and examination of these additional principles is no longer necessary.

[3]  At one point, ACLR seems to assert that the PWS and SOW are controlling over any contrary terms in the Schedule Contract.  Supp. reply. [ECF no. 73] at 3.  ACLR offers no authority to support such a construction.  Beyond that, the task order and the Schedule Contract contradict this point.  The task order twice identifies that it only sets forth sections "which differ from" the Schedule Contract and that provisions of the Schedule Contract not set forth therein "remain in effect."  A158.  The Schedule Contract includes an "[o]rder of precedence" clause within 52.212-4, granting the Schedule Contract precedence over "other documents, exhibits, and attachments."  SA778.

73] at 3-4; CMS's Resp. to Pl. Proposed Findings of Uncontroverted Fact [ECF no. 53] at nos. 13, 16.  For all these reasons, the record does not support ACLR's argument.

In addition, *Torncello* makes clear that it stands only for the proposition that the Government cannot unilaterally disclaim all obligations under a contract.  681 F.2d at 772.  As *Torncello* determined, allowing such a right would leave the contract without consideration.  *Id.* The facts in *Torncello* are that the Government entered into a requirements contract with the successful bidder, but intended to award all work under a part of that contract to the bidder's competitor, which it then proceeded to do.  *Id.* at 757.  When the successful contactor asserted breach, the Government claimed its action was a constructive termination for convenience of that part of the contract.  *Id.* at 759.  The *Torncello* court acknowledged that the precedential effect of its decision was limited to the extreme circumstance of the Government entering into a contract that it intended to ignore, expressly limiting its holding to the proposition that the "government may not use the standard termination for convenience clause to dishonor, *with impunity*, its contractual obligations."  *Id.* at 772 (emphasis added).

Here, CMS never attempted to do so:  it paid ACLR for the audits (*i.e.*, the very work being contracted for) that led to recovery of improper payments and increased ACLR's fixed-percentage fee during the life of the relationship to compensate ACLR for "any issues that had arisen with the contract up to that point."  Def. Add'l Proposed Findings of Uncontroverted F. [ECF no. 53] at nos. 134-136; Pl. Resp. to Def. Add'l Proposed Findings of Uncontroverted F. [ECF no. 57-6] at 136.  For that matter, unlike *Torncello*, CMS did not give ACLR's proposed audits to another contractor to perform, it prevented performance of invalid audits altogether as

5

not being in the interest of the Government.[4]  Finally, ACLR relies on a number of its factual assertions of breaches of the contract that CMS has denied.  *See* Supp. Reply [ECF no. 73] at 4 (relying on asserted breaches stated in alleged fact nos. 14-18 regarding the data store, appeals process, delay, and work processes); CMS's Resp. to Pl. Proposed Findings of Uncontroverted Fact [ECF no. 53] at nos. 14-18 (denying same).  These asserted breaches are not the breaches ACLR identified as the basis of its claims.  *Id.*; *see also* Mot. for Summ. J. [ECF no. 50] at 27-29, 46-53.  *Torncello* has no application under the facts here.

### B.     The Plain Terms Of The Schedule Contract Resolve ACLR's Arguments Under The Covenant Of Good Faith And Fair Dealing

Most of ACLR's attempt to evade the effects of the Schedule Contract is a restatement of its argument based on the covenant of good faith and fair dealing.  Supp. Reply at 3-7.  In making this argument, however, ACLR ignores the fundamental tenets that the covenant "cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions" and "an act will not be found to violate the duty (which is implicit in the contract) if such a finding would be at odds with the terms of the original bargain, whether by altering the contract's discernible allocation of risks and benefits or by conflicting with a contract provision."  Def. Resp. [ECF No. 52] at 57-58 (quoting *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010), *Metcalf Const. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014)).   Thus, ACLR argues that CMS violated the covenant when it rejected audits covering ground that Health Integrity had already explored,

---

[4]  ACLR references CMS's retention of Booz Allen Hamilton in connection with the Part D RAC program, to create an incorrect implication that CMS gave ACLR's work to Booz Allen. Supp. Reply [ECF no. 73] at 3.  The testimony ACLR relies upon, however, plainly states that CMS retained Booz Allen for project planning/management and technical assistance, not to conduct audits.  A13 [Moreno dep.] p. 60 at 6 – 19.

Supp. Reply at 4-5, ignoring that CMS had the express rights to cancel the contract, to terminate for its convenience where ACLR's proposal did not meet the contractual expectation of identifying wrongful payments, and to reject ACLR's proposed services that did not meet its warranty of fitness or failed to meet the contractual purpose. *Century Exploration New Orleans LLC v. United States*, 745 F.3d 1168, 1179 (Fed. Cir. 2014) ("the government has not breached its implied duty of good faith and fair dealing because the [contractor] expressly authorized the government action at issue here . . .").

Similarly, ACLR misunderstands the covenant to argue it is "farcical" for CMS to assert that its rejection of the 2010 duplicate payment audit can be deemed a constructive termination for convenience now.  Supp. Reply [ECF no. 73] at 5-6.  ACLR's argument is based on CMS's contemporaneous consideration of termination for convenience of that audit.  It assets that, because CMS did not *actually* terminate for convenience then, it cannot assert *constructive* termination for convenience now.  This argument ignores the point of constructive termination for convenience.

Constructive termination for convenience retroactively justifies an action under a power that was not exercised at the time.  *Maxima*, 847 F.2d at 1553 (constructive termination for convenience applies to an act "even though the contracting officer wrongly calls it a cancellation, mistakenly deems the contract illegal, or erroneously thinks that he can terminate the work on some other ground.") *cited in* Supp. Resp. [ECF no. 70] at 15; *see also* Supp. Resp. [ECF No. 70] at 9 ("even though the termination was never actually ordered by the contracting officer.") (quoting *Zip-O-Log Mills, Inc. v. United States*, 113 Fed. Cl. 24, 31 (2013) (citing *Kalvar Corp. v. United States*, 543 F.2d 1298, 1306 (Ct. Cl. 1976)).  Accordingly, that CMS chose not to issue an express termination for convenience at the time is irrelevant.  For that matter, CMS's decision

not to terminate the contract for convenience on or about June 8, 2015, but to preclude the duplicate payment audit from proceeding, is consistent with its inspection and rejection rights. Those are express rights under the contract, the use of which the covenant of good faith and fair dealing cannot prohibit. *Century Exploration*, 745 F.3d at 1179.

As part of its argument concerning the 2010 duplicate payment audit, ACLR makes the curious assertion that there is "[n]o language in the Part D RAC Contract permitting the termination of an approved audit." Supp. Reply [ECF No. 73] at 6. What ACLR appears to mean by this is that ACLR's reading of the SOW does not allow termination of an approved audit. The Schedule Contract, however, plainly allows contract cancellation and termination for convenience, without any temporal limitation, and also contains a warranty that is not limited to cease applying after audit approval. SA775, 778, 855. In addition, ACLR appears to rely on its statement of fact no. 69, to support its claim, without addressing our denial of that statement. *See* CMS's Resp. to Pl. Proposed Findings of Uncontroverted Fact [ECF no. 53] at no. 69. As we stated in our denial, nothing in the SOW prevented CMS from rescinding a previously-granted approval. *Id.*

This is not the only time that ACLR engages in a one-sided discussion of the record, ignoring anything that does not fit with the story it wishes to convey. Thus, ACLR restates the assertion from its reply in support of summary judgment that "CMS's submissions to this Court contain no admissible evidence of the audit creating a significant burden on plan providers and no evidence whatsoever of the audit creating a burden on CMS." Supp. Reply [ECF No. 73] at 6. In doing so, it simply ignores our previously filed sur-reply, in which we identified exactly where the factual assertions, and evidentiary citations, showing this improper burden were located. Sur-Reply [ECF no. 61] at 7 (citing Def. Resp. to Pl. Proposed Findings of

8

Uncontroverted Fact [ECF no. 53] at nos. 59 & 68; Def. Add'l Proposed Findings of

Uncontroverted Fact ]EF no. 53] at nos. 220-21.

Finally, ACLR ignores all of CMS's prior arguments regarding its good faith.  Supp.

Reply [ECF no. 73] at 12.  Although ACLR contends that CMS "summarily dismisses ACLR's

evidence of CMS's breach of contract and breach of duty of good faith" with a single line in our

supplemental response, in fact we already extensively discussed our good faith basis for rejecting

ACLR's audits.  Def. Resp. [ECF no. 53] at 59-61; Def. Reply [ECF no. 61] at 7, 14-16.  As we

established there, CMS acted in good faith in rejecting audits that had no likelihood of success

and/or created extreme burden with an unacceptably high risk of false positives.

## II.   ACLR Ignores CMS's Express Powers To Inspect, Reject, And Terminate ACLR's Provision Of Services

Rather than confront the broad powers that ACLR conveyed to the Government as part of

its contract,[5] ACLR acknowledges the existence of the Schedule Contract, but then continues to

argue as though that contract does not exist.  Supp. Reply [ECF No. 73] at 2, 10 n.1.  ACLR did

not attach any contract to its supplemental brief [ECF no. 67], or its corrected supplemental brief

[ECF no. 69] as the Court ordered.  After we filed our supplemental response, attaching (1) the

117 page Schedule Contract as it existed when CMS issued the task order to ACLR, (2) the

signature pages from the various changes to the Schedule Contract, and (3) the 246 page

Schedule Contract as it existed at the end of the ACLR-CMS relationship, *see* Resp. [ECF No.

70] at SA761-878, SA894-1140, ACLR filed an "addendum" to its supplemental brief [ECF no.

---

[5]  Of course, these broad powers are not unusual or unique to this contractual relationship. Indeed, it was our mistaken view that the contract overlooked these traditional Government contracting principles that precipitated our reliance on the *Christian* doctrine.  With the Court's June 26 order reminding us of the complete contract vehicle at issue, reliance upon the *Christian* doctrine is no longer necessary.

71].  In its addendum, ACLR claimed a "clerical error/oversight" for its failure to attach the contract to its supplemental brief, which it claimed to correct with the 35 pages it then attached.

The documents ACLR attached to its addendum are not the Schedule Contract.  To the contrary, these 35 pages appear to be ACLR's price list, pages from its proposal and discussion thereof, and unsigned copies of Form 1449.  At best the pages ACLR attaches may supplement contract no. GS-23F-0074W (to the extent they are referenced therein), but they are not the Schedule Contract.

Nowhere in its supplemental brief does ACLR make any argument regarding the impact of the pages its now presents.  If these pages are part of the contract, however, they further weaken ACLR's claim.  For example, according to the pages ACLR has now submitted, the maximum order ACLR could receive from CMS was $1,000,000.  ECF no. 71-1 at 2.  If that is part of ACLR's contract, then its claims in this matter must be dramatically reduced from the hundreds of millions it purports to seek.  In addition, according to these documents, the minimum order guaranteed to ACLR under any contract was only $100.  *Id.*  This is even less that the $2,500 minimum in the Schedule Contract, and further diminishes ACLR's claim of a lack of consideration for a contract under which ACLR received (at least) hundreds of thousands of dollar for performing audits.  Supp. Resp. at 11 (citing SA868).

For that matter, among the documents that ACLR attaches as the contract are unsigned copies of Form 1449, which specifically incorporate by reference FAR 52.212-4.  Addendum [ECF no. 71] at 71-4 p. 1, 71-5 p.1.  As we explain in detail in our supplemental response, that provision gives CMS powers of inspection, rejection, and termination that empower its decision to stop the invalid audits.  Supp. Resp. [ECF No. 70] at 4-7.  Despite having filed the addendum after our supplemental response analyzing the impact of this FAR clause, ACLR does not

10

expressly discuss the impact of this key regulation.  Instead ACLR argues in its supplemental

brief only that there is no right to terminate, inspect, or reject under the parties' contract.  Supp.

Br. [ECF no. 69] at 3 ("It is of no surprise that ACLR's Part D RAC Contract did not set forth *or*

*reference* any of the seven FAR clauses which address the Government's right to terminate a

contract for convenience . . . ."); *see also id.* at 11-15 (arguing there are no inspection or

rejection rights under the contract).  In its supplemental reply brief, ACLR argues only that this

FAR provision is "unviable commercially."  Supp. Reply [ECF no. 73] at 9.  That is incorrect,

but in any case, irrelevant.  The clause is part of the parties' contract and its impact cannot be

dismissed with an assertion that commercial entities other than ACLR would not agree to it.

## III.    ACLR Has No Legitimate Claim That Its Litigation Conduct Immunizes It Against The Terms Of The Schedule Contract

ACLR also argues that the Court should not consider the contract now because ACLR

produced it during discovery and, having done so, is entitled to ignore the contract.  Supp. Reply

[ECF No. 73] at 2, 10 n.1.  There are numerous problems with this argument.

First, ACLR did not in fact produce the Schedule Contract.  It references a Bates number

of a ".pst file"[6] where it purportedly produced the document, but does not provide a Bates

stamped copy of such a document.  We have again reviewed ACLR's production and, as near as

we can determine, what ACLR means by its assertion is that the documents it attached to its

addendum were also attachments to one of the 546 emails that are in this .pst file.  Nowhere in

that .pst email file, or elsewhere in ACLR's production, is there a version of the actual Schedule

---

[6] ".pst" is the file extension used for an Outlook data file, which contains multiple emails and other Outlook items saved to a computer.  *See https://support.office.com/en-us/article/introduction-to-outlook-data-files-pst-and-ost-222eaf92-a995-45d9-bde2-f331f60e2790*, last visited Sept. 11, 2019.

Contract.

Second, if ACLR did produce the Schedule Contract, it should have discussed the terms in that document (indeed, it should have regardless of whether it produced the document).  But ACLR argued in its summary judgment reply that "CMS cannot point to any Part D RAC Contract provisions that justify CMS's actions."  Reply [ECF No. 58] at 6.  It also argued as though there was no contract beyond the language of the PWS and SOW.  Sur-reply [ECF No. 65] at 2.  The Schedule Contract plainly disputes both points and should have precluded the raising of these arguments.

Ultimately, however, it is not necessary that the Court determine whether ACLR in fact produced the Schedule Contract or not.  ACLR does not deny that the Schedule Contract, as attached to our supplemental response, is in fact the document that sets forth the parties' rights and obligations.  *Compare* Supp. Resp. [ECF no. 70] at 1-2 *with* Supp. Reply [ECF no. 73].  For that matter, ACLR does not deny that it had this document (in all of its manifestations) throughout its relationship with CMS.  *Compare* Supp. Resp. [ECF no. 70] at 6 *with* Supp. Reply [ECF no. 73].  ACLR also does not deny that the terms we assert are in the Schedule Contract are in fact there.  *Compare* Supp. Resp. [ECF no. 70] at 4-6 *with* Supp. Reply [ECF no. 73].  Accordingly, the Schedule Contract, with its plain language granting to CMS powers to inspect, reject, and terminate, and including ACLR's warranty, controls the parties' relationship.

## IV.   ACLR Has No Claim That Delay In Establishing A Recoupment Mechanism Was An Act Of Bad Faith

ACLR asserts a previously unannounced, and in any event invalid, claim that the lack of a recoupment mechanism during the first two years of contract performance was a violation of the covenant of good faith and fair dealing.  Supp. Reply [ECF no. 73] at 4.  First, ACLR did not make this claim in its complaint, did not identify it in discovery, and did not discuss it in any of

12

the summary judgment briefing prior to its supplemental reply.  It is plainly waived.  *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002).  Indeed, in this Contract Disputes Act matter, such a claim would not even be within the Court's jurisdiction.  *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (jurisdiction over a CDA claim requires a claim to the contracting officer and final decision on that claim).

Second, even if failure to make this claim in the complaint was not a waiver, ACLR's asserted damages are based on rejection of audits, not based on any delay in allowing audits to proceed.  Pl. Br. [ECF no. 50] at 30 ("By denying ACLR's right to proceed with the PY 2007 duplicate payment audit . . . ."), 42 ("CMS's actions precluded ACLR from recovering any PY 2007 and 2010 duplicate payments . . . ."), 54 ("CMS's unjustified denial of ACLR's sales tax NAIRP . . . .").  To succeed on a claim in breach of contract, ACLR must establish injury.  *Servidone Constr. Corp. v. United* States, 931 F.2d 860, 861 (Fed. Cir. 1991).  Because it does not assert an injury from the alleged delay, ACLR cannot establish a claim in breach of the covenant of good faith and fair dealing based on this allegation.

## V. *CGI* Does Not Support A Claim Under The Covenant Of Good Faith And Fair Dealing

In its supplemental reply, ACLR modifies its argument concerning *CGI*, to allege that *CGI* gives it a claim for violation of the covenant of good faith and fair dealing on the basis of the payment terms in the parties' contract.  Supp. Reply [ECF no. 73] at 7-10.  This is a change from (and abandonment of), ACLR's prior argument that *CGI* precludes a termination for convenience provision in a contingency contract.  Supp. Br. [ECF no. 69] at 14-15.  Just as we demonstrated with regard to the prior argument, *see* Supp. Resp. [ECF No. 70] at 24-25, ACLR's new argument grossly misreads *CGI*.

*CGI* does not involve any claim regarding the covenant of good faith and fair dealing.  To the contrary, and as we previously explained, *CGI* was a pre-award bid protest concerning a Medicare audit contract, in which plaintiff challenged proposed payment terms allowing payments for contingency fees to be withheld during the life of a challenge to the recovery.  779 F.3d at 1347-48.  *CGI* does not discuss the covenant of good faith and fair dealing and does not hold that any contract terms are a violation of that covenant.  Indeed, it could not do so:  the covenant of good faith and fair dealing does not operate to invalidate express terms of a contract. *Precision Pine*, 596 F.3d at 831.

ACLR also mis-analogizes termination for convenience to the payment terms that the *CGI* Court found inconsistent with commercial practices,[7] to argue that there cannot be constructive termination for convenience here.  Supp. Reply [ECF no. 73] at 8.  As with its other *CGI* arguments, ACLR misses the nature of *CGI* to make this claim.  779 F.3d at 1347-48. ACLR does not bring a pre-award bid protest like *CGI*.  To the contrary, it was acting under a Schedule Contract that has express termination for convenience provisions.  It does not allege that those provisions are illegal.  Accordingly, its purported challenge to the terms of the contract under *CGI* has two fundamental problems.  First, as the awardee, ACLR's "direct economic interest" was not impacted by the award of the contract, and it lacks standing to bring a protest. *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Second, if ACLR could protest the terms of the contract, it was required to do so before contract award and its protest would be untimely under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007).

---

[7] ACLR also asserts that *CGI* determined the payment terms there established "bad faith and abuse of discretion."  Supp. Reply [ECF no. 73] at 8.  The terms "bad faith," "abuse," and "discretion" do not appear in the *CGI* decision.  779 F.3d 1346.

Finally, ACLR appears to believe that a termination for convenience of the 2010 duplicate payment audit, although contractually appropriate, would have been "unviable commercially" because CMS did not allow ACLR to take further steps to try to rectify its invalid audit. *Id.* First, CMS did allow ACLR multiple attempts to repair this faulty audit. Def. Cross-Mot. [ECF no. 52] at 27-30. ACLR, however, refused to use the repair CMS proposed. *Id.* at 29-30. Second, *CGI*, nowhere even implies that it is a breach of contract to take a contractually allowed act, if that act is "unviable commercially." To the contrary, by definition, there is no breach of contract when a party acts in accordance with the express contractual terms.

Here, the contract expressly included the inspection/acceptance and termination for convenience clauses and nothing in *CGI* calls the inclusion of those clauses into question.   Indeed, as noted by the Federal Circuit, the payment clause at issue in *CGI* was not considered to be consistent with customary commercial practice as required by the FAR (at Subpart 12.301) and the Federal Acquisition Streamlining Act (FASA).  779 F.3d at 1352.  But *CGI* was not about FASA and FAR 12.301 writ large, rather the issue before the Court of Federal Claims, and in part before the Federal Circuit, concerned FAR 12.301(a)(2), as neither party asserted that the payment clause at issue in CGI complied with FAR 12.301(a)(1) – the "required [by] law" clause.  Rather, the focus in *CGI* was the alternative basis for including clauses in commercial contracts – "consistent with customary commercial practice."

FAR 12.301(a) provides:

> In accordance with [FASA], contracts for the acquisition of commercial items shall, to the maximum extent practicable, include only those clauses –
> (1) Required to implement provisions of law or executive orders applicable to the acquisition of commercial items; or
> (2) Determined to be consistent with customary commercial practice.

FAR 12.301(a).  Thus, FASA and the FAR allow two types of clauses to be included in commercial item contracts, those required by law and those determined to be consistent with customary commercial practices (recognizing that in some cases, a clause might satisfy both concerns).  Here, whether or not one co`nsiders inspection/acceptance and termination clauses to be consistent with customary commercial practice, these clauses are certainly required by law in government contracts.

In fact, the FAR specifically identifies clauses that meet the requirements of subsection (a) in the very next subsection.  FAR 12.301(b) requires certain provisions be inserted "in solicitations for the acquisition of commercial items, and clauses in solicitations and contracts for the acquisition of commercial items" including the clauses at FAR 52.212-4.  *See* FAR 12.301(b)(3).  FAR 52.212-4 contains a list of the clauses to be inserted into contracts for commercial items and includes Inspection/Acceptance (paragraph (a)); Termination for the Government's convenience (paragraph (l)); Termination for cause (paragraph (m)).  Because the inspection, acceptance, and termination clauses at issue here were expressly incorporated into the contract consistent with (and pursuant to) FASA and the FAR, any reliance upon *CGI* to argue to the contrary is completely misplaced.

## VI.  Constructive Termination For Convenience Applies Where There Was No Contemporaneously Contract Termination

ACLR's reliance on FAR 52.249-2, to assert a requirement of contemporary notice that a party may later assert a constructive termination, is unavailing.  Supp. Reply [ECF no. 73] at 10.  First, as we noted in our supplemental response, FAR 52.242-4 rather than FAR 52.249-2, is the applicable FAR provision for ACLR's contract.  Supp. Resp. [ECF no. 70] at 23 n.13.  Second, CMS does not concede that it must justify its actions as a constructive termination for convenience.  Although that doctrine could apply here, as we also demonstrated in our

16

supplemental response, CMS' actions were appropriate under the inspection/rejection provisions of the Schedule Contract. *Id.* at 7-8.  Third, we have asserted that termination for convenience here would be constructive, not express.  *Id.* at 3, 9-11.  As we previously demonstrated, constructive termination for convenience necessarily comes after the fact, without notice at the time of termination for convenience.  *Id.* at 15-16.  It is based on the principle that a party may support its actions after the fact "by any reason that could have been advanced at the time of the actions, even though the party was not then aware of it."  *Erwin v. United States*, 19 Cl. Ct. 47, 53 (1989) *cited in* Supp. Resp. [ECF no. 70] at 15.  There is no notice requirement where the termination, by law, is constructive and comes after the fact.

ACLR also restates another argument that we have disproved, without acknowledging our response, in its reliance on *Torncello* to prevent "retroactive termination for convenience." Supp. Reply [ECF no. 73] at 11.  ACLR previously raised essentially the same point, relying on *Maxima Corp. v. United States*, 847 F.2d 1549 (Fed. Cir. 1988).  Supp. Br. [ECF no. 69] at 9. As we demonstrated in response to that argument, the limitation on termination for convenience in this line of cases is that termination is not available where it renders all consideration for the contract illusory.  Supp. Resp. [ECF no. 70] at 10.  That occurs where the termination for convenience comes after contract performance is complete.  *Id.*  That is not the case here.  *Id.* at 10-13.[8]

---

[8]   ACLR also relies upon a decision of the Agriculture Board of Contract Appeals, *In re Poston Logging*, AGBCA No. 97-168-1, 99-1 B.C.A. (CCH) ¶ 30188 (Dec. 15, 1998) *cited in* Supp. Reply [ECF no. 73] at 12, for the proposition that constructive termination for convenience is not applicable here.  Although it would be enough to simply state that *Poston* is not binding on this Court, we also note that *Poston* dealt with the Government's failure to stop the contractor's performance in any way until after completion of the contract, making it align with *Maxima* and *Torncello*.  Moreover, *Poston* expressly distinguishes its conclusion from cases dealing with "curing an infirmity in an exercised cancellation," which is what the principle of constructive termination for convenience addresses.  *Poston* has no relevance here.

**VII.**   <u>**There Is No Factual Issue Precluding Summary Judgment**</u>

ACLR raises two, inapt, arguments regarding constructive termination for convenience, arguing, first, that it needs further factual development regarding this issue, and second, that constructive termination for convenience is a factual dispute that inherently cannot be resolved on summary judgment.  Supp. Reply. at 10, 13.  Neither argument has merit.

**A.**   **ACLR Cannot Avoid Summary Judgment Through A Vague Assertion Of Needing Additional Facts**

ACLR's failure to abide by the Rules of Court precludes its last-minute demand for additional discovery.  RCFC 56(d) provides the procedure under which a party may assert a need for additional facts in response to a motion for summary judgment.  Under that rule, a party must "show[] by affidavit or declaration" the "specified reasons" why it "cannot present facts essential" to its opposition to summary judgment.  To do so the party "'must set forth 'with some precision,' the evidence it hopes to obtain, how this evidence would likely disclose issues of material fact, and why it is unable to access such evidence without further discovery.'"  *Clear Creek Cmty. Servs. Dist. v. United States*, 100 Fed. Cl. 78, 82 (2011) (quoting *Brown v. Miss. Valley State Univ.,* 311 F.3d 328, 333 n. 5 (5th Cir. 2002); *Keebler Co. v. Murray Bakery Prods.,* 866 F.2d 1386 (Fed. Cir. 1989)).  Moreover, "[t]he non-moving party will not be allowed to conduct discovery that has no chance of leading to the denial of summary judgment for the movant."  *Jianglin Zhou v. United States*, 727 F. App'x 651, 654 (Fed. Cir. 2018) (non-precedential).

ACLR has done nothing more than make a vague reference to needing to discover additional facts.  It has not provided a declaration, has not explained what it hopes to find, and has not explained how those facts would help it defeat summary judgment.  In addition, the parties' dispute over whether there was a constructive termination for convenience, is over

18

whether that principle of law applies to the same facts that the parties have been arguing over throughout the summary judgment briefing.  That CMS has the express right to terminate for convenience that it could have (but did not) avail itself of at the time it rejected ACLR's proposed audits does not create any new facts to explore.

**B.      Constructive Termination For Convenience Is Not A Factual Issue That Cannot Be Resolved On Summary Judgment**

ACLR's reading of *Erwin v. United States*, 19 Cl. Ct. 47 (1989), as prohibiting summary judgment here, is not apt.  Supp. Reply [ECF no. 73] at 13.

First, ACLR asserts that *Erwin* precludes summary judgment where there may have been a constructive termination for convenience.  In fact, *Erwin* merely holds that the factual dispute between the parties there (over whether the contractor was unwilling or unable to perform) precluded summary judgment.  *Id.* at 54.  *Erwin* does not stand for the broad principle that summary judgment is inappropriate on a claim of constructive termination for convenience.  To the contrary, the Federal Circuit and its predecessor have granted summary judgment on claims of constructive termination for convenience.  *See Maxima*, 847 F.2d at 1551; *Kalvar,* 543 F.2d at 1301; *see also Advanced Materials, Inc. v. United States*, 34 Fed. Cl. 480, 481 (1995).

Second, ACLR misreads the specific details of *Erwin* as establishing the broad principle that there can only be a constructive termination for convenience where the facts show the contractor was "unwilling to perform the requirements of the contract."  Supp. Reply [ECF no. 73] at 13.  The specific dispute in *Erwin* was over whether the contractor was "unwilling or unable to perform," 19 Cl. Ct. at 54, but that is not a general statement of the requirements of the doctrine.  To the contrary, as *Erwin* itself says, and we previously demonstrated, constructive termination for convenience is available to justify an action "by any reason that could have been advanced at the time of the actions, even though the party was not then aware of it."  19 Cl. Ct. at

19

53 *cited in* Supp. Resp. [ECF no. 70] at 15. The only limitations on this doctrine are that the termination not be in bad faith or an abuse of discretion.  *Maxima*, 847 F.2d at 1553 *cited in* Supp. Resp. [ECF no. 70] at 15.

Third, even if *Erwin* had announced this new principle, it would not be precedential here. *Erwin* is a decision of the United States Claims Court, which this Court is not bound to follow. Because the details of *Erwin* are not in line with those of this case and the analysis in that matter does not lead to the conclusions ACLR would have, here it is not even persuasive authority in this case.

## <u>CONCLUSION</u>

For the foregoing reasons and those set forth more fully in our response to plaintiff's motion for summary judgment and cross-motion for summary judgment, and the succeeding briefs, defendant respectfully requests that the Court deny plaintiff's motion for summary judgment, grant defendant's cross-motion, and enter summary judgment in defendant's favor on all counts of the complaints in Nos. 15-767C and 16-309C.

Respectfully submitted,

JOSEPHY H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

<u>s/ Martin F. Hockey, Jr.</u>
MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL:

LUCY MAC GABHANN
Attorney
Department of Health and Human Services
Office of the General Counsel
General Law Division
Procurement, Fiscal and Information Law
Branch
7500 Security Boulevard
Baltimore, MD  21244-1850

s/ Adam E. Lyons
ADAM E. LYONS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC  20044
Tel:  (202) 353-2345
Fax: (202) 307-0972
adam.e.lyons@usdoj.gov

Attorneys for Defendant