

*38705 Seven Mile Rd.*
*Suite 251*
*Livonia, Michigan 48152*
*Ph: 734.744.4400   Fax: 734.744.4150*

May 15, 2020

Nicole Hoey
Department of Health & Human Services
Centers for Medicare and Medicaid
7500 Security Blvd; M/S C2-21-15
Baltimore, MD 21244-1850

Re:  *ACLR, LLC v. United States*, Nos. 15-767C and 16-309C (Fed. Cl.)
    Termination for Convenience Settlement Proposal - Remand Order

Contracting Officer Hoey:

In compliance with the ruling issued in *ACLR, LLC v. United States*, Nos. 15-767C and 16-309C (Fed. Cl.), I have prepared and submitted the following settlement proposal regarding the termination for convenience of the PY07 Duplicate Payment Audit and PY10 Duplicate Payment Audit as well as applicable settlement fees.

I have segregated our settlement proposal into three categories; PY07 Duplicate Payment Costs; PY10 Duplicate Payment Estimated Costs, and Settlement Fees.  As outlined and explained in greater detail below, the proposed settlement amounts are based on actual costs incurred and estimated hours worked by ACLR personnel and applied to ACLR's GSA Schedule hourly rates.

To support actual costs incurred, I have supplied a copy of our check register, contracts, and/or relevant payment statements.  Additional invoices, check copies, or other documentation demonstrating the accuracy of these costs are available upon request.  ACLR's tax accountant has also reviewed these records to ensure the amounts listed are consistent with amounts originally reported; his contact information has been provided below:

  Allan Katsock, CPA
  TaxFunction Consulting, LLC
  1000 Germantown Pike, B7
  Plymouth Meeting, PA 19462
  Phone (267) 295-3325
  Fax (267) 295-3337

I certify that this settlement proposal is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief.

Please let me know if you require additional information.

Very truly yours,

Christopher A. Mucke
Managing Principal

### SETTLEMENT PROPOSAL[1]

**PY07 DUPLICATE PAYMENT AUDIT COSTS:**

***Audit Contract Price & Percentage of Completion Calculation:***

As articulated under the PWS, ACLR was solely responsible for designing the audit process and establishing audit teams to review findings, submitting improper payment determinations to Plan Sponsors, and collecting overpayments.  To meet our contractual requirements; ACLR leased a 6,102 square foot office space, hired 8 personnel, installed IT infrastructure, completed both internal and CMS required training requirements, including related system and personnel certifications.  These actions culminated in the submission of the PY07 Duplicate Payment Audit.  As identified in the Complaint and subsequent legal filings, Director Cynthia Moreno testified that concurrent with CMS's execution of ACLR's contract, CMS hired another contractor to implement the Part D RAC program, develop a new statement of work.  Director Moreno also testified that CMS would not permit ACLR to conduct recovery audits until the SOW was developed and did not provide notification to ACLR.  During the November 2011 communications with our Contracting Officer Desiree Wheeler and Director Tanette Downs, both ACLR and Ms. Wheeler were first made aware of the separate actions of the program office to design the Part D RAC process and associated SOW with a separate contractor resulting in ACLR's inability to execute the PY07 Duplicate Payment Audit.  As ACLR was contractually obligated to fulfill the PWS requirements, ACLR was unable to mitigate any costs associated with the PWS contractual design and was not relieved of these requirements until PWS deviation was authorized in Modification 3 dated February 1, 2012.  ACLR considers that 100 percent of ACLR's costs during the period of January 13, 2011 and January 31, 2012 as reasonable charges resulting from the termination of the PY07 Duplicate Payment Audit as this was the only audit conducted during this period.

***Cost Reimbursement Calculation:***

---

[1] *The total net payment amount has been summarized in Exhibit A.*

There are six costs components underlying the cost reimbursement calculation, summarized in Exhibit B include: Payroll & General & Administrative Costs; Rental Costs, Loan Interest, Reasonable Profit; Managing Principal Costs; and Treasury Rate Interest.

- *Payroll & General & Administrative Costs:* These costs consist of amounts incurred from contract inception through January 31, 2012[2], when the third modification, which outlined PWS deviations for removal of key personnel and new audit processes for the excluded provider special study was executed. It was at this time when ACLR had terminated personnel no longer needed to execute the PWS and transitioned all other personnel to limited work efforts. A reproduction of ACLR's check register has been provided to support ACLR contentions. Invoices supporting these amounts were produced during the course of the proceedings and can also be provided upon request. Total Payroll & General & Administrative costs were $989,876. Exhibit B-1.
- *Managing Principal Costs:* As Managing Principal, I am not an employee of the company and do not receive a wage. To determine costs associated with my efforts on the contract, I estimated the number of hours worked and multiplied it by my contracted GSA Schedule Rate[3]. I estimated the total number of hours worked by me during the base period at 2,800 and during January 2012 at 240. Managing Principal costs total $654,064. Exhibit B-2.
- *Loan Interest:* ACLR obtained a business loan to cover costs expended to execute the contract in the initial base period. Loan interest, pertaining to this loan, were paid through September 2018 when the loan amount was satisfied. Statements demonstrating interest payments by year have been provided in our submission. Loan interest for all periods totaled $178,477. Exhibit B-3.
- *Office Lease:* These costs consist of amounts expended for its expansion into a new office. As outlined in its original proposal to CMS, ACLR anticipated hiring an additional 16 people to execute the contract. As shown in the attached lease, ACLR entered into a multiyear lease, which included some initial construction costs of and varying lease payments commencing in April 2011 and ending 65 months later. ACLR was able to mitigate these payments by subletting the space on the provision that ACLR remain in the building; the lease was terminated in October 2016[4]. All documents pertaining to this lease have been provided in our submission. Rental Costs for the expansion office totaled $258,987. Exhibit B-4.
- *Reasonable Profit:* Reasonable profit was calculated at a rate of 15% and applied to total costs less Managing Principal costs, which includes profit in the GSA Schedule Rate. Reasonable Profit totaled $214,101. Exhibit B-5.
- *Treasury Rate Interest:* These costs consist of Contract Dispute Act interest calculated at the interest rate set by the Secretary of the Treasury commencing at the date of termination. Interest for subsequent periods were determined by summing the total annual costs, dividing by twelve calculating the interest accordingly for subsequent monthly payment outlays thereafter; all other amounts were calculated as incurred. An

---

[2] *Two charges occurring on February 21, 2012 for lodging and transportation were for travel to CMS offices during January 2011.*
[3] *ACLR GSA Rate Schedules for the periods shown herein are provided in Exhibit E.*
[4] *Prior to its expansion, ACLR's previous monthly lease payments averaged $690.*

estimate of these amounts was calculated through September 2020 and totaled $477,320; the spreadsheets used to calculate this estimate has been included for your review.  Exhibit B-6.

On a cost reimbursement basis, the net payment amount for the PY07 Duplicate Payment Audit total $2,772,826.

**PY10 DUPLICATE PAYMENT AUDIT COSTS:**

***ACLR PY10 Duplicate Payment Audit Efforts:***

In December 2011, CMS provided ACLR with an updated SOW that included the CMS protocol for identifying improper duplicate payments.  Throughout 2012, CMS requested that ACLR test various duplicate payment audit methodologies against Part D payment data.  ACLR also participated in discussions with CMS personnel regarding the outcome and viability of these tests.  In 2013, ACLR was tasked with conducting a special study of the CMS protocol.  The results of these tests culminated in the Duplicate Payment NAIRP submitted to CMS on January 2, 2014.  CMS approved this NAIRP in 2014 and ACLR conducted the audit.  At CMS request, ACLR also performed numerous submissions and resubmissions of data and tested and retested duplicate payment submissions using varying formulae and audit methodologies to address plan sponsor concerns.  ACLR also participated in numerous discussions with CMS and other stakeholders and identified an alternative methodology to cure CMS PY10 Duplicate Payment audit methodology concerns.  Additionally, ACLR submitted IPRPs for DVC review in December 2014.  In 2015, ACLR tested new CMS protocols, reviewed late plan sponsor submissions, discussed audit mitigation strategies with CMS personnel, terminated audit activities and completed and submitted the Duplicate Payment Audit Report to CMS.

***GSA Schedule Hourly Rate Calculation:***

Historically, ACLR employees and the Managing Principal follow industry standards of 50 hour and 60 hour work weeks, respectively.  ACLR; however, does not track or otherwise document hours by audit.  To determine its estimate of hours worked on the PY10 Duplicate Payment Audit, ACLR reviewed email communications; monthly meeting agendas, summaries, and reports; files and documents generated during duplicate payment audit methodology testing; and NAIRP submissions.  ACLR also reviewed files and worksheets pertaining to CMS testing and retesting requests and concomitant Data Validation Contractor submissions and meetings.  Finally, ACLR reviewed documents submitted by plan sponsors and the Improper Payment Review Package submissions generated and ACLR efforts to cure audit methodology deficiencies.  In total, ACLR has compiled a file of over 1,958 email communications and 161,877 documents and is available upon request.  ACLR personnel hours associated with the PY10 Duplicate Payment Audit totaled 4,376 hours.  Revenues associated with the application of the ACLR's contracted GSA Schedule rates totaled $923,449.  Applying Treasury Rate interest of $139,932 yields a net payment amount of $1,063,380 for the PY10 Duplicate Payment Audit. Exhibit C, C-1, C-2.

**SETTLEMENT FEES:**

Settlement fees are broken into two components; Phase One and Phase Two.  Exhibit D.

*Phase One:*

These costs pertain to ACLR administrative and legal expenses related to the filing and subsequent defense of the claim related to the PY07 and PY10 Duplicate Payment Audits. While the FAR does not articulate a retroactive application of a Termination for Convenience, ACLR considers the costs associated with achieving the order as reasonable and necessary for the conduct of the business as this cost would not have occurred if the government had ordered the Termination of Convenience at the time of occurrence rather than being retroactively applied.   ACLR legal fees totaled $619,936 [Exhibit D-1].  ACLR administrative expenses were determined by estimating hours pertaining to these legal efforts by reviewing email communications, legal filings, and time spent reviewing evidence submitted by the government.  In total, ACLR personnel ACLR spent 1,096 hours completing these work efforts; the application of contracted GSA Schedule Rates to these hours totaled $1,200,133.  [Exhibit D-2].   Applying Treasury Rate interest of $112,554 yields a net payment amount of $1,819,660 for Phase 1 Settlement Fees.

*Phase Two:*

These costs pertain to settlement expenses from the date of the court order to submission of this settlement proposal include ACLR administrative expenses of $55,867 [Exhibit D-4]; estimated legal fees of $19,300; and Accountant Fees of $2,500 for a current net payment amount of $78,297 for Phase II Settlement Fees.  As the total of these expenses are unknown until settlement, ACLR will provide updates upon request.

The net payment amount for settlement fees total $2,087,548.

# EXHIBIT A

# SETTLEMENT PROPOSAL

# NET PAYMENT AMOUNT SUMMARY

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

Net Payment Amounts
Exhibit A

Net Payment Amount Summary
1 of 1

### PY07 Duplicate Payment Net Payment Amount

| Year | G&A & Payroll | Managing Principal | Loan Interest | Office Lease | Total Expenses | Reasonable Profit | Expenses & Profit | Treasury Rate Interest | Net Payment Amount |
|------|------|------|------|------|------|------|------|------|------|
| 2011 | 913,983 | 602,371 | 9,961 | 62,380 | 1,588,694 | 147,948 | 1,736,642 | 390,640 | 2,127,283 |
| 2012 | 75,893 | 51,694 | 28,842 | 79,709 | 236,139 | 27,667 | 263,806 | 50,620 | 314,425 |
| 2013 | 0 | 0 | 28,343 | 52,343 | 80,686 | 12,103 | 92,789 | 11,935 | 104,724 |
| 2014 | 0 | 0 | 27,816 | 18,730 | 46,546 | 6,982 | 53,528 | 10,488 | 64,016 |
| 2015 | 0 | 0 | 22,898 | 26,365 | 49,263 | 7,389 | 56,652 | 7,090 | 63,742 |
| 2016 | 0 | 0 | 21,012 | 19,460 | 40,473 | 6,071 | 46,543 | 2,845 | 49,389 |
| 2017 | 0 | 0 | 19,654 | 0 | 19,654 | 2,948 | 22,602 | 2,098 | 24,700 |
| 2018 | 0 | 0 | 19,950 | 0 | 19,950 | 2,993 | 22,943 | 1,605 | 24,548 |
| Totals | 989,876 | 654,064 | 178,477 | 258,987 | 2,081,404 | 214,101 | 2,295,505 | 477,320 | 2,772,826 |

### PY10 Duplicate Payment Settlement Costs

| Year | Total Hours | GSA Rates | Treasury Rate Interest | Totals |
|------|------|------|------|------|
| 2012 | 235 | 42,308 | 6,411 | 48,718 |
| 2013 | 1,005 | 207,560 | 31,452 | 239,012 |
| 2014 | 2,431 | 510,192 | 77,310 | 587,503 |
| 2015 | 705 | 163,388 | 24,759 | 188,147 |
| Totals | 4,376 | 923,449 | 139,932 | 1,063,380 |

### Settlement Fees Net Payment Amount

| Year | Phase I Costs | | | Phase II Costs | | | | Total Costs | Treasury Rate Interest | Net Payment Amount |
|------|------|------|------|------|------|------|------|------|------|------|
| | Attorney Fees | ACLR Personnel | Total Phase I | Attorney Fees | Accountant Fees | ACLR Fees | Total Phase II | | | |
| 2015 | 23,874 | 89,763 | 113,638 | | | | 0 | 113,638 | 3,582 | 117,219 |
| 2016 | 48,187 | 256,924 | 305,111 | | | | 0 | 305,111 | 5,638 | 310,748 |
| 2017 | 281,283 | 408,973 | 690,256 | | | | 0 | 690,256 | 59,187 | 749,443 |
| 2018 | 179,581 | 379,526 | 559,107 | | | | 0 | 559,107 | 39,622 | 598,729 |
| 2019 | 85,971 | 64,948 | 150,919 | | | | 0 | 150,919 | 4,526 | 155,445 |
| 2020 | 630 | 0 | 630 | 19,300 | 2,500 | 55,867 | 77,667 | 78,297 | 0 | 155,964 |
| Totals | 619,526 | 1,200,133 | 1,819,660 | 19,300 | 2,500 | 55,867 | 77,667 | 1,897,327 | 112,554 | 2,087,548 |

### Total Net Payment Amounts

| Year | PY07 Duplicate Payment Audit | PY10 Duplicate Payment Audit | Settlement Fees | Totals |
|------|------|------|------|------|
| 2011 | 2,127,283 | | | 2,127,283 |
| 2012 | 314,425 | 48,718 | | 363,144 |
| 2013 | 104,724 | 239,012 | | 343,736 |
| 2014 | 64,016 | 587,503 | | 651,519 |
| 2015 | 63,742 | 188,147 | 117,219 | 369,108 |
| 2016 | 49,389 | | 310,748 | 360,137 |
| 2017 | 24,700 | | 749,443 | 774,143 |
| 2018 | 24,548 | | 598,729 | 623,277 |
| 2019 | | | 155,445 | 155,445 |
| 2020 | | | 155,964 | 155,964 |
| Totals | 2,772,826 | 1,063,380 | 2,087,548 | 5,923,754 |

# EXHIBIT B

# PY07 DUPLICATE PAYMENT AUDIT

# NET PAYMENT AMOUNT SUMMARY

**ACLR, LLC Civil Action**　　　　　　　　　　**PY07 Duplicate Payment Audit**　　　　　　　　　　**Summary**
**No. 15-767 16-309**　　　　　　　　　　　　　　　**Net Payment Amount**　　　　　　　　　　　　　**1 of 1**
**Settlement Proposal**　　　　　　　　　　　　　　**Exhibit B**

| PY07 Duplicate Payment Net Payment Amount | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | G&A & Payroll | Managing Principal | Loan Interest | Office Lease | Total Expenses | Reasonable Profit | Expenses & Profit | Treasury Rate Interest | Net Payment Amount |
| 2011 | 913,983 | 602,371 | 9,961 | 62,380 | 1,588,694 | 147,948 | 1,736,642 | 390,640 | 2,127,283 |
| 2012 | 75,893 | 51,694 | 28,842 | 79,709 | 236,139 | 27,667 | 263,806 | 50,620 | 314,425 |
| 2013 | 0 | 0 | 28,343 | 52,343 | 80,686 | 12,103 | 92,789 | 11,935 | 104,724 |
| 2014 | 0 | 0 | 27,816 | 18,730 | 46,546 | 6,982 | 53,528 | 10,488 | 64,016 |
| 2015 | 0 | 0 | 22,898 | 26,365 | 49,263 | 7,389 | 56,652 | 7,090 | 63,742 |
| 2016 | 0 | 0 | 21,012 | 19,460 | 40,473 | 6,071 | 46,543 | 2,845 | 49,389 |
| 2017 | 0 | 0 | 19,654 | 0 | 19,654 | 2,948 | 22,602 | 2,098 | 24,700 |
| 2018 | 0 | 0 | 19,950 | 0 | 19,950 | 2,993 | 22,943 | 1,605 | 24,548 |
| Totals | 989,876 | 654,064 | 178,477 | 258,987 | 2,081,404 | 214,101 | 2,295,505 | 477,320 | 2,772,826 |

# EXHIBIT B-1

# PAYROLL AND

# GENERAL & ADMINISTRATIVE COSTS

# NET PAYMENT AMOUNT

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
1 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,319 | Check | 01/03/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 129.00 |
| 3,323 | Check | 01/24/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.22 |
| 3,304 | Check | 01/28/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 126.00 |
| 3,297 | Check | 01/31/11 | EFT | ADP | 401(k) Matching Expense | Payroll Expense | 0.00 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 236.72 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 24.76 |
| 3,297 | Check | 01/31/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 38.25 |
| 3,297 | Check | 01/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 244.35 |
| 3,299 | Check | 01/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 60.15 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Wages | Payroll Expense | 50.00 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Wages | Payroll Expense | 833.33 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Wages | Payroll Expense | 1,961.28 |
| 3,297 | Check | 01/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 474.83 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 174.47 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 214.95 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 4.02 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Information Technology | G&A Professional Fees | 2,170.00 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 269.61 |
| 3,305 | Credit Card Charge | 01/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 441.66 |
| 3,296 | Check | 02/01/11 | 1602 | Dell Financial Services | Equipment | G&A Office Expense | 334.42 |
| 3,376 | Check | 02/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,375 | Check | 02/02/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 271.61 |
| 3,378 | Check | 02/09/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,314 | Check | 02/11/11 | 1604 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 704.03 |
| 3,316 | Check | 02/14/11 | 1605 | Dell Financial Services | Equipment | G&A Office Expense | 167.21 |
| 3,329 | Check | 02/15/11 | EFT | ADP | 401(k) Matching Expense | Payroll Expense | 0.00 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,003.91 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 104.98 |
| 3,329 | Check | 02/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 255.15 |
| 3,329 | Check | 02/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 833.35 |
| 3,331 | Check | 02/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 61.95 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,329 | Check | 02/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,334 | Check | 02/16/11 | 1607 | CCH | Subscriptions | G&A Subscriptions | 78.39 |
| 3,335 | Check | 02/16/11 | 1608 | CCH | Subscriptions | G&A Subscriptions | 27.51 |
| 3,327 | Check | 02/17/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 8.37 |
| 3,381 | Check | 02/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.22 |
| 3,338 | Check | 02/24/11 | 1611 | Dixon, Bruce | Transportation | G&A Travel Expense | 20.00 |
| 3,340 | General Journal | 02/28/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,340 | General Journal | 02/28/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,340 | General Journal | 02/28/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,341 | Check | 02/28/11 | EFT | ADP | 401(k) Matching Expense | Payroll Expense | 0.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,004.48 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 0.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 74.81 |
| 3,341 | Check | 02/28/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 1,519.05 |
| 3,343 | Check | 02/28/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 61.95 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,341 | Check | 02/28/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 106.95 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 29.95 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 329.90 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 13.74 |
| 3,313 | General Journal | 02/28/11 | J/E | Miscellaneous | Recruiting Expenses | G&A Office Expense | 4,246.27 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Information Technology | G&A Professional Fees | 1,085.00 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 10.91 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 269.61 |
| 3,306 | Credit Card Charge | 02/28/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 441.66 |
| 3,285 | General Journal | 03/01/11 | 50 | | Computer Equipment | G&A Office Expense | 15,015.00 |
| 3,285 | General Journal | 03/01/11 | 50 | | Computer Equipment | G&A Office Expense | 34,985.00 |
| 3,346 | Check | 03/01/11 | | Miscellaneous | Office Supplies | G&A Office Expense | 200.00 |
| 3,396 | Check | 03/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,397 | Check | 03/03/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 267.23 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
2 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,350 | Check | 03/08/11 | 1615 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 737.30 |
| 3,351 | Check | 03/08/11 | 1616 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 1,085.00 |
| 3,351 | Check | 03/08/11 | 1616 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 25,130.00 |
| 3,351 | Check | 03/08/11 | 1616 | Millennium Solutions, Inc | Internet Expense | G&A Utilities | 249.90 |
| 3,398 | Check | 03/09/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,004.19 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 14.14 |
| 3,365 | Check | 03/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 417.14 |
| 3,367 | Check | 03/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 61.95 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,365 | Check | 03/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,362 | Check | 03/16/11 | 1641 | Void | Office Expense | G&A Office Expense | 0.00 |
| 3,363 | Check | 03/16/11 | 1642 | Miscellaneous | Office Supplies | G&A Office Expense | 234.00 |
| 3,364 | Check | 03/18/11 | 1643 | Dell Financial Services | Equipment | G&A Office Expense | 6.33 |
| 3,372 | Check | 03/22/11 | 1644 | Miscellaneous | Recruiting Expenses | G&A Office Expense | 5,000.00 |
| 3,400 | Check | 03/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.36 |
| 3,388 | General Journal | 03/31/11 | 43 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,388 | General Journal | 03/31/11 | 43 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,388 | General Journal | 03/31/11 | 43 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,388 | General Journal | 03/31/11 | 43 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,389 | General Journal | 03/31/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,389 | General Journal | 03/31/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,389 | General Journal | 03/31/11 | 44 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,402 | Check | 03/31/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 397.75 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,123.72 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 26.64 |
| 3,390 | Check | 03/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 407.48 |
| 3,393 | Check | 03/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 116.70 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 1,562.58 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,390 | Check | 03/31/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | License Fees | G&A License Fees | 50.00 |
| 3,370 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 26.03 |
| 3,371 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 1,073.38 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 181.67 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 123.68 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 79.95 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 850.84 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 25.94 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 574.95 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 69.39 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Information Technology | G&A Professional Fees | 1,085.00 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Subscriptions | G&A Subscriptions | 3,960.00 |
| 3,371 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 186.36 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 366.12 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 1,849.60 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 617.16 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 42.65 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 291.46 |
| 3,373 | Credit Card Charge | 03/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 442.30 |
| 3,387 | Check | 04/01/11 | EFT | ADP - 401(k) Payment | Payroll Administration Expense | Payroll Expense | 176.87 |
| 3,441 | Check | 04/04/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,405 | Check | 04/05/11 | 1650 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 25,480.00 |
| 3,408 | Check | 04/06/11 | 1651 | Dixon, Bruce | Transportation | G&A Travel Expense | 10.00 |
| 3,409 | Check | 04/06/11 | 1652 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 659.36 |
| 3,415 | Check | 04/08/11 | 1619 | WorkedSquared | Furniture & Fixtures | G&A Office Expense | 40,000.00 |
| 3,417 | Check | 04/11/11 | 1653 | CCH | Subscriptions | G&A Subscriptions | 173.79 |
| 3,443 | Check | 04/13/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,425 | Check | 04/15/11 | 1654 | Barnes, Jason D | Transportation | G&A Travel Expense | 15.00 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,144.22 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 19.04 |
| 3,418 | Check | 04/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 325.98 |
| 3,421 | Check | 04/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 74.25 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
3 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,418 | Check | 04/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,431 | Check | 04/20/11 | 1623 | WorkedSquared | Furniture & Fixtures | G&A Office Expense | 10,000.00 |
| 3,445 | Check | 04/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.28 |
| 3,438 | Check | 04/27/11 | 1660 | Dixon, Bruce | Transportation | G&A Travel Expense | 10.00 |
| 3,439 | Check | 04/29/11 | EFT | ADP - 401(k) Payment | Payroll Administration Expense | Payroll Expense | 176.87 |
| 3,450 | General Journal | 04/30/11 | 46 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,450 | General Journal | 04/30/11 | 46 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,450 | General Journal | 04/30/11 | 46 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,450 | General Journal | 04/30/11 | 46 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,451 | General Journal | 04/30/11 | 47 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,451 | General Journal | 04/30/11 | 47 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,451 | General Journal | 04/30/11 | 47 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,158.54 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 20.17 |
| 3,446 | Check | 04/30/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 257.83 |
| 3,448 | Check | 04/30/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 65.55 |
| 3,446 | Check | 04/30/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 5.06 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 187.50 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,446 | Check | 04/30/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,411 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 208.92 |
| 3,411 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 100.00 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 87.33 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 180.00 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 402.01 |
| 3,427 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 54.87 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 126.30 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Storage Unit | G&A Rental Expense | 119.59 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Training Expenses | G&A Training Expenses | 3,380.58 |
| 3,411 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 625.26 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 523.95 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 2,519.60 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 91.32 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 20.00 |
| 3,411 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 99.95 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 324.42 |
| 3,423 | Credit Card Charge | 04/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 442.30 |
| 3,507 | Check | 05/03/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,506 | Check | 05/03/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 346.95 |
| 3,454 | Check | 05/05/11 | 1663 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 687.51 |
| 3,455 | Check | 05/05/11 | 1664 | Miscellaneous | Office Supplies | G&A Office Expense | 110.00 |
| 3,509 | Check | 05/11/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,462 | Check | 05/12/11 | 1668 | Bright House | Internet Expense | G&A Utilities | 262.68 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,160.42 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 12.17 |
| 3,465 | Check | 05/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 257.83 |
| 3,468 | Check | 05/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 63.75 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,465 | Check | 05/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,470 | Check | 05/16/11 | 1670 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 16,350.00 |
| 3,470 | Check | 05/16/11 | 1670 | Millennium Solutions, Inc | Flight | G&A Travel Expense | 806.80 |
| 3,474 | Check | 05/19/11 | 1702 | Miscellaneous | Office Supplies | G&A Office Expense | 446.25 |
| 3,475 | Check | 05/20/11 | 1703 | Miscellaneous | Property | G&A Insurance | 50.00 |
| 3,478 | Check | 05/20/11 | 1706 | State Farm | Workers Compensation | G&A Insurance | 726.00 |
| 3,479 | Check | 05/20/11 | 1707 | State Farm | Liability & E/O | G&A Insurance | 2,297.00 |
| 3,511 | Check | 05/23/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.28 |
| 3,485 | Check | 05/25/11 | 1710 | Dell Financial Services | Equipment | G&A Office Expense | 160.88 |
| 3,486 | Check | 05/25/11 | 1711 | Millennium Solutions, Inc | Office Supplies | G&A Office Expense | 719.99 |
| 3,486 | Check | 05/25/11 | 1711 | Millennium Solutions, Inc | Office Supplies | G&A Office Expense | 37.84 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
4 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,486 | Check | 05/25/11 | 1711 | Millennium Solutions, Inc | Internet Expense | G&A Utilities | 64.95 |
| 3,493 | General Journal | 05/31/11 | 48 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,493 | General Journal | 05/31/11 | 48 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,493 | General Journal | 05/31/11 | 48 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,493 | General Journal | 05/31/11 | 48 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,494 | General Journal | 05/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,494 | General Journal | 05/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,494 | General Journal | 05/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,494 | General Journal | 05/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,494 | General Journal | 05/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,171.87 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 3.20 |
| 3,489 | Check | 05/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 158.84 |
| 3,492 | Check | 05/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 65.55 |
| 3,489 | Check | 05/31/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 4.05 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 150.00 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,489 | Check | 05/31/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,464 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 744.20 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 420.10 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 10.59 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Equipment | G&A Office Expense | 340.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 73.66 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 6.33 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Computer Equipment | G&A Office Expense | 1,800.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Computer Equipment | G&A Office Expense | 40.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Furniture & Fixtures | G&A Office Expense | 850.00 |
| 3,487 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Furniture & Fixtures | G&A Office Expense | 6,360.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Storage Unit | G&A Rental Expense | 89.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 890.00 |
| 3,464 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 271.64 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 384.57 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 1,849.62 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 1,445.32 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 30.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 314.79 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 140.00 |
| 3,484 | Credit Card Charge | 05/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 442.30 |
| 3,497 | Check | 06/01/11 | 1713 | State Farm | Property | G&A Insurance | 602.00 |
| 3,498 | Check | 06/01/11 | 1714 | Bright House | Internet Expense | G&A Utilities | 262.68 |
| 3,597 | Check | 06/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,596 | Check | 06/02/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 1,463.14 |
| 3,499 | Check | 06/03/11 | 1715 | Millennium Solutions, Inc | Office Supplies | G&A Office Expense | 1,060.00 |
| 3,500 | Check | 06/03/11 | 1716 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 668.30 |
| 3,598 | Check | 06/03/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 189.67 |
| 3,522 | Check | 06/15/11 | 1719 | Miscellaneous | Furniture & Fixtures | G&A Office Expense | 6,260.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,160.43 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 2.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,521 | Check | 06/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 64.15 |
| 3,600 | Check | 06/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 0.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,518 | Check | 06/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,728 | General Journal | 06/17/11 | J/E | WorkedSquared | Furniture & Fixtures | G&A Office Expense | 14,745.08 |
| 3,603 | Check | 06/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.28 |
| 3,534 | Check | 06/28/11 | 1724 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 24,936.61 |
| 3,534 | Check | 06/28/11 | 1724 | Millennium Solutions, Inc | Furniture & Fixtures | G&A Office Expense | 5,254.62 |
| 3,538 | Deposit | 06/28/11 | | State Farm | Liability & E/O | G&A Insurance | -252.00 |
| 3,539 | General Journal | 06/30/11 | 52 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,539 | General Journal | 06/30/11 | 52 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,539 | General Journal | 06/30/11 | 52 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
5 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,539 | General Journal | 06/30/11 | 52 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,539 | General Journal | 06/30/11 | 52 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,565 | General Journal | 06/30/11 | 53 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,565 | General Journal | 06/30/11 | 53 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,565 | General Journal | 06/30/11 | 53 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,565 | General Journal | 06/30/11 | 53 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,160.41 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 2.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,543 | Check | 06/30/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 69.38 |
| 3,540 | Check | 06/30/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 0.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,540 | Check | 06/30/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,504 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 511.37 |
| 3,532 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 1,304.72 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 1,120.07 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 7.67 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 139.87 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 137.98 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -400.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 33.79 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 5,188.15 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 982.95 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 558.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 318.07 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 181.72 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 59.34 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 137.60 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -1,154.11 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | -7.04 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -19.08 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Equipment | G&A Office Expense | 20.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Furniture & Fixtures | G&A Office Expense | 250.00 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Storage Unit | G&A Rental Expense | 89.00 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 890.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 890.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Storage Unit | G&A Rental Expense | 89.00 |
| 3,504 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 904.06 |
| 3,532 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 4,910.20 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 1,403.42 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 572.64 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 5,444.60 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 1,703.44 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 109.17 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 13.75 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 142.55 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 406.04 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 220.49 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 50.00 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 3,594.96 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 21.70 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 20.00 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 314.60 |
| 3,563 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 1,016.76 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 654.45 |
| 3,564 | Credit Card Charge | 06/30/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 420.00 |
| 3,610 | Check | 07/01/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 361.08 |
| 3,611 | Check | 07/01/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,604 | Check | 07/05/11 | 1727 | Dell Financial Services | Equipment | G&A Office Expense | 167.21 |
| 3,612 | Check | 07/05/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,548 | Check | 07/08/11 | 1729 | Millennium Solutions, Inc | Office Supplies | G&A Office Expense | 142.43 |
| 3,548 | Check | 07/08/11 | 1729 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 11,530.00 |
| 3,605 | Check | 07/13/11 | 1730 | Miscellaneous | Membership Dues | G&A Office Expense | 10.00 |
| 3,608 | Check | 07/13/11 | 1761 | State of Michigan | Office Supplies | G&A Office Expense | 10.00 |
| 3,609 | Check | 07/13/11 | 1762 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 662.80 |
| 3,614 | Check | 07/13/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 6.00 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
6 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,553 | Check | 07/15/11 | EFT | ADP | Office Supplies | G&A Office Expense | 20.31 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Flight | G&A Travel Expense | 50.00 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Transportation | G&A Travel Expense | 29.00 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Meal & Entertainment - 50% | G&A Travel Expense | 63.23 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,169.03 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 2.18 |
| 3,553 | Check | 07/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,555 | Check | 07/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 81.68 |
| 3,553 | Check | 07/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 3.04 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 112.50 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,553 | Check | 07/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,556 | Check | 07/19/11 | 1763 | Bright House | Internet Expense | G&A Utilities | 416.83 |
| 3,617 | Check | 07/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.12 |
| 3,560 | Check | 07/25/11 | 1765 | Miscellaneous | Office Supplies | G&A Office Expense | 895.00 |
| 3,567 | Check | 07/25/11 | 1767 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,568 | Check | 07/26/11 | 1768 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 30,790.00 |
| 3,571 | Check | 07/27/11 | 1771 | SMC Investors, LLC | Office Supplies | G&A Office Expense | 79.23 |
| 3,619 | Check | 07/29/11 | EFT | | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,733 | General Journal | 07/30/11 | J/E | | Computer Equipment | G&A Office Expense | 4,970.04 |
| 3,573 | General Journal | 07/31/11 | 54 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,573 | General Journal | 07/31/11 | 54 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,573 | General Journal | 07/31/11 | 54 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,573 | General Journal | 07/31/11 | 54 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,573 | General Journal | 07/31/11 | 54 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,574 | General Journal | 07/31/11 | 55 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,574 | General Journal | 07/31/11 | 55 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,574 | General Journal | 07/31/11 | 55 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,574 | General Journal | 07/31/11 | 55 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,160.40 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 1.50 |
| 3,575 | Check | 07/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,578 | Check | 07/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 69.38 |
| 3,575 | Check | 07/31/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 0.00 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,575 | Check | 07/31/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,550 | Credit Card Charge | 07/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 165.28 |
| 3,624 | Check | 08/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,625 | Check | 08/02/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 372.78 |
| 3,579 | Check | 08/03/11 | 1773 | Tyco | Office Supplies | G&A Office Expense | 2,073.13 |
| 3,588 | Check | 08/05/11 | 1775 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 668.69 |
| 3,584 | Check | 08/08/11 | 1776 | Miscellaneous | Office Supplies | G&A Office Expense | 355.74 |
| 3,621 | Check | 08/10/11 | EFT | | Payroll Administration Expense | Payroll Expense | 6.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Office Supplies | G&A Office Expense | 113.57 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,364.42 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 17.50 |
| 3,589 | Check | 08/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 93.82 |
| 3,589 | Check | 08/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,592 | Check | 08/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 72.98 |
| 3,589 | Check | 08/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,589 | Check | 08/15/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,629 | Check | 08/16/11 | 1778 | Bright House | Internet Expense | G&A Utilities | 207.31 |
| 3,632 | Check | 08/17/11 | 1779 | Dell Financial Services | Equipment | G&A Office Expense | 211.94 |
| 3,636 | Check | 08/22/11 | 1783 | Tyco | Office Supplies | G&A Office Expense | 63.50 |
| 3,647 | Check | 08/23/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.16 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
7 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,638 | Check | 08/29/11 | 1785 | State Farm | Liability & E/O | G&A Insurance | 50.00 |
| 3,639 | General Journal | 08/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,639 | General Journal | 08/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,639 | General Journal | 08/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,639 | General Journal | 08/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,639 | General Journal | 08/31/11 | 49 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 300.00 |
| 3,640 | General Journal | 08/31/11 | 50 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,640 | General Journal | 08/31/11 | 50 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,640 | General Journal | 08/31/11 | 50 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,640 | General Journal | 08/31/11 | 50 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 116.17 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Flight | G&A Travel Expense | 50.00 |
| 3,649 | Check | 08/31/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 367.06 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,364.40 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 17.50 |
| 3,641 | Check | 08/31/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 93.82 |
| 3,641 | Check | 08/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,644 | Check | 08/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 72.98 |
| 3,641 | Check | 08/31/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 3,750.00 |
| 3,641 | Check | 08/31/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Equipment | G&A Office Expense | 2,012.94 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 272.75 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 25.02 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 925.00 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 1,218.23 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 56.14 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 127.18 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -130.33 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -21.19 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -41.33 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | -1.25 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -158.99 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -6.22 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -137.60 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | -350.00 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -8.47 |
| 3,626 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 556.34 |
| 3,626 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 50.72 |
| 3,630 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 680.84 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Computer Equipment | G&A Office Expense | 2,798.00 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Computer Equipment | G&A Office Expense | 20.00 |
| 3,626 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Furniture & Fixtures | G&A Office Expense | 614.80 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 4,585.00 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 727.63 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | -150.00 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 510.28 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 1,644.28 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 242.12 |
| 3,583 | Credit Card Charge | 08/31/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 280.00 |
| 3,693 | Check | 09/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 223.00 |
| 3,694 | Check | 09/02/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,650 | Check | 09/06/11 | 1786 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 7,240.00 |
| 3,658 | Check | 09/07/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 12.00 |
| 3,656 | Check | 09/12/11 | 1788 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 690.25 |
| 3,657 | Check | 09/12/11 | 1789 | Miscellaneous | Computer Equipment | G&A Office Expense | 9,858.00 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,077.54 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 17.50 |
| 3,666 | Check | 09/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 93.82 |
| 3,666 | Check | 09/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,669 | Check | 09/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 71.18 |
| 3,666 | Check | 09/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 18 of 134

ACLR, LLC Civil Action                    PY07 Duplicate Payment Audit          Payroll General Administrative Costs
No. 15-767 16-309                         Net Payment Amount                    8 of 12
Settlement Proposal                       Exhibit B-1

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,666 | Check | 09/15/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,662 | Check | 09/16/11 | 1790 | Bright House | Internet Expense | G&A Utilities | 218.86 |
| 3,670 | Deposit | 09/21/11 | | MI Chamber of Commerce | Medical Insurance | G&A Insurance | -393.38 |
| 3,671 | Deposit | 09/21/11 | | State Farm | Workers Compensation | G&A Insurance | -491.00 |
| 3,672 | Deposit | 09/21/11 | | State Farm | Workers Compensation | G&A Insurance | -491.00 |
| 3,695 | Check | 09/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.16 |
| 3,679 | Check | 09/26/11 | 1792 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 2,006.25 |
| 3,682 | Check | 09/26/11 | 1795 | Tyco | Office Supplies | G&A Office Expense | 63.50 |
| 3,683 | Check | 09/26/11 | 1796 | Bright House | Telephone Expenses | G&A Utilities | 538.22 |
| 3,684 | Check | 09/26/11 | 1797 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,698 | Check | 09/29/11 | EFT | PNC Bank | Office Supplies | Payroll Expense | 23.71 |
| 3,686 | General Journal | 09/30/11 | 53 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,686 | General Journal | 09/30/11 | 53 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,686 | General Journal | 09/30/11 | 53 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,686 | General Journal | 09/30/11 | 53 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,687 | General Journal | 09/30/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,687 | General Journal | 09/30/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,687 | General Journal | 09/30/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Office Supplies | Payroll Expense | 11.89 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,077.53 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 7.50 |
| 3,688 | Check | 09/30/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 86.60 |
| 3,688 | Check | 09/30/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,691 | Check | 09/30/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 71.18 |
| 3,697 | Check | 09/30/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,688 | Check | 09/30/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,688 | Check | 09/30/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,664 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 274.54 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 1,572.04 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | -36.03 |
| 3,678 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 116.75 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 1,520.00 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Training Expenses | G&A Training Expenses | 298.00 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 727.63 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 510.28 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 1,644.28 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 526.00 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 40.00 |
| 3,678 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 5.00 |
| 3,665 | Credit Card Charge | 09/30/11 | J/E | Miscellaneous | Telephone Expenses | G&A Utilities | 242.99 |
| 3,699 | Check | 10/03/11 | 1799 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 1,439.15 |
| 3,752 | Check | 10/03/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,751 | Check | 10/03/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 359.67 |
| 3,702 | Check | 10/05/11 | 1801 | Tyco | Furniture & Fixtures | G&A Office Expense | 455.00 |
| 3,703 | Check | 10/05/11 | 1802 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 4,750.00 |
| 3,703 | Check | 10/05/11 | 1802 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 5,500.00 |
| 3,716 | Check | 10/05/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 12.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,077.55 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 4.50 |
| 3,712 | Check | 10/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,715 | Check | 10/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 81.68 |
| 3,712 | Check | 10/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,712 | Check | 10/15/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,717 | Check | 10/17/11 | 1803 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 666.80 |
| 3,718 | Check | 10/17/11 | 1804 | SMC Investors, LLC | Electricity | G&A Utilities | 3,785.66 |
| 3,724 | Check | 10/18/11 | 1805 | C & J Electrical Services | Furniture & Fixtures | G&A Office Expense | 3,410.00 |

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,725 | Check | 10/19/11 | 1806 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 1,540.22 |
| 3,726 | Check | 10/19/11 | 1807 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 4,119.00 |
| 3,734 | Check | 10/21/11 | 1808 | Bright House | Telephone Expenses | G&A Utilities | 567.10 |
| 3,736 | Check | 10/21/11 | 1810 | Tyco | Office Supplies | G&A Office Expense | 63.50 |
| 3,737 | Check | 10/21/11 | 1811 | Bright House | Internet Expense | G&A Utilities | 222.01 |
| 3,739 | Check | 10/24/11 | 1813 | Miscellaneous | Office Supplies | G&A Office Expense | 77.77 |
| 3,740 | Check | 10/24/11 | 1814 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,756 | Check | 10/24/11 | EFT | Bright House | Internet Expense | G&A Utilities | 138.16 |
| 3,742 | Check | 10/28/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,746 | General Journal | 10/31/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 3,746 | General Journal | 10/31/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 3,746 | General Journal | 10/31/11 | 54 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,787 | General Journal | 10/31/11 | 55 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 166.66 |
| 3,787 | General Journal | 10/31/11 | 55 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 350.00 |
| 3,787 | General Journal | 10/31/11 | 55 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 150.00 |
| 3,787 | General Journal | 10/31/11 | 55 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 283.34 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,077.52 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 4.50 |
| 3,727 | Check | 10/31/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,727 | Check | 10/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,749 | Check | 10/31/11 | EFT | ADP | Payroll Unemployment Expense | Payroll Expense | 71.18 |
| 3,727 | Check | 10/31/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 13.50 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 500.00 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,727 | Check | 10/31/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 81.56 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 954.40 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 46.49 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | -6.54 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 54.09 |
| 3,720 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 450.00 |
| 3,720 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 432.34 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 2,410.00 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 76.05 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 227.06 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 588.72 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | -14.36 |
| 3,720 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 238.86 |
| 3,720 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 794.80 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Telephone Expense | G&A Utilities | 88.11 |
| 3,704 | Credit Card Charge | 10/31/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 140.00 |
| 3,810 | Check | 11/02/11 | ACH | Verizon Wireless | Telephone Expenses | G&A Utilities | 369.00 |
| 3,811 | Check | 11/02/11 | ach debit | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,764 | Check | 11/02/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 12.00 |
| 3,760 | Check | 11/04/11 | 1818 | SMC Investors, LLC | Office Supplies | G&A Office Expense | 625.00 |
| 3,763 | Check | 11/07/11 | 1820 | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | 661.96 |
| 3,765 | Check | 11/14/11 | 1821 | SMC Investors, LLC | Electricity | G&A Utilities | 1,144.85 |
| 3,766 | Check | 11/14/11 | 1822 | Millennium Solutions, Inc | Information Technology | G&A Professional Fees | 7,645.00 |
| 3,774 | Check | 11/15/11 | 1825 | Bright House | Internet Expense | G&A Utilities | 195.68 |
| 3,779 | Check | 11/15/11 | 1826 | State of Michigan | License Fees | G&A License Fees | 300.00 |
| 3,776 | Check | 11/15/11 | EFT | ADP - 401(k) Payment | 401(k) Matching Expense | Payroll Expense | 475.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,039.29 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 1.50 |
| 3,775 | Check | 11/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,778 | Check | 11/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 69.38 |
| 3,775 | Check | 11/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 0.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,775 | Check | 11/15/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,814 | Check | 11/22/11 | ach debit | Bright House | Internet Expense | G&A Utilities | 138.18 |
| 3,781 | Check | 11/28/11 | 1827 | Bright House | Telephone Expenses | G&A Utilities | 556.45 |
| 3,783 | Check | 11/28/11 | 1829 | Tyco | Office Supplies | G&A Office Expense | 63.50 |

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,784 | Check | 11/28/11 | 1830 | AT&T | Office Expense | G&A Office Expense | 2,453.94 |
| 3,785 | Check | 11/28/11 | 1831 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,790 | General Journal | 11/30/11 | 56 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 98.60 |
| 3,790 | General Journal | 11/30/11 | 56 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 173.60 |
| 3,790 | General Journal | 11/30/11 | 56 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 434.02 |
| 3,795 | Check | 11/30/11 | EFT | ADP - 401(k) Payment | 401(k) Matching Expense | Payroll Expense | 475.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,039.29 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 1.50 |
| 3,789 | Check | 11/30/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,792 | Check | 11/30/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 69.38 |
| 3,789 | Check | 11/30/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 0.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,789 | Check | 11/30/11 | EFT | ADP | Wages | Payroll Expense | 2,166.67 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 17.25 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 688.50 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 5.25 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 87.61 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | -2.59 |
| 3,773 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 415.72 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 2,410.00 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 365.53 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 50.00 |
| 3,773 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 362.82 |
| 3,773 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 754.80 |
| 3,858 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 1,027.92 |
| 3,762 | Credit Card Charge | 11/30/11 | J/E | Miscellaneous | Internet Expense | G&A Utilities | 140.00 |
| 3,837 | Check | 12/01/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 363.69 |
| 3,797 | Check | 12/02/11 | 1735 | Fisher, Daryl | Wages | Payroll Expense | 225.00 |
| 3,801 | Check | 12/02/11 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 25.00 |
| 3,796 | Check | 12/02/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,798 | Check | 12/08/11 | 1834 | MSI | Internet Expense | G&A Utilities | 780.00 |
| 3,841 | Check | 12/14/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 12.00 |
| 3,807 | Check | 12/15/11 | 1836 | SMC Investors, LLC | Electricity | G&A Utilities | 1,131.31 |
| 3,809 | Check | 12/15/11 | 1838 | Zoho Corporation | Information Technology | G&A Professional Fees | 5,157.00 |
| 3,816 | Check | 12/15/11 | 1839 | Fisher, Daryl | Wages | Payroll Expense | 550.00 |
| 3,805 | Check | 12/15/11 | EFT | ADP - 401(k) Payment | 401(k) Matching Expense | Payroll Expense | 670.40 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 1,300.79 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 2.40 |
| 3,803 | Check | 12/15/11 | EFT | ADP | GA Unemployment Tax Exp | Payroll Expense | 0.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,806 | Check | 12/15/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 71.18 |
| 3,803 | Check | 12/15/11 | EFT | ADP | TX Unemployment Taxes Exp | Payroll Expense | 4.05 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 2,083.33 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 1,875.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 0.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 400.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 1,450.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 635.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 2,400.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 150.00 |
| 3,803 | Check | 12/15/11 | EFT | ADP | Wages | Payroll Expense | 550.00 |
| 3,817 | Check | 12/19/11 | 1840 | Clark Hill | Legal Fees | G&A Professional Fees | 15,399.00 |
| 3,844 | Deposit | 12/19/11 | | Westchester Square, LLC | Plymouth Office | G&A Rental Expense | -1,155.00 |
| 3,842 | Check | 12/22/11 | EFT | Bright House | Internet Expense | G&A Utilities | 139.55 |
| 3,823 | Check | 12/27/11 | 1842 | Tyco | Office Supplies | G&A Office Expense | 63.50 |
| 3,824 | Check | 12/27/11 | 1843 | Bright House | Internet Expense | G&A Utilities | 763.78 |
| 3,826 | Check | 12/27/11 | 1845 | AT&T | Office Expense | G&A Office Expense | 1,413.73 |
| 3,836 | Check | 12/30/11 | | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,845 | General Journal | 12/31/11 | 57 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 99.33 |
| 3,845 | General Journal | 12/31/11 | 57 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 408.00 |
| 3,845 | General Journal | 12/31/11 | 57 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 154.95 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
11 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,845 | General Journal | 12/31/11 | 57 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 379.34 |
| 3,845 | General Journal | 12/31/11 | 57 | Accrual Entry - 401(k) Matching | 401(k) Matching Expense | Payroll Expense | 764.78 |
| 4,345 | General Journal | 12/31/11 | 62 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 262.50 |
| 4,345 | General Journal | 12/31/11 | 62 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 112.50 |
| 4,345 | General Journal | 12/31/11 | 62 | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 212.50 |
| 3,899 | Check | 12/31/11 | EFT | Verizon Wireless | Telephone Expenses | G&A Utilities | 367.24 |
| 3,830 | Check | 12/31/11 | EFT | ADP | 401(k) Matching Expense | Payroll Expense | -939.40 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 611.82 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 1.50 |
| 3,830 | Check | 12/31/11 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 27.63 |
| 3,833 | Check | 12/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 65.38 |
| 3,880 | Check | 12/31/11 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 348.73 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Wages | Payroll Expense | 1,363.64 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,830 | Check | 12/31/11 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,965 | General Journal | 12/31/11 | J/E | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 3,491.32 |
| 3,965 | General Journal | 12/31/11 | J/E | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 1,396.46 |
| 3,965 | General Journal | 12/31/11 | J/E | Medical Insurance Accruals | Medical Insurance | G&A Insurance | 793.15 |
| 3,853 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | License Fees | G&A License Fees | 25.00 |
| 3,853 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 59.45 |
| 3,853 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 37.13 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 11.98 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 11.76 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | -0.59 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 476.37 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Postage & Handling | G&A Office Expense | 8.12 |
| 3,869 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 616.02 |
| 3,869 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Equipment | G&A Office Expense | 9,029.60 |
| 3,870 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Membership Dues | G&A Office Expense | 135.00 |
| 3,870 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Information Technology | G&A Professional Fees | 420.76 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Colo Center | G&A Rental Expense | 2,410.00 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 73.59 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 24.51 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Transportation | G&A Travel Expense | 40.00 |
| 3,860 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Lodging | G&A Travel Expense | 515.86 |
| 3,869 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Flight | G&A Travel Expense | 833.80 |
| 3,869 | Credit Card Charge | 12/31/11 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel Expense | 197.77 |
| 3,967 | General Journal | 12/31/11 | J/E | Accrual Entry - Miscellaneous | Payroll Administration Expense | Payroll Expense | 1,310.62 |
| 3,900 | Check | 01/03/12 | EFT | NPC Merchant | Subscriptions | G&A Subscriptions | 124.00 |
| 3,827 | Check | 01/10/12 | 1846 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,852 | Check | 01/10/12 | 1854 | Millennium Solutions, Inc | Furniture & Fixtures | G&A Office Expense | 1,070.00 |
| 3,852 | Check | 01/10/12 | 1854 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 3,208.50 |
| 3,887 | Check | 01/11/12 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 12.00 |
| 3,861 | Check | 01/13/12 | 1855 | Fisher, Daryl | Wages | Payroll Expense | 450.00 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 615.38 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 48.27 |
| 3,854 | Check | 01/13/12 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 1,026.73 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Wages | Payroll Expense | 1,125.00 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,854 | Check | 01/13/12 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,857 | Check | 01/15/12 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 65.38 |
| 3,828 | Check | 01/16/12 | 1847 | Fisher, Daryl | Wages | Payroll Expense | 275.00 |
| 3,862 | Check | 01/17/12 | 1856 | Miscellaneous | Postage & Handling | G&A Office Expense | 73.15 |
| 3,865 | Check | 01/17/12 | 1859 | SMC Investors, LLC | Electricity | G&A Utilities | 1,164.08 |
| 3,866 | Check | 01/17/12 | 1860 | AT&T | Internet Expense | G&A Utilities | 1,413.73 |
| 3,829 | Check | 01/18/12 | 1848 | CT Corporation | Legal Fees | G&A Professional Services | 249.00 |
| 3,847 | Check | 01/18/12 | 1850 | Katsock Mohollen & Co. PLLC | Accounting Fees | G&A Professional Services | 925.00 |
| 3,850 | Check | 01/18/12 | 1852 | Millennium Solutions, Inc | Information Technology | G&A Professional Services | 10,615.00 |
| 3,851 | Check | 01/18/12 | 1853 | MBNA | Membership Dues | G&A Office Expense | 125.00 |
| 3,864 | Check | 01/18/12 | 1858 | Millennium Solutions, Inc | Computer Equipment | G&A Office Expense | 3,761.05 |
| 3,864 | Check | 01/18/12 | 1858 | Millennium Solutions, Inc | Information Technology | G&A Professional Services | 10,030.00 |
| 3,905 | Check | 01/18/12 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 99.50 |
| 3,907 | Check | 01/23/12 | EFT | Bright House | Internet Expense | G&A Utilities | 149.00 |
| 3,874 | Check | 01/24/12 | 1862 | Bright House | Internet Expense | G&A Utilities | 764.06 |
| 3,875 | Check | 01/24/12 | 1863 | Dell Financial Services | Equipment | G&A Office Expense | 52.94 |
| 3,876 | Check | 01/24/12 | 1864 | Tyco | Office Supplies | G&A Office Expense | 63.50 |
| 3,886 | Check | 01/27/12 | 1867 | Fisher, Daryl | Wages | Payroll Expense | 450.00 |
| 3,877 | Check | 01/27/12 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 179.67 |
| 3,889 | Check | 01/31/12 | 1868 | Millennium Solutions, Inc | Information Technology | G&A Professional Services | 14,321.28 |

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-1

Payroll General Administrative Costs
12 of 12

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|--------:|------|------|-----|------|---------|-------------|-------:|
| 3,882 | Check | 01/31/12 | EFT | ADP | Fed Soc Sec - Med Exp | Payroll Expense | 664.32 |
| 3,882 | Check | 01/31/12 | EFT | ADP | Fed Unemployment Tax Exp | Payroll Expense | 45.45 |
| 3,882 | Check | 01/31/12 | EFT | ADP | MI Unemployment Tax Exp | Payroll Expense | 1,026.73 |
| 3,885 | Check | 01/31/12 | EFT | ADP | Payroll Administration Expense | Payroll Expense | 65.38 |
| 3,882 | Check | 01/31/12 | EFT | ADP | Wages | Payroll Expense | 4,375.00 |
| 3,882 | Check | 01/31/12 | EFT | ADP | Wages | Payroll Expense | 1,125.00 |
| 3,882 | Check | 01/31/12 | EFT | ADP | Wages | Payroll Expense | 3,541.67 |
| 3,882 | Check | 01/31/12 | EFT | ADP | Wages | Payroll Expense | 250.00 |
| 3,872 | Credit Card Charge | 01/31/12 | J/E | Miscellaneous | Office Supplies | G&A Office Expense | 693.60 |
| 3,872 | Credit Card Charge | 01/31/12 | J/E | Miscellaneous | Equipment | G&A Office Expense | -55.65 |
| 3,872 | Credit Card Charge | 01/31/12 | J/E | Miscellaneous | Colo Center | G&A Rentals | 2,410.00 |
| 3,872 | Credit Card Charge | 01/31/12 | J/E | Miscellaneous | Car | G&A Travel | 50.00 |
| 3,872 | Credit Card Charge | 01/31/12 | J/E | Miscellaneous | Meal & Entertainment - 50% | G&A Travel | 160.93 |
| 3,915 | Credit Card Charge | 02/21/12 | J/E | Miscellaneous | Lodging | G&A Travel | 427.34 |
| 3,915 | Credit Card Charge | 02/21/12 | J/E | Miscellaneous | Transportation | G&A Travel | 437.76 |
| Totals | | | | | | | 989,875.97 |

# EXHIBIT B-2

# MANAGING PRINICPAL COSTS

# NET PAYMENT AMOUNT

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY07 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit B-2**

**Managing Prinicpal Costs**
**1 of 1**

| Managing Prinicpal Hours | | | | | |
|---|---|---|---|---|---|
| Last Name | First Name | 01/15/11 - 06/16/11 | 06/17/11 - 11/30/11 | Dec 2011 | Jan 2012 |
| Mucke | Christopher | 1,320 | 1,320 | 180 | 240 |

| Managing Principal GSA Schedule Rates | | | | | |
|---|---|---|---|---|---|
| Last Name | First Name | 01/01/11 - 06/16/11 | 06/17/11 - 11/30/11 | Dec 2011 | Jan 2012 |
| Mucke | Christopher | 211.58 | 215.39 | 215.39 | 215.39 |

| Managing Principal Costs | | | | | | |
|---|---|---|---|---|---|---|
| Last Name | First Name | 01/01/11 - 06/16/11 | 06/17/11 - 11/30/11 | Dec 2011 | Jan 2012 | Totals |
| Mucke | Christopher | 279,286 | 284,315 | 38,770 | 51,694 | 654,064 |

# EXHIBIT B-3

# LOAN INTEREST

# NET PAYMENT AMOUNT

PNC BANK, N.A.
P O BOX 340777                    001 462 1
PITTSBURGH  PA  15230-7777

⊳ PNC

# Commercial Loan Statement

ACLR, LLC Civil Action            PY07 Duplicate Payment Audit                    Page I of I
No. 15-767 & 16-309               Net Payment Amount
Settlement Proposal               Exhibit B-3                   Page 1 of 8

Direct any questions regarding your
statement to the above address.

| | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
| | 010 | 605061988 | 34207144 | 9,960.72 |

ACLR, LLC
38705 7 MILE ROAD SUITE 460
LIVONIA  MI  48152

| | Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|---|
| | 06/10/13 | 12/30/11 | 01/10/12 | 2,442.93 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 2,210.55 | 2,210.55- | 2,442.93 | 2,442.93 | 0.00 |
| Previous Principal Due | Principal Debits and Credits | Current Principal Due | Total Principal Due | Total Late Charges Due |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/11 | Balance Forward | 4.750000 | | | 597,254.25 | | 2,210.55 |
| 12/10/11 | Ach Int Paymt | 4.750000 | | | 597,254.25 | | 2,210.55- |
| 12/25/11 | Int. Accrual | 4.750000 | | | 597,254.25 | 15 | 1,182.06 |
| 01/01/12 | Int. Accrual | 4.750000 | | | 597,254.25 | 7 | 551.64 |
| 01/10/12 | Int. Accrual | 4.750000 | | | 597,254.25 | 9 | 709.23 |

## PNC Bank Commercial Loan Statement

010-605061988-34207144

| Interest Due | Principal Due | Due Date |
|---|---|---|
| 2,442.93 | 0.00 | 01/10/12 |
| Fees Due | Late Charges Due | Total Amount Due |
| 0.00 | 0.00 | 2,442.93 |

Do not remit payment. Your Account
4252485081        , Transit ABA 041000124
is automatically charged on Due Date.

Amount Charged
2,442.93

PNC BANK, N.A.
P O BOX 340777
PITTSBURGH  PA  15230-7777          001 137 1

**PNC**

## Commercial Loan Statement

| ACLR, LLC Civil Action | PY07 Duplicate Payment Audit | Page 1 of 1 |
|---|---|---|
| No. 15-767 & 16-309 | Net Payment Amount | |
| Settlement Proposal | Exhibit B-3          Page 2 of 8 | |

Direct any questions regarding your
statement to the above address.

| | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
| | 010 | 605061988 | 34207144 | 28,842.40 |

ACLR, LLC
38705 7 MILE ROAD SUITE 460
LIVONIA  MI  48152

| Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|
| 06/10/13 | 12/28/12 | 01/10/13 | 2,442.94 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 2,364.13 | 2,364.13- | 2,442.94 | 2,442.94 | 0.00 |
| Previous Principal Due | Principal Debits and Credits | Current Principal Due | Total Principal Due | Total Late Charges Due |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/12 | Balance Forward | 4.750000 | | | 597,254.25 | | 2,364.13 |
| 12/10/12 | Ach Int Paymt | 4.750000 | | | 597,254.25 | | 2,364.13- |
| 12/25/12 | Int. Accrual | 4.750000 | | | 597,254.25 | 15 | 1,182.07 |
| 01/01/13 | Int. Accrual | 4.750000 | | | 597,254.25 | 7 | 551.63 |
| 01/10/13 | Int. Accrual | 4.750000 | | | 597,254.25 | 9 | 709.24 |

## PNC Bank Commercial Loan Statement

010-605061988-34207144

| Interest Due | Principal Due | Due Date |
|---|---|---|
| 2,442.94 | 0.00 | 01/10/13 |

| Fees Due | Late Charges Due | Total Amount Due |
|---|---|---|
| 0.00 | 0.00 | 2,442.94 |

Do not remit payment. Your Account
4252485081      , Transit ABA 041000124
is automatically charged on Due Date.

Amount Charged
2,442.94

PNC BANK, N.A.
P O BOX 340777                      000 416 1
PITTSBURGH   PA   15230-7777

◢ PNC

## Commercial Loan Statement

ACLR, LLC Civil Action            PY07 Duplicate Payment Audit            Page 1 of 1
No. 15-767 & 16-309                 Net Payment Amount        Page 3 of 8
Settlement Proposal                    Exhibit B-3

Direct any questions regarding your
statement to the above address.

| | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
| | 010 | 605061988 | 34207144 | 28,343.31 |

ACLR, LLC
38705 7 MILE ROAD SUITE 460
LIVONIA  MI  48152

| | Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|---|
| | 05/10/23 | 12/30/13 | 01/10/14 | 7,277.55 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 2,245.92 | 2,245.92- | 2,300.43 | 2,300.43 | 0.00 |
| **Previous Principal Due** | **Principal Debits and Credits** | **Current Principal Due** | **Total Principal Due** | **Total Late Charges Due** |
| 4,977.12 | 4,977.12- | 4,977.12 | 4,977.12 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/13 | Balance Forward | 4.750000 | | | 567,391.53 | | 2,245.92 |
| 12/10/13 | Ach Int Paymt | 4.750000 | | | 567,391.53 | | 2,245.92- |
| 12/10/13 | Ach Prin Paymt | 4.750000 | | 4,977.12- | 562,414.41 | | |
| 12/25/13 | Int. Accrual | 4.750000 | | | 562,414.41 | 15 | 1,113.11 |
| 01/10/14 | Int. Accrual | 4.750000 | | | 562,414.41 | 16 | 1,187.32 |

## PNC Bank Commercial Loan Statement

| Interest Due | Principal Due | Due Date |
|---|---|---|
| 2,300.43 | 4,977.12 | 01/10/14 |

010-605061988-34207144

| Fees Due | Late Charges Due | Total Amount Due |
|---|---|---|
| 0.00 | 0.00 | 7,277.55 |

Do not remit payment.  Your Account
4252485081        , Transit ABA 041000124
is automatically charged on Due Date.

Amount Charged
7,277.55

*recorded*

AB1004 09/17

PNC BANK, N.A.
P O BOX 340777
PITTSBURGH  PA  15230-7777

000 381 1

**PNC**

## Commercial Loan Statement

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-3

Page 4 of 8

Page 1 of 1

Direct any questions regarding your
statement to the above address.

|  | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
|  | 010 | 605061988 | 34207144 | 25,765.75 |

ACLR, LLC
38705 SEVEN MILE ROAD
SUITE 251
LIVONIA  MI  48152

|  | Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|---|
|  | 05/10/23 | 12/30/14 | 01/10/15 | 7,033.26 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 2,009.51 | 2,009.51- | 2,056.14 | 2,056.14 | 0.00 |
| Previous Principal Due | Principal Debits and Credits | Current Principal Due | Total Principal Due | Total Late Charges Due |
| 4,977.12 | 4,977.12- | 4,977.12 | 4,977.12 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/14 | Balance Forward | 4.750000 |  |  | 507,666.09 |  | 2,009.51 |
| 12/10/14 | Ach Int Paymt | 4.750000 |  |  | 507,666.09 |  | 2,009.51- |
| 12/10/14 | Ach Prin Paymt | 4.750000 |  | 4,977.12- | 502,688.97 |  |  |
| 12/25/14 | Int. Accrual | 4.750000 |  |  | 502,688.97 | 15 | 994.90 |
| 01/10/15 | Int. Accrual | 4.750000 |  |  | 502,688.97 | 16 | 1,061.24 |

FORM736-0111

### PNC Bank Commercial Loan Statement

010-605061988-34207144

| Interest Due | Principal Due | Due Date |
|---|---|---|
| 2,056.14 | 4,977.12 | 01/10/15 |

| Fees Due | Late Charges Due | Total Amount Due |
|---|---|---|
| 0.00 | 0.00 | 7,033.26 |

Do not remit payment. Your Account
4252485081        , Transit ABA 041000124
is automatically charged on Due Date.

Amount Charged
7,033.26

AR8500M-DN12

PNC BANK, N.A.
P O BOX 340777
PITTSBURGH  PA  15230-7777

000 362 1

**PNC**
Commercial Loan Statement

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-3

Page 5 of 8

Page 1 of 1

Direct any questions regarding your
statement to the above address.

| | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
| | 010 | 605061988 | 34207144 | 22,897.92 |

ACLR, LLC
38705 SEVEN MILE ROAD
SUITE 251
LIVONIA  MI  48152

| | Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|---|
| | 05/10/23 | 12/30/15 | 01/10/16 | 6,867.39 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 1,781.63 | 1,781.63- | 1,890.27 | 1,890.27 | 0.00 |
| Previous Principal Due | Principal Debits and Credits | Current Principal Due | Total Principal Due | Total Late Charges Due |
| 4,977.12 | 4,977.12- | 4,977.12 | 4,977.12 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/15 | Balance Forward | 4.750000 | | | 447,940.65 | | 1,781.63 |
| 12/17/15 | Int. Accrual | 4.750000 | | | 447,940.65 | 7 | 413.72 |
| 12/17/15 | Principal Paymt | 4.750000 | | 4,977.12- | 442,963.53 | | |
| 12/17/15 | Interest Paymt | 4.750000 | | | 442,963.53 | | 1,781.63- |
| 12/17/15 | Rate Change | | | | 442,963.53 | | |
| 12/25/15 | Int. Accrual | 5.000000 | | | 442,963.53 | 8 | 492.18 |
| 01/01/16 | Int. Accrual | 5.000000 | | | 442,963.53 | 7 | 430.66 |
| 01/10/16 | Int. Accrual | 5.000000 | | | 442,963.53 | 9 | 553.70 |

---

Please return this portion with payment.  Make check payable to "PNC Bank".

## PNC Bank Commercial Loan Statement

ACLR, LLC

| | Interest Due | Principal Due | Due Date |
|---|---|---|---|
| | 1,890.27 | 4,977.12 | 01/10/16 |

| | Fees Due | Late Charges Due | Total Amount Due |
|---|---|---|---|
| | 0.00 | 0.00 | 6,867.39 |

PNC BANK, N.A.
COMMERCIAL LOAN OPERATIONS
P O BOX 747046
PITTSBURGH  PA  15274-7046

| | Portfolio | Obligation | Obligor |
|---|---|---|---|
| | 010 | 605061988 | 34207144 |

Amount Paid

20100010060506198834207144000000686739 4

PNC BANK, N.A.
P O BOX 340777          001 026 1
PITTSBURGH PA 15230-7777

**◆PNC**

# Commercial Loan Statement

ACLR, LLC Civil Action          PY07 Duplicate Payment Audit          Page 1 of 1
No. 15-767 & 16-309          Net Payment Amount          Page 6 of 8
Settlement Proposal          Exhibit B-3

Direct any questions regarding your
statement to the above address.

|  | Portfolio | Obligation | Obligor | Interest Paid Year to Date |
|---|---|---|---|---|
|  | 010 | 605061988 | 34207144 | 21,012.05 |

ACLR, LLC
38705 SEVEN MILE ROAD
SUITE 251
LIVONIA MI 48152

|  | Maturity Date | Billed Date | Due Date | Total Amount Due |
|---|---|---|---|---|
|  | 05/10/23 | 12/30/16 | 01/10/17 | 6,677.98 |

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous Interest Due | Interest Debits and Credits | Current Interest Due | Total Interest Due | Total Fees Due |
|---|---|---|---|---|
| 1,601.29 | 1,601.29- | 1,700.86 | 1,700.86 | 0.00 |
| Previous Principal Due | Principal Debits and Credits | Current Principal Due | Total Principal Due | Total Late Charges Due |
| 4,977.12 | 4,977.12- | 4,977.12 | 4,977.12 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 12/10/16 | Balance Forward | 5.000000 |  |  | 385,374.29 |  | 1,601.29 |
| 12/05/16 | Interest Paymt | 5.000000 |  |  | 385,374.29 |  | 1,601.29- |
| 12/05/16 | Principal Paymt | 5.000000 |  | 4,977.12- | 380,397.17 |  |  |
| 12/05/16 | Prin Curtail | 5.000000 |  | 421.59- | 379,975.58 |  |  |
| 12/10/16 | Adjustment |  |  |  | 379,975.58 |  | 3.75- |
| 12/15/16 | Int. Accrual | 5.000000 |  |  | 379,975.58 | 5 | 263.87 |
| 12/15/16 | Rate Change |  |  |  | 379,975.58 |  |  |
| 12/25/16 | Int. Accrual | 5.250000 |  |  | 379,975.58 | 10 | 554.13 |
| 01/01/17 | Int. Accrual | 5.250000 |  |  | 379,975.58 | 7 | 387.90 |
| 01/10/17 | Int. Accrual | 5.250000 |  |  | 379,975.58 | 9 | 498.71 |

Please return this portion with payment. Make check payable to "PNC Bank".

## PNC Bank Commercial Loan Statement

ACLR, LLC

| Interest Due | Principal Due | Due Date |
|---|---|---|
| 1,700.86 | 4,977.12 | 01/10/17 |

PNC BANK, N.A.
COMMERCIAL LOAN OPERATIONS
P O BOX 747046
PITTSBURGH PA 15274-7046

| Fees Due | Late Charges Due | Total Amount Due |
|---|---|---|
| 0.00 | 0.00 | 6,677.98 |
| Portfolio | Obligation | Obligor |
| 010 | 605061988 | 34207144 |

Amount Paid

[ ]

AB5061 08/12

201000100605061988342071440000006677983

P O BOX 340777
PITTSBURGH  PA  15230-7777

000 302 1

## ⬢ PNC
### Commercial Loan Statement

|  |  | Page 1 of 1 |
|---|---|---|
| ACLR, LLC Civil Action<br>No. 15-767 & 16-309<br>Settlement Proposal | PY07 Duplicate Payment Audit<br>Net Payment Amount<br>Exhibit B-3 | Page 7 of 8 |

Direct any questions regarding your
statement to the above address.

|  | Portfolio<br>010 | Obligation<br>605061988 | Obligor<br>34207144 | Interest Paid<br>Year to Date<br>18,117.18 |
|---|---|---|---|---|

ACLR, LLC
43000 W 9 MILE RD STE 108
NOVI  MI  48375-4175

| Maturity<br>Date<br>05/10/23 | Billed<br>Date<br>11/29/17 | Due<br>Date<br>12/10/17 | Total Amount Due<br>6,513.97 |
|---|---|---|---|

Last invoice missing; additional interest of
$1,612.62 paid.

Payment must be made in the amount indicated
in the "Total Amount Due" section above to avoid
additional interest and/or delinquency charges.

## Loan Summary

| Previous<br>Interest Due | Interest<br>Debits and Credits | Current<br>Interest Due | Total<br>Interest Due | Total<br>Fees Due |
|---|---|---|---|---|
| 1,612.21 | 1,612.21- | 1,536.85 | 1,536.85 | 0.00 |
| Previous<br>Principal Due | Principal<br>Debits and Credits | Current<br>Principal Due | Total<br>Principal Due | Total Late<br>Charges Due |
| 4,977.12 | 4,977.12- | 4,977.12 | 4,977.12 | 0.00 |

## Activity Detail

| Date | Tran Description | Interest Rate | Fee Amount | Principal Amount | Principal Balance | Days | Interest |
|---|---|---|---|---|---|---|---|
| 11/10/17 | Balance Forward | 5.750000 |  |  | 326,480.55 |  | 1,612.21 |
| 11/08/17 | Interest Paymt | 5.750000 |  |  | 326,480.55 |  | 1,612.21- |
| 11/08/17 | Principal Paymt | 5.750000 |  | 4,977.12- | 321,503.43 |  |  |
| 11/08/17 | Prin Curtail | 5.750000 |  | 410.67- | 321,092.76 |  |  |
| 11/10/17 | Adjustment |  |  |  | 321,092.76 |  | 1.72- |
| 11/25/17 | Int. Accrual | 5.750000 |  |  | 321,092.76 | 15 | 769.28 |
| 12/10/17 | Int. Accrual | 5.750000 |  |  | 321,092.76 | 15 | 769.28 |

FORM 7786-0111

---

Please return this portion with payment.  Make check payable to "PNC Bank".

## PNC Bank Commercial Loan Statement

ACLR, LLC

PNC BANK, N.A.
COMMERCIAL LOAN OPERATIONS
P O BOX 747046
PITTSBURGH  PA  15274-7046

| Interest Due<br>1,536.85 | Principal Due<br>4,977.12 | Due Date<br>12/10/17 |
|---|---|---|
| Fees Due<br>0.00 | Late Charges Due<br>0.00 | Total Amount Due<br>6,513.97 |
| Portfolio<br>010 | Obligation<br>605061988 | Obligor<br>34207144 |

Amount Paid

ABS001 09612

20100010060506198834207144000000651397 2

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Pre / Duplicate Payment Audit
Net Payment Amount
Exhibit B-3

Page 8 of 8



# EXHIBIT B-4

# OFFICE LEASE

# NET PAYMENT AMOUNT

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount
Exhibit B-4

Office Lease
Page 1 of 50

| Trans # | Type | Date | Num | Name | Account | Description | Amount |
|---|---|---|---|---|---|---|---|
| 3,453 | Check | 05/05/11 | 1662 | Miscellaneous | Livonia Office | Office Lease | 24,894.00 |
| 3,515 | Check | 06/14/11 | 1718 | Miscellaneous | Livonia Office | Office Lease | 24,894.00 |
| 3,738 | Check | 10/24/11 | 1812 | SMC Investors, LLC | Livonia Office | Office Lease | 2,644.20 |
| 3,782 | Check | 11/28/11 | 1828 | SMC Investors, LLC | Livonia Office | Office Lease | 4,957.88 |
| 3,825 | Check | 12/27/11 | 1844 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 3,873 | Check | 01/24/12 | 1861 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 3,918 | Check | 02/24/12 | 1741 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 3,938 | Check | 03/16/12 | 1755 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 3,978 | Check | 04/17/12 | 1877 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 3,999 | Check | 05/21/12 | 1889 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 4,023 | Check | 06/26/12 | 1900 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 4,042 | Check | 07/16/12 | 1905 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 4,059 | Check | 08/17/12 | 1912 | SMC Investors, LLC | Livonia Office | Office Lease | 4,989.88 |
| 4,090 | Check | 09/19/12 | 1925 | SMC Investors, LLC | Livonia Office | Office Lease | 9,947.15 |
| 4,116 | Check | 10/23/12 | 1934 | SMC Investors, LLC | Livonia Office | Office Lease | 9,947.75 |
| 4,143 | Check | 11/21/12 | 1947 | SMC Investors, LLC | Livonia Office | Office Lease | 9,947.75 |
| 4,172 | Check | 12/21/12 | 1959 | SMC Investors, LLC | Livonia Office | Office Lease | 9,947.75 |
| 4,231 | Check | 02/08/13 | 1974 | SMC Investors, LLC | Livonia Office | Office Lease | 9,947.75 |
| 4,269 | Check | 04/04/13 | 1993 | SMC Investors, LLC | Livonia Office | Office Lease | 12,031.43 |
| 4,282 | Check | 04/16/13 | 2004 | WorkForce | Livonia Office | Office Lease | 3,000.00 |
| 4,317 | Check | 04/30/13 | 2013 | SMC Investors, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,382 | Check | 06/06/13 | 2029 | SMC Investors, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,419 | Check | 06/27/13 | 2036 | WorkForce | Livonia Office | Office Lease | 3,000.00 |
| 4,462 | Check | 07/30/13 | 2045 | SMC Investors, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,483 | Check | 08/27/13 | 2049 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,496 | Check | 09/03/13 | 2053 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,527 | Check | 10/01/13 | 2059 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,528 | Check | 10/01/13 | 2060 | WorkForce | Livonia Office | Office Lease | 3,000.00 |
| 4,551 | Check | 10/31/13 | 2065 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,576 | Check | 11/26/13 | 2072 | Universal Properties Three, LLC | Livonia Office | Office Lease | 1,714.96 |
| 4,610 | Check | 12/26/13 | 2076 | WorkForce | Livonia Office | Office Lease | 3,000.00 |
| 4,612 | Check | 12/26/13 | 2078 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,636 | Check | 01/28/14 | 2081 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,665 | Check | 02/27/14 | 2088 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,712 | Check | 03/25/14 | 2100 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,776 | Check | 04/28/14 | 2104 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,877 | Check | 08/28/14 | 2148 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,910 | Check | 09/26/14 | 2153 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,941 | Check | 10/28/14 | 2163 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 4,985 | Check | 11/25/14 | 2177 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,022 | Check | 12/31/14 | 2189 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,059 | Check | 01/27/15 | 2200 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,093 | Check | 02/24/15 | 2209 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,125 | Check | 03/26/15 | 2213 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,161 | Check | 04/30/15 | 2220 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,188 | Check | 05/28/15 | 2226 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,210 | Check | 06/30/15 | 2231 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,331.94 |
| 5,224 | Check | 07/31/15 | 2233 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,229 | Check | 08/26/15 | 2237 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,257 | Check | 09/29/15 | 2243 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,383.87 |
| 5,269 | Check | 10/26/15 | 2245 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,358.38 |
| 5,281 | Check | 11/23/15 | 2248 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,385.48 |
| 5,295 | Check | 12/21/15 | 2251 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,337.37 |
| 5,316 | Check | 01/26/16 | 2256 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,328 | Check | 02/24/16 | 2260 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,339 | Check | 03/29/16 | 2265 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,376 | Check | 04/26/16 | 2271 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,400 | Check | 05/24/16 | 2274 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,811.85 |
| 5,418 | Check | 06/21/16 | 2278 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,446 | Check | 07/26/16 | 2285 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,465 | Check | 08/29/16 | 2290 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| 5,496 | Check | 09/26/16 | 2294 | Universal Properties Three, LLC | Livonia Office | Office Lease | 2,081.08 |
| Totals | | | | | | | 258,986.99 |

**KOJAIAN**●

**KOJAIAN MANAGEMENT CORPORATION**
39400 WOODWARD AVENUE
SUITE 250
BLOOMFIELD HILLS, MICHIGAN 48304-5155
(248) 644-7600
(248) 644-7630 FAX

April 25, 2011                                                                  *Via Hand Delivery*

Mr. Chris Mucke
Principal
**ACLR, LLC**
550 Forest Avenue, Suite 15-2
Plymouth, MI  48170-3793

RE:    **SEVEN MILE CROSSING**
         **Livonia, MI**

Dear Mr. Mucke:

Enclosed please find one (1) copy of the fully executed Lease between SMC Investors, L.L.C., as Landlord and ACLR, LLC, as Tenant.  Please retain this document for your files and records.

If you should have any questions or comments, please do not hesitate to contact me.

Very truly yours,

**KOJAIAN MANAGEMENT CORPORATION**

David M. Haboian
Executive Vice President - Brokerage

DMH/smp

Enclosure

cc:    Andrew Tracey (w/enc.)
        Lisa Baldwin (w/enc.)
        Steve Hurd (w/enc.)
        Tami McLaughlin (w/enc.)
        Renee Markowski (w/enc.)
        Angela Anderson (w/enc.)
        Levi Smith (w/enc.)

F:\USERS\SUZETTES\WPDATA\DAVID\Seven Mile\ACLR Lease Dist.dotx

ACLR_LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 37 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
3

**SEVEN MILE CROSSING**
**38705 SEVEN MILE ROAD**
**LIVONIA, MICHIGAN**

## LEASE

This Lease is made between Landlord and Tenant hereinafter identified in Sections 1(b) and 1(c) hereof, respectively, and constitutes a Lease between the parties of the "Demised Premises" in the "Building," as defined in Sections 2.2 and 2.1 hereof, respectively, on the terms and conditions and with and subject to the covenants and agreements of the parties hereinafter set forth.

**W I T N E S S E T H :**

1.   **Basic Lease Provisions.**

The following are certain basic lease provisions, which are part of, and in certain instances referred to in subsequent provisions of, this Lease:

(a)   Date of this Lease:   April _25_, 2011

(b)   Landlord:   **SMC INVESTORS, L.L.C.,**
a Michigan limited liability company

(c)   Tenant:   **ACLR, LLC,**
a Michigan limited liability company

(d)   Demised Premises:   approximately 6,102 rentable square feet, Suite 460

(e)   Anticipated Commencement Date:   June 1, 2011

(f)   Expiration Date:   October 31, 2016

(g)   Basic Rental:

| Term | Monthly Basic Rental |
|------|---------------------|
| Months 1 – 5 | $   -0- |
| Months 6 – 15 | $  4,957.88 |
| Months 16 – 36 | $  9,915.75 |
| Months 37 – 65 | $10,170.00 |

(h)   Tenant's Share:   5.36%

(i)   Tenant's Use:   General Office and related uses thereto

(j)   Deposit:   $10,000.00

(k)   Tenant's Address for Notices:   Until the Commencement Date:
550 Forest Avenue
Suite 15-2
Plymouth, MI  48170
Thereafter, the Demised Premises

(l)   Landlord's Address for Notices:

SMC Investors, L.L.C.
c/o Kojaian Management Corporation
39400 Woodward Avenue, Suite 250
Bloomfield Hills, Michigan  48304

1

ACLR, LLC Civil Action
No. 15-787 & 15-309-cv-00767-PEC Document 101-1 Filed 11/06/20 Page 38 of 134
Settlement Proposal
Prior Duplicate Payment Audit
Net Payment Amount Exhibit B-4
Office Lease
4

with a copy to:

Grubb & Ellis Real Estate Management
26555 Evergreen Road, Suite 500
Southfield, Michigan 48076

(m)   Guarantor:   None

(n)   Guarantor's Address for Notices:   N/A

## 2.   **Building and Demised Premises.**

2.1   Landlord is the owner of certain land and improvements, more particularly described on Exhibit "A" hereto, at 38705 Seven Mile Road, Livonia, Michigan, upon which Landlord has constructed a building (hereinafter referred to as the "Building"), consisting of four (4) stories, together with certain interior and exterior common and public areas and facilities, including the surface parking facilities (hereinafter referred to as the "Common Areas") as may be designated by Landlord for the use in common by tenants of the Building. The Building and appurtenant Common Areas are hereinafter referred to as the "Development."

2.2   Subject to the terms, covenants, agreements and conditions herein set forth, Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, those certain premises (herein referred to as the "Demised Premises") designated in Section 1(d) hereof, as shown on the floor plan(s) attached hereto as Exhibit "B," together with the nonexclusive right to use the Common Areas[1]. The square foot area of the Demised Premises, as well as the Building, shall be computed based upon the BOMA-American National Standard Z65.1-1996, and shall contain a proportionate share of the Common Areas of the Building.

2.3   [2]Landlord reserves (a) the right from time to time to make changes, alterations, additions, improvements, repairs or replacements in or to the Building (including the Demised Premises) and the fixtures and equipment thereof, as well as in or to the street entrances, halls, passages, elevators, escalators and stairways and other parts of the Building, and to erect, maintain, and use pipes, ducts and conduits in and through the Demised Premises, all as Landlord may reasonably deem necessary or desirable, (b) the right to eliminate, substitute and/or rearrange the Common Areas (which may theretofore have been so designated) as Landlord deems appropriate in its discretion and (c) the right from time to time to construct additional stories onto the Building. Tenant's nonexclusive right to utilize the Common Areas shall be in common with Landlord, other tenants and occupants of the Building and others to whom Landlord grants such rights from time to time. The Development will contain parking based upon a ratio of four (4) parking spaces for each One Thousand (1,000) square feet of leased premises in the Building. In no event shall Tenant, its employees, customers, invitees and/or guests utilize in excess of Tenant's allocable portion of such parking spaces. [3]

2.4   Landlord reserves the right from time to time upon at least sixty (60) days' advance written notice to relocate Tenant[4] to other [5]premises[6] within the Building prior to or during the term of this Lease (hereinafter referred to as the "Term") so long as the useable area so substituted equals or exceeds the useable area of the Demised Premises[7]. Landlord shall pay the reasonable relocation costs[8] of Tenant in connection therewith, but Landlord shall not have any other liability with respect to such relocation.[9]

---

1 and the non designated parking areas, drives and sidewalks serving 38695, 38701 and 38703 Seven Mile Road.
2 Provided that the exercise of such rights does not unreasonably interfere with Tenant's occupancy of, business operations in or access to the Demised Premises,
3 Notwithstanding the foregoing, Tenant shall have the non-exclusive right to utilize up to four and one-half (4½) non-exclusive parking spaces in the parking lot, for each one thousand (1,000) rentable square feet or portion thereof in the Demised Premises.
4 at Landlord's sole cost and expense
5 comparable
6 with like finishes
7 provided however, there shall be no increase in Basic Rent or Tenant's Share.
8 (such costs to include telephone, computers and other data transmission hook-ups and cabling, reprinting of stationary and business announcements)
9 Landlord shall not unreasonably interfere with the Tenant's use and occupancy of the Premises.

ACLR LLC Civil Action
No. 15-785 & 16-303
Settlement Proposal
Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 39 of 134
Pryor Cashman Payment Audit
Net Payment Amount   Exhibit B-4
Office Lease
5

**3.     Term.**

3.1     The Term shall commence on that date (hereinafter referred to as the "Commencement Date") being the later to occur of the "Anticipated Commencement Date" set forth in Section 1(e) hereof and the date Landlord has substantially completed the improvements to be constructed or installed by Landlord pursuant to the provisions of the attached Rider and Exhibit "C" hereto as  provided in Section 4 hereof and, unless sooner terminated as hereinafter provided, shall end on the "Expiration Date" set forth in Section 1(f) hereof; provided, however, that if Tenant, with Landlord's prior written approval, shall take occupancy of the Demised Premises for any purpose whatsoever prior to the Commencement Date, as defined above, the Commencement Date shall be deemed to have occurred on the earlier date Tenant takes such occupancy.  See attached Rider.

3.2     If Landlord, for any reason whatsoever, cannot deliver possession of the Demised Premises to Tenant on the Anticipated Commencement Date, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting therefrom, and the Expiration Date shall not be affected.  Notwithstanding the foregoing, if possession of the Demised Premises has not been delivered to Tenant within [10]ninety (90) days following the Anticipated Commencement Date, either Landlord or Tenant, at its option at any time within thirty (30) days thereafter, but prior to the delivery of possession, may terminate this Lease by and upon written notice to the [11]other, and Landlord and Tenant shall thereupon be released from all obligations under this Lease except [12] for any financial obligations of Tenant then due and payable, if any, pursuant to Section 4 hereof or Exhibit "C" hereto.

**4.     Completion of Improvements.**  See attached Rider.

(a)     [13]Except as provided in Section 3.2 hereof, prior to the Anticipated Commencement Date, Landlord shall complete the floor(s) on which the Demised Premises are located and shall construct or install in the Demised Premises the improvements to be constructed or installed by Landlord pursuant to the attached Rider and Exhibit "C" hereto (hereinafter referred to as the "[14]Standard Improvements").  Landlord shall not be required to incur overtime costs and expenses in performing such construction and/or installation.

(b)     With respect to the Standard Improvements, Tenant will furnish to Landlord all information regarding its partition, electrical and telephone requirements and all other pertinent data by not later than _____.  Within five (5) days after Landlord's submission of working drawings, Tenant shall approve same in writing.

If there are any changes requested by Tenant, after completion of the plans and specifications for the Standard Improvements and/or any additional improvements required by Tenant (hereinafter referred to as "Tenant's Plan"), Tenant will be responsible for all architectural and engineering costs and related expenses resulting from such changes.  No changes will be made without written approval of Landlord after written request of Tenant.

(c)     In the event Tenant desires to have improvements installed in the Demised Premises in addition to or in lieu of the improvements provided for in Tenant's Plans, Tenant shall so advise Landlord and submit to Landlord at least ninety (90) days' prior to the Anticipated Commencement Date, complete plans and specifications for such improvements.  Tenant shall immediately cause such plans and specifications to be revised in order to comply with Landlord's comments to such plans and specifications.  Upon approval of such plans and specifications by Landlord, Landlord shall advise Tenant of the cost of constructing and installing such improvements, and upon approval of such costs Landlord will commence construction and installation of such improvements; provided, however, that Tenant may revise such plans in order to reduce such costs, subject to Landlord's approval.  Tenant shall be responsible for all costs resulting from such additional work, including architectural and engineering charges.  Notwithstanding anything contained to the contrary, if Tenant shall request any changes or modification to the plans and specifications after the approval thereof by Landlord, or if Tenant does not timely submit such plans and specifications or revisions thereof, or if

---

10 sixty (60)
11 Landlord
12 that Landlord shall immediately reimburse Tenant for any amounts paid by Tenant to Landlord for the construction of the improvements to the Demised Premises and any prepaid rent and the security deposit.
13 Subject to
14 "Tenant's Plans"

such plans and specifications require materials which are not readily available or require long lead time, or if the completion of such construction and installation is delayed for any other reason attributable to Tenant including its failure to pay for the same as provided in Paragraph 4(d) hereof, the Commencement Date shall not be delayed or postponed as a result thereof and the Commencement Date shall be the date which Landlord determines that the Demised Premises would have been ready but for such delays, even if the Demised Premises is not completed on the Commencement Date.

(d)      The cost of all improvements to the Demised Premises ~~over and above the Standard Improvements~~ shall be paid by Tenant as follows: (i) one-half (l/2) of such amount [15] ~~within ten (10) days after the approval of Tenant's plans and specifications by Landlord and the submission of the costs to Tenant, (ii) one-quarter (1/4) of such amount within ten (10) days after Landlord has notified Tenant that such work is fifty percent (50%) completed, and~~ (iii) the balance of such amount prior to occupancy of the Demised Premises by Tenant. In no event shall Landlord be required to commence or continue such work if Tenant defaults in its obligation to make the payments herein required.

(e)      The Demised Premises shall be deemed completed and possession delivered to Tenant when Landlord has Substantially Completed [16]~~its~~ improvements ~~subject only to the completion of details of construction, decorations and mechanical adjustments which do not materially interfere with Tenant's use~~ to the Demised Premises. ~~and~~ Tenant shall accept the same upon notice from Landlord that such improvements have been [17]~~so completed~~. If any dispute shall arise as to whether Landlord has completed its improvements, a certificate furnished by Landlord's architect certifying the date of such [18]Completion shall be conclusive and binding of that fact and date upon Landlord and Tenant. See attached Rider.

## 5.      **Rental.**

5.1      Tenant shall pay to Landlord as rental for the Demised Premises the Basic Rental set forth in Section 1(g) hereof, which shall be payable in equal monthly installments in advance, together with the rentals provided for in Section 5.3 hereof.

5.2      The following terms shall have the following meanings.

(a)      The term "Expenses" shall mean the actual cost incurred by Landlord with respect to the operation, maintenance, repair and replacement and administration of the Development, including, without limitation or duplication, (1) the costs incurred for air conditioning; mechanical ventilation; heating; cleaning (including janitorial services); rubbish removal; snow removal; general landscaping and maintenance; window washing, elevators, escalators, porter and matron services, electric current for the Common Areas; management fees; protection and security services; repairs, replacement, and maintenance; fire, extended coverage, boiler, sprinkler, apparatus, public liability and property damage insurance (including loss of rental income insurance); supplies; wages, salaries, disability benefits, pensions, hospitalization, retirement plans and group insurance respecting service and maintenance employees and management staff; accounting and administrative staff; uniforms and working clothes for such employees and the cleaning thereof; expenses imposed pursuant to any collective bargaining agreement with respect to such employees; payroll, social security, unemployment and other similar taxes with respect to such employees and staff; sales, use and other similar taxes; Landlord's Michigan Business Tax, water rates and sewer charges ~~and~~ personal property taxes; ~~advertising, public relations and promotions;~~ depreciation of movable equipment and personal property, which is, or should be, capitalized on the books of Landlord, and the cost of movable equipment and personal property, which need not be so capitalized, as well as the cost of maintaining all such movable equipment, and any other costs, charges and expenses which, under generally accepted accounting principles and practices, would be regarded as maintenance and operating expenses, and (2) the cost of any capital improvements made to the Development by Landlord after the Commencement Date that are intended to reduce other Expenses, or made to the Development by Landlord after the date of this Lease that are required under any governmental law or regulation that was not applicable to the Development [19]~~at the time it~~

---

15 upon commencement of construction of the improvements, and
16 (as herein defined) the
17 Substantially Completed.
18 Substantial
19 as of the date of this Lease,

4

ACLR LLC Civil Action
No. 15-785 & 16-303
Settlement Proposal

Case 2:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 41 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
7

~~was constructed,~~ such cost to be amortized over [20]~~such reasonable period~~ as Landlord shall [21]~~determine,~~ together with interest on the unamortized balance at the rate of two percent (2%) in excess of the then current "prime rate" published in The Wall Street Journal or such higher rate as may have been paid by Landlord on funds borrowed for the purpose of constructing such capital improvements. Expenses shall not include "Taxes," as defined in Section 5.2(d) hereof; depreciation on the Building other than depreciation on standard exterior window coverings provided by Landlord and carpeting in Common Areas and other than as set forth above; costs of services or repairs, replacements and maintenance which are paid for by proceeds of insurance, by other tenants (in a manner other than as provided in Section 5.3 hereof), or third parties; or tenant improvements, real estate brokers' commissions, interest and capital [22]~~items~~ other than replacements and those referred to in clause (2) above. See attached Rider.

The Expenses shall be adjusted to equal Landlord's reasonable estimate of Expenses had the total Building been occupied and had the total Building been furnished all services.

Landlord shall have the right to aggregate the Expenses relating to the exterior Common Areas serving the Building and the exterior common areas serving 38695, 38701 and 38703 Seven Mile Road and allocate such Expenses between the Building and said other buildings on a reasonable and equitable basis.

(b)    The term "Base Expenses" shall mean the Expenses for the 2011 calendar year.

(c)    The term "Additional Expenses" shall mean the total dollar increases[23], if any, over the Base Expenses paid or incurred by Landlord in Landlord's respective calendar year. See attached Rider.

(d)    The term "Taxes" shall mean the amount incurred by Landlord of all ad valorem real property taxes and assessments, special or otherwise, levied upon or with respect to the Development, or the rent and additional charges payable hereunder, imposed by any taxing authority having jurisdiction. Taxes shall also include all taxes, levies and charges which may be assessed, levied or imposed in replacement of, or in addition to, all or any part of ad valorem real property taxes as revenue sources, and which in whole or in part are measured or calculated by or based upon the Development, the freehold and/or leasehold estate of Landlord or Tenant, or the rent and other charges payable hereunder. Taxes shall include any expenses incurred by Landlord in determining or attempting to obtain a reduction of Taxes. [24]

(e)    The term "Base Taxes" shall mean the 2011 real estate tax rate applicable to the Development multiplied by the tax value of the Development determined by the City of Livonia as of December 31, 2010, or as finally determined in the event Landlord appeals such assessment.

(f)    The term "Additional Taxes" shall mean the total dollar increase[25], if any, over the Base Taxes paid or incurred by Landlord in the respective calendar year.

(g)    The term "Tenant's Share" shall mean the percentage set forth in Section 1(h) hereof. Tenant's Share has been computed on the basis of the [26]square foot area of the Demised Premises divided by the total [2626]~~leasable~~ square foot area of the Building (including the Demised Premises). In the event the [26]square foot area of the Demised Premises or the [26]~~leasable~~ square foot area of the Building shall be determined to differ from that utilized in computing Tenant's Share, Tenant's Share shall be adjusted accordingly.

---

20 the useful life thereof
21 reasonably determine using generally accepted accounting principles, consistently applied,
22 improvements
23 of Expenses,
24 The term "Taxes" shall not include any inheritance, estate, succession, transfer, gift, franchise, corporation or federal or state income taxes to the extent such taxes are not levied in lieu of ad valorem real property taxes.
25 of Taxes,
26 rentable

ACLR LLC Civil Action
No. 15-789 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 42 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Other Lease
8

5.3     (a)     Tenant shall pay to Landlord as additional rental Tenant's Share of Additional Expenses and Additional Taxes in the manner and at the times herein provided.

(b)     With respect to Additional Expenses and Additional Taxes, prior to the Commencement Date and prior to the beginning of each calendar year thereafter, or as soon thereafter as practicable, Landlord shall give Tenant notice of Landlord's estimate of Tenant's Share of Additional Expenses and Additional Taxes for the ensuing calendar year.  On or before the first day of each month during the ensuing calendar year, Tenant shall pay to Landlord one-twelfth (1/12th) of such estimated amounts, provided that until such notice is given with respect to the ensuing calendar year, Tenant shall continue to pay the amount currently payable pursuant hereto until after the month such notice is given.  If at any time or times (including, without limitation, upon Tenant taking occupancy of the Demised Premises) it appears to Landlord that Tenant's Share of Additional Expenses or Tenant's Share of Additional Taxes for the then current calendar year will vary from Landlord's estimate by more than five percent (5%), Landlord may, by notice to Tenant, revise its estimate for such year and subsequent payments by Tenant for such year shall be based upon such revised estimate.

Within ninety (90) days after the close of each calendar year, or as soon after such ninety (90) day period as practicable, Landlord shall deliver to Tenant a statement prepared by Landlord of Tenant's Share of Additional Expenses and Additional Taxes, respectively, for such calendar year and [27]~~such statements shall be final and binding upon Landlord and Tenant~~.  If on the basis of either of such statements, Tenant owes an amount that is less than the estimated payments for such calendar year previously made by Tenant, Landlord shall credit such excess amount against the next payment(s) due from Tenant to Landlord of Additional Expenses or Additional Taxes, as the case may be.  If on the basis of such statement, Tenant owes an amount that is more than the estimated payments for such calendar year previously made by Tenant, Tenant shall pay the deficiency to Landlord within seven (7) days after delivery of such statement.  See attached Rider.

(c)     If this Lease shall commence on a day other than the first day of a calendar year or terminate on a day other than the last day of a calendar year, Tenant's Share of Additional Expenses and/or Additional Taxes that is applicable to the calendar year in which such commencement or termination shall occur shall be prorated on the basis of the number of calendar days within such year as are within the Term.

5.4     The installment of the Basic Rental provided for in Section 5.1 hereof for the first full month of the Term shall be paid by Tenant to Landlord upon execution of this Lease.  Basic Rental shall be paid to Landlord on or before the first day of each and every successive calendar month in advance after the first month during the Term.  In the event the Commencement Date is other than the first day of a calendar month, or the Expiration Date is other than the last day of the calendar month, then the monthly rental for the first and last fractional months of the Term shall be appropriately prorated.

5.5     Tenant shall pay as additional rental any money and charges required to be paid by Tenant pursuant to the terms of this Lease, whether or not the same may be designated "additional rent."

5.6     Except as above provided, rental and additional rental shall be paid to Landlord without notice or demand and without deduction or offset, in lawful money of the United States of America at Landlord's address for notices hereunder or to such other person or at such other place as Landlord may from time to time designate in writing.  All amounts payable by Tenant to Landlord hereunder, if not paid [28]~~when due~~, shall be subject to an administrative late charge of five percent (5%) of the amount due and, in addition, shall bear interest from the due date until paid at the rate equal to two percent (2%) in excess of the then current "prime rate" published in The Wall Street Journal, but not in excess of the legal rate.  If no such prime rate is published, the prime rate shall be deemed to be fifteen percent (15%) for purposes of Sections 5.2(a), 5.6 and 22 hereof.

## 6.     Other Taxes Payable by Tenant.

In addition to the monthly rental and other charges to be paid by Tenant hereunder, Tenant

---

[27] setting forth in reasonable detail the Expenses and Taxes incurred by Landlord for such calendar year.
[28] within five (5) days after the same is due for more than two (2) occasions during any calendar year, commencing with the third and on each subsequent occasion, during such calendar year,

ACLR, LLC Civil Action
No. 15-789 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 43 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
9

shall reimburse Landlord upon demand for any and all taxes payable by Landlord (other than net income taxes, ~~and~~ taxes included within Taxes[29]) whether or not now customary or within the contemplation of the parties hereto: (a) upon, measured by or reasonably attributable to the cost or value of Tenant's equipment, furniture, fixtures and other personal property located in the Demised Premises or by the cost or value of any leasehold improvements made in or to the Demised Premises by or for Tenant, other than [30]~~building standard~~ tenant improvements made by Landlord[31], regardless of whether title to such improvements shall be in Tenant or Landlord; (b) upon or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Tenant of the Demised Premises or any portion thereof; and (c) upon this transaction or any document to which Tenant is a party creating or transferring an interest or an estate in the Demised Premises. In the event that it shall not be lawful for Tenant so to reimburse Landlord, the monthly rental payable to Landlord under this Lease shall be revised to net to Landlord the same rental after imposition of any such tax upon Landlord as would have been payable to Landlord prior to the imposition of any such tax.

## 7.   Use.

7.1     The Demised Premises shall be used only for the purposes of "Tenant's Use" as set forth in Section 1(i) hereof, and for no other purpose or purposes whatsoever.

7.2     Tenant shall not do or permit to be done in or about the Demised Premises, nor bring or keep or permit to be brought or kept therein, anything which is prohibited by or will in any way conflict with any law, statute, ordinance or governmental rule or regulation now in force or which may hereafter be enacted or promulgated, or which is prohibited by the standard form of fire insurance policy, or will [32]~~in any way increase the existing rate of or~~ affect any fire or other insurance upon the Building or any of its contents, or cause a cancellation of any insurance policy covering the Building or any part thereof or any of its contents, or adversely affect or interfere with any services required to be furnished by Landlord to Tenant, or to any other tenants or occupants of the Building, or with the proper and economical rendition of any such service. Tenant shall not do or permit anything to be done in or about the Demised Premises which will in any way obstruct or interfere with the rights of other tenants of the Building, or injure ~~or annoy~~ them, or use or allow the Demised Premises to be used for any improper, immoral, unlawful or objectionable purpose, nor shall Tenant cause, maintain or permit any nuisance in, on or about the Demised Premises or commit or suffer to be committed any waste in, on or about the Demised Premises. If anything done, omitted to be done or suffered to be done by Tenant, or kept or suffered by Tenant to be kept in, upon or about the Demised Premises shall cause the rate of fire or other insurance on the Building in companies acceptable to Landlord to be increased beyond the minimum rate from time to time applicable to the Building, Tenant shall pay the amount of any such increases. Tenant shall not cause or permit the use, generation, storage or disposal in or about the Demised Premises or the Building of any substances, materials or wastes subject to regulation under federal, state or local laws from time to time in effect concerning hazardous, toxic or radioactive materials, unless Tenant shall have received Landlord's prior written consent, which Landlord may withhold or at any time revoke in its sole discretion[33]

## 8.   Services.

8.1     Landlord shall maintain the Common Areas including any lobbies, stairs, elevators, corridors and restrooms, together with the windows and exterior walls, roofs, foundations and structure itself of the Building and the mechanical, plumbing and electrical equipment servicing the Building, in good order and condition as reasonably determined by Landlord and the cost shall be included in Expenses, except for the repairs due to fire and other casualties (to the extent the cost of such repairs are covered by insurance proceeds) and for the repair of damages occasioned by the acts or omissions of Tenant, which Tenant shall pay to Landlord in full, [34]

8.2     Landlord will arrange for the furnishing of electricity to the Demised Premises, and Landlord shall ~~elect either: (i) to charge Tenant for electricity as determined by metering at the~~

---

29 , and those taxes expressly excluded from the definition of Taxes in Section 5.2(d)
30 the
31 pursuant to Section 4 hereof
32 adversely
33 , or such substances or materials are commonly used in offices and are used, handled, stored and disposed of in compliance with all applicable laws.
34 subject to Section 12 below.

~~applicable secondary rates filed by Landlord with the proper regulating authorities in effect from time to time covering such services, but not more than the secondary rates which would be charged to Tenant by the public utility company; or (ii) to~~ charge Tenant for electricity based upon engineering surveys of the Demised Premises and the use by Tenant thereof, including, at the option of Landlord, periodic spot check demand and/or consumption metering by Landlord. Such charge to Tenant for electricity shall be payable in monthly installments together with Basic Rental in the amount invoiced to Tenant. Engineering surveys shall be performed by independent licensed professional electrical engineering consultants selected by Landlord. From time to time during the Term, Landlord may inspect the Demised Premises in order to evaluate Tenant's kilowatt hour electric consumption and demand, and if as a result of such inspection, the amount charged to Tenant shall change because of changes in demand and/or consumption, or in the cost of electricity to Landlord, Landlord shall notify Tenant and commencing with the first day of the next calendar month, Tenant shall pay such revised charge in monthly installments. Notwithstanding anything herein contained to the contrary, Landlord reserves the right to terminate the furnishing of electricity at any time upon [35]~~thirty (30)~~ days' notice to Tenant, in which event Tenant shall make application directly to the utility company servicing the Building for Tenant's separate supply of electric current, and Landlord shall permit its wires and conduits to be used for such purposes, to the extent available and capable of being used safely.[36] The electricity service to be paid for by Tenant hereunder shall include electricity to operate the HVAC system servicing the Demised Premises.

8.3    Landlord shall furnish the Demised Premises with (a) heat, ventilation and air conditioning to the extent required for the occupancy of the Demised Premises to standards of comfort and during such hours in each case as reasonably determined by Landlord for the Building (which hours, until Landlord shall otherwise designate, shall be from 8:00 a.m. to 6:00 p.m. on weekdays and from 8:00 a.m. to 12:00 p.m. on Saturdays; in each case except holidays), or as may be prescribed by any applicable policies or regulations adopted by any utility or governmental agency, (b) elevator service, and (c) janitorial service in accordance with Exhibit "D" hereto only to the areas of the Demised Premises used for office purposes during the times and in the manner that services are furnished in comparable first class office buildings in the area, provided that Landlord shall ~~not provide~~ [37]janitorial services to any portion of the Demised Premises used for other than office purposes such as preparing, dispensing or consumption of food or beverages or as an exhibition area or for storage, shipping room, washroom or similar purposes, or as private restrooms or a shop or for the operation of computer data processing, reproduction, duplicating or similar equipment. In addition, Landlord shall replace all burned out fluorescent (only) tubes, ballasts and starters, and Tenant shall be billed therefor. Landlord shall not be in default hereunder or be liable for any damages directly or indirectly resulting from, nor shall the rental herein reserved be abated by reason of: (1) the installation, use or interruption of use of any equipment in connection with the furnishing of any of the foregoing services, (2) failure to furnish or delay in furnishing any such services when such failure or delay is caused by accident or any condition beyond the reasonable control of Landlord or by the making of necessary repairs or improvements to the Demised Premises or to the Building, or (3) any limitation, curtailment, rationing or restriction on use of water, electricity, steam, gas or any other form of energy serving the Demised Premises or the Building. Landlord shall use reasonable efforts diligently to remedy any interruption in the furnishing of such services. Notwithstanding the provisions of this Section 8.3, Landlord shall not be required to provide [38]ventilation and air conditioning to the Demised Premises as herein provided if Tenant shall utilize in the Demised Premises heat generating equipment or lighting other than building standard lights which affect the temperature otherwise maintained by the air conditioning system or if the Demised Premises are occupied by a number of persons in excess of the design criteria of the air conditioning system. See attached Rider.

8.4    Tenant shall pay as additional rent the cost of providing all heating, ventilating and air conditioning, including all costs associated with the installation of meters for measuring the same, to the Demised Premises in excess of that required for normal office use or during hours requested by Tenant when heating, ventilating and air conditioning is not otherwise furnished by Landlord. Tenant shall notify Landlord in writing at least twenty-four (24) hours prior to the time it requires heating, ventilating and air conditioning during periods the same are not otherwise furnished by Landlord. Notwithstanding the foregoing, Landlord shall only be required to provide heating,

---

35 sixty (60)
36 Notwithstanding the foregoing, Tenant shall not suffer any interruption in service or extraordinary charges as a result of the termination of such service by Landlord and the supply of such service by the utility company.
37 only be required to provide building standard
38 additional

ACLR, LLC Civil Action
No. 15-787 & 15-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 45 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
11

ventilating and air conditioning to the extent available utilizing the existing equipment servicing the Building.

### 9.   Alterations and Repairs.

9.1     Tenant shall not make or suffer to be made any alterations, additions or improvements to or of the Demised Premises or any part thereof, or attach any fixtures or equipment thereto, without first obtaining Landlord's consent[39]. All such alterations, additions and improvements shall be performed by contractors and subject to conditions [40]specified by Landlord.  If any such alterations, additions or improvements to the Demised Premises consented to by Landlord shall be made by Landlord for Tenant's account, Tenant shall reimburse Landlord for the cost thereof (including a reasonable charge for Landlord's overhead related thereto) as the work proceeds within five (5) days after receipt of statements therefor. All such alterations, additions and improvements shall become the property of Landlord upon their installation and/or completion and shall remain on the Demised Premises upon the expiration or termination of this Lease without compensation to Tenant unless Landlord elects by notice to Tenant to have Tenant remove the same, in which event Tenant shall promptly restore the Demised Premises to their condition prior to the installation of such alterations, additions and improvements.  Notwithstanding anything herein contained to the contrary, upon the expiration or termination of this Lease, Tenant shall remove all of Tenant's computer and telecommunications cabling and wires used or installed by Tenant within and servicing the Demised Premises, unless Landlord in its sole discretion, consents to the surrender of all or any portion of such computer and telecommunications cabling and wires as part of the Demised Premises.  Tenant shall repair and restore any damage to the Demised Premises or any part of the Building caused by such removal by Tenant.  See attached Rider.

9.2     Subject to the provisions of Section 8.1 hereof, Tenant shall keep the Demised Premises and every part thereof in good condition and repair, Tenant hereby waiving all rights to make repairs at the expense of Landlord or in lieu thereof to vacate the Demised Premises as[41]provided by any law, statute or otherwise now or hereafter in effect.  All repairs shall be made by or on behalf of Tenant shall be made and performed in such manner as Landlord may designate, by contractors or mechanics approved by Landlord and in accordance with the rules relating thereto annexed to this Lease as Exhibit "E" and all applicable laws and regulations of governmental authorities having jurisdiction.  Tenant shall, subject to the provisions of Section 9.1 hereof, at the end of the term hereof surrender to Landlord the Demised Premises in the same condition as when received, ordinary wear and tear and damage by [42]fire, earthquake, act of God or the elements excepted.  Landlord has no obligation and has made no promise to alter, remodel, improve, repair, decorate or paint the Demised Premises or any part thereof and no representations respecting the condition of the Demised Premises or the Building have been made by Landlord to Tenant except as expressly set forth herein.

### 10.   Liens.

Any construction and/or mechanic's lien filed against the Demised Premises or the Building for work claimed to have been done or materials claimed to have been furnished to Tenant shall be discharged by Tenant within [43]ten (10) days thereafter.  For the purposes hereof, the bonding of such lien by a reputable casualty or insurance company reasonably satisfactory to Landlord shall be deemed the equivalent of a discharge of any such lien.  Should any action, suit, or proceeding be brought upon any such lien for the enforcement or foreclosure of the same, Tenant shall defend Landlord therein, by counsel satisfactory to Landlord, and pay any damages and satisfy and discharge any judgment entered therein against Landlord.

### 11.   Destruction or Damage.

11.1    In the event the Demised Premises or any portion of the Building necessary for Tenant's occupancy are damaged by fire, earthquake, act of God, the elements or other casualty in each case insured against by Landlord's [44]fire and extended coverage insurance policy covering the

---

39 which consent for nonstructural alterations shall not be unreasonably withheld.  For the purposes hereof, the electrical, mechanical and plumbing building systems shall be deemed structural.
40 reasonably
41 except as otherwise
42 casualty
43 twenty (20)
44 "Causes of Loss-Special Form"

ACLR LLC Civil Action
No. 15-785 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 46 of 134
Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
12

Building and, if Landlord's reasonable estimate of the cost of making such repairs does not exceed the proceeds of such insurance by more than One Hundred Thousand Dollars ($100,000), Landlord shall forthwith repair the same if such repairs can, in Landlord's opinion, be completed within [45]~~ninety (90)~~ days after commencement of such repairs. This Lease shall remain in full force and effect except that an abatement of Basic Rental shall be allowed Tenant for such part of the Demised Premises as shall be rendered unusable by Tenant in the conduct of its business during the time such part is so unusable. ~~to the extent Landlord is reimbursed therefor by loss of rental income or other insurance.~~ If such repairs cannot, in Landlord's [46]opinion, be made within [46]~~ninety (90)~~ days, or if such damage or destruction is not insured against by Landlord's [47]~~fire and extended coverage~~ insurance policy covering the Building or if Landlord's reasonable estimate of the cost of making such repairs exceeds the proceeds of such insurance by more than One Hundred Thousand Dollars ($100,000), Landlord may elect, upon notice to Tenant within thirty (30) days after the date of such fire or other casualty, to repair or restore such damage, in which event this Lease shall continue in full force and effect, but the Basic Rental shall be partially abated as provided in this Section 11.1. If Landlord elects not to make such repairs, this Lease shall terminate as of the date of such election by Landlord. See attached Rider.

    11.2    A total destruction of the Building shall automatically terminate this Lease.

    11.3    If the Demised Premises are to be repaired under this Article 11, Landlord shall repair at its cost any injury or damage to the Building itself and building standard tenant improvements in the Demised Premises to be constructed or installed by Landlord as set forth in Exhibit "C." Tenant shall perform and pay the cost of repairing any other improvement in the Demised Premises and shall be responsible for carrying such casualty insurance as it deems appropriate with respect to such other tenant improvements.

## 12.    __Subrogation.__

    Landlord and Tenant shall each obtain from their respective insurers under all policies of fire insurance maintained by either of them at any time during the Term insuring or covering the Building or any portion thereof or operations therein, a waiver of all rights of subrogation which the insurer of one party might have against the other party, and Landlord and Tenant shall each indemnify the other against any loss or expense, including reasonable attorneys' fees, resulting from the failure to obtain such waiver and, so long as such waiver is outstanding, each party waives, to the extent of the proceeds received under such policy, any right of recovery against the other party for any loss covered by the policy containing such waiver; provided, however, that if at any time their respective insurers shall refuse to permit waivers of subrogation, Landlord or Tenant, in each instance, may revoke said waiver of subrogation effective thirty (30) days from the date of such notice, unless within such thirty (30) day period, the other is able to secure and furnish (without additional expense) equivalent insurance with such waivers with other companies satisfactory to the other party.

## 13.    __Eminent Domain.__

    If all or any part of the Demised Premises shall be taken as a result of the exercise of the power of eminent domain, this Lease shall terminate as to the part so taken as of the date of taking, and, in the case of partial taking, either Landlord or Tenant shall have the right to terminate this Lease as to the balance of the Demised Premises by notice to the other within thirty (30) days after such date; provided, however, that a condition to the exercise by Tenant of such right to terminate shall be that the portion of the Demised Premises taken shall be of such extent and nature as substantially to handicap, impede or impair Tenant's use of the balance of the Demised Premises. In the event of any taking, Landlord shall be entitled to any and all compensation, damages, income, rent, awards, or any interest therein whatsoever which may be paid or made in connection therewith, and Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease or otherwise. In the event of a partial taking of the Demised Premises which does not result in a termination of this Lease, the rental thereafter to be paid shall be reduced on a per square foot basis. See attached Rider.

---

45 one hundred eighty (180)
46 reasonable
47 "Causes of Loss-Special Form"

ACLR LLC Civil Action
No. 15-787 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 47 of 134

Prior Duplicate Payment Audit
Net Payment Amount    Exhibit B-4

Office Lease
13

**14.    Landlord's Insurance.**

Landlord shall, during the Term, provide and keep in force or cause to be provided or kept in force:

(a)    Commercial general liability insurance with respect to Landlord's operation of the Development for bodily injury or death and damage to property of others;

(b)    "All risks" (also known as [48]special cause of loss, including theft and leakage from fire protective devices) property insurance [49]in respect of the Building, excluding Tenant's trade fixtures, equipment and personal property;

(c)    Loss of rental income insurance;

together with such other insurance as Landlord, in its sole discretion, elects to obtain.  Insurance effected by Landlord shall be in amounts which Landlord shall from time to time determine reasonable and sufficient, shall be subject to such deductibles and exclusions which Landlord may deem reasonable and shall otherwise be on such terms and conditions as Landlord shall from time to time determine reasonable and sufficient.  Tenant acknowledges that Landlord's loss of rental income insurance may provide that (i) payments thereunder by the insurer will be limited to a period of one year following the date of any destruction and damage, and (ii) no insurance proceeds will be payable thereunder in the case of destruction or damage caused by any occurrence other than fire and other risks included in the standard extended coverage endorsement perils of a fire insurance policy.

**15.    Indemnification and Tenant's Insurance.**

15.1    Tenant hereby waives all claims against Landlord for damage to any property or injury or death of any person in, upon or about the Demised Premises arising at any time and from any cause whatsoever, and Tenant shall hold Landlord harmless from any damage to any property or injury to or death of any person arising in, on or about the Demised Premises.  The foregoing indemnity obligation of Tenant shall include reasonable attorneys' fees, investigation costs and all other reasonable costs and expenses incurred by Landlord from the first notice that any claim or demand is to be made or may be made.  The provisions of this Section 15.1 shall survive the termination of this Lease with respect to any damage, injury or death occurring prior to such termination.  See attached Rider.

15.2    Tenant shall procure and keep in effect commercial general liability insurance, including blanket contractual liability, with minimum limits of liability of One Million Dollars ($1,000,000) combined single limit (per occurrence and annual aggregate) for bodily injury or death, and property damage.  From time to time, Tenant shall increase the limits of such policies to such higher limits as Landlord shall reasonably require. Such insurance shall name Landlord, Landlord's property manager (currently Grubb & Ellis Real Estate Management) and Kojaian Management Corporation as "additional insureds", shall specifically include the liability assumed hereunder by Tenant, and shall provide that it is primary insurance and not excess over or contributory with any other valid, existing and applicable insurance in force for or on behalf of Landlord, and shall provide that [50]Landlord shall receive thirty (30) days' notice from the insurer prior to any cancellation or change of coverage. [51]

15.3    Tenant shall procure and keep in effect excess (umbrella), liability coverage, including contractual liability insurance, providing a total limit per occurrence of not less than Four Million Dollars ($4,000,000) in excess of primary coverage and Four Million Dollars ($4,000,000) in aggregate for one annual policy period.  This policy shall provide excess limits over Tenant's commercial general liability described in Section 15.2.

15.4    Tenant shall procure and keep in effect "all risk" (also known as [4848]special cause of loss including theft, and leakage from fire protective devices) property insurance for the full

---

[48] "Causes of Loss-Special Form"
[49] for the full replacement cost
[50] insurer shall endeavor to give
[51] In the event insurer fails to give such notice, Tenant shall give Landlord twenty (20) days' notice prior to any cancellation or change of coverage.

ACLR LLC Civil Action
No. 15-787 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 48 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
14

replacement cost of Tenant's trade fixtures, equipment, personal property and leasehold improvements, [52]

    15.5    Tenant shall deliver policies of the insurance required pursuant to Sections 15.2 - 15.4 hereof or certificates thereof to Landlord on or before the Commencement Date, and thereafter at least thirty (30) days before the expiration dates of expiring policies.

## 16.    **Compliance with Legal Requirements.**

    Tenant shall promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force, with the requirements of any board of fire underwriters or other similar body now or hereafter constituted, with any occupancy certificate or directive issued pursuant to any law by any public officer or officers, as well as the provisions of all recorded documents affecting the Demised Premises, insofar as any thereof relate to or affect the condition, use or occupancy of the Demised Premises, excluding requirements of ~~structural~~ changes not related to or affected by improvements made by or for Tenant or not necessitated by Tenant's act[53]

## 17.    **Assignment and Subletting.**

    17.1    Except as expressly permitted pursuant to this Article 17, Tenant shall not, without the prior written consent of Landlord, assign, encumber or hypothecate this Lease or any interest herein or sublet the Demised Premises or any part thereof, or permit the use of the Demised Premises by any party other than Tenant. This Lease shall not, nor shall any interest herein, be assignable as to the interest of Tenant by operation of law without the consent of Landlord. Sales aggregating fifty percent (50%) or more of the capital or voting stock of Tenant (if Tenant is a nonpublic corporation) or transfers aggregating fifty percent (50%) or more of Tenant's partnership interest (if Tenant is a partnership) or transfers aggregating fifty percent (50%) or more of the other ownership interests of Tenant (if Tenant shall be a limited liability company or other legal entity) shall be deemed to be an assignment of this Lease. See attached Rider.

    17.2    If at any time or from time to time during the term of this Lease, Tenant desires to sublet all or any part of the Demised Premises or to assign this Lease, Tenant shall give notice to Landlord setting forth the proposed subtenant or assignee, the terms of the proposed subletting and the space so proposed to be sublet or the terms of the proposed assignment, as the case may be. Landlord shall have the option, exercisable by notice given to Tenant within twenty (20) days after Tenant's notice is given, (a) if Tenant's request relates to a subletting, either to sublet from Tenant such space at the rental and other terms set forth in Tenant's notice, or, if the proposed subletting is for the entire Demised Premises for the balance of the Term, to terminate this Lease or (b) if Tenant's request relates to an assignment, either to have this Lease assigned to Landlord or to terminate this Lease. If Landlord does not exercise such option, Tenant shall be free for a period of one hundred eighty (180) days thereafter to sublet such space or to assign this Lease to such third party if Landlord shall consent thereto, provided that the sublease or assignment shall be on the same terms set forth in the notice given to Landlord and [54]that the rental to such subtenant or assignee shall not be less than the then market rate for such premises.

    In the event Tenant shall so sublet a portion of the Demised Premises, or assign this Lease, all of the sums or other economic consideration received by Tenant as a result of such subletting or assignment whether denominated rentals or otherwise, under the sublease or assignment, which exceed in the aggregate, the total sums which Tenant is obligated to pay Landlord under this Lease (prorated to reflect obligations allocable to that portion of the Demised Premises subject to such sublease) shall be payable to Landlord as additional rental under this Lease without affecting or reducing any other obligation of Tenant hereunder.

    17.3    Notwithstanding the provisions of Sections 17.1 and 17.2 hereof, Tenant may assign this Lease or sublet the Demised Premises or any portion thereof, without Landlord's consent and

---

52 excluding the improvements installed by Landlord pursuant to Section 4 above, which shall be insured by Landlord.

53 , which shall be the Landlord's responsibility. Landlord hereby represents and warrants to Tenant that to the best of its knowledge, there are no recorded documents affecting the Demised Premises that would unreasonably interfere with or prohibit Tenant's use of the Demised Premises for the use set forth in Section 1(i) above.

54 provided Landlord has comparable space for Lease in the Development,

ACLR LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 49 of 134

Prof. Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
15

without extending any option to Landlord, to any corporation [55]which controls, is controlled by or is under common control with Tenant, or to any corporation [55]resulting from the merger or consolidation with Tenant, or to any person or entity which acquires [56]all the assets of Tenant as a going concern of the business that is being conducted on the Demised Premises, provided that said assignee assumes, in full, the obligations of Tenant under this Lease.

17.4   Regardless of Landlord's consent, no subletting or assignment shall release Tenant of Tenant's obligation or alter the primary liability of Tenant to pay the rental and to perform all other obligations to be performed by Tenant hereunder.  The acceptance of rental by Landlord from any other person shall not be deemed to be a waiver by Landlord or any provision hereof.  Consent to one assignment or subletting shall not be deemed consent to any subsequent assignment or subletting.  In the event of default of any of the terms hereof, Landlord may proceed directly against Tenant without the necessity of exhausting remedies against such assignee or successor.  Landlord may consent to subsequent assignments or subletting of this Lease or amendments or modifications to this Lease with assignees of Tenant, without notifying Tenant, or any successor of Tenant, and without obtaining its or their consent thereto and such action shall not relieve Tenant of liability under this Lease.

17.5   In the event Tenant shall assign this Lease or sublet the Demised Premises or request the consent of Landlord to any assignment or subletting or if Tenant shall request the consent of Landlord for any act that Tenant proposes to do, then Tenant shall pay Landlord's reasonable attorneys' fees and processing fees incurred in connection therewith.

## 18.   Rules.

Tenant shall faithfully observe and comply with the rules and regulations annexed to this Lease as Exhibit "E" and, after notice thereof, all reasonable modifications thereof and additions thereto from time to time promulgated in writing by Landlord.  Landlord shall not be responsible to Tenant for the nonperformance by any other tenant or occupant of the Building of any of such rules and regulations, [57]

## 19.   Entry by Landlord.

19.1   Landlord and its designees may enter the Demised Premises at reasonable hours to (a) inspect the same, (b) exhibit the same to prospective purchasers, lenders or tenants, (c) determine whether Tenant is complying with all of its obligations hereunder, (d) supply janitor service and any other services to be provided by Landlord to Tenant hereunder, (e) post notices of nonresponsibility, and (f) make repairs required of Landlord under the terms hereof or repairs to any adjoining space or utility services or make repairs, alterations or improvements to any other portion of the Building; provided, however, that all such work shall be done as promptly as reasonably possible.  Tenant hereby waives any claim for damages for any injury or inconvenience to or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Demised Premises or any other loss occasioned by such entry.

19.2   Landlord shall at all times have and retain a key with which to unlock all of the doors in, on or about the Demised Premises (excluding Tenant's vaults, safes and similar areas designated in writing by Tenant in advance); and Landlord shall have the right to use any and all means which Landlord may deem proper to open said doors in any emergency in order to obtain entry to the Demised Premises, and any entry to the Demised Premises obtained by Landlord by any of said means, or otherwise, shall not under any circumstances be construed or deemed to be a forcible or unlawful entry into or a detainer of the Demised Premises or an eviction, actual or constructive, of Tenant from the Demised Premises, or any portion thereof.

## 20.   Events of Default.

20.1   The occurrence of any one or more of the following events (hereinafter referred to as "Events of Default") shall constitute a breach of this Lease by Tenant: (a) if Tenant shall fail to pay the Basic Rental when and as the same becomes due and payable[58]; or (b) if Tenant shall fail to pay

---

55 or other entity
56 substantially
57 and Landlord shall enforce such rules and regulations in a non-discriminatory manner.  In the event of conflicts between this Lease and the rules and regulations, the terms of this Lease shall govern and control.
58 and such failure continues for five (5) days after written notice thereof to Tenant

ACLR, LLC Civil Action
No. 15-787 & 15-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 50 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
16

any other sum when and as the same becomes due and payable and such failure shall continue for more than ten (10) days[59]; or (c) if Tenant shall fail to perform or observe any other term hereof or of the rules and regulations referred to in Article 18 hereof to be performed or observed by Tenant, such failure shall continue for more than thirty (30) days after notice thereof from Landlord, and[60] Tenant shall not within such thirty (30) day period commence with due diligence and dispatch the curing of such default, or and, having so commenced, shall thereafter fail or neglect to prosecute or complete with due diligence and dispatch the curing of such default; or (d) if Tenant shall fail to perform or observe any provision of Article 4 hereof or Exhibit "C" hereto either prior or subsequent to the Commencement Date[61]; or (e) if Tenant shall make a general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts as they become due or shall file a petition in bankruptcy, or shall be adjudicated as insolvent or shall file a petition in any proceeding seeking any reorganization, arrangements, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, or shall file an answer admitting or fail timely to contest or acquiesce in the appointment of any trustee, receiver or liquidator of Tenant or any material part of its properties; or (f) if within ninety (90) days after the commencement of any proceeding against Tenant seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future statute, law or regulation, such proceeding shall not have been dismissed, or if, within ninety (90) days after the appointment without the consent of acquiescence of Tenant, of any trustee, receiver or liquidator of Tenant or of any material part of its properties, such appointment shall not have been vacated; or (g) if this Lease or any estate of Tenant hereunder shall be levied upon under any attachment or execution and such attachment or execution is not vacated within ten (10) days.  Notwithstanding the foregoing provisions of this Section 20.1, in the event Tenant shall fail to perform or shall default in the performance of any term, covenant or condition of this Lease on two (2) or more separate occasions during any twelve (12) month period, then even though such failures or defaults may have been cured by Tenant, any such further failure or default by Tenant during [62]the term of this Lease shall be deemed a default without the ability of cure by Tenant.

20.2    If, as a matter of law, Landlord has no right on the bankruptcy of Tenant to terminate this Lease, then, if Tenant, as debtor, or its trustee wishes to assume or assign this Lease, in addition to curing or adequately assuring the cure of all defaults existing under this Lease on Tenant's part on the date of filing of the proceeding (such assurances being defined below), Tenant, as debtor, or the trustee or assignee must also furnish adequate assurances of future performance under this Lease (as defined below).  Adequate assurance of curing defaults means the posting with Landlord of a sum in cash sufficient to defray the cost of such a cure.  Adequate assurance of future performance under this Lease means posting a deposit equal to three (3) months' rent, including all other charges payable by Tenant hereunder, such as the amounts payable pursuant to Article 5 hereof, and, in the case of an assignee, assuring Landlord that the assignee is financially capable of assuming this Lease, and that its use of the Demised Premises will not be detrimental to the other tenants in the Building or Landlord.  In a reorganization under Chapter 11 of the Bankruptcy Code, the debtor or trustee must assume this Lease or assign it within one hundred twenty (120) days from the filing of the proceeding, or he shall be deemed to have rejected and terminated this Lease.

21.    **Remedies.**

If any of the Events of Default shall occur, then Landlord shall have the following remedies:

(a)    Landlord at any time after the Event of Default, at Landlord's option, may give to Tenant three (3) days' notice of termination of this Lease, and in the event such notice is given, this Lease shall come to an end and expire (whether or not the Term shall have commenced) upon the expiration of such three (3) days, but Tenant shall remain liable for damages as provided in Article 22 hereof.

(b)    Either with or without terminating this Lease, Landlord may immediately or at any time after the Event of Default or after the date upon which this Lease shall expire, [63]reenter the Demised Premises or any part thereof, without notice, either by summary proceedings or by any other applicable action or proceeding, or by force or otherwise (without being liable to indictment,

---

59 after written notice thereof to Tenant;
60 or in the event such failure cannot reasonably be cured within thirty (30) days,
61 and such failure shall continue for more than ten (10) days after written notice thereof to Tenant;
62 said twelve (12) month period
63 lawfully

ACLR, LLC Civil Action
No. 15-787 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 51 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
17

prosecution or damages therefor), and may repossess the Demised Premises and remove any and all of Tenant's property and effects from the Demised Premises.

(c)     Either with or without terminating this Lease, Landlord may relet the whole or any part of the Demised Premises from time to time, either in the name of Landlord or otherwise, to such tenant or tenants, for such term or terms ending before, on or after the Expiration Date, at such rental or rentals and upon such other conditions, which may include concessions and free rent periods, as Landlord, in its sole discretion, may determine. In the event of any such reletting, Landlord shall not be liable for the failure to collect any rental due upon any such reletting, and no such failure shall operate to relieve Tenant of any liability under this Lease or otherwise to affect any such liability; and Landlord may make such repairs, replacements, alterations, additions, improvements, decorations and other physical changes in and to the Demised Premises as Landlord, in its sole discretion, considers advisable or necessary in connection with any such reletting or proposed reletting, without relieving Tenant of any liability under this Lease or otherwise affecting such liability.

(d)     Landlord shall have the right to recover the rental and all other amounts payable by Tenant hereunder as they become due (unless and until Landlord has terminated this Lease) and all other damages incurred by Landlord as a result of an Event of Default.

(e)     The remedies provided for in this Lease are in addition to any other remedies available to Landlord at law or in equity by statute or otherwise.

## 22.     **Termination upon Default.**

Upon termination of this Lease by Landlord pursuant to Article 21 hereof, Landlord shall be entitled to recover from Tenant the aggregate of: (a) the worth at the time of award of the unpaid rental which had been earned at the time of termination; (b) the worth at the time of award of the amount by which the unpaid rental which would have been earned after termination until the time of award exceeds the then reasonable rental value of the Demised Premises during such period; (c) the worth at the time of the award of the amount by which the unpaid rental for the balance of the term of this Lease after the time of award exceeds the reasonable rental value of the Demised Premises for such period; and (d) any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom. The "worth at the time of award" of the amounts referred to in clauses (a) and (b) above is computed from the date such rent was due or would have been due, as the case may be, by allowing interest at the rate of two percent (2%) in excess of the prime rate as published in The Wall Street Journal or, if a higher rate is legally permissible, at the highest rate legally permitted. The "worth at the time of award" of the amount referred to in clause (c) above is computed by discounting such amount at the discount rate of the Federal Reserve Bank of Chicago at the time of award, plus one percent (1%).

## 23.     **Landlord's Right to Cure Defaults.**

All covenants, terms and conditions to be performed by Tenant under any of the terms of this Lease shall be at its sole cost and expense and without any abatement of rental[64]. If Tenant shall fail to pay any sum of money, other than Basic Rental, required to be paid by it hereunder or shall fail to perform any other act on its part to be performed hereunder and such failure shall continue for thirty (30) days after notice thereof by Landlord, Landlord may, but shall not be obligated so to do, and without waiving or releasing Tenant from any obligations of Tenant, make any such payment or perform any such other act on Tenant's part to be made or performed as in this Lease provided. All sums so paid by Landlord and all necessary incidental costs shall be deemed additional rental hereunder and shall be payable to Landlord on demand, and Landlord shall have (in addition to any other right or remedy of Landlord) the same rights and remedies in the event of the nonpayment thereof by Tenant as in the case of default by Tenant in the payment ~~thereof by Tenant as in the case of default by Tenant in the payment~~ of Basic Rental.

## 24.     **Attorneys' Fees.**

~~If Landlord uses the services of an attorney in connection with (i) any breach or default in the performance of any of the provisions of this Lease, in order to secure compliance with such~~

---

[64] , except as expressly set forth herein.

~~provisions or recover damages therefor, or to terminate this Lease or evict Tenant, or (ii) any action brought by Tenant against Landlord, or (iii) any action brought against Tenant in which Landlord is made a party, Tenant shall reimburse Landlord upon demand for any and all attorneys' fees and expenses so incurred by Landlord.~~  See attached Rider.

## 25.    **Subordination.**

25.1    This Lease is and shall be subject and subordinate, at all times, to (a) the lien of any mortgage or mortgages which may now or hereafter affect the Building, and to all advances made or hereafter to be made upon the security thereof and to the interest thereon, and to any agreements at any time made modifying, supplementing, extending or replacing any such mortgages, and (b) any ground or underlying lease which may now or hereafter affect the Building, including all amendments, renewals, modifications, consolidation, replacements and extensions thereof.  Tenant shall attorn to any such mortgagee and/or ground or underlying lessor upon the date it acquires title to the Building.  Tenant shall not have the right or option to terminate this Lease in the event title to the Building is acquired by such mortgagee or lessor.  ~~Any such mortgagee acquiring title to the Building through foreclosure, exercise of a power of sale or deed in lieu of foreclosure may, upon so acquiring title to the Building, at its sole option, accept this Lease on all of its terms and conditions or terminate this Lease and exercise the rights of foreclosure which are accorded the purchaser or foreclosing mortgagee pursuant to Michigan law.~~  Tenant shall, upon such purchaser's or mortgagee's request, execute a new lease with such purchaser or mortgagee upon materially identical terms as this Lease.  Notwithstanding the foregoing, at the request of the holder of any of the aforesaid mortgage or mortgages or the lessor under the aforesaid ground or underlying lease, this Lease may be made prior and superior to such mortgage or mortgages and/or such ground or underlying lease.  See attached Rider.

25.2    At the request of Landlord, Tenant shall execute and deliver such further instruments as may be reasonably required to implement the provisions of this. Article 25.  Tenant hereby irrevocably, during the term of this Lease, constitutes and appoints Landlord as Tenant's agent and attorney-in-fact to execute any such instruments if Tenant shall failure or refuse to execute the same within ten (10) days after notice from Landlord.

25.3    ~~If, as a condition of approving this Lease, Landlord's mortgagee shall request reasonable modifications of this Lease, Tenant shall not unreasonably withhold or delay its agreement to such modifications, provided that such modifications do not increase the obligations or materially and adversely affect the rights of Tenant under this Lease.~~

## 26.    **Merger.**

The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation hereof, shall not work a merger, and shall, at the option of Landlord, terminate all or any existing subleases or subtenancies, or may, at the option of Landlord, operate as an assignment to it of any or all such subleases or subtenancies.

## 27.    **Nonliability of Landlord.**

27.1    In the event Landlord hereunder or any successor owner of the Building shall sell or convey the Building, all liabilities and obligations on the part of the original Landlord or such successor owner under this Lease accruing thereafter shall terminate, and thereupon all such liabilities and obligations shall be binding upon the new owner.  Tenant shall attorn to such new owner.

27.2    Landlord shall not be responsible or liable to Tenant for any loss or damage that may be occasioned by or through the acts or omissions of persons occupying adjoining areas or any part of the area adjacent to or connected with the Demised Premises or any part of the Building or for any loss or damage resulting to Tenant or his property from theft or a failure of the security systems in the Building, or for any damage or loss of property within the Demised Premises from any cause [65]~~other than solely~~ by reason of the ~~gross~~ negligence or willful act of Landlord, and no such occurrence shall be deemed to be an actual or constructive eviction from the Demised Premises or result in an abatement of rental.

---

65 except to the extent caused

ACLR, LLC Civil Action
No. 15-789 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 53 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
19

27.3    If Landlord shall fail to perform any covenant, term or condition of this Lease upon Landlord's part to be performed, and, if as a consequence of such default, Tenant shall recover a money judgment against Landlord, such judgment shall be satisfied only against the right, title and interest of Landlord in the building and out of rents or other income from the building receivable by Landlord, or out of the consideration received by Landlord from the sale or other disposition of all or any part of Landlord's right, title and interest in the Building, and neither Landlord nor any of the members or partners of Landlord shall be liable for any deficiency.

## 28.    Estoppel Certificate.

At any time and from time to time upon ten (10) days' prior request by Landlord, Tenant will promptly execute, acknowledge and deliver to Landlord, a certificate indicating (a) that this Lease is unmodified and in full force and effect (or, if there have been modifications, that this Lease is in full force and effect, as modified, and stating the date and nature of each modification), (b) the date, if any, to which rental and other sums payable hereunder have been paid, (c) that no notice has been received by Tenant of any default which has not been cured, except as to defaults specified in said certificate, and (d) such other matters as may be reasonably requested by Landlord.  Any such certificate may be relied upon by any prospective purchaser, mortgagee or beneficiary under any deed of trust of the Building or any part thereof.

## 29.    No Light, Air or View Easement.

Any diminution or shutting off of light, air or view by any structure which may be erected on lands adjacent to the Building shall in no way affect this Lease or impose any liability on Landlord.

## 30.    Holding Over.

It is hereby agreed that in the event of Tenant holding over after the termination of this Lease, thereafter the tenancy shall be from month to month in the absence of a written agreement to the contrary, and Tenant shall pay to Landlord a daily occupancy charge equal to [66]seven percent (7%) of the monthly rental under Paragraph 5 hereof for the last lease year (plus all other charges payable by Tenant under this Lease) for each day from the expiration or termination of this Lease until the date the Demised Premises are delivered in the condition required herein, and Landlord's right to damages for such illegal occupancy shall survive.

## 31.    Abandonment.

If Tenant shall abandon or surrender the Demised Premises, or be dispossessed by process of law or otherwise, any personal property belonging to Tenant and left on the Demised Premises shall be deemed to be abandoned, or, at the option of Landlord, may be removed by Landlord at Tenant's expense.

## 32.    Security Deposit.

Upon the execution of this Lease, Tenant has deposited with Landlord the "Deposit" in the amount set forth in Section 1(j) hereof.  The Deposit shall be held by Landlord as security for the faithful performance by Tenant.  If Tenant fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Landlord may, but shall have no obligation to, use, apply or retain all or any portion of the Deposit for the payment of any rent or other charge in default or for the payment of any other sum to which Landlord may become obligated by reason of Tenant's default, or to compensate Landlord for any loss or damage which Landlord may suffer thereby.  If Landlord so uses or applies all or any portion of the Deposit, Tenant shall within ten (10) days after demand therefor deposit cash with Landlord in an amount sufficient to restore the deposit to the full amount thereof.  Landlord shall not be required to keep the deposit separate from its general accounts.  If Tenant performs all of Tenant's obligations hereunder, the Deposit or so much thereof as has not theretofore been applied by Landlord, shall be returned, without payment of interest or other increment for its use, to Tenant (or, at Landlord's option, to the last assignee, if any, of Tenant's interest hereunder) at the expiration of the Term, and after Tenant has vacated the Demised Premises.  No trust relationship is created herein between Landlord and Tenant with respect to the Deposit.

---

[66] five percent (5%)

ACLR, LLC Civil Action
No. 15-789 & 16-309
Settlement Proposal

Case 1:13-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 54 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
20

## 33.  **Waiver.**

33.1    The waiver by Landlord [67] of any agreement, condition or provision herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision herein contained, nor shall any custom or practice which may grow up between the parties in the administration of the terms hereof be construed to waive or to lessen the right of Landlord [67] to insist upon the performance by [68] ~~Tenant~~ of the terms hereof in strict accordance with said terms. The subsequent acceptance of rental hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any agreement, condition or provision of this Lease, other than the failure of Tenant to pay the particular rental so accepted, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such rental.

33.2    Landlord and Tenant hereby waive trial by jury in any action, proceeding, or counterclaim brought by Landlord or Tenant against the other on any matter whatsoever arising out of or in any way connected with this Lease, the relationship of Landlord to Tenant, the use or occupancy of the Demised Premises by Tenant or any person claiming through or under Tenant, any claim of injury or damage, and any emergency or other statutory remedy; provided, however, the foregoing waiver shall not apply to any action for personal injury or property damage. ~~If Landlord commences any summary or other proceeding for nonpayment of rent or the recovery of possession of the Demised Premises, Tenant shall not interpose any counterclaim of whatever nature or description in any such proceeding, unless the failure to raise the same would constitute a waiver thereof.~~

## 34.  **Notices.**

All notices, consents, requests, demands, designations or other communications which may or are required to be given by either party to the other hereunder shall be in writing and shall be deemed to have been duly given when personally delivered or deposited in the United States mail, certified or registered, postage prepaid, and addressed as follows: to Tenant at the address set forth in section 1(k) hereof, or to such other place as Tenant may from time to time designate in a notice to Landlord; to Landlord at the address set forth in Section 1(l) hereof, or to such other place as Landlord may from time to time designate in a notice to Tenant~~; or, in the case of Tenant, delivered to Tenant at the Demised Premises~~. In the event a Guarantor is listed in Section 1(m) hereof and such Guarantor executes this Lease, Landlord shall forward copies of all notice of default hereunder to the Guarantor at the address set forth in Section 1(n) hereof. Tenant hereby appoints as its agent to receive the service of all dispossessory or distraint proceedings and notices thereunder the person in charge of or occupying the Demised Premises at the time, and, if no person shall be in charge of or occupying the Demised Premises at the time, then such service may be made by attaching the same on the main entrance of the Demised Premises.

## 35.  **Intentionally Omitted.**

## 36.  **Complete Agreement.**

There are no oral agreements between Landlord and Tenant affecting this Lease, and this Lease supersedes and cancels any and all previous negotiations, arrangements, brochures, agreements and understandings, if any, between Landlord and Tenant or displayed by Landlord to Tenant with respect to the subject matter of this Lease or the Building. There are no representations between Landlord and Tenant other than those contained in this Lease and all reliance with respect to any representations is solely upon such representations.

## 37.  **Corporate Authority.**

If Tenant signs as a corporation, [69] each of the persons executing this Lease on behalf of Tenant does hereby covenant and warrant that Tenant is a fully authorized and existing [70] ~~corporation,~~

---

67 or Tenant
68 the other party
69 or other entity
70 entity

ACLR LLC Civil Action
No. 15-789 & 16-309
Settlement Proposal

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
21

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 55 of 134

that Tenant has and is qualified to do business in Michigan, that [71]~~the corporation~~ has full right and authority to enter into this Lease, and that each and all of the persons signing on behalf of [71]~~the corporation~~ are authorized to do so. See attached Rider.

## 38. **Inability to Perform.**

If, by reason of the occurrence of unavoidable delays due to acts of God, governmental restrictions, strikes, labor disturbances, shortages of materials or supplies or for any other cause or event beyond Landlord's reasonable control, Landlord is unable to furnish or is delayed in furnishing any utility or service required to be furnished by Landlord under the provisions of Article 8 hereof or any other provisions of this Lease or any collateral instrument, or is unable to perform or make or is delayed in performing or making any installations, decorations, repairs, alterations, additions, or improvements, whether required to be performed or made under this Lease or under any collateral instrument, or is unable to fulfill or is delayed in fulfilling any of Landlord's other obligations under this Lease or any collateral instrument, no such inability or delay shall constitute an actual or constructive eviction in whole or in part, or entitle Tenant to any abatement or diminution of rental or other charges due hereunder or relieve Tenant from any of its obligations under this Lease, or impose any liability upon Landlord or its agents by reason of inconvenience or annoyance to Tenant, or injury to or interruption of Tenant's business, or otherwise.

## 39. **Covenant of Quiet Enjoyment.**

Upon Tenant paying the rental and other charges due hereunder and performing all of Tenant's obligations under this Lease, Tenant may peacefully and quietly enjoy the Demised Premises during the term of this lease; subject, however, to the provisions of this Lease and to any mortgages or ground or underlying leases referred to in Article 25 hereof.

## 40. **Miscellaneous.**

40.1    The words "Landlord" and "Tenant" as used herein shall include the plural as well as the singular. If there be more than one Tenant, the obligations hereunder imposed upon Tenant shall be joint and several.

40.2    Submission of this instrument for examination or signature by Tenant does not constitute a reservation of or option for lease, and it is not effective as a lease or otherwise until execution and delivery by both Landlord and Tenant.

40.3    The agreements, conditions and provisions herein contained shall, subject to the provisions as to assignment, set forth in Article 17 hereof, apply to and bind the heirs, executors, administrators, successors and assigns of the parties hereto.

40.4    Tenant shall not without the consent of Landlord, use the name of the Building for any purpose other than as the address of the business to be conducted by Tenant in the Demised Premises. Landlord reserves the right to select the name of the Building and to make such changes of name as it deems appropriate from time to time.

40.5    If any provisions of this Lease shall be determined to be illegal or unenforceable, such determination shall not affect any other provisions of this Lease and all such other provisions shall remain in full force and effect.

40.6    This Lease shall be governed by and construed pursuant to the laws of the State of Michigan.

---

[71] said entity

19

ACLR CLG Civil Action
No. 15-767 & 16-309
Settlement Proposal

PY07 Duplicate Payment Audit
Net Payment Amount  Exhibit B-4

Office Lease
22

Case 2:15-cv-00767-PEC  Document 101-1  Filed 11/06/20  Page 56 of 134

40.7    Upon Landlord's written request, Tenant shall promptly furnish Landlord, from time to time, but not more frequently than twice a year, financial statements reflecting Tenant's current financial condition.

41 – 43.  See attached Rider.

The Rider is incorporated into this Lease as if fully set forth herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Lease as of the date set forth in Section 1(a).

**WITNESS:**

**SMC INVESTORS, L.L.C.,**
a Michigan limited liability company

By:    KOJAIAN SMC-SPE, INC.,
       a Michigan corporation, Managing Member

       By:    _____
              C. Michael Kojaian, President

                          **"LANDLORD"**

**ACLR, LLC**
a Michigan limited liability company

By:    _____
       Chris Mucke
Its:   Managing Principal

                          **"TENANT"**

~~The undersigned, the Guarantor listed in Section 1(m) hereof, hereby executes this Lease for the purpose of guaranteeing the performance of Tenant hereunder pursuant to Article 35 hereof.~~

By:    _____N/A_____

By:    _____N/A_____

                          **"GUARANTOR"**

**RIDER TO LEASE** by and between **SMC INVESTORS, L.L.C.**, as Landlord and **ACLR, LLC**, as Tenant, for premises at 38705 Seven Mile Road, Livonia, Michigan.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

<u>Rider to Section 3.1:</u>

Notwithstanding the provisions of Section 3.1 hereof:

(a)  Provided Tenant is not in default beyond any applicable cure period at the time of the exercise of such right, or at the commencement of such period, Tenant shall have the right to extend the term of this Lease for one (1) additional period of five (5) years upon all of the terms and conditions contained herein. Tenant shall exercise such right, if at all, by written notice to Landlord, not less than nine (9) months prior to the expiration of the term of this Lease.

(b)  If Tenant shall exercise its right(s) to extend the term of this Lease as aforesaid, the annual Basic Rental during such five (5) year period shall be at the then current prevailing market rate for comparable buildings in the Livonia, Michigan area on an as-is basis but not less than the rate paid during the last year of the term of this Lease. In the event Tenant shall exercise such right to extend the term of the Lease for such period, Tenant shall pay its share of Additional Expenses, Additional Taxes and utilities consumed in accordance with the provisions of this Lease, but the base year for determining the Additional Expenses and Additional Taxes shall be 2016.

(i)  Within ten (10) business days after the exercise by Tenant of such right to extend the term of this Lease for such five (5) year period, Landlord shall submit to Tenant Landlord's determination of the Basic Rental for the Demised Premises for such five (5) year period. If Tenant does not notify Landlord of its acceptance of such Basic Rental as so determined by Landlord within ten (10) business days after the receipt thereof, then the parties shall proceed as provided in paragraph (ii) below.

(ii)  Within ten (10) business days after said ten (10) business day period, Landlord and Tenant shall each simultaneously submit to the other in a sealed envelope its suggested annual Basic Rental for such period, which rental shall be Landlord's and Tenant's respective opinions as to the amount that is the prevailing market rent for the Demised Premises (but Landlord's figure need not be the same figure as provided pursuant to (i) above). If the higher of such suggested rentals is not more than one hundred five percent (105%) of the lower of such suggested rentals for each year of such period, then the average of the two suggested rentals shall be the Basic Rental for such period. Otherwise, Landlord and Tenant shall negotiate in good faith to agree upon the Basic Rental for such period, and if Landlord and Tenant are unable to agree within ten (10) business days, the determination of the Basic Rental shall be made in accordance with paragraph (iii) below.

(iii)  Within ten (10) business days after the expiration of the ten (10) business day period referred to in paragraph (ii) above, Landlord and Tenant shall mutually select an MAI appraiser with experience in real estate activities, including at least five (5) years' experience in appraising office space in Livonia, Michigan area. If the parties cannot agree on such an appraiser, within ten (10) business days thereafter, each shall select an independent MAI appraiser meeting the aforementioned criteria and within five (5) business days thereafter the two appointed appraisers shall select a third appraiser meeting the aforementioned criteria and the third appraiser shall determine the Basic Rental for such period in accordance with paragraph (iv) below. If either Landlord or Tenant shall fail to make such appointment within said ten (10) day period, the other shall make such appointment on its behalf.

(iv)  Once the appraiser or third appraiser has been selected as provided in paragraph (iii) above, each of Landlord and Tenant shall submit to such appraiser its suggested rental figure as submitted to the other party pursuant to paragraph (ii) above. As soon thereafter as practical, the appraiser shall select one of the two suggested Basic Rentals submitted by Landlord and Tenant (and no other amount) that is closer to the one determined by the third appraiser. The Basic Rental so selected by the appraiser shall be binding on Landlord and Tenant. Landlord and Tenant shall equally share the cost of such appraisal.

(c)     Tenant shall have the right to occupy the Demised Premises on a nonexclusive and rent-free basis from and after fifteen (15) days prior to the Anticipated Commencement Date in order for Tenant to install its trade fixtures, furniture and equipment in the Demised Premises and ready the same for its use. The Commencement Date shall not be deemed to have occurred as a result of such nonexclusive occupancy unless Tenant shall conduct business from the Demised Premises during such period. Such nonexclusive occupancy shall be at Tenant's sole risk and Landlord shall have absolutely no liability to Tenant for any damages or loss of Tenant's property left in the Demised Premises during such nonexclusive period. During such period, Landlord shall have the right to perform Landlord's construction work in the Demised Premises in order to ready the same for Tenant's use and occupancy and Tenant shall not interfere with Landlord's construction work.

## Rider to Section 4:

Notwithstanding the provisions of Section 4 hereof:

(a)     Based on the information supplied by Tenant to Landlord and substantially in accordance with the Exhibit "C" attached hereto, Landlord shall, at Tenant's sole cost and expense, complete the Demised Premises using Building Standard materials. In accordance with the cost breakdown attached hereto as Exhibit "C-1", Landlord has determined the cost to construct the improvements is $49,788.00.

(b)     Landlord shall cause the construction of such improvements to be promptly commenced upon execution of this Lease and diligently completed in a good and workmanlike manner and in compliance with all applicable laws. Landlord unconditionally guarantees all such work performed by, or at the direction of, Landlord in the construction of said improvements against defective workmanship and materials and will remedy any such defects which appear within a period ending one (1) year after the Commencement Date. At the end of said warranty period, Landlord will, upon the request of Tenant, assign to Tenant any guarantees of workmanship and materials which Landlord may receive in connection with the improvements to the Demised Premises for items Tenant is required by this Lease to maintain.

## Rider to Section 4(e):

(a)     The term "substantially completed" shall mean that said improvements to the Demised Premises have been completed with the exception of minor items which can be completed with no interference to Tenant's business operations in the Demised Premises (i.e., so called "punch list items") and Landlord has received all required certificates of occupancy if any, from applicable governmental bodies for Tenant's occupancy of the Demised Premises.

(b)     Tenant shall have the right to submit a so-called "punch list" of incomplete or defective items in Landlord's construction of the Demised Premises not earlier than the third (3rd) day prior to the delivery of the Demised Premises by Landlord to Tenant with Landlord's work substantially completed and not later than the date of such delivery. Landlord shall promptly complete such incomplete items and remedy such defective items within forty-five (45) days of the submission of the applicable punch list.

## Rider to Section 5.2(a):

Notwithstanding the provisions of Section 5.2(a) hereof, the following items shall be excluded from Expenses:

(a)     Advertising and marketing costs;
(b)     Principal and interest on debt;
(c)     Refinancing costs;
(d)     Ground lease rents;

(e)     The cost or expense of any work or service performed or supplied at Landlord's cost or expense for any other tenant of the Building, to the extent such service is not available to Tenant;

ACLR, LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 59 of 134
Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
25

(f)    Interest, fines, penalties or late payment charges incurred by Landlord (including, without limitation, such charges incurred under any ground lease);

(g)    Liability to third parties resulting from Landlord's negligent acts or omissions;

(h)    The cost or expense of any clean up or remediation of hazardous or other regulated substances at or from the Development or the Building to meet the requirements of any law;

(i)    Any management fees in excess of five percent (5%) of the gross rents.

## Rider to Section 5.2(c):

Notwithstanding the provisions of Section 5.2 hereof, "Controllable Expenses" shall not increase by more than six percent (6%) per annum on a cumulative basis during the term of this Lease (not to exceed one hundred six percent (106%) for 2012, one hundred twelve percent (112%) for 2013, one hundred eighteen percent (118%) for 2014, etc.). For purposes hereof, Controllable Expenses shall be all Expenses other than utilities, insurance, snow removal, Taxes and costs of complying with governmental laws and regulations.

## Rider to Section 5.3:

For a period of twelve (12) months after the end of each respective calendar year to which such records relate, Tenant shall have the right upon thirty (30) days prior written notice to Landlord to inspect Landlord's records relating to such Taxes and Expenses. Such inspection shall be conducted at Landlord's office during normal business hours at Tenant's expense. Such inspection shall be conducted by a certified public accountant or an employee of Tenant and the person or entity conducting such inspection shall enter into a confidentiality agreement in form and substance satisfactory to Landlord and shall not be compensated on a contingency basis. If such inspection shall disclose that Landlord has overstated Expenses or Taxes by more than five percent (5%) during any year, Landlord shall reimburse Tenant for the reasonable costs of such inspection.

## Rider to Section 8.3:

Notwithstanding the provisions of Section 8.3 hereof, in the event any services required to be provided by Landlord pursuant to Section 8.3 hereof are not provided due to Landlord's negligence or willful act and if Tenant is unable to operate in the Demised Premises as a result thereof for in excess of three (3) consecutive business days, then the Basic Rental and all other rental and charges hereunder shall abate from and after such three (3) consecutive business day period until such services are restored or Tenant again commences operations in the Demised Premises. Such abatement shall be Tenant's sole remedy for Landlord's failure to provide such services.

## Rider to Section 9.1:

Notwithstanding the provisions of Section 9.1 hereof, upon the written request of Tenant, Landlord shall notify Tenant in writing at the time additional alterations, additions and improvements are proposed to be installed, whether Landlord shall require Tenant to remove same upon the expiration or termination of this Lease.

## Rider to Section 11.1:

Landlord shall advise Tenant if in the reasonable opinion of Landlord's architect the damage can be repaired and restored within one hundred eighty (180) days. If Landlord shall notify Tenant that such damage cannot be repaired and restored within such one hundred eighty (180) day period, Tenant shall have the right to terminate this Lease, by written notice to Landlord within thirty (30) days after receipt of Landlord's notice. Landlord's estimate of the restoration period shall be furnished to Tenant as soon as practicable, but not later than seventy-five (75) days after the date of such damage or destruction.

## Rider to Section 13:

If any part of the Development shall be taken and such taking has a material adverse effect on Tenant's ability to conduct its business in the Demised Premises in a manner reasonably comparable to that conducted immediately before such taking, then Tenant may terminate this Lease as of the date of such taking by giving written notice to Landlord within 30 days after the taking, and all rent shall be apportioned as of the date of such taking. If a taking occurs and this Lease is not terminated pursuant to this Section, Landlord will promptly restore the remainder of the Demises Premises, Building and/or Development, as applicable.

## Rider to Section 15.1:

Landlord hereby waives all claims against Tenant for damage to any property or injury or death of any person in the Common Areas arising at any time and from any cause, whatsoever, and Landlord shall hold Tenant harmless from any damage to any property or injury to or death of any person arising in, on or about the Common Areas. The foregoing indemnity obligation of Landlord shall include reasonable attorneys' fees, investigation costs and all other reasonable costs and expenses incurred by Tenant from the first notice that any claim or demand is to be made or may be made. The provisions of this Rider to Section 15.1 shall survive the termination of this Lease with respect to any damage, injury or death occurring prior to such termination.

## Rider to Section 17.1:

Notwithstanding the provisions of Section 17.1 hereof, Landlord agrees that it will not unreasonably withhold its consent to a proposed assignment of this Lease or subletting of the Demised Premises by Tenant; provided that Tenant shall not sublet any portion of the Demised Premises or assign this Lease for any medical or dental use, or to any governmental agency. In determining reasonableness, Landlord may take into consideration all relevant factors surrounding the proposed assignment or subletting, including, without limitation: (i) the business reputation of the proposed assignee or subtenant and its officers, directors and stockholders, (ii) the nature of the business of the proposed assignee or subtenant and its affect on the other tenants of the Building, (iii) the financial condition of the proposed assignee or subtenant; and (iv) restriction, if any, contained in leases or other agreements affecting the Building.

## Rider to Section 24:

If either Landlord or Tenant places the enforcement of this Lease, the collection of any amount due or to become due or the recovery of possession of the Demised Premises in the hands of an attorney or files suit upon the other, the prevailing party will be entitled to reimbursement of its reasonable attorney fees and court costs to the extent allowed under applicable law.

## Rider to Section 25.1:

Landlord shall obtain a Non-disturbance and Attornment Agreement from Landlord's mortgagee of the Building in form and substance reasonably satisfactory to Tenant.

## Rider to Section 37:

If Landlord signs as a corporation or other entity, each of the persons executing this Lease on behalf of Landlord does hereby covenant and warrant that Landlord is a fully authorized and existing entity, that Landlord has and is qualified to do business in Michigan, that said entity has full right and authority to enter into this Lease, and that each and all of the persons signing on behalf of said entity are authorized to do so

## Section 41.  Temporary Space:

Commencing on the date of this Lease and continuing through the Commencement Date, Tenant shall have the right to occupy Suite 475 in the Building, consisting of approximately 892 rentable square feet (hereinafter referred to as the "Temporary Premises"). Tenant shall not be required to pay any Basic Rental with respect to such Temporary Premises. Further, Tenant shall

ACLR, LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 61 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
27

accept the Temporary Premises in its current "as-is" condition and Landlord shall have no obligation to make any improvements or renovations thereto. Tenant shall occupy the Temporary Premises pursuant to all of the terms and provisions of this Lease to the extent the same are applicable thereto. Upon the Commencement Date for the Demised Premises, Tenant shall deliver the Temporary Premises to Landlord in the same condition in which Tenant received it, ordinary wear and tear excepted, and all of Tenant's rights thereto shall terminate.

## Section 42.  Signage:

(a)     Landlord shall, at Landlord's sole cost and expense provide and install a building standard suite entry signage on the entrance door of the Demised Premises.

(b)     Landlord shall, at Landlord's sole cost and expense, provide and install for Tenant, identification signage to the Building Directory located on the ground floor of the Building.

## Section 43.  Security:

Landlord acknowledges that Tenant's business entails handling of sensitive information which may require Tenant to implement security measures for the Demised Premises. If Tenant is required by law or contract to do so, Tenant shall be permitted to install locks on the exterior doors of the Demised Premises (and any interior doors, as Tenant elects) which provide for key card access or other secured access as Tenant reasonably determines is necessary for its business. In such event, Tenant shall provide to Landlord a key card or other means of accessing the Demised Premises (collectively, for purposes of this Section, the "key") and Landlord hereby agrees to keep the key in a secure location. Landlord shall immediately notify Tenant in the event that Landlord loses or misplaces the key. If Tenant is using Landlord's janitorial services, Landlord may make the key available to Landlord's contractor providing such janitorial services to the Demised Premises. Landlord shall take reasonable measures with such contractor to ensure the safe keeping of the key and that Tenant be promptly notified in the event the key is lost or misplaced by such contractor. Landlord authorizes Tenant to install a security camera system in the Demised Premises. Notwithstanding anything contained herein to the contrary, prior to entering the Demised Premises, Landlord shall give Tenant reasonable advance notice of such entry and give Tenant an opportunity to be present during such entry, but no such notice shall be necessary and Landlord may enter the Demised Premises without Tenant being present with respect to providing janitorial services or in the event of an emergency situation in which such immediate entry is necessary to prevent damage to property or personal injury or death. Upon the request of Tenant, Landlord shall provide to Tenant information reasonably requested and available to Landlord if any, regarding Landlord's janitorial contractor and the persons performing the janitorial services to the Demised Premises for said contractor (including, without limitation, background checks performed on such persons).

**WITNESS:**

**SMC INVESTORS, L.L.C.,**
a Michigan limited liability company

By:     KOJAIAN SMC-SPE, INC.,
a Michigan corporation, Managing Member

By:     _____
C. Michael Kojaian, President

"LANDLORD"

**ACLR, LLC**
a Michigan limited liability company

By:     _____
Chris Mucke, Managing Principal

"TENANT"

5

EXHIBIT "A"

LP-4025608                    Office File Number: M-248725-W FA

SCHEDULE A, ITEM 5 - LEGAL DESCRIPTION CONTINUATION

City of Livonia

Parcel A:

A parcel of land in the Northwest 1/4 of Section 7, Town 1 South, Range 9 East, City of Livonia, Wayne County, Michigan, described as beginning at a point distant South 88 degrees 03 minutes 18 seconds West, 1725.28 feet along the North line of Section 7 and South 01 degrees 59 minutes 22 seconds East, 90.00 feet from the North 1/4 corner of Section 7, Town 1 South, Range 9 East, and proceeding thence North 88 degrees 03 minutes 18 seconds East along the South line of Seven Mile Road 260.46 feet; thence South 01 degrees 56 minutes 42 seconds East, 216.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 155.75 feet; thence North 01 degrees 56 minutes 42 seconds West, 201.00 feet to a point on the South line of Seven Mile Road; thence South 89 degrees 35 minutes 02 seconds East along said South Right-of-Way line 177.40 feet; thence South 01 degrees 56 minutes 42 seconds East, 217.69 feet; thence South 88 degrees 03 minutes 18 seconds West, 165.67 feet; thence South 01 degrees 56 minutes 42 seconds East, 161.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 41.33 feet; thence South 01 degrees 56 minutes 42 seconds East, 192.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 386.00 feet; thence North 01 degrees 59 minutes 22 seconds West, 593.00 feet to the point of beginning together with the benefit of the easements created by Reciprocal Easement Agreement recorded June 1, 1987 in Liber 23269 on Page 122, Wayne County Records, as amended by Corrective Reciprocal Easement Agreement dated August 10, 1987 and recorded August 10, 1987 in Liber 23394 on Page 258, Wayne County Records.

Tax Item No. 46-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-000    38705 Seven Mile Road

Parcel B:

A parcel of land in the Northwest 1/4 of Section 7, Town 1 South, Range 9 East, City of Livonia, Wayne County, Michigan, described as: Beginning at a point distant South 88 degrees 03 minutes 18 seconds West, 1725.28 feet along the North line of Section 7 and South 01 degrees 59 minutes 22 seconds East, 70.00 feet and North 88 degrees 03 minutes 18 seconds East 416.23 feet and South 01 degrees 56 minutes 42 seconds East, 35.00 feet and South 89 degrees 35 minutes 02 seconds East along the South line of Seven Mile Road, 177.40 feet from the North 1/4 corner of Section 7, Town 1 South, Range 9 East, and proceeding thence South 89 degrees 35 minutes 02 seconds East, 425.77 feet; thence South 01 degrees 56 minutes 42 seconds East, 200.15 feet; thence South 88 degrees 03 minutes 18 seconds West, 171.88 feet; thence South 01 degrees 56 minutes 42 seconds East, 161.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 171.88 feet; thence South 01 degrees 56 minutes 42 seconds East, 192.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 632.41 feet; thence North 01 degrees 56 minutes 42 seconds West, 192.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 41.33 feet; thence North 01 degrees 56 minutes 42 seconds West, 161.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 165.67 feet; thence North 01 degrees 56 minutes 42 seconds West, 217.69 feet to the point of beginning together with the benefit of the easements created by Reciprocal Easement Agreement recorded June 1, 1987 in Liber 23269 on Page 122, Wayne County Records, as amended by Corrective Reciprocal Easement Agreement dated August 10, 1987 and recorded August 10, 1987 in Liber 23394 on Page 258, Wayne County Records.

Tax Item No. 46-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-000    38701 Seven Mile Road

ACLR LLC Civil Action
No. 15-789 & 15-309   Prior Duplicate Payment Audit   Office Lease
Settlement Proposal   Net Payment Amount   Exhibit B-4   29

Case 2:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 63 of 134

EXHIBIT "A" (cont.)

Parcel C:
A parcel of land in the Northwest 1/4 of Section 7, Town 1 South, Range 9
East, City of Livonia, Wayne County, Michigan, described as beginning at a
point distant North 88 degrees 03 minutes 18 seconds East along the North line
of said Section 7, 780.05 feet and South 01 degrees 59 minutes 22 seconds
East, 70.00 feet and North 88 degrees 03 minutes 18 seconds East, 260.48 feet
from the Northwest corner of said Section 7, Town 1 South, Range 9 East, and
proceeding thence North 88 degrees 03 minutes 18 seconds East, 155.75 feet;
thence South 01 degrees 56 minutes 42 seconds East, 236.00 feet; thence South
88 degrees 03 minutes 18 seconds West, 155.75 feet; thence North 01 degrees 56
minutes 42 seconds West, 236.00 feet to the point of beginning together with
the benefit of the easements created by Reciprocal Easement Agreement recorded
June 1, 1987 in Liber 23269 on Page 122, Wayne County Records, as amended by
Corrective Reciprocal Easement Agreement dated August 10, 1987 and recorded
August 10, 1987 in Liber 23394 on Page 258, Wayne County Records.

Tax Item No. 46-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-000      38703 Seven Mile Road


LP-4025608                          Office File Number: M-248725-W FA

SCHEDULE A, ITEM 5 - LEGAL DESCRIPTION CONTINUATION

Parcel D:
A parcel of land in the Northwest 1/4 of Section 7, Town 1 South, Range 9
East, City of Livonia, Wayne County, Michigan, described as: Beginning at a
point distant South 88 degrees 03 minutes 18 seconds West along the North line
of said Section 7, 1725.28 feet and South 01 degrees 59 minutes 22 seconds
East, 70.00 feet and North 88 degrees 03 minutes 18 seconds East, 416.23 feet
and South 01 degrees 56 minutes 42 seconds East, 33.00 feet and South 89
degrees 35 minutes 02 seconds East, 603.17 feet from the North 1/4 corner of
Section 7; proceeding thence South 68 degrees 52 minutes 32 seconds East along
the North Right of Way line of Interstate 275, 177.69 feet; thence South 29
degrees 14 minutes 12 seconds East along the East Right of Way line of
Interstate 275, 177.69 feet; thence South 09 degrees 25 minutes 01 seconds
East along the East Right of Way line of Interstate 275, 328.40 feet; thence
South 88 degrees 03 minutes 18 seconds West, 287.66 feet; thence North 01
degrees 56 minutes 42 seconds West, 192.00 feet; thence South 88 degrees 03
minutes 18 seconds West, 171.88 feet; thence North 01 degrees 56 minutes 42
seconds West, 161.00 feet; thence North 88 degrees 03 minutes 18 seconds West,
171.88 feet; thence North 01 degrees 56 minutes 42 seconds West, 200.15 feet
to the point of beginning together with the benefit of the easements created by
Reciprocal Easement Agreement recorded June 1, 1987 in Liber 23269 on Page 122,
Wayne County Records, as amended by Corrective Reciprocal Easement Agreement
dated August 10, 1987 and recorded August 10, 1987 in Liber 23394 on Page 258,
Wayne County Records.

Tax Item No. 46-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-000      38695 Seven Mile Road

ACLR, LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 64 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
30

Exhibit "B"

Demised Premises
Suite 460

Temporary Premises
Suite 475



ACLR, LLC Civil Action
No. 15-787 & 15-303
Settlement Proposal

Case 1:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 65 of 134

Prior Duplicate Payment Audit
Net Payment Amount    Exhibit B-4

Office Lease
31

EXHIBIT "C"



ACLR, LLC Civil Action
No. 15-787 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 66 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
32

EXHIBIT "C-1"

April 6, 2011

*RE: ACLR*
    *38705 Seven Mile, Suite 460*
    *Livonia, MI*
    *5,448 U.S.F.*
    *6,102 R.S.F.*

Attached, please find a Preliminary Construction Breakdown for the above referenced project. These costs represent anticipated cost to Synergy Group, Inc. (including General Conditions and Fees).

| DESCRIPTION | QUANTITY | | | UNIT COST | TOTAL COST |
|---|---|---|---|---|---|
| **Demolition** | | | | | |
| 1. Interior walls | 190 LF | @ | 18.00 | $3,420.00 | |
| 2. Carpet and base | 600 SY | @ | 3.00 | $1,800.00 | |
| 3. Electrical | Lump Sum | | | $1,500.00 | |
| 4. HVAC | Lump Sum | | | $1,500.00 | |
| 5. Dumpsters | 2 EA | @ | 400.00 | $800.00 | $9,020.00 |
| **Partitions** | | | | | |
| 1. Insulated drywall partition to ceiling grid (8'-6") | Delete | | | | |
| 2. Build wall at MetLife sidelite | Lump Sum | | | $250.00 | |
| 3. Drywall patching | Lump Sum | | | $500.00 | |
| 4. Telephone backboard | Lump Sum | | | $250.00 | $1,000.00 |

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
33

EXHIBIT "C-1" (cont.)

*ACLR*
*38705 Seven Mile, Suite 460*
*Livonia, MI*

*Page 2*

| DESCRIPTION | QUANTITY | | UNIT COST | TOTAL COST |
|---|---|---|---|---|
| **Suite Entrance** | | | | |
| 1. Building standard suite entrance with 2'-0" sidelight | Existing | | | |
| 2. Suite exit | Existing | | | |
| **Doors, Frames & Hardware** | | | | |
| 1. Relocate existing door | Delete | | | |
| **Floorcovering** | | | | |
| 1. Building standard carpet | 680 SY | @ 20.00 allowance | $13,600.00 | |
| 2. Vinyl flooring | Delete | | | |
| 3. Vinyl base | 900 LF | @ 1.75 | $1,575.00 | |
| 4. Floor prep | Lump Sum | | $250.00 | $15,425.00 |
| **Wallcovering** | | | | |
| 1. Paint | 3,000 SF | @ 0.75 | $2,250.00 | |
| 2. Touch up doors | Lump Sum | | $500.00 | |
| 3. Touch up entry wall panels | Lump Sum | | $250.00 | $3,000.00 |
| **Ceiling** | | | | |
| 1. Tile and grid repair | Lump Sum | | $750.00 | $750.00 |
| **Fire Protection** | | | | |
| 1. Building standard fire protection | Lump Sum | | $1,500.00 | $1,500.00 |
| **HVAC** | | | | |
| 1. HVAC building standard | Lump Sum | | $2,500.00 | |
| 2. Air balance | 5,448 SF | @ 0.30 | $1,634.40 | $4,134.40 |
| **Electrical** | | | | |
| 1. 2 x 4 fluorescent lights - acrylic | Delete | | | |
| 2. Relocate existing lights | 15 EA | @ 85.00 | $1,275.00 | $1,275.00 |

ACLR, LLC Civil Action
No. 15-767 & 15-309
Settlement Proposal

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
34

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 68 of 134

EXHIBIT "C-1" (cont.)

*ACLR*                                                                                      *Page 3*
*38705 Seven Mile, Suite 460*
*Livonia, MI*

| DESCRIPTION | QUANTITY | | | UNIT COST | TOTAL COST |
|---|---|---|---|---|---|
| **Electrical Outlets** | | | | | |
| 1. Duplex | 4 EA | @ | 90.00 | $360.00 | |
| 2. Dedicated duplex | 2 EA | @ | 250.00 | $500.00 | |
| 3. Telephone openings | 2 EA | @ | 55.00 | $110.00 | |
| 4. Switches (rework) | Lump Sum | | | $250.00 | |
| 5. Standard exit lights | 2 EA | @ | 215.00 | $430.00 | |
| 6. Emergency light | 4 EA | @ | 210.00 | $840.00 | |
| 7. Rework existing panel | Lump Sum | | | $1,000.00 | |
| 8. Fire alarm horns / strobes | 5,448 SF | @ | 0.50 | $2,724.00 | |
| 9. Floor mounted furniture | | | | | |
| ( ) wire system ( ) locations | | | | | |
| a) ( ) dedicated circuits | 18 EA | @ | 250.00 | $4,500.00 | |
| b) ( ) furniture whip hook-ups | 6 EA | @ | 70.00 | $420.00 | $11,134.00 |
| **Miscellaneous** | | | | | |
| 1. Construction clean up | Lump Sum | | | $1,000.00 | |
| 2. Permit | Lump Sum | | | $750.00 | |
| 3. Dumpsters | 2 EA | @ | 400.00 | $800.00 | $2,550.00 |
| | | | | **TOTAL COST:** | **$49,788.00** |

*EXCLUSIONS:*

Structural reinforcement for superimposed loads of Tenant equipment
Telephone and communications equipment and related wiring
Security System
Appliances / appliance repairs
Reception Desk
Special HVAC / Electrical in phone room

ACLR, LLC Civil Action
No. 15-767 & 16-303
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 69 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
35

EXHIBIT "D"


## JANITORIAL SERVICES


### DAILY SERVICES:   (Five Times Per Week)

1.   Empty waste baskets.
2.   Empty and clean ash trays, including those in public areas.
3.   Dust desk tops which are clear of working papers.
4.   Sweep or vacuum traffic area - public and private.
5.   Toilet rooms:
    (a)   Empty all waste receptacles.
    (b)   Sweep and wet mop floors.
    (c)   Clean and disinfect all fixtures and clean mirrors and shelves.

6.   Clean and disinfect drinking fountains and water coolers.
7.   Police parking areas for rubbish and trash.

### WEEKLY SERVICES:

1.   Damp mop floors, stairways, lobbies and corridors.
2.   Sweep or vacuum entire floor area -- public and private.

### MONTHLY SERVICES:

1.   Strip, wax and polish floor in lobby area and isles.
2.   Dust window blinds.
3.   Wash all glass in office partitions.
4.   Wash outside and inside building entry mats.

### SEMI-ANNUAL SERVICES:

1.   Power scrub tile areas and wax or apply floor treatment.
2.   Wash windows.

### SEASONAL SERVICES:

1.   Snow removal from concrete walks as necessary.
2.   Snow plowing of the parking lots as necessary.
3.   Lawn cutting service of green areas as required.

ACLR LLC Civil Action
No. 15-789 & 16-309

Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 70 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
36

EXHIBIT "E"

## RULES AND REGULATIONS

1.  The Common Areas of the Building shall not be obstructed or used for any purpose other than coming to and from the Demised Premises.

2.  Landlord has the right to control access to the Building and refuse admittance to any person or persons without satisfactory identification or a pass issued by Tenant during hours determined by Landlord.

3.  Landlord shall upon reasonable notice have the right to enter upon the Demised Premises at reasonable hours for the purpose of inspecting the same.

4.  Landlord shall upon reasonable notice have the right to enter the Demised Premises at hours convenient to Tenant for the purpose of exhibiting the same to prospective tenants within one hundred eighty (180) day period prior to the expiration of the Lease.

5.  No person shall disturb other occupants of the Building by making loud or disturbing noises.

6.  Soliciting, peddling and canvassing is prohibited in the Building and Tenant shall cooperate to prevent the same.  Tenant shall not operate any vending machines in the Demised Premises without the prior written approval from Landlord.

7.  All deliveries and removal of furniture, equipment or other bulky items must take place after notification to Landlord, during such hours and in such manner as Landlord shall determine.  Tenant shall be responsible for all damage or injury resulting from the delivery or removal of all articles into or out of the Building or the Demised Premises.  No load shall be placed on the floors or in elevators in excess of the limits which shall be established by Landlord.  Tenant cannot use the elevator for moving in or out of the Building without specific arrangements with Landlord.

8.  Tenant shall not use any equipment emitting noxious fumes unless they are properly vented at Tenant's expense.

9.  Nothing shall be attached to the interior or exterior of the Building without the prior written consent of Landlord.  However, Tenant shall have the right to install and remove, within the Demised Premises (subject to the terms of this Lease), all of Tenant's furniture and normal business equipment.  Building standard levelor-style venetian blinds shall be used in windows designated by Landlord.  No other window treatments or objects shall be attached to, hung in or used in connection with any exterior of any door or window or from outside the Building.  No article shall be placed on any window sill.

10.  No sign or other representation shall be placed on the interior or exterior of the Building without prior written consent of Landlord.

11.  No hazardous articles shall be brought into or kept in the Building at any time.  No bicycles, vehicles or animals, except seeing eye and aide dogs, of any kind shall be brought into or kept in or about the Building.

12.  No marking, painting, drilling, boring, cutting, defacing of the walls, floors, ceilings of the Building shall be permitted without the prior written consent of Landlord.  Plastic protective floor mats shall be maintained over all carpeted areas under desks and chairs with casters.

13.  The electrical system and lighting fixtures in the Building and the Demised Premises shall not be altered or disturbed in any manner without the prior written consent of Landlord.  Any alterations or additions must be performed by licensed personnel authorized by Landlord.

14.  The toilets and other plumbing fixtures shall not be used for any other purpose than those for which they are designed.  No sweepings, rubbish or other similar materials or substances shall be deposited therein.

15.  Smoking is prohibited in the elevator(s), hallways, corridors, stairs, lobbies and other Common Areas of the Building as well as the Demised Premises.

16.  Tenant shall not waste electricity, water or air conditioning and shall

ACLR, LLC Civil Action
No. 15-767 & 15-309

Settlement Proposal
Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4
Other Lease
37

cooperate fully with Landlord to assure the most effective and efficient operation of the heating and/or air conditioning systems of the Building.

17. Tenant assumes full responsibility for protecting the Demised Premises from theft, robbery and pilferage. Except during Tenant's normal business hours, Tenant shall keep all doors to the Demised Premises locked and other means of entry to the Demised Premises closed and secured.

18. All cleaning, repairing, janitorial, decorating, painting or other services and work in and about the Demised Premises shall be done only by authorized Building personnel.

19. Tenant or Tenant's employees shall not distribute literature, flyers, handouts or pamphlets of any type in any of the Common Areas without the prior written consent of Landlord.

20. Tenant shall not cook, otherwise prepare or sell, any food or beverages in or from the Demised Premises. However, Tenant shall have the right to prepare food for the exclusive use of Tenant's employees.

21. Tenant shall not permit the use of any apparatus for sound production or transmission in such manner that the sound so transmitted or produced shall be audible or vibrations shall be detectable beyond the Demised Premises.

22. Tenant shall keep all electrical and mechanical apparatus free of vibration, noise and air waves which may be transmitted beyond the Demised Premises.

23. No floor covering shall be affixed to any floor in the Demised Premises by means of glue or other adhesive, unless the installation procedure is approved by Landlord.

24. Tenant shall comply with all rules and regulations established by Landlord pursuant to other applicable provisions of this Lease.

25. Landlord shall supply Tenant with two (2) keys or access cards for each outside door to the Building, including the Demised Premises. If Tenant requires any additional keys or access cards, Landlord shall supply the same at Tenant's expense.

Landlord shall not be responsible for the violation of any of the foregoing rules and regulations by other tenants of the Building and shall not be obligated to enforce the same against other tenants. But Landlord shall enforce and apply the rules and regulations in a non-discriminatory manner. Landlord shall have the right to amend these rules and regulations from time to time.

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 72 of 134

Prior Duplicate Payment Audit
Net Payment Amount    Exhibit B-4

Office Lease
38

## FIRST AMENDMENT TO LEASE

**THIS FIRST AMENDMENT TO LEASE** is made this 21 day of March 2013, by and between **Henry M. Nirenberg**, Court Appointed Receiver over the real property and improvements located at 38705 Seven Mile Road, Livonia Michigan, whose address is 2000 Town Center, Suite 1500, Southfield, Michigan, including his successors and assigns (hereinafter collectively referred to as "Receiver") (hereinafter referred to as "Receiver") and **ACLR, LLC,** a Michigan limited liability company, whose address is 38705 Seven Mile Road, Suite 460, Livonia, MI 48152 (hereinafter referred to as "Tenant").

## R E C I T A L S :

**WHEREAS,** prior to the receivership, SMC Investors, L.L.C., a Michigan limited liability company ("Landlord"), as Landlord, and Tenant, as Tenant entered into that certain Lease dated April 25, 2011, (hereinafter referred to as the "Lease"), pursuant to which Tenant leases Suite 460, consisting of 6,102 rentable square feet at 38705 Seven Mile Road, Livonia, Michigan (hereinafter referred to as the "Original Premises") more particularly described therein; and,

**WHEREAS,** for a temporary period beginning April 1, 2013 and ending February 28, 2015 (the "Temporary Period"), Tenant desires to be relieved of its obligations under the Lease with respect to the Original Premises (permitting the same to be temporarily leased by Workforce Software, Inc.), and for the Temporary Period, to continue the Lease, with respect to Suite 251, consisting of 1,469 rentable square feet at 38705 Seven Mile Road, Livonia, Michigan, at the rental rate set forth herein (hereinafter referred to as the "Replacement Premises"); and,

**WHEREAS,** upon the expiration of the Temporary Period, this First Amendment shall cease to be effective, the Tenant will vacate the Replacement Premises and continue to lease the Original Premises under the terms and conditions in the Lease on April 25, 2011; and,

**WHEREAS** and the Receiver is willing to permit the above, all as more particularly set forth herein.

**NOW THEREFORE,** for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree, for the Temporary Period, to amend the Lease as follows:

**1.**

a)       During the Temporary Period, , all references to the Original Premises in the Lease shall be replaced with references to the Replacement Premises as described above and the term "Demised Premises" shall refer to the Replacement Premises.

**2.**

a)       Tenant acknowledges that Landlord has earlier constructed the Replacement Premises and that Tenant is familiar with the physical condition of the Replacement Premises and hereby agrees to accept the Replacement Premises in its existing "as-is" condition, without representation or warranty of any kind by Landlord as to the present or future condition of the Replacement Premises. Tenant's taking of possession of the Replacement Premises shall be deemed conclusive evidence of Tenant's acceptance of the Replacement Premises in good order and satisfactory condition.

**3.**

During the Temporary Period, the Lease shall be amended as follows:

a)       Section 1(d) of the Lease captioned "Demised Premises" shall be amended as follows:

"1(d)    Demised Premises:       approximately 1,469 rentable square feet, Suite 251"

b)       Section 1(g) of the Lease captioned "Basic Rental" shall be amended to read as follows:

"1(g)    Basic Rental:

| Term | Monthly Basic Rental |
|------|---------------------|
| April 1, 2013 - February 28, 2015 | $2,081.08 |

c)       Section 1(h) of the Lease captioned "Tenant's Share" shall be amended to read as follows:

"1(h)    Tenant's Share:       1.3%

{00773590.DOC;2}

ACLR, LLC Civil Action
No. 15-767 & 16-809
Settlement Proposal

Prior Duplicate Payment Audit
Net Payment Amount    Exhibit B-4

Office Lease
39

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 73 of 134

**4.**

Upon the expiration of the Temporary Period, this First Amendment shall cease to be effective, the Tenant will vacate the Replacement Premises and continue to lease the Original Premises under the terms and conditions as originally set forth in the Lease on April 25, 2011.

**5.**

Each of Landlord and Tenant acknowledge that the Lease is in full force and effect and neither Landlord nor Tenant is currently in default thereunder.

**6.**

The Lease as herein amended is hereby ratified and confirmed by the parties hereto and shall remain in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands the day and year first above written.

**LANDLORD:**

By: _____
    Henry M. Nirenberg
Its:    Court Appointed Receiver

**TENANT:**

**ACLR, LLC**
a Michigan limited liability company

By: _____

Its:    Managing Principal

{00773590.DOC;2}

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Case 2:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 74 of 134

PY07 Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
40



Toll-Free: 877.4.WFORCE • Fax: 734.542.0635 • 38705 Seven Mile Road, Suite 300 • Livonia, MI 48152   www.WorkForceSoftware.com

March 19, 2013

Christopher Mucke
ACLR, LLC
38705 Seven Mile Road, Suite 460
Livonia, MI 48152

Dear Chris,

This letter will document our agreement concerning the leasing of your present office space at the address outlined above. We have signed a lease directly with the landlord for the rental of said premises for the period April 1, 2013 through February 28, 2015. We understand that you intend to sign a lease directly with the landlord for a different suite in the building. Our mutual understanding is that, due to the benefit ACLR will receive by virtue of WorkForce alleviating its lease commitment for that period, ACLR will compensate WorkForce for the lease rate differential, calculated as follows:

> Differential: $2.00 per square foot per annum
> Square footage: 6,102
> Term of lease: 23 months
> Calculation: $2.00 x 6102 x 23 / 12 = $23,391.00

Payments will be due quarterly in advance as follows:

| | | | |
|---|---|---|---|
| April 1, 2013: | $3,000.00 | April 1, 2014: | $3,000.00 |
| July 1, 2013: | $3,000.00 | July 1, 2014: | $3,000.00 |
| October 1, 2013: | $3,000.00 | October 1, 2014: | $3,000.00 |
| January 1, 2014: | $3,000.00 | January 1, 2015: | $2,391.00 |

Please sign below to indicate your acceptance of this agreement.

Sincerely,

David E. Hawkins
Chief Financial Officer

Agreed as outlined above:

_____                    3/15/13
                                             _____
Christopher Mucke, ACLR                      Date

**EmpCenter® WorkForce Management Software**
*Mitigating Complexity – Ensuring Compliance – Enabling Strategic HR*

ACLR, LLC Civil Action
No. 15-767366-309    Prior Duplicate Payment Audit    Office Lease
Settlement Proposal    Net Payment Amount   Exhibit B-4    41

Case 2:15-cv-00767-PEC   Document 101-4   Filed 11/06/20   Page 75 of 134

mckinley
www.mckinley.com
LIVE.WORK.SHOP.PLAY.

October 29, 2015                                          **Via Hand Delivery**


ACLR, LLC
38705 Seven Mile, Suite 251
Livonia, MI 48152

Dear Tenant:

The lender for this property has requested the enclosed Subordination, Non-disturbance and Attornment Agreements (SNDA) be executed. Pursuant to your lease, the landlord is exercising its right to demand a Subordination, Non-disturbance and Attornment Agreements from the tenant.

Please execute the enclosed SNDA. Once the documents are signed by the appropriate party on behalf of Tenant, please send a digital copy to tamber.mcpike@mckinley.com and retain a copy for your records. We will stop by next week to retrieve the original executed SNDA.

Once fully executed, an original SNDA will be sent to you directly. If you have any questions, please contact Terry McCann @ 734-769-8520, ext. #181. Thank you in advance for your prompt attention to this matter.

Very truly yours,

Tamber McPike

Tamber McPike

Commercial Tenant Services Coordinator
**McKinley, Inc.** | Live.Work.Shop.Play.
320 N. Main Street | Ann Arbor, MI 48104
phone: 734-769-8520 ext. 140  fax: 734-213-5474

ACLR, LLC Civil Action
No. 15-767-8005-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 76 of 134
Settlement Proposal

Pre-Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
42

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT ("Agreement") is made and entered into as of _____, 20_____, by and among ACLR, LLC, a Michigan limited liability company, whose address is 38705 Seven Mile Road, Livonia, Michigan 48152 ("Tenant"); UNIVERSAL PROPERTIES THREE, LLC, whose address is 26400 Twelve Mile Road, Suite 60, Southfield, Michigan 48034 ("Landlord"); and COMERICA BANK, whose address is 39200 Six Mile Road, Livonia, Michigan 48152, Attention: Commercial Loan Documentation, Mail Code 7578 ("Lender").

### PRELIMINARY STATEMENT

Landlord has incurred or will incur certain financial obligations to Lender and to secure such loan Landlord has granted one or more mortgages (collectively, "Mortgage") in favor of Lender on its leasehold interest in that certain parcel of real property and the improvements thereon, located in the City of Livonia, Wayne County, Michigan, as more particularly described on the attached Exhibit "A" ("Property").

Landlord and Tenant are parties to that certain lease dated April 25, 2011 as amended by that certain First Amendment to Lease dated March 21, 2013 and as amended by that certain Second Amendment to Lease dated June 1, 2014 (as amended, a sublease of Landlord's interest under a certain Ground Lease dated May 11, 1987 with Schoolcraft Development Authority, the "Sublease"), covering a portion of the Property.

Lender requires that the Sublease and the interests of Landlord and Tenant be subordinate to the terms and provisions of the Mortgage.

FOR VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS ACKNOWLEDGED, THE PARTIES AGREE AS FOLLOWS:

1. SUBORDINATION. The Sublease, and the rights of Landlord and Tenant in, to and under the Sublease and the Property, are hereby made subject, junior and subordinate in all respects to the Mortgage and to all renewals, modifications, consolidations, replacements and extensions of the Mortgage and to the rights of Lender under the Mortgage, as if all such instruments had been executed,

delivered and recorded prior to the execution of the Sublease. This clause shall be self-operative, and no further instrument shall be required. However, Landlord and Tenant covenant and agree that if requested by Lender, such parties will promptly execute, acknowledge and deliver any instrument or document requested by Lender to confirm the foregoing subordination of the Sublease.

2. NON-DISTURBANCE. In the event Lender forecloses upon the Property, or otherwise is the holder of the leasehold interest in the Property, then, so long as Tenant is not in default (beyond any applicable cure period) under any of the terms, covenants or conditions of the Sublease on Tenant's part to be performed, and is not a tenant at sufferance: (a) Tenant's possession of the Property and its rights and remedies under the Sublease shall not be diminished or interfered with by Lender; and (b) the Sublease shall not be terminated or affected by Lender's exercise of any remedy provided for in the Mortgage.

3. ATTORNMENT. In the event that Lender forecloses upon the Property or takes a deed in lieu of foreclosure, then:

(a)    Duties of Tenant. Tenant shall be bound to Lender, and Lender shall be bound to Tenant, under all of the terms, covenants and conditions of the Sublease for the remaining term of the Sublease, and any extensions or renewals of the Sublease which may be effected in accordance with the Sublease, with the same force and effect as if Lender were the original landlord under the Sublease, except that Paragraph 3(b) below and the other provisions of this Agreement shall modify the Sublease, and Tenant hereby attorns to Lender as Tenant's landlord, such attornment to be effective and self-operative without the execution of any further instruments; provided, however, that within twenty (20) days after receipt of written request from Lender, Tenant will execute and deliver to Lender any instrument or other documents reasonably requested by Lender to confirm Tenant's attornment to Lender.

(b)    Limitations. It is agreed that in no event shall Lender be:

(i)    Liable for any breach of the Sublease by, or any act or omission of, Landlord or any prior owner of the Property or lessor of the Property;

(ii)    Subject to any claims or defenses of whatever nature that Tenant may have against Landlord or any prior lessor of the Property, or subject to any offsets, abatements, or deductions against rent that Tenant may have against Landlord or any prior owner of the Property or lessor of the Property;

(iii)    Bound by any rent or additional rent that the Tenant may have paid to the Landlord or any prior owner of the Property or lessor of the Property more than one (1) month in advance;

(iv)    Bound by any amendment, modification, renewal, or extension of the Sublease that is made after the date of this agreement without the written consent of Lender;

(v)    Bound by any assignment, sublease, mortgage, encumbrance, or any other disposition or transfer of all or any part of the Tenant's interest under the Sublease or in the Property that is made after the date of this agreement without the written consent of Lender;

(vi)    Bound by any provision in the Sublease obligating Landlord (1) to erect or complete any building, (2) to perform any construction work, (3) to make any

2

ACLR, LLC Civil Action
No. 15-767 & 16-309

Settlement Proposal

PYOF Duplicate Payment Audit
Net Payment Amount Exhibit B-4

Office Lease
44

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 78 of 134

improvements whatsoever to the Property, or (4) to provide funds, allowances, concessions, or rental abatements to Tenant for any of the purposes described in clauses (1), (2), or (3), unless those obligations are expressly assumed by Landlord;

(vii)     Responsible for providing (or liable for not providing) any additional space for which Tenant has any option or right under the Sublease, unless Landlord expressly elects to provide same.  Tenant agrees that it shall have no right to cancel or terminate the Sublease, abate rent, or assert any claim for damages or other monetary relief against Landlord as a result of the Landlord's failure to provide any such space;

(viii)    Bound by any surrender, cancellation, or termination of the Sublease and/or the Tenant's interest in the Property, whether in whole or in part, unless either (i) Lender has given its prior written consent thereto, or (ii) the surrender, cancellation, or termination is effected unilaterally by Tenant under a specific term of the Sublease; provided, however, that if Tenant's right to cancel, surrender, or terminate the Sublease and/or its interest in the Property arises because of a default by Landlord under the Sublease, the Tenant shall not terminate, cancel, or surrender the Sublease and/or its interest in the Property because of that default unless (1) Landlord is in default under the Sublease beyond any cure period provided in the Sublease; (2) Tenant has given Landlord a Default Notice pursuant to Paragraph 4 of this Agreement; and (3) the cure period provided to Landlord in the Sublease plus an additional thirty (30) days has expired and Lender has not cured the default within said period.

4.   Tenant will give Lender prompt written notice ("Default Notice") of any default by Landlord under the Sublease if the default is such as to give Tenant a right (a) either immediately or after a period of time, to terminate, cancel, or surrender the Sublease and/or its interest in the Property, (b) to reduce the rent payable under the Sublease, (c) to credit or set-off any amounts against future rents payable under the Sublease, or (d) to recover damages or other monetary relief from Landlord.  Tenant will not exercise any right to terminate, cancel, or surrender the Sublease and/or its interest in the Property, sue for damages or other monetary relief, or seek or assert any other remedy (including abatement of, or set-off or credit against, rent payable under the Sublease) until it has given Lender the opportunity as provided in the Sublease, plus 30 days, to cure the default described in the Default Notice.  The Tenant will give the same notice and opportunity to cure to any successor to or assignee of Lender's interest in the Mortgage if, before any default by the Landlord under the Sublease, the successor or assignee gives written notice to the Tenant of its acquisition of Lender's interest in the Mortgage and designates the address to which the notice is to be sent.  Notwithstanding the foregoing, neither Lender nor any successor or assignee has any obligation to cure any default by the Landlord under the Sublease.

5.   PERFORMANCE BY LANDLORD; CONFLICT.  Nothing in this Agreement shall be or be deemed to be an agreement by Lender to perform any obligation of Landlord under the Sublease, unless and until Lender forecloses upon the Property or takes a deed in lieu of foreclosure, and then only if required to do so by the terms of the Sublease, as modified and limited by this Agreement.  The terms of this Agreement shall control in the event of any conflict between the terms of this Agreement and the terms of the Sublease.

6.     COLLECTION OF RENTS AND/OR POSSESSION OF THE PREMISES BY LENDER.  The Mortgage provides that, under certain conditions, Lender shall be entitled to collect, receive and demand payment of any and all rents due on and under the Sublease.  Upon receipt by Tenant of a notice from Lender that Lender, in accordance with the terms and conditions of the Mortgage, is entitled to collect, receive and demand payment of any and all rents due on and under the Sublease, Tenant shall make all payments of monetary obligations due by Tenant under the Sublease to Lender or as

3

Lender may in writing direct, and Tenant shall thereafter be relieved from any further obligations to remit rental or any other sums to Landlord. Additionally, in the event that Lender, acting either in its own behalf or by and through an agent, shall enter into possession of the Property as a mortgagee-in-possession or otherwise in accordance with its rights under the Mortgage, but has not at such time acquired the interest of Landlord in and to the Property or under the Sublease, the Sublease and all terms therein, and the rights of Tenant thereunder, shall continue in full force and effect and shall not be altered, terminated or disturbed, except in accordance with the terms of the Sublease, and Tenant shall be bound to Lender under all of the terms, covenants and conditions of the Sublease for the balance of the Term with the same force and effect as if Lender were the landlord under the Sublease. In such event, Tenant shall attorn to Lender as its landlord, such attornment to be effected and self-operative without the execution of any other instruments on the part of Lender or Tenant immediately upon Lender entering into possession of the Property and providing Tenant with written notice thereof. Upon receipt by Tenant of such notice from Lender, Tenant shall make all payments and monetary obligations due by Tenant under the Sublease to Lender or as Lender may in writing direct and Tenant shall thereafter be relieved from any further obligations to remit rental or any other sums to Landlord. The respective rights and obligations of Tenant and Lender upon such attornment, to the extent of the then remaining balance of the Term, shall be and are the same as are then in existence as set forth in the Sublease. The provisions of this Paragraph 6 with respect to entry of Lender into possession of the Property shall apply only to Lender or any other holder of the Mortgage who has given prior written notice to Tenant of its ownership of the Mortgage and its mailing address.

   7.   MISCELLANEOUS. Landlord and Lender further agree as follows:

        (a)   Governing Law. This Agreement shall be construed according to the laws of the State of Michigan.

        (b)   Successors and Assigns. This Agreement shall be binding upon and shall inure to the benefit of the permitted successors and assigns of each party to this Agreement.

        (c)   Notices. Notice from one party to another relating to this Agreement shall be deemed effective if made in writing (including telecommunications) and delivered to the recipient's address set forth in this Agreement by any of the following means: hand delivery, registered or certified mail, postage prepaid, express mail or other overnight courier service. Notice made in accordance with these provisions shall be deemed delivered on receipt if delivered by hand, on the second business day after mailing if mailed by registered or certified mail, or on the next business day after mailing or deposit with the postal service or an overnight courier service if delivered by express mail or overnight courier.

        (d)   Amendments. Any amendment of this Agreement shall be in writing and shall require the signature of Tenant, Landlord and Lender.

        (e)   Partial Invalidity. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions of this Agreement.

        (f)   Fees and Expenses. Landlord or Tenant, as the case may be, shall pay to Lender all of Lender's expenses, including reasonable attorneys' fees and expenses, and disbursements for title searches, appraisals, credit reports and other expenses, related to the preparation and/or enforcement of this Agreement and any other document evidencing and/or securing the Loan.

        (g)   WAIVER OF JURY TRIAL. TENANT, LANDLORD AND LENDER ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE

4

OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT.

### (Signature page follows)

IN WITNESS WHEREOF, the parties have executed this Subordination, Non-Disturbance and Attornment Agreement as of the day and year noted above.

Witnesses: _Kristen M Barnes_

Print Name: _Kristen M Barnes_

Print Name: _____

TENANT:

_ACLR, LLC_

By: _____

Print Name: _Christopher Mucke_

Its: _Managing Principal_

STATE OF _Michigan_ )

COUNTY OF _Oakland_ )

The foregoing instrument was acknowledged before me on _November 23_, 2015, by _Christopher Mucke_, the _Managing Principal_ of _ACLR, LLC_, a _____, on behalf of such corporation who is known personally to me or provided a driver's license for identification.

Notary's
Stamp:

Notary's
Signature: _Kristen M Barnes_

Notary's Name: _Kristen M Barnes_

State of _MI_, County of _Oakland_

My commission Expires: _6/26/2018_

Acting in the County of: _Oakland_

KRISTEN BARNES
NOTARY PUBLIC
Oakland County, Michigan
My Comm. Expires 6/26/2018

5

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Case 1:15-cv-00767-PEC   Document 101-1   Filed 11/06/20   Page 81 of 134

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
47

Witnesses:

LANDLORD:

**UNIVERSAL PROPERTIES THREE, LLC**

Print Name:

By:_____

Print Name:_____

Its:_____

Print Name:

STATE OF _____  )

COUNTY OF  _____)

The foregoing instrument was acknowledged before me on _____, ____, by
_____, the _____ of Universal Properties Three, LLC, a California limited
liability company, on behalf of such company who is known personally to me or provided a driver's
license for identification.

Notary's
Stamp:

Notary's
Signature:_____

Notary's Name:_____

State of _____, County of _____

My commission Expires:_____

Acting in the County of:_____

6

Witnesses:                               LENDER:

                                         **COMERICA BANK**

Print Name:

                                         By:_____
                                         Print Name:_____
Print Name:                              Its:_____

STATE OF MICHIGAN          )

COUNTY OF _____)

The foregoing instrument was acknowledged before me on _____, ____, by
_____, a _____ of Comerica Bank, on behalf of such company who is known
personally to me or provided a driver's license for identification.

Notary's                                 Notary's
Stamp:                                   Signature:_____
                                         Notary's Name:_____
                                         State of Michigan, County of _____
                                         My commission Expires:_____
                                         Acting in the County of:_____

PREPARED BY AND RETURN TO:

Shawn N. Hopper
Miller, Canfield, Paddock and Stone, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313).496-7911

25270814.2\022751-08686

ACLR, LLC Civil Action
No. 15-767-876-809

Case 1:15-cv-00767-PEC    Document 101-1    Filed 11/06/20    Page 83 of 134

PwC Duplicate Payment Audit

Settlement Proposal                          Net Payment Amount   Exhibit B-4

Office Lease
49

## EXHIBIT "A"

### LEGAL DESCRIPTION FOR PROPERTY

Property located in the City of Livonia, County of Wayne, State of Michigan, described as follows:

**Parcel A**:
Part of the Northwest 1/4 of Section 7, Town 1 South, Range 9 East, City of Livonia, Wayne County, Michigan, described as: Beginning at a point distant South 88 degrees 03 minutes 18 seconds West, 1725.28 feet along the North line of Section 7 and South 01 degrees 59 minutes 22 seconds East, 90.00 feet from the North 1/4 corner of Section 7, Town 1 South, Range 9 East, and proceeding thence North 88 degrees 03 minutes 18 seconds East along the South line of Seven Mile Road, 260.46 feet; thence South 01 degrees 56 minutes 42 seconds East, 216.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 155.75 feet; thence North 01 degrees 56 minutes 42 seconds West, 201.00 feet to a point on the South line of Seven Mile Road; thence South 89 degrees 35 minutes 02 seconds East along said South Right-of-Way line 177.40 feet; thence South 01 degrees 56 minutes 42 seconds East, 217.69 feet; thence South 88 degrees 03 minutes 18 seconds West, 165.67 feet; thence South 01 degrees 56 minutes 42 seconds East, 161.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 41.33 feet; thence South 01 degrees 56 minutes 42 seconds East, 192.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 386.00 feet; thence North 01 degrees 59 minutes 22 seconds West, 593.00 feet to the Point of Beginning.

**Parcel B:**
Part of the Northwest 1/4 of Section 7, Town 1 South, Range 9 East, City of Livonia, Wayne County, Michigan, described as: Beginning at a point distant South 88 degrees 03 minutes 18 seconds West, 1725.28 feet along the North line of Section 7 and South 01 degrees 59 minutes 22 seconds East, 70.00 feet and North 88 degrees 03 minutes 18 seconds East 416.23 feet and South 01 degrees 56 minutes 42 seconds East, 35.00 feet and South 89 degrees 35 minutes 02 seconds East along the South line of Seven Mile Road, 177.40 feet from the North 1/4 corner of Section 7, Town 1 South, Range 9 East, and proceeding thence South 89 degrees 35 minutes 02 seconds East, 425.77 feet; thence South 01 degrees 56 minutes 42 seconds East, 200.15 feet; thence South 88 degrees 03 minutes 18 seconds West, 171.88 feet; thence South 01 degrees 56 minutes 42 seconds East, 161.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 171.88 feet; thence South 01 degrees 56 minutes 42 seconds East, 192.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 632.41 feet; thence North 01 degrees 56 minutes 42 seconds West, 192.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 41.33 feet; thence North 01 degrees 56 minutes 42 seconds West, 161.00 feet; thence North 88 degrees 03 minutes 18 seconds East, 165.67 feet; thence North 01 degrees 56 minutes 42 seconds West, 217.69 feet to the Point of Beginning.

**Parcel C**:
Part of the Northwest 1/4 of Section 7, Town 1 South, Range 9 East, City of Livonia, Wayne County, Michigan, described as: Beginning at a point distant North 88 degrees 03 minutes 18 seconds East along the North line of said Section 7, 780.05 feet and South 01 degrees 59 minutes 22 seconds East, 70.00 feet and North 88 degrees 03 minutes 18 seconds East, 260.48 feet from the Northwest corner of said Section 7, Town 1 South, Range 9 East, and proceeding thence North 88 degrees 03 minutes 18 seconds East, 155.75 feet; thence South 01 degrees 56 minutes 42 seconds East, 236.00 feet; thence South 88 degrees 03 minutes 18 seconds West, 155.75 feet; thence North 01 degrees 56 minutes 42 seconds West, 236.00 feet to the Point of Beginning.

ACLR, LLC Civil Action
No. 15-767 & 16-309
Settlement Proposal

Prior Duplicate Payment Audit
Net Payment Amount   Exhibit B-4

Office Lease
5C


mckinley.com
www.mckinley.com
LIVE.WORK.SHOP.PLAY.

Seven Mile (UP3) 38705
38705 Seven Mile Road
Livonia, MI 48152

|  | 10/01/2016 | Account Number |
|---|---|---|

ACLR, LLC
Kristen Barnes
38705 Seven Mile Road
Suite 251
Livonia, MI 48152

HQ005857 - 1
Suite No. 251

**MAKE CHECKS PAYABLE TO:** Universal Properties Three, LLC      **BALANCE DUE:** 2,390.78

Federal ID #: 371451527

| Date | Code | Description | Charges | Payments | Amount Due |
|---|---|---|---|---|---|
| 09/19/2016 | ELEC | Elec Inv #940461 7/25-8/24/16 | 309.70 | 0.00 | 309.70 |
| *Additional Description:* | | | | | |
| 10/01/2016 | RENT | Rent Charge | 2,081.08 | 0.00 | 2,081.08 |
| *Additional Description:* | | | | | |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

|  | 10/01/2016 | Account Number |
|---|---|---|

Please send this portion of the statement with your remittance.     HQ005857 - 1

**Please call property manager with any questions.**     INVOICE #:     Suite No. 251

ACLR, LLC

Universal Properties Three, LLC
Seven Mile Crossing
2725 S. Industrial Suite 300
Ann Arbor, MI 48104

| Current | 30 | 60 | 90 | 120 | Balance Due |
|---|---|---|---|---|---|
| 2,390.78 | 0.00 | 0.00 | 0.00 | 0.00 | 2,390.78 |

# EXHIBIT B-5

# REASONABLE PROFIT

# NET PAYMENT AMOUNT

**ACLR, LLC Civil Action**          **PY07 Duplicate Payment Audit**          **Reasonable Profit**
**No. 15-767 16-309**          **Net Payment Amount**          **1 of 1**
**Settlement Proposal**          **Exhibit B-5**

| Reasonable Profit Calculation | | | | | | |
|------|------|------|------|------|------|------|
| Year | Payroll & General & Administrative | Loan Interest | Office Lease | Total Costs | Profit % | Totals |
| 2011 | 913,983 | 9,961 | 62,380 | 986,323 | 15.00% | 147,948 |
| 2012 | 75,893 | 28,842 | 79,709 | 184,445 | 15.00% | 27,667 |
| 2013 | 0 | 28,343 | 52,343 | 80,686 | 15.00% | 12,103 |
| 2014 | 0 | 27,816 | 18,730 | 46,546 | 15.00% | 6,982 |
| 2015 | 0 | 22,898 | 26,365 | 49,263 | 15.00% | 7,389 |
| 2016 | 0 | 21,012 | 19,460 | 40,473 | 15.00% | 6,071 |
| 2017 | 0 | 19,654 | 0 | 19,654 | 15.00% | 2,948 |
| 2018 | 0 | 19,950 | 0 | 19,950 | 15.00% | 2,993 |
| Totals | 989,876 | 178,477 | 258,987 | 1,427,340 | 15.00% | 214,101 |

**EXHIBIT B-6**

**TREASURY RATE INTEREST**

**NET PAYMENT AMOUNT**

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY07 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit B-6**

| 2011 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Dec-11 | 1,599,432.31 | $2,665.72 | 0.1667% | 2.00% |
| Jan-12 | 1,739,308.10 | $2,898.85 | 0.1667% | 2.00% |
| Feb-12 | 1,742,206.95 | $2,903.68 | 0.1667% | 2.00% |
| Mar-12 | 1,745,110.63 | $2,908.52 | 0.1667% | 2.00% |
| Apr-12 | 1,748,019.15 | $2,913.37 | 0.1667% | 2.00% |
| May-12 | 1,750,932.51 | $2,918.22 | 0.1667% | 2.00% |
| Jun-12 | 1,753,850.73 | $2,923.08 | 0.1667% | 2.00% |
| Jul-12 | 1,756,773.82 | $2,561.96 | 0.1458% | 1.75% |
| Aug-12 | 1,759,335.78 | $2,565.70 | 0.1458% | 1.75% |
| Sep-12 | 1,761,901.48 | $2,569.44 | 0.1458% | 1.75% |
| Oct-12 | 1,764,470.92 | $2,573.19 | 0.1458% | 1.75% |
| Nov-12 | 1,767,044.10 | $2,576.94 | 0.1458% | 1.75% |
| Dec-12 | 1,769,621.04 | $2,580.70 | 0.1458% | 1.75% |
| Jan-13 | 1,772,201.74 | $2,030.65 | 0.1146% | 1.375% |
| Feb-13 | 1,774,232.39 | $2,032.97 | 0.1146% | 1.375% |
| Mar-13 | 1,776,265.36 | $2,035.30 | 0.1146% | 1.375% |
| Apr-13 | 1,778,300.67 | $2,037.64 | 0.1146% | 1.375% |
| May-13 | 1,780,338.30 | $2,039.97 | 0.1146% | 1.375% |
| Jun-13 | 1,782,378.27 | $2,042.31 | 0.1146% | 1.375% |
| Jul-13 | 1,784,420.58 | $2,602.28 | 0.1458% | 1.75% |
| Aug-13 | 1,787,022.86 | $2,606.08 | 0.1458% | 1.75% |
| Sep-13 | 1,789,628.94 | $2,609.88 | 0.1458% | 1.75% |
| Oct-13 | 1,792,238.81 | $2,613.68 | 0.1458% | 1.75% |
| Nov-13 | 1,794,852.49 | $2,617.49 | 0.1458% | 1.75% |
| Dec-13 | 1,797,469.99 | $2,621.31 | 0.1458% | 1.75% |
| Jan-14 | 1,800,091.30 | $3,187.66 | 0.1771% | 2.125% |
| Feb-14 | 1,803,278.96 | $3,193.31 | 0.1771% | 2.125% |
| Mar-14 | 1,806,472.27 | $3,198.96 | 0.1771% | 2.125% |
| Apr-14 | 1,809,671.23 | $3,204.63 | 0.1771% | 2.125% |
| May-14 | 1,812,875.85 | $3,210.30 | 0.1771% | 2.125% |
| Jun-14 | 1,816,086.15 | $3,215.99 | 0.1771% | 2.125% |
| Jul-14 | 1,819,302.14 | $3,032.17 | 0.1667% | 2.00% |
| Aug-14 | 1,822,334.31 | $3,037.22 | 0.1667% | 2.00% |
| Sep-14 | 1,825,371.53 | $3,042.29 | 0.1667% | 2.00% |
| Oct-14 | 1,828,413.82 | $3,047.36 | 0.1667% | 2.00% |
| Nov-14 | 1,831,461.18 | $3,052.44 | 0.1667% | 2.00% |
| Dec-14 | 1,834,513.61 | $3,057.52 | 0.1667% | 2.00% |
| Jan-15 | 1,837,571.14 | $3,254.03 | 0.1771% | 2.125% |
| Feb-15 | 1,840,825.17 | $3,259.79 | 0.1771% | 2.125% |
| Mar-15 | 1,844,084.96 | $3,265.57 | 0.1771% | 2.125% |
| Apr-15 | 1,847,350.53 | $3,271.35 | 0.1771% | 2.125% |
| May-15 | 1,850,621.88 | $3,277.14 | 0.1771% | 2.125% |
| Jun-15 | 1,853,899.02 | $3,282.95 | 0.1771% | 2.125% |
| Jul-15 | 1,857,181.97 | $3,675.67 | 0.1979% | 2.375% |
| Aug-15 | 1,860,857.64 | $3,682.95 | 0.1979% | 2.375% |
| Sep-15 | 1,864,540.59 | $3,690.24 | 0.1979% | 2.375% |
| Oct-15 | 1,868,230.82 | $3,697.54 | 0.1979% | 2.375% |
| Nov-15 | 1,871,928.36 | $3,704.86 | 0.1979% | 2.375% |
| Dec-15 | 1,875,633.22 | $3,712.19 | 0.1979% | 2.375% |
| Jan-16 | 1,879,345.41 | $3,915.30 | 0.2083% | 2.50% |
| Feb-16 | 1,883,260.72 | $3,923.46 | 0.2083% | 2.50% |
| Mar-16 | 1,887,184.18 | $3,931.63 | 0.2083% | 2.50% |
| Apr-16 | 1,891,115.81 | $3,939.82 | 0.2083% | 2.50% |
| May-16 | 1,895,055.63 | $3,948.03 | 0.2083% | 2.50% |
| Jun-16 | 1,899,003.67 | $3,956.26 | 0.2083% | 2.50% |
| Jul-16 | 1,902,959.93 | $2,973.37 | 0.1563% | 1.875% |
| Aug-16 | 1,905,933.30 | $2,978.02 | 0.1563% | 1.875% |
| Sep-16 | 1,908,911.32 | $2,982.67 | 0.1563% | 1.875% |
| Oct-16 | 1,911,893.99 | $2,987.33 | 0.1563% | 1.875% |
| Nov-16 | 1,914,881.33 | $2,992.00 | 0.1563% | 1.875% |
| Dec-16 | 1,917,873.33 | $2,996.68 | 0.1563% | 1.875% |
| Jan-17 | 1,920,870.01 | $4,001.81 | 0.2083% | 2.50% |
| Feb-17 | 1,924,871.82 | $4,010.15 | 0.2083% | 2.50% |
| Mar-17 | 1,928,881.97 | $4,018.50 | 0.2083% | 2.50% |
| Apr-17 | 1,932,900.47 | $4,026.88 | 0.2083% | 2.50% |
| May-17 | 1,936,927.35 | $4,035.27 | 0.2083% | 2.50% |
| Jun-17 | 1,940,962.62 | $4,043.67 | 0.2083% | 2.50% |
| Jul-17 | 1,945,006.29 | $3,849.49 | 0.1979% | 2.375% |
| Aug-17 | 1,948,855.78 | $3,857.11 | 0.1979% | 2.375% |
| Sep-17 | 1,952,712.89 | $3,864.74 | 0.1979% | 2.375% |
| Oct-17 | 1,956,577.63 | $3,872.39 | 0.1979% | 2.375% |
| Nov-17 | 1,960,450.03 | $3,880.06 | 0.1979% | 2.375% |
| Dec-17 | 1,964,330.08 | $3,887.74 | 0.1979% | 2.375% |
| Jan-18 | 1,968,217.82 | $4,305.48 | 0.2188% | 2.625% |
| Feb-18 | 1,972,523.30 | $4,314.89 | 0.2188% | 2.625% |
| Mar-18 | 1,976,838.19 | $4,324.33 | 0.2188% | 2.625% |
| Apr-18 | 1,981,162.53 | $4,333.79 | 0.2188% | 2.625% |
| May-18 | 1,985,496.32 | $4,343.27 | 0.2188% | 2.625% |
| Jun-18 | 1,989,839.59 | $4,352.77 | 0.2188% | 2.625% |
| Jul-18 | 1,994,192.37 | $5,816.39 | 0.2917% | 3.50% |
| Aug-18 | 2,000,008.76 | $5,833.36 | 0.2917% | 3.50% |
| Sep-18 | 2,005,842.12 | $5,850.37 | 0.2917% | 3.50% |
| Oct-18 | 2,011,692.49 | $5,867.44 | 0.2917% | 3.50% |
| Nov-18 | 2,017,559.93 | $5,884.55 | 0.2917% | 3.50% |
| Dec-18 | 2,023,444.48 | $5,901.71 | 0.2917% | 3.50% |
| Jan-19 | 2,029,346.19 | $6,130.32 | 0.3021% | 3.625% |
| Feb-19 | 2,035,476.51 | $6,148.84 | 0.3021% | 3.625% |
| Mar-19 | 2,041,625.34 | $6,167.41 | 0.3021% | 3.625% |
| Apr-19 | 2,047,792.75 | $6,186.04 | 0.3021% | 3.625% |
| May-19 | 2,053,978.79 | $6,204.73 | 0.3021% | 3.625% |
| Jun-19 | 2,060,183.52 | $6,223.47 | 0.3021% | 3.625% |
| Jul-19 | 2,066,406.99 | $4,520.27 | 0.2188% | 2.625% |
| Aug-19 | 2,070,927.26 | $4,530.15 | 0.2188% | 2.625% |
| Sep-19 | 2,075,457.41 | $4,540.06 | 0.2188% | 2.625% |
| Oct-19 | 2,079,997.47 | $4,549.99 | 0.2188% | 2.625% |
| Nov-19 | 2,084,547.47 | $4,559.95 | 0.2188% | 2.625% |
| Dec-19 | 2,089,107.42 | $4,569.92 | 0.2188% | 2.625% |
| Jan-20 | 2,093,677.34 | $3,707.55 | 0.1771% | 2.125% |
| Feb-20 | 2,097,384.89 | $3,714.12 | 0.1771% | 2.125% |
| Mar-20 | 2,101,099.01 | $3,720.70 | 0.1771% | 2.125% |
| Apr-20 | 2,104,819.71 | $3,727.28 | 0.1771% | 2.125% |
| May-20 | 2,108,546.99 | $3,733.89 | 0.1771% | 2.125% |
| Jun-20 | 2,112,280.88 | $3,740.50 | 0.1771% | 2.125% |
| Jul-20 | 2,116,021.38 | $3,747.12 | 0.1771% | 2.125% |
| Aug-20 | 2,119,768.50 | $3,753.76 | 0.1771% | 2.125% |
| Sep-20 | 2,123,522.25 | $3,760.40 | 0.1771% | 2.125% |
| Total Interest | | | | $390,640.27 |

| 2012 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-12 | 160,928.98 | $268.21 | 0.1667% | 2.00% |
| Mar-12 | 177,797.40 | $296.33 | 0.1667% | 2.00% |
| Apr-12 | 184,307.79 | $307.18 | 0.1667% | 2.00% |
| May-12 | 189,772.28 | $316.29 | 0.1667% | 2.00% |
| Jun-12 | 195,245.87 | $325.41 | 0.1667% | 2.00% |
| Jul-12 | 201,785.35 | $294.27 | 0.1458% | 1.75% |
| Aug-12 | 207,236.92 | $302.22 | 0.1458% | 1.75% |
| Sep-12 | 212,696.45 | $310.18 | 0.1458% | 1.75% |
| Oct-12 | 218,163.93 | $318.16 | 0.1458% | 1.75% |
| Nov-12 | 223,639.40 | $326.14 | 0.1458% | 1.75% |
| Dec-12 | 230,179.60 | $335.68 | 0.1458% | 1.75% |
| Jan-13 | 235,672.58 | $270.04 | 0.1146% | 1.375% |
| Feb-13 | 235,942.63 | $270.35 | 0.1146% | 1.375% |
| Mar-13 | 236,212.98 | $270.66 | 0.1146% | 1.375% |
| Apr-13 | 236,483.64 | $270.97 | 0.1146% | 1.375% |
| May-13 | 236,754.61 | $271.28 | 0.1146% | 1.375% |
| Jun-13 | 237,025.89 | $271.59 | 0.1146% | 1.375% |
| Jul-13 | 237,297.48 | $346.06 | 0.1458% | 1.75% |
| Aug-13 | 237,643.54 | $346.56 | 0.1458% | 1.75% |
| Sep-13 | 237,990.10 | $347.07 | 0.1458% | 1.75% |
| Oct-13 | 238,337.17 | $347.58 | 0.1458% | 1.75% |
| Nov-13 | 238,684.75 | $348.08 | 0.1458% | 1.75% |
| Dec-13 | 239,032.83 | $348.59 | 0.1458% | 1.75% |
| Jan-14 | 239,381.42 | $423.90 | 0.1771% | 2.125% |
| Feb-14 | 239,805.32 | $424.66 | 0.1771% | 2.125% |
| Mar-14 | 240,229.98 | $425.41 | 0.1771% | 2.125% |
| Apr-14 | 240,655.39 | $426.16 | 0.1771% | 2.125% |
| May-14 | 241,081.55 | $426.92 | 0.1771% | 2.125% |
| Jun-14 | 241,508.46 | $427.67 | 0.1771% | 2.125% |
| Jul-14 | 241,936.13 | $403.23 | 0.1667% | 2.00% |
| Aug-14 | 242,339.36 | $403.90 | 0.1667% | 2.00% |
| Sep-14 | 242,743.26 | $404.57 | 0.1667% | 2.00% |
| Oct-14 | 243,147.83 | $405.25 | 0.1667% | 2.00% |
| Nov-14 | 243,553.08 | $405.92 | 0.1667% | 2.00% |
| Dec-14 | 243,959.00 | $406.60 | 0.1667% | 2.00% |
| Jan-15 | 244,365.60 | $432.73 | 0.1771% | 2.125% |
| Feb-15 | 244,798.33 | $433.50 | 0.1771% | 2.125% |
| Mar-15 | 245,231.83 | $434.26 | 0.1771% | 2.125% |
| Apr-15 | 245,666.09 | $435.03 | 0.1771% | 2.125% |
| May-15 | 246,101.12 | $435.80 | 0.1771% | 2.125% |
| Jun-15 | 246,536.93 | $436.58 | 0.1771% | 2.125% |
| Jul-15 | 246,973.50 | $488.80 | 0.1979% | 2.375% |
| Aug-15 | 247,462.31 | $489.77 | 0.1979% | 2.375% |
| Sep-15 | 247,952.07 | $490.74 | 0.1979% | 2.375% |
| Oct-15 | 248,442.81 | $491.71 | 0.1979% | 2.375% |
| Nov-15 | 248,934.52 | $492.68 | 0.1979% | 2.375% |
| Dec-15 | 249,427.21 | $493.66 | 0.1979% | 2.375% |
| Jan-16 | 249,920.86 | $520.67 | 0.2083% | 2.50% |
| Feb-16 | 250,441.53 | $521.75 | 0.2083% | 2.50% |
| Mar-16 | 250,963.29 | $522.84 | 0.2083% | 2.50% |
| Apr-16 | 251,486.13 | $523.93 | 0.2083% | 2.50% |
| May-16 | 252,010.05 | $525.02 | 0.2083% | 2.50% |
| Jun-16 | 252,535.08 | $526.11 | 0.2083% | 2.50% |
| Jul-16 | 253,061.19 | $395.41 | 0.1563% | 1.875% |
| Aug-16 | 253,456.60 | $396.03 | 0.1563% | 1.875% |
| Sep-16 | 253,852.62 | $396.64 | 0.1563% | 1.875% |
| Oct-16 | 254,249.27 | $397.26 | 0.1563% | 1.875% |
| Nov-16 | 254,646.53 | $397.89 | 0.1563% | 1.875% |
| Dec-16 | 255,044.42 | $398.51 | 0.1563% | 1.875% |
| Jan-17 | 255,442.93 | $532.17 | 0.2083% | 2.50% |
| Feb-17 | 255,975.10 | $533.28 | 0.2083% | 2.50% |
| Mar-17 | 256,508.38 | $534.39 | 0.2083% | 2.50% |
| Apr-17 | 257,042.77 | $535.51 | 0.2083% | 2.50% |
| May-17 | 257,578.28 | $536.62 | 0.2083% | 2.50% |
| Jun-17 | 258,114.90 | $537.74 | 0.2083% | 2.50% |
| Jul-17 | 258,652.64 | $511.92 | 0.1979% | 2.375% |
| Aug-17 | 259,164.56 | $512.93 | 0.1979% | 2.375% |
| Sep-17 | 259,677.49 | $513.95 | 0.1979% | 2.375% |
| Oct-17 | 260,191.43 | $514.96 | 0.1979% | 2.375% |
| Nov-17 | 260,706.39 | $515.98 | 0.1979% | 2.375% |
| Dec-17 | 261,222.37 | $517.00 | 0.1979% | 2.375% |
| Jan-18 | 261,739.38 | $572.55 | 0.2188% | 2.625% |
| Feb-18 | 262,311.93 | $573.81 | 0.2188% | 2.625% |
| Mar-18 | 262,885.74 | $575.06 | 0.2188% | 2.625% |
| Apr-18 | 263,460.80 | $576.32 | 0.2188% | 2.625% |
| May-18 | 264,037.12 | $577.58 | 0.2188% | 2.625% |
| Jun-18 | 264,614.70 | $578.84 | 0.2188% | 2.625% |
| Jul-18 | 265,193.55 | $773.48 | 0.2917% | 3.50% |
| Aug-18 | 265,967.03 | $775.74 | 0.2917% | 3.50% |
| Sep-18 | 266,742.77 | $778.00 | 0.2917% | 3.50% |
| Oct-18 | 267,520.77 | $780.27 | 0.2917% | 3.50% |
| Nov-18 | 268,301.04 | $782.54 | 0.2917% | 3.50% |
| Dec-18 | 269,083.58 | $784.83 | 0.2917% | 3.50% |
| Jan-19 | 269,868.41 | $815.23 | 0.3021% | 3.625% |
| Feb-19 | 270,683.63 | $817.69 | 0.3021% | 3.625% |
| Mar-19 | 271,501.32 | $820.16 | 0.3021% | 3.625% |
| Apr-19 | 272,321.48 | $822.64 | 0.3021% | 3.625% |
| May-19 | 273,144.12 | $825.12 | 0.3021% | 3.625% |
| Jun-19 | 273,969.25 | $827.62 | 0.3021% | 3.625% |
| Jul-19 | 274,796.86 | $601.12 | 0.2188% | 2.625% |
| Aug-19 | 275,397.98 | $602.43 | 0.2188% | 2.625% |
| Sep-19 | 276,000.41 | $603.75 | 0.2188% | 2.625% |
| Oct-19 | 276,604.16 | $605.07 | 0.2188% | 2.625% |
| Nov-19 | 277,209.23 | $606.40 | 0.2188% | 2.625% |
| Dec-19 | 277,815.63 | $607.72 | 0.2188% | 2.625% |
| Jan-20 | 278,423.35 | $493.04 | 0.1771% | 2.125% |
| Feb-20 | 278,916.39 | $493.91 | 0.1771% | 2.125% |
| Mar-20 | 279,410.31 | $494.79 | 0.1771% | 2.125% |
| Apr-20 | 279,905.10 | $495.67 | 0.1771% | 2.125% |
| May-20 | 280,400.76 | $496.54 | 0.1771% | 2.125% |
| Jun-20 | 280,897.30 | $497.42 | 0.1771% | 2.125% |
| Jul-20 | 281,394.73 | $498.30 | 0.1771% | 2.125% |
| Aug-20 | 281,893.03 | $499.19 | 0.1771% | 2.125% |
| Sep-20 | 282,392.22 | $500.07 | 0.1771% | 2.125% |
| Total Interest | | | | $50,619.77 |

| 2013 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-13 | 4,736.27 | $5.43 | 0.1146% | 1.375% |
| Mar-13 | 10,955.76 | $12.55 | 0.1146% | 1.375% |
| Apr-13 | 16,125.62 | $18.48 | 0.1146% | 1.375% |
| May-13 | 21,301.40 | $24.41 | 0.1146% | 1.375% |
| Jun-13 | 26,483.11 | $30.35 | 0.1146% | 1.375% |
| Jul-13 | 31,670.76 | $46.19 | 0.1458% | 1.75% |
| Aug-13 | 36,874.25 | $53.77 | 0.1458% | 1.75% |
| Sep-13 | 42,085.33 | $61.37 | 0.1458% | 1.75% |
| Oct-13 | 47,304.01 | $68.99 | 0.1458% | 1.75% |
| Nov-13 | 52,530.31 | $76.61 | 0.1458% | 1.75% |
| Dec-13 | 57,764.22 | $84.24 | 0.1458% | 1.75% |
| Jan-14 | 63,005.76 | $111.57 | 0.1771% | 2.125% |
| Feb-14 | 63,117.33 | $111.77 | 0.1771% | 2.125% |
| Mar-14 | 63,229.10 | $111.97 | 0.1771% | 2.125% |
| Apr-14 | 63,341.07 | $112.17 | 0.1771% | 2.125% |
| May-14 | 63,453.24 | $112.37 | 0.1771% | 2.125% |
| Jun-14 | 63,565.60 | $112.56 | 0.1771% | 2.125% |
| Jul-14 | 63,678.17 | $106.13 | 0.1667% | 2.00% |
| Aug-14 | 63,784.30 | $106.31 | 0.1667% | 2.00% |
| Sep-14 | 63,890.61 | $106.48 | 0.1667% | 2.00% |
| Oct-14 | 63,997.09 | $106.66 | 0.1667% | 2.00% |
| Nov-14 | 64,103.75 | $106.84 | 0.1667% | 2.00% |
| Dec-14 | 64,210.59 | $107.02 | 0.1667% | 2.00% |
| Jan-15 | 64,317.61 | $113.90 | 0.1771% | 2.125% |
| Feb-15 | 64,431.51 | $114.10 | 0.1771% | 2.125% |
| Mar-15 | 64,545.60 | $114.30 | 0.1771% | 2.125% |
| Apr-15 | 64,659.90 | $114.50 | 0.1771% | 2.125% |
| May-15 | 64,774.40 | $114.70 | 0.1771% | 2.125% |
| Jun-15 | 64,889.11 | $114.91 | 0.1771% | 2.125% |
| Jul-15 | 65,004.02 | $128.65 | 0.1979% | 2.375% |
| Aug-15 | 65,132.67 | $128.91 | 0.1979% | 2.375% |
| Sep-15 | 65,261.58 | $129.16 | 0.1979% | 2.375% |
| Oct-15 | 65,390.74 | $129.42 | 0.1979% | 2.375% |
| Nov-15 | 65,520.16 | $129.68 | 0.1979% | 2.375% |
| Dec-15 | 65,649.84 | $129.93 | 0.1979% | 2.375% |
| Jan-16 | 65,779.77 | $137.04 | 0.2083% | 2.50% |
| Feb-16 | 65,916.81 | $137.33 | 0.2083% | 2.50% |
| Mar-16 | 66,054.14 | $137.61 | 0.2083% | 2.50% |
| Apr-16 | 66,191.75 | $137.90 | 0.2083% | 2.50% |
| May-16 | 66,329.65 | $138.19 | 0.2083% | 2.50% |
| Jun-16 | 66,467.84 | $138.47 | 0.2083% | 2.50% |
| Jul-16 | 66,606.31 | $104.07 | 0.1563% | 1.875% |
| Aug-16 | 66,710.38 | $104.23 | 0.1563% | 1.875% |
| Sep-16 | 66,814.62 | $104.40 | 0.1563% | 1.875% |
| Oct-16 | 66,919.02 | $104.56 | 0.1563% | 1.875% |
| Nov-16 | 67,023.58 | $104.72 | 0.1563% | 1.875% |
| Dec-16 | 67,128.30 | $104.89 | 0.1563% | 1.875% |
| Jan-17 | 67,233.19 | $140.07 | 0.2083% | 2.50% |
| Feb-17 | 67,373.26 | $140.36 | 0.2083% | 2.50% |
| Mar-17 | 67,513.62 | $140.65 | 0.2083% | 2.50% |
| Apr-17 | 67,654.27 | $140.95 | 0.2083% | 2.50% |
| May-17 | 67,795.22 | $141.24 | 0.2083% | 2.50% |
| Jun-17 | 67,936.46 | $141.53 | 0.2083% | 2.50% |
| Jul-17 | 68,077.99 | $134.74 | 0.1979% | 2.375% |
| Aug-17 | 68,212.73 | $135.00 | 0.1979% | 2.375% |
| Sep-17 | 68,347.74 | $135.27 | 0.1979% | 2.375% |
| Oct-17 | 68,483.01 | $135.54 | 0.1979% | 2.375% |
| Nov-17 | 68,618.55 | $135.81 | 0.1979% | 2.375% |
| Dec-17 | 68,754.35 | $136.08 | 0.1979% | 2.375% |
| Jan-18 | 68,890.43 | $150.70 | 0.2188% | 2.625% |
| Feb-18 | 69,041.13 | $151.03 | 0.2188% | 2.625% |
| Mar-18 | 69,192.16 | $151.36 | 0.2188% | 2.625% |
| Apr-18 | 69,343.51 | $151.69 | 0.2188% | 2.625% |
| May-18 | 69,495.20 | $152.02 | 0.2188% | 2.625% |
| Jun-18 | 69,647.22 | $152.35 | 0.2188% | 2.625% |
| Jul-18 | 69,799.58 | $203.58 | 0.2917% | 3.50% |
| Aug-18 | 70,003.16 | $204.18 | 0.2917% | 3.50% |
| Sep-18 | 70,207.33 | $204.77 | 0.2917% | 3.50% |
| Oct-18 | 70,412.11 | $205.37 | 0.2917% | 3.50% |
| Nov-18 | 70,617.47 | $205.97 | 0.2917% | 3.50% |
| Dec-18 | 70,823.44 | $206.57 | 0.2917% | 3.50% |
| Jan-19 | 71,030.01 | $214.57 | 0.3021% | 3.625% |
| Feb-19 | 71,244.58 | $215.22 | 0.3021% | 3.625% |
| Mar-19 | 71,459.80 | $215.87 | 0.3021% | 3.625% |
| Apr-19 | 71,675.67 | $216.52 | 0.3021% | 3.625% |
| May-19 | 71,892.19 | $217.17 | 0.3021% | 3.625% |
| Jun-19 | 72,109.36 | $217.83 | 0.3021% | 3.625% |
| Jul-19 | 72,327.19 | $158.22 | 0.2188% | 2.625% |
| Aug-19 | 72,485.41 | $158.56 | 0.2188% | 2.625% |
| Sep-19 | 72,643.97 | $158.91 | 0.2188% | 2.625% |
| Oct-19 | 72,802.88 | $159.26 | 0.2188% | 2.625% |
| Nov-19 | 72,962.13 | $159.60 | 0.2188% | 2.625% |
| Dec-19 | 73,121.74 | $159.95 | 0.2188% | 2.625% |
| Jan-20 | 73,281.69 | $129.77 | 0.1771% | 2.125% |
| Feb-20 | 73,411.46 | $130.00 | 0.1771% | 2.125% |
| Mar-20 | 73,541.46 | $130.23 | 0.1771% | 2.125% |
| Apr-20 | 73,671.69 | $130.46 | 0.1771% | 2.125% |
| May-20 | 73,802.15 | $130.69 | 0.1771% | 2.125% |
| Jun-20 | 73,932.84 | $130.92 | 0.1771% | 2.125% |
| Jul-20 | 74,063.77 | $131.15 | 0.1771% | 2.125% |
| Aug-20 | 74,194.92 | $131.39 | 0.1771% | 2.125% |
| Sep-20 | 74,326.31 | $131.62 | 0.1771% | 2.125% |
| Total Interest | | | | ######## |

| 2014 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-14 | 5,058.98 | $8.96 | 0.1771% | 2.125% |
| Mar-14 | 10,126.92 | $17.93 | 0.1771% | 2.125% |
| Apr-14 | 15,203.83 | $26.92 | 0.1771% | 2.125% |
| May-14 | 20,289.73 | $35.93 | 0.1771% | 2.125% |
| Jun-14 | 25,384.64 | $44.95 | 0.1771% | 2.125% |
| Jul-14 | 30,777.06 | $51.30 | 0.1667% | 2.00% |
| Aug-14 | 35,887.33 | $59.81 | 0.1667% | 2.00% |
| Sep-14 | 41,006.12 | $68.34 | 0.1667% | 2.00% |
| Oct-14 | 46,481.66 | $77.47 | 0.1667% | 2.00% |
| Nov-14 | 51,937.00 | $86.56 | 0.1667% | 2.00% |
| Dec-14 | 57,432.60 | $95.72 | 0.1667% | 2.00% |
| Jan-15 | 62,882.03 | $111.35 | 0.1771% | 2.125% |
| Feb-15 | 62,993.39 | $111.55 | 0.1771% | 2.125% |
| Mar-15 | 63,104.94 | $111.75 | 0.1771% | 2.125% |
| Apr-15 | 63,216.69 | $111.95 | 0.1771% | 2.125% |
| May-15 | 63,328.63 | $112.14 | 0.1771% | 2.125% |
| Jun-15 | 63,440.78 | $112.34 | 0.1771% | 2.125% |
| Jul-15 | 63,553.12 | $125.78 | 0.1979% | 2.375% |
| Aug-15 | 63,678.90 | $126.03 | 0.1979% | 2.375% |
| Sep-15 | 63,804.93 | $126.28 | 0.1979% | 2.375% |
| Oct-15 | 63,931.21 | $126.53 | 0.1979% | 2.375% |
| Nov-15 | 64,057.74 | $126.78 | 0.1979% | 2.375% |
| Dec-15 | 64,184.52 | $127.03 | 0.1979% | 2.375% |
| Jan-16 | 64,311.56 | $133.98 | 0.2083% | 2.50% |
| Feb-16 | 64,445.54 | $134.26 | 0.2083% | 2.50% |
| Mar-16 | 64,579.80 | $134.54 | 0.2083% | 2.50% |
| Apr-16 | 64,714.34 | $134.82 | 0.2083% | 2.50% |
| May-16 | 64,849.16 | $135.10 | 0.2083% | 2.50% |
| Jun-16 | 64,984.27 | $135.38 | 0.2083% | 2.50% |
| Jul-16 | 65,119.65 | $101.75 | 0.1563% | 1.875% |
| Aug-16 | 65,221.40 | $101.91 | 0.1563% | 1.875% |
| Sep-16 | 65,323.31 | $102.07 | 0.1563% | 1.875% |
| Oct-16 | 65,425.37 | $102.23 | 0.1563% | 1.875% |
| Nov-16 | 65,527.60 | $102.39 | 0.1563% | 1.875% |
| Dec-16 | 65,629.99 | $102.55 | 0.1563% | 1.875% |
| Jan-17 | 65,732.54 | $136.94 | 0.2083% | 2.50% |
| Feb-17 | 65,869.48 | $137.23 | 0.2083% | 2.50% |
| Mar-17 | 66,006.71 | $137.51 | 0.2083% | 2.50% |
| Apr-17 | 66,144.22 | $137.80 | 0.2083% | 2.50% |
| May-17 | 66,282.02 | $138.09 | 0.2083% | 2.50% |
| Jun-17 | 66,420.11 | $138.38 | 0.2083% | 2.50% |
| Jul-17 | 66,558.48 | $131.73 | 0.1979% | 2.375% |
| Aug-17 | 66,690.21 | $131.99 | 0.1979% | 2.375% |
| Sep-17 | 66,822.21 | $132.25 | 0.1979% | 2.375% |
| Oct-17 | 66,954.46 | $132.51 | 0.1979% | 2.375% |
| Nov-17 | 67,086.97 | $132.78 | 0.1979% | 2.375% |
| Dec-17 | 67,219.75 | $133.04 | 0.1979% | 2.375% |
| Jan-18 | 67,352.79 | $147.33 | 0.2188% | 2.625% |
| Feb-18 | 67,500.12 | $147.66 | 0.2188% | 2.625% |
| Mar-18 | 67,647.78 | $147.98 | 0.2188% | 2.625% |
| Apr-18 | 67,795.76 | $148.30 | 0.2188% | 2.625% |
| May-18 | 67,944.06 | $148.63 | 0.2188% | 2.625% |
| Jun-18 | 68,092.69 | $148.95 | 0.2188% | 2.625% |
| Jul-18 | 68,241.64 | $199.04 | 0.2917% | 3.50% |
| Aug-18 | 68,440.68 | $199.62 | 0.2917% | 3.50% |
| Sep-18 | 68,640.30 | $200.20 | 0.2917% | 3.50% |
| Oct-18 | 68,840.50 | $200.78 | 0.2917% | 3.50% |
| Nov-18 | 69,041.28 | $201.37 | 0.2917% | 3.50% |
| Dec-18 | 69,242.65 | $201.96 | 0.2917% | 3.50% |
| Jan-19 | 69,444.61 | $209.78 | 0.3021% | 3.625% |
| Feb-19 | 69,654.39 | $210.41 | 0.3021% | 3.625% |
| Mar-19 | 69,864.81 | $211.05 | 0.3021% | 3.625% |
| Apr-19 | 70,075.86 | $211.69 | 0.3021% | 3.625% |
| May-19 | 70,287.54 | $212.33 | 0.3021% | 3.625% |
| Jun-19 | 70,499.87 | $212.97 | 0.3021% | 3.625% |
| Jul-19 | 70,712.84 | $154.68 | 0.2188% | 2.625% |
| Aug-19 | 70,867.52 | $155.02 | 0.2188% | 2.625% |
| Sep-19 | 71,022.55 | $155.36 | 0.2188% | 2.625% |
| Oct-19 | 71,177.91 | $155.70 | 0.2188% | 2.625% |
| Nov-19 | 71,333.61 | $156.04 | 0.2188% | 2.625% |
| Dec-19 | 71,489.65 | $156.38 | 0.2188% | 2.625% |
| Jan-20 | 71,646.04 | $126.87 | 0.1771% | 2.125% |
| Feb-20 | 71,772.91 | $127.10 | 0.1771% | 2.125% |
| Mar-20 | 71,900.01 | $127.32 | 0.1771% | 2.125% |
| Apr-20 | 72,027.33 | $127.55 | 0.1771% | 2.125% |
| May-20 | 72,154.88 | $127.77 | 0.1771% | 2.125% |
| Jun-20 | 72,282.65 | $128.00 | 0.1771% | 2.125% |
| Jul-20 | 72,410.65 | $128.23 | 0.1771% | 2.125% |
| Aug-20 | 72,538.88 | $128.45 | 0.1771% | 2.125% |
| Sep-20 | 72,667.33 | $128.68 | 0.1771% | 2.125% |
| Total Interest | | | | ######## |

| 2015 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-15 | 4,587.63 | $8.12 | 0.1771% | 2.125% |
| Mar-15 | 9,183.38 | $16.26 | 0.1771% | 2.125% |
| Apr-15 | 13,787.26 | $24.41 | 0.1771% | 2.125% |
| May-15 | 18,399.31 | $32.58 | 0.1771% | 2.125% |
| Jun-15 | 23,859.90 | $42.25 | 0.1771% | 2.125% |
| Jul-15 | 28,489.78 | $56.39 | 0.1979% | 2.375% |
| Aug-15 | 33,133.79 | $65.58 | 0.1979% | 2.375% |
| Sep-15 | 37,786.99 | $74.79 | 0.1979% | 2.375% |
| Oct-15 | 42,449.40 | $84.01 | 0.1979% | 2.375% |
| Nov-15 | 44,727.80 | $88.52 | 0.1979% | 2.375% |
| Dec-15 | 47,010.71 | $93.04 | 0.1979% | 2.375% |
| Jan-16 | 49,298.14 | $102.70 | 0.2083% | 2.50% |
| Feb-16 | 49,400.84 | $102.92 | 0.2083% | 2.50% |
| Mar-16 | 49,503.76 | $103.13 | 0.2083% | 2.50% |
| Apr-16 | 49,606.89 | $103.35 | 0.2083% | 2.50% |
| May-16 | 49,710.24 | $103.56 | 0.2083% | 2.50% |
| Jun-16 | 49,813.80 | $103.78 | 0.2083% | 2.50% |
| Jul-16 | 49,917.58 | $78.00 | 0.1563% | 1.875% |
| Aug-16 | 49,995.58 | $78.12 | 0.1563% | 1.875% |
| Sep-16 | 50,073.70 | $78.24 | 0.1563% | 1.875% |
| Oct-16 | 50,151.94 | $78.36 | 0.1563% | 1.875% |
| Nov-16 | 50,230.30 | $78.48 | 0.1563% | 1.875% |
| Dec-16 | 50,308.78 | $78.61 | 0.1563% | 1.875% |
| Jan-17 | 50,387.39 | $104.97 | 0.2083% | 2.50% |
| Feb-17 | 50,492.36 | $105.19 | 0.2083% | 2.50% |
| Mar-17 | 50,597.56 | $105.41 | 0.2083% | 2.50% |
| Apr-17 | 50,702.97 | $105.63 | 0.2083% | 2.50% |
| May-17 | 50,808.60 | $105.85 | 0.2083% | 2.50% |
| Jun-17 | 50,914.45 | $106.07 | 0.2083% | 2.50% |
| Jul-17 | 51,020.52 | $100.98 | 0.1979% | 2.375% |
| Aug-17 | 51,121.50 | $101.18 | 0.1979% | 2.375% |
| Sep-17 | 51,222.68 | $101.38 | 0.1979% | 2.375% |
| Oct-17 | 51,324.06 | $101.58 | 0.1979% | 2.375% |
| Nov-17 | 51,425.64 | $101.78 | 0.1979% | 2.375% |
| Dec-17 | 51,527.42 | $101.98 | 0.1979% | 2.375% |
| Jan-18 | 51,629.40 | $112.94 | 0.2188% | 2.625% |
| Feb-18 | 51,742.34 | $113.19 | 0.2188% | 2.625% |
| Mar-18 | 51,855.52 | $113.43 | 0.2188% | 2.625% |
| Apr-18 | 51,968.96 | $113.68 | 0.2188% | 2.625% |
| May-18 | 52,082.64 | $113.93 | 0.2188% | 2.625% |
| Jun-18 | 52,196.57 | $114.18 | 0.2188% | 2.625% |
| Jul-18 | 52,310.75 | $152.57 | 0.2917% | 3.50% |
| Aug-18 | 52,463.32 | $153.02 | 0.2917% | 3.50% |
| Sep-18 | 52,616.34 | $153.46 | 0.2917% | 3.50% |
| Oct-18 | 52,769.81 | $153.91 | 0.2917% | 3.50% |
| Nov-18 | 52,923.72 | $154.36 | 0.2917% | 3.50% |
| Dec-18 | 53,078.08 | $154.81 | 0.2917% | 3.50% |
| Jan-19 | 53,232.89 | $160.81 | 0.3021% | 3.625% |
| Feb-19 | 53,393.70 | $161.29 | 0.3021% | 3.625% |
| Mar-19 | 53,554.99 | $161.78 | 0.3021% | 3.625% |
| Apr-19 | 53,716.77 | $162.27 | 0.3021% | 3.625% |
| May-19 | 53,879.04 | $162.76 | 0.3021% | 3.625% |
| Jun-19 | 54,041.80 | $163.25 | 0.3021% | 3.625% |
| Jul-19 | 54,205.05 | $118.57 | 0.2188% | 2.625% |
| Aug-19 | 54,323.63 | $118.83 | 0.2188% | 2.625% |
| Sep-19 | 54,442.46 | $119.09 | 0.2188% | 2.625% |
| Oct-19 | 54,561.55 | $119.35 | 0.2188% | 2.625% |
| Nov-19 | 54,680.90 | $119.61 | 0.2188% | 2.625% |
| Dec-19 | 54,800.52 | $119.88 | 0.2188% | 2.625% |
| Jan-20 | 54,920.39 | $97.25 | 0.1771% | 2.125% |
| Feb-20 | 55,017.65 | $97.43 | 0.1771% | 2.125% |
| Mar-20 | 55,115.08 | $97.60 | 0.1771% | 2.125% |
| Apr-20 | 55,212.68 | $97.77 | 0.1771% | 2.125% |
| May-20 | 55,310.45 | $97.95 | 0.1771% | 2.125% |
| Jun-20 | 55,408.39 | $98.12 | 0.1771% | 2.125% |
| Jul-20 | 55,506.51 | $98.29 | 0.1771% | 2.125% |
| Aug-20 | 55,604.81 | $98.47 | 0.1771% | 2.125% |
| Sep-20 | 55,703.27 | $98.64 | 0.1771% | 2.125% |
| Total Interest | | | | $7,089.74 |

| 2016 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-16 | 2,013.65 | $4.20 | 0.2083% | 2.50% |
| Mar-16 | 4,031.50 | $8.40 | 0.2083% | 2.50% |
| Apr-16 | 6,053.56 | $12.61 | 0.2083% | 2.50% |
| May-16 | 8,079.82 | $16.83 | 0.2083% | 2.50% |
| Jun-16 | 10,110.31 | $21.06 | 0.2083% | 2.50% |
| Jul-16 | 12,145.03 | $18.98 | 0.1563% | 1.875% |
| Aug-16 | 14,177.66 | $22.15 | 0.1563% | 1.875% |
| Sep-16 | 16,213.47 | $25.33 | 0.1563% | 1.875% |
| Oct-16 | 18,252.46 | $28.52 | 0.1563% | 1.875% |
| Nov-16 | 20,294.63 | $31.71 | 0.1563% | 1.875% |
| Dec-16 | 22,340.00 | $34.91 | 0.1563% | 1.875% |
| Jan-17 | 24,388.56 | $50.81 | 0.2083% | 2.50% |
| Feb-17 | 24,439.37 | $50.92 | 0.2083% | 2.50% |
| Mar-17 | 24,490.28 | $51.02 | 0.2083% | 2.50% |
| Apr-17 | 24,541.30 | $51.13 | 0.2083% | 2.50% |
| May-17 | 24,592.43 | $51.23 | 0.2083% | 2.50% |
| Jun-17 | 24,643.67 | $51.34 | 0.2083% | 2.50% |
| Jul-17 | 24,695.01 | $48.88 | 0.1979% | 2.375% |
| Aug-17 | 24,743.88 | $48.97 | 0.1979% | 2.375% |
| Sep-17 | 24,792.86 | $49.07 | 0.1979% | 2.375% |
| Oct-17 | 24,841.92 | $49.17 | 0.1979% | 2.375% |
| Nov-17 | 24,891.09 | $49.26 | 0.1979% | 2.375% |
| Dec-17 | 24,940.35 | $49.36 | 0.1979% | 2.375% |
| Jan-18 | 24,989.72 | $54.67 | 0.2188% | 2.625% |
| Feb-18 | 25,044.38 | $54.78 | 0.2188% | 2.625% |
| Mar-18 | 25,099.16 | $54.90 | 0.2188% | 2.625% |
| Apr-18 | 25,154.07 | $55.02 | 0.2188% | 2.625% |
| May-18 | 25,209.09 | $55.14 | 0.2188% | 2.625% |
| Jun-18 | 25,264.24 | $55.27 | 0.2188% | 2.625% |
| Jul-18 | 25,319.50 | $73.85 | 0.2917% | 3.50% |
| Aug-18 | 25,393.35 | $74.06 | 0.2917% | 3.50% |
| Sep-18 | 25,467.42 | $74.28 | 0.2917% | 3.50% |
| Oct-18 | 25,541.70 | $74.50 | 0.2917% | 3.50% |
| Nov-18 | 25,616.19 | $74.71 | 0.2917% | 3.50% |
| Dec-18 | 25,690.91 | $74.93 | 0.2917% | 3.50% |
| Jan-19 | 25,765.84 | $77.83 | 0.3021% | 3.625% |
| Feb-19 | 25,843.67 | $78.07 | 0.3021% | 3.625% |
| Mar-19 | 25,921.74 | $78.31 | 0.3021% | 3.625% |
| Apr-19 | 26,000.05 | $78.54 | 0.3021% | 3.625% |
| May-19 | 26,078.59 | $78.78 | 0.3021% | 3.625% |
| Jun-19 | 26,157.37 | $79.02 | 0.3021% | 3.625% |
| Jul-19 | 26,236.39 | $57.39 | 0.2188% | 2.625% |
| Aug-19 | 26,293.78 | $57.52 | 0.2188% | 2.625% |
| Sep-19 | 26,351.30 | $57.64 | 0.2188% | 2.625% |
| Oct-19 | 26,408.94 | $57.77 | 0.2188% | 2.625% |
| Nov-19 | 26,466.71 | $57.90 | 0.2188% | 2.625% |
| Dec-19 | 26,524.60 | $58.02 | 0.2188% | 2.625% |
| Jan-20 | 26,582.63 | $47.07 | 0.1771% | 2.125% |
| Feb-20 | 26,629.70 | $47.16 | 0.1771% | 2.125% |
| Mar-20 | 26,676.86 | $47.24 | 0.1771% | 2.125% |
| Apr-20 | 26,724.10 | $47.32 | 0.1771% | 2.125% |
| May-20 | 26,771.42 | $47.41 | 0.1771% | 2.125% |
| Jun-20 | 26,818.83 | $47.49 | 0.1771% | 2.125% |
| Jul-20 | 26,866.32 | $47.58 | 0.1771% | 2.125% |
| Aug-20 | 26,913.90 | $47.66 | 0.1771% | 2.125% |
| Sep-20 | 26,961.56 | $47.74 | 0.1771% | 2.125% |
| Total Interest | | | | $2,845.44 |

| 2017 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-17 | 1,883.51 | $3.92 | 0.2083% | 2.50% |
| Mar-17 | 3,770.95 | $7.86 | 0.2083% | 2.50% |
| Apr-17 | 5,662.31 | $11.80 | 0.2083% | 2.50% |
| May-17 | 7,557.62 | $15.75 | 0.2083% | 2.50% |
| Jun-17 | 9,456.88 | $19.70 | 0.2083% | 2.50% |
| Jul-17 | 11,360.09 | $22.48 | 0.1979% | 2.375% |
| Aug-17 | 13,266.09 | $26.26 | 0.1979% | 2.375% |
| Sep-17 | 15,175.85 | $30.04 | 0.1979% | 2.375% |
| Oct-17 | 17,089.40 | $33.82 | 0.1979% | 2.375% |
| Nov-17 | 19,006.73 | $37.62 | 0.1979% | 2.375% |
| Dec-17 | 20,927.86 | $41.42 | 0.1979% | 2.375% |
| Jan-18 | 22,852.79 | $49.99 | 0.2188% | 2.625% |
| Feb-18 | 22,902.78 | $50.10 | 0.2188% | 2.625% |
| Mar-18 | 22,952.88 | $50.21 | 0.2188% | 2.625% |
| Apr-18 | 23,003.09 | $50.32 | 0.2188% | 2.625% |
| May-18 | 23,053.41 | $50.43 | 0.2188% | 2.625% |
| Jun-18 | 23,103.84 | $50.54 | 0.2188% | 2.625% |
| Jul-18 | 23,154.38 | $67.53 | 0.2917% | 3.50% |
| Aug-18 | 23,221.91 | $67.73 | 0.2917% | 3.50% |
| Sep-18 | 23,289.65 | $67.93 | 0.2917% | 3.50% |
| Oct-18 | 23,357.57 | $68.13 | 0.2917% | 3.50% |
| Nov-18 | 23,425.70 | $68.32 | 0.2917% | 3.50% |
| Dec-18 | 23,494.02 | $68.52 | 0.2917% | 3.50% |
| Jan-19 | 23,562.55 | $71.18 | 0.3021% | 3.625% |
| Feb-19 | 23,633.73 | $71.39 | 0.3021% | 3.625% |
| Mar-19 | 23,705.12 | $71.61 | 0.3021% | 3.625% |
| Apr-19 | 23,776.73 | $71.83 | 0.3021% | 3.625% |
| May-19 | 23,848.56 | $72.04 | 0.3021% | 3.625% |
| Jun-19 | 23,920.60 | $72.26 | 0.3021% | 3.625% |
| Jul-19 | 23,992.86 | $52.48 | 0.2188% | 2.625% |
| Aug-19 | 24,045.34 | $52.60 | 0.2188% | 2.625% |
| Sep-19 | 24,097.94 | $52.71 | 0.2188% | 2.625% |
| Oct-19 | 24,150.66 | $52.83 | 0.2188% | 2.625% |
| Nov-19 | 24,203.49 | $52.95 | 0.2188% | 2.625% |
| Dec-19 | 24,256.43 | $53.06 | 0.2188% | 2.625% |
| Jan-20 | 24,309.49 | $43.05 | 0.1771% | 2.125% |
| Feb-20 | 24,352.54 | $43.12 | 0.1771% | 2.125% |
| Mar-20 | 24,395.66 | $43.20 | 0.1771% | 2.125% |
| Apr-20 | 24,438.86 | $43.28 | 0.1771% | 2.125% |
| May-20 | 24,482.14 | $43.35 | 0.1771% | 2.125% |
| Jun-20 | 24,525.50 | $43.43 | 0.1771% | 2.125% |
| Jul-20 | 24,568.93 | $43.51 | 0.1771% | 2.125% |
| Aug-20 | 24,612.43 | $43.58 | 0.1771% | 2.125% |
| Sep-20 | 24,656.02 | $43.66 | 0.1771% | 2.125% |
| Total Interest | | | | $2,097.55 |

| 2018 T4C Expenditures | | | | |
|---|---|---|---|---|
| Date | Amount | Interest | Interest Monthly | Treasury Rate |
| Feb-18 | 2,867.85 | $6.27 | 0.2188% | 2.625% |
| Mar-18 | 5,741.98 | $12.56 | 0.2188% | 2.625% |
| Apr-18 | 8,622.39 | $18.86 | 0.2188% | 2.625% |
| May-18 | 11,509.11 | $25.18 | 0.2188% | 2.625% |
| Jun-18 | 14,402.14 | $31.50 | 0.2188% | 2.625% |
| Jul-18 | 17,301.49 | $50.46 | 0.2917% | 3.50% |
| Aug-18 | 20,219.81 | $58.97 | 0.2917% | 3.50% |
| Sep-18 | 23,146.64 | $67.51 | 0.2917% | 3.50% |
| Oct-18 | 23,214.15 | $67.71 | 0.2917% | 3.50% |
| Nov-18 | 23,281.85 | $67.91 | 0.2917% | 3.50% |
| Dec-18 | 23,349.76 | $68.10 | 0.2917% | 3.50% |
| Jan-19 | 23,417.86 | $70.74 | 0.3021% | 3.625% |
| Feb-19 | 23,488.60 | $70.96 | 0.3021% | 3.625% |
| Mar-19 | 23,559.56 | $71.17 | 0.3021% | 3.625% |
| Apr-19 | 23,630.73 | $71.38 | 0.3021% | 3.625% |
| May-19 | 23,702.11 | $71.60 | 0.3021% | 3.625% |
| Jun-19 | 23,773.71 | $71.82 | 0.3021% | 3.625% |
| Jul-19 | 23,845.53 | $52.16 | 0.2188% | 2.625% |
| Aug-19 | 23,897.69 | $52.28 | 0.2188% | 2.625% |
| Sep-19 | 23,949.97 | $52.39 | 0.2188% | 2.625% |
| Oct-19 | 24,002.36 | $52.51 | 0.2188% | 2.625% |
| Nov-19 | 24,054.86 | $52.62 | 0.2188% | 2.625% |
| Dec-19 | 24,107.48 | $52.74 | 0.2188% | 2.625% |
| Jan-20 | 24,160.22 | $42.78 | 0.1771% | 2.125% |
| Feb-20 | 24,203.00 | $42.86 | 0.1771% | 2.125% |
| Mar-20 | 24,245.86 | $42.94 | 0.1771% | 2.125% |
| Apr-20 | 24,288.80 | $43.01 | 0.1771% | 2.125% |
| May-20 | 24,331.81 | $43.09 | 0.1771% | 2.125% |
| Jun-20 | 24,374.90 | $43.16 | 0.1771% | 2.125% |
| Jul-20 | 24,418.06 | $43.24 | 0.1771% | 2.125% |
| Aug-20 | 24,461.30 | $43.32 | 0.1771% | 2.125% |
| Sep-20 | 24,504.62 | $43.39 | 0.1771% | 2.125% |
| Total Interest | | | | $1,605.19 |

**ACLR, LLC Civil Action**  ·  PY07 Duplicate Payment Audit  ·  Monthly Costs - TR Calculation
**No. 15-767 16-309**  ·  Net Payment Amount  ·  1 of 2
**Settlement Proposal**  ·  Exhibit B-6 Adjunct

| Dates | G&A & Payroll Costs | Managing Principal | Loan Interest | Office Lease | Total Expenses | Reasonable Profit | Totals |
|---|---|---|---|---|---|---|---|
| Through 11/30/11 | 834,643 | 563,600 | 8,690 | 57,390 | 1,464,324 | 135,109 | 1,599,432 |
| 12/31/11 | 79,339 | 38,770 | 1,271 | 4,990 | 124,370 | 12,840 | 137,210 |
| 01/31/12 | 75,893 | 51,694 | 2,404 | 4,990 | 134,980 | 12,493 | 147,473 |
| 02/29/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 03/31/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 04/30/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 05/31/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 06/30/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 07/31/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 08/31/12 | 0 | 0 | 2,404 | 4,990 | 7,393 | 1,109 | 8,502 |
| 09/30/12 | 0 | 0 | 2,404 | 9,947 | 12,351 | 1,853 | 14,203 |
| 10/31/12 | 0 | 0 | 2,404 | 9,948 | 12,351 | 1,853 | 14,204 |
| 11/30/12 | 0 | 0 | 2,404 | 9,948 | 12,351 | 1,853 | 14,204 |
| 12/31/12 | 0 | 0 | 2,404 | 9,948 | 12,351 | 1,853 | 14,204 |
| 01/31/13 | 0 | 0 | 2,362 | 0 | 2,362 | 354 | 2,716 |
| 02/28/13 | 0 | 0 | 2,362 | 9,948 | 12,310 | 1,846 | 14,156 |
| 03/31/13 | 0 | 0 | 2,362 | 0 | 2,362 | 354 | 2,716 |
| 04/30/13 | 0 | 0 | 2,362 | 17,113 | 19,474 | 2,921 | 22,396 |
| 05/31/13 | 0 | 0 | 2,362 | 0 | 2,362 | 354 | 2,716 |
| 06/30/13 | 0 | 0 | 2,362 | 5,081 | 7,443 | 1,116 | 8,559 |
| 07/31/13 | 0 | 0 | 2,362 | 2,081 | 4,443 | 666 | 5,109 |
| 08/31/13 | 0 | 0 | 2,362 | 2,081 | 4,443 | 666 | 5,109 |
| 09/30/13 | 0 | 0 | 2,362 | 2,081 | 4,443 | 666 | 5,109 |
| 10/31/13 | 0 | 0 | 2,362 | 7,162 | 9,524 | 1,429 | 10,953 |
| 11/30/13 | 0 | 0 | 2,362 | 1,715 | 4,077 | 612 | 4,688 |
| 12/31/13 | 0 | 0 | 2,362 | 5,081 | 7,443 | 1,116 | 8,559 |
| 01/31/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 02/28/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 03/31/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 04/30/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 05/31/14 | 0 | 0 | 2,318 | 0 | 2,318 | 348 | 2,666 |
| 06/30/14 | 0 | 0 | 2,318 | 0 | 2,318 | 348 | 2,666 |
| 07/31/14 | 0 | 0 | 2,318 | 0 | 2,318 | 348 | 2,666 |
| 08/31/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 09/30/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 10/31/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 11/30/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 12/31/14 | 0 | 0 | 2,318 | 2,081 | 4,399 | 660 | 5,059 |
| 01/31/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 02/28/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 03/31/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 04/30/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 05/31/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 06/30/15 | 0 | 0 | 1,908 | 2,332 | 4,240 | 636 | 4,876 |
| 07/31/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 08/31/15 | 0 | 0 | 1,908 | 2,081 | 3,989 | 598 | 4,588 |
| 09/30/15 | 0 | 0 | 1,908 | 2,384 | 4,292 | 644 | 4,936 |
| 10/31/15 | 0 | 0 | 1,908 | 2,358 | 4,267 | 640 | 4,907 |
| 11/30/15 | 0 | 0 | 1,908 | 2,385 | 4,294 | 644 | 4,938 |
| 12/31/15 | 0 | 0 | 1,908 | 2,337 | 4,246 | 637 | 4,882 |
| 01/31/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 02/29/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 03/31/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 04/30/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 05/31/16 | 0 | 0 | 1,751 | 2,812 | 4,563 | 684 | 5,247 |
| 06/30/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 07/31/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 08/31/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 09/30/16 | 0 | 0 | 1,751 | 2,081 | 3,832 | 575 | 4,407 |
| 10/31/16 | 0 | 0 | 1,751 | 0 | 1,751 | 263 | 2,014 |
| 11/30/16 | 0 | 0 | 1,751 | 0 | 1,751 | 263 | 2,014 |

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY07 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit B-6 Adjunct**

**Monthly Costs - TR Calculation**
**2 of 2**

| Dates | G&A & Payroll Costs | Managing Principal | Loan Interest | Office Lease | Total Expenses | Reasonable Profit | Totals |
|---|---|---|---|---|---|---|---|
| 12/31/16 | 0 | 0 | 1,751 | 0 | 1,751 | 263 | 2,014 |
| 01/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 02/28/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 03/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 04/30/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 05/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 06/30/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 07/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 08/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 09/30/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 10/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 11/30/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 12/31/17 | 0 | 0 | 1,638 | 0 | 1,638 | 246 | 1,884 |
| 01/31/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 02/28/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 03/31/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 04/30/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 05/31/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 06/30/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 07/31/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| 08/31/18 | 0 | 0 | 2,494 | 0 | 2,494 | 374 | 2,868 |
| Totals | 989,876 | 654,064 | 178,477 | 258,987 | 2,081,404 | 214,101 | 2,295,505 |

**EXHIBIT C**

**PY10 DUPLICATE PAYMENT AUDIT**

**NET PAYMENT AMOUNT SUMMARY**

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY10 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit C**

**Summary**
**1 of 1**

| PY10 Duplicate Payment Settlement Costs | | | | |
|---|---|---|---|---|
| Year | Total Hours | GSA Rates | Treasury Rate Interest | Totals |
| 2012 | 235 | 42,308 | 6,411 | 48,718 |
| 2013 | 1,005 | 207,560 | 31,452 | 239,012 |
| 2014 | 2,431 | 510,192 | 77,310 | 587,503 |
| 2015 | 705 | 163,388 | 24,759 | 188,147 |
| Totals | 4,376 | 923,449 | 139,932 | 1,063,380 |

**EXHIBIT C-1**

**PERSONNEL HOURS WORKED**

**NET PAYMENT AMOUNT**

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY10 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit C-1**

**Personnel Hours Worked**
**1 of 4**

| 2012 Hours: PY10 Duplicate Payment Process Development | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
| Mucke | Chris | 0 | 0 | 15 | 15 | 0 | 5 | 5 | 5 | 30 | 5 | 10 | 0 | 90 |
| Mucke | Gil | 0 | 0 | 0 | 10 | 0 | 0 | 10 | 0 | 0 | 0 | 0 | 0 | 20 |
| Barnes | Jason | 0 | 0 | 15 | 30 | 0 | 20 | 5 | 20 | 30 | 0 | 0 | 0 | 120 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 | 0 | 0 | 0 | 0 | 5 |
| Totals | | 0 | 0 | 30 | 55 | 0 | 25 | 20 | 30 | 60 | 5 | 10 | 0 | 235 |

| GSA Rate Schedules: 06/17/11 - 06/16/12; 06/17/12 - 06/16/13 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
| Mucke | Chris | 215.39 | 215.39 | 215.39 | 215.39 | 215.39 | 215.39 | 219.27 | 219.27 | 219.27 | 219.27 | 219.27 | 219.27 |
| Mucke | Gil | 164.10 | 164.10 | 164.10 | 164.10 | 164.10 | 164.10 | 167.06 | 167.06 | 167.06 | 167.06 | 167.06 | 167.06 |
| Barnes | Jason | 153.85 | 153.85 | 153.85 | 153.85 | 153.85 | 153.85 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 |
| Dixon | Bruce | 153.85 | 153.85 | 153.85 | 153.85 | 153.85 | 153.85 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 |

| 2012 PY Duplicate Payment GSA Rate Costs | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
| Mucke | Chris | 0 | 0 | 3,231 | 3,231 | 0 | 1,077 | 1,096 | 1,096 | 6,578 | 1,096 | 2,193 | 0 | 19,599 |
| Mucke | Gil | 0 | 0 | 0 | 1,641 | 0 | 0 | 1,671 | 0 | 0 | 0 | 0 | 0 | 3,312 |
| Barnes | Jason | 0 | 0 | 2,308 | 4,616 | 0 | 3,077 | 783 | 3,132 | 4,699 | 0 | 0 | 0 | 18,614 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 783 | 0 | 0 | 0 | 0 | 783 |
| Totals | | 0 | 0 | 5,539 | 9,487 | 0 | 4,154 | 3,550 | 5,012 | 11,277 | 1,096 | 2,193 | 0 | 42,308 |

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY10 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit C-1**

**Personnel Hours Worked**
**2 of 4**

| 2013 Hours: PY10 Duplicate Payment Process Development | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
| Mucke | Chris | 0 | 20 | 50 | 80 | 60 | 90 | 180 | 120 | 120 | 40 | 0 | 0 | 760 |
| Mucke | Gil | 0 | 10 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 70 |
| Barnes | Jason | 0 | 10 | 25 | 80 | 60 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 175 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | | 0 | 40 | 135 | 160 | 120 | 90 | 180 | 120 | 120 | 40 | 0 | 0 | 1005 |

| GSA Rate Schedules: 06/17/12 - 06/16/13; 06/17/13 - 06/16/14 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
| Mucke | Chris | 219.27 | 219.27 | 219.27 | 219.27 | 219.27 | 219.27 | 223.21 | 223.21 | 223.21 | 223.21 | 223.21 | 223.21 |
| Mucke | Gil | 167.06 | 167.06 | 167.06 | 167.06 | 167.06 | 167.06 | 170.06 | 170.06 | 170.06 | 170.06 | 170.06 | 170.06 |
| Barnes | Jason | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 |
| Dixon | Bruce | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 156.62 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 |

| 2013 PY Duplicate Payment GSA Rate Costs | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
| Mucke | Chris | 0 | 4,385 | 10,964 | 17,542 | 13,156 | 19,734 | 40,178 | 26,785 | 26,785 | 8,928 | 0 | 0 | 168,458 |
| Mucke | Gil | 0 | 1,671 | 10,024 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11,694 |
| Barnes | Jason | 0 | 1,566 | 3,916 | 12,530 | 9,397 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 27,409 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | | 0 | 7,622 | 24,903 | 30,071 | 22,553 | 19,734 | 40,178 | 26,785 | 26,785 | 8,928 | 0 | 0 | 207,560 |

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

PY10 Duplicate Payment Audit
Net Payment Amount
Exhibit C-1

Personnel Hours Worked
3 of 4

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 Hours: Duplicate Payment Audit | | | | | | | | | | | | | | |
| Mucke | Chris | 80 | 40 | 40 | 90 | 120 | 175 | 120 | 200 | 150 | 300 | 300 | 150 | 1,765 |
| Mucke | Gil | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 40 | 180 | 75 | 40 | 360 |
| Donaghy | Sean | 8 | 20 | 20 | 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 56 |
| Thompson | Thais | 0 | 0 | 0 | 20 | 0 | 30 | 5 | 5 | 0 | 0 | 40 | 10 | 110 |
| Barnes | Jason | 0 | 0 | 0 | 0 | 0 | 100 | 0 | 0 | 0 | 0 | 0 | 0 | 100 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 40 | 40 |
| Totals | | 88 | 60 | 60 | 118 | 120 | 330 | 125 | 205 | 190 | 480 | 415 | 240 | 2,431 |

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GSA Rate Schedules: 06/17/13 - 06/16/14; 06/17/14 - 06/16/15 | | | | | | | | | | | | | |
| Mucke | Chris | 223.21 | 223.21 | 223.21 | 223.21 | 223.21 | 223.21 | 227.23 | 227.23 | 227.23 | 227.23 | 227.23 | 227.23 |
| Mucke | Gil | 170.06 | 170.06 | 170.06 | 170.06 | 170.06 | 170.06 | 173.12 | 173.12 | 173.12 | 173.12 | 173.12 | 173.12 |
| Donaghy | Sean | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 |
| Thompson | Thais | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 |
| Barnes | Jason | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 |
| Dixon | Bruce | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 159.44 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 | 162.31 |

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2014 PY Duplicate Payment GSA Rate Costs | | | | | | | | | | | | | | |
| Mucke | Chris | 17,857 | 8,928 | 8,928 | 20,089 | 26,785 | 39,062 | 27,268 | 45,446 | 34,085 | 68,169 | 68,169 | 34,085 | 398,870 |
| Mucke | Gil | 0 | 0 | 0 | 0 | 0 | 4,252 | 0 | 0 | 6,925 | 31,162 | 12,984 | 6,925 | 62,247 |
| Donaghy | Sean | 1,276 | 3,189 | 3,189 | 1,276 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,929 |
| Thompson | Thais | 0 | 0 | 0 | 3,189 | 0 | 4,783 | 812 | 812 | 0 | 0 | 6,492 | 1,623 | 17,711 |
| Barnes | Jason | 0 | 0 | 0 | 0 | 0 | 15,944 | 0 | 0 | 0 | 0 | 0 | 0 | 15,944 |
| Dixon | Bruce | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6,492 | 6,492 |
| Totals | | 19,132 | 12,117 | 12,117 | 24,553 | 26,785 | 64,040 | 28,079 | 46,258 | 41,009 | 99,331 | 87,645 | 49,125 | 510,192 |

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**PY10 Duplicate Payment Audit**
**Net Payment Amount**
**Exhibit C-1**

**Personnel Hours Worked**
**4 of 4**

| 2015 Hours: Duplicate Payment Audit | | | | | | |
|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | Totals |
| Mucke | Chris | 175 | 200 | 120 | 80 | 575 |
| Mucke | Gil | 40 | 60 | 20 | 10 | 130 |
| Thompson | Thais | 8 | 0 | 0 | 0 | 8 |
| Dixon | Bruce | 15 | 20 | 20 | 0 | 55 |
| Totals | | 215 | 260 | 140 | 90 | 705 |

| GSA Rate Schedules: 06/17/14 - 06/16/15 | | | | | |
|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr |
| Mucke | Chris | 227.23 | 227.23 | 227.23 | 227.23 |
| Mucke | Gil | 173.12 | 173.12 | 173.12 | 173.12 |
| Thompson | Thais | 162.31 | 162.31 | 162.31 | 162.31 |
| Dixon | Bruce | 162.31 | 162.31 | 162.31 | 162.31 |

| 2014 PY Duplicate Payment GSA Rate Costs | | | | | | |
|---|---|---|---|---|---|---|
| Last | First | Jan | Feb | Mar | Apr | Totals |
| Mucke | Chris | 39,765 | 45,446 | 27,268 | 18,178 | 130,657 |
| Mucke | Gil | 6,925 | 10,387 | 3,462 | 1,731 | 22,506 |
| Thompson | Thais | 1,298 | 0 | 0 | 0 | 1,298 |
| Dixon | Bruce | 2,435 | 3,246 | 3,246 | 0 | 8,927 |
| Totals | | 50,423 | 59,079 | 33,976 | 19,910 | 163,388 |

# EXHIBIT C-2

# TREASURY RATE INTEREST CALCULATION

# NET PAYMENT AMOUNT

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

PY10 Duplicate Payment Audit
Net Payment Amount
Exhibit C-2

Treasury Rate Interest Calculation
1 of 1

### 2012 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Apr-15 | 42,307.55 | $74.92 | 0.1771% | 2.125% |
| May-15 | 42,382.47 | $75.05 | 0.1771% | 2.125% |
| Jun-15 | 42,457.52 | $75.19 | 0.1771% | 2.125% |
| Jul-15 | 42,532.71 | $84.18 | 0.1979% | 2.375% |
| Aug-15 | 42,616.89 | $84.35 | 0.1979% | 2.375% |
| Sep-15 | 42,701.23 | $84.51 | 0.1979% | 2.375% |
| Oct-15 | 42,785.75 | $84.68 | 0.1979% | 2.375% |
| Nov-15 | 42,870.43 | $84.85 | 0.1979% | 2.375% |
| Dec-15 | 42,955.27 | $85.02 | 0.1979% | 2.375% |
| Jan-16 | 43,040.29 | $89.67 | 0.2083% | 2.50% |
| Feb-16 | 43,129.96 | $89.85 | 0.2083% | 2.50% |
| Mar-16 | 43,219.81 | $90.04 | 0.2083% | 2.50% |
| Apr-16 | 43,309.85 | $90.23 | 0.2083% | 2.50% |
| May-16 | 43,400.08 | $90.42 | 0.2083% | 2.50% |
| Jun-16 | 43,490.50 | $90.61 | 0.2083% | 2.50% |
| Jul-16 | 43,581.10 | $68.10 | 0.1563% | 1.875% |
| Aug-16 | 43,649.20 | $68.20 | 0.1563% | 1.875% |
| Sep-16 | 43,717.40 | $68.31 | 0.1563% | 1.875% |
| Oct-16 | 43,785.71 | $68.42 | 0.1563% | 1.875% |
| Nov-16 | 43,854.12 | $68.52 | 0.1563% | 1.875% |
| Dec-16 | 43,922.65 | $68.63 | 0.1563% | 1.875% |
| Jan-17 | 43,991.27 | $91.65 | 0.2083% | 2.50% |
| Feb-17 | 44,082.92 | $91.84 | 0.2083% | 2.50% |
| Mar-17 | 44,174.76 | $92.03 | 0.2083% | 2.50% |
| Apr-17 | 44,266.79 | $92.22 | 0.2083% | 2.50% |
| May-17 | 44,359.02 | $92.41 | 0.2083% | 2.50% |
| Jun-17 | 44,451.43 | $92.61 | 0.2083% | 2.50% |
| Jul-17 | 44,544.04 | $88.16 | 0.1979% | 2.375% |
| Aug-17 | 44,632.20 | $88.33 | 0.1979% | 2.375% |
| Sep-17 | 44,720.53 | $88.51 | 0.1979% | 2.375% |
| Oct-17 | 44,809.04 | $88.68 | 0.1979% | 2.375% |
| Nov-17 | 44,897.73 | $88.86 | 0.1979% | 2.375% |
| Dec-17 | 44,986.59 | $99.03 | 0.2188% | 2.625% |
| Jan-18 | 45,075.62 | $98.60 | 0.2188% | 2.625% |
| Feb-18 | 45,174.22 | $98.82 | 0.2188% | 2.625% |
| Mar-18 | 45,273.04 | $99.03 | 0.2188% | 2.625% |
| Apr-18 | 45,372.08 | $99.25 | 0.2188% | 2.625% |
| May-18 | 45,471.33 | $99.47 | 0.2188% | 2.625% |
| Jun-18 | 45,570.80 | $99.69 | 0.2188% | 2.625% |
| Jul-18 | 45,670.48 | $133.21 | 0.2917% | 3.50% |
| Aug-18 | 45,803.69 | $133.59 | 0.2917% | 3.50% |
| Sep-18 | 45,937.28 | $133.98 | 0.2917% | 3.50% |
| Oct-18 | 46,071.27 | $134.37 | 0.2917% | 3.50% |
| Nov-18 | 46,205.64 | $134.77 | 0.2917% | 3.50% |
| Dec-18 | 46,340.41 | $135.16 | 0.2917% | 3.50% |
| Jan-19 | 46,475.57 | $140.39 | 0.3021% | 3.625% |
| Feb-19 | 46,615.96 | $140.82 | 0.3021% | 3.625% |
| Mar-19 | 46,756.78 | $141.24 | 0.3021% | 3.625% |
| Apr-19 | 46,898.03 | $141.67 | 0.3021% | 3.625% |
| May-19 | 47,039.70 | $142.10 | 0.3021% | 3.625% |
| Jun-19 | 47,181.80 | $142.53 | 0.3021% | 3.625% |
| Jul-19 | 47,324.33 | $103.52 | 0.2188% | 2.625% |
| Aug-19 | 47,427.85 | $103.75 | 0.2188% | 2.625% |
| Sep-19 | 47,531.60 | $103.98 | 0.2188% | 2.625% |
| Oct-19 | 47,635.57 | $104.20 | 0.2188% | 2.625% |
| Nov-19 | 47,739.77 | $104.43 | 0.2188% | 2.625% |
| Dec-19 | 47,844.20 | $104.66 | 0.2188% | 2.625% |
| Jan-20 | 47,948.86 | $84.91 | 0.1771% | 2.125% |
| Feb-20 | 48,033.77 | $85.06 | 0.1771% | 2.125% |
| Mar-20 | 48,118.83 | $85.21 | 0.1771% | 2.125% |
| Apr-20 | 48,204.04 | $85.36 | 0.1771% | 2.125% |
| May-20 | 48,289.40 | $85.51 | 0.1771% | 2.125% |
| Jun-20 | 48,374.92 | $85.66 | 0.1771% | 2.125% |
| Jul-20 | 48,460.58 | $85.82 | 0.1771% | 2.125% |
| Aug-20 | 48,546.40 | $85.97 | 0.1771% | 2.125% |
| Sep-20 | 48,632.36 | $86.12 | 0.1771% | 2.125% |
| Total Interest | | $6,410.93 | | |

### 2013 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Apr-15 | 207,560.30 | $367.55 | 0.1771% | 2.125% |
| May-15 | 207,927.85 | $368.21 | 0.1771% | 2.125% |
| Jun-15 | 208,296.06 | $368.86 | 0.1771% | 2.125% |
| Jul-15 | 208,664.92 | $412.98 | 0.1979% | 2.375% |
| Aug-15 | 209,077.90 | $413.80 | 0.1979% | 2.375% |
| Sep-15 | 209,491.70 | $414.62 | 0.1979% | 2.375% |
| Oct-15 | 209,906.32 | $415.44 | 0.1979% | 2.375% |
| Nov-15 | 210,321.76 | $416.26 | 0.1979% | 2.375% |
| Dec-15 | 210,738.02 | $417.09 | 0.1979% | 2.375% |
| Jan-16 | 211,155.11 | $439.91 | 0.2083% | 2.50% |
| Feb-16 | 211,595.01 | $440.82 | 0.2083% | 2.50% |
| Mar-16 | 212,035.84 | $441.74 | 0.2083% | 2.50% |
| Apr-16 | 212,477.58 | $442.66 | 0.2083% | 2.50% |
| May-16 | 212,920.24 | $443.58 | 0.2083% | 2.50% |
| Jun-16 | 213,363.82 | $444.51 | 0.2083% | 2.50% |
| Jul-16 | 213,808.33 | $334.08 | 0.1563% | 1.875% |
| Aug-16 | 214,142.41 | $334.60 | 0.1563% | 1.875% |
| Sep-16 | 214,477.02 | $335.12 | 0.1563% | 1.875% |
| Oct-16 | 214,812.12 | $335.64 | 0.1563% | 1.875% |
| Nov-16 | 215,147.77 | $336.17 | 0.1563% | 1.875% |
| Dec-16 | 215,483.94 | $336.69 | 0.1563% | 1.875% |
| Jan-17 | 215,820.63 | $449.63 | 0.2083% | 2.50% |
| Feb-17 | 216,270.26 | $450.56 | 0.2083% | 2.50% |
| Mar-17 | 216,720.82 | $451.50 | 0.2083% | 2.50% |
| Apr-17 | 217,172.32 | $452.44 | 0.2083% | 2.50% |
| May-17 | 217,624.76 | $453.38 | 0.2083% | 2.50% |
| Jun-17 | 218,078.15 | $454.33 | 0.2083% | 2.50% |
| Jul-17 | 218,532.48 | $432.51 | 0.1979% | 2.375% |
| Aug-17 | 218,964.99 | $433.37 | 0.1979% | 2.375% |
| Sep-17 | 219,398.36 | $434.23 | 0.1979% | 2.375% |
| Oct-17 | 219,832.58 | $435.09 | 0.1979% | 2.375% |
| Nov-17 | 220,267.67 | $435.95 | 0.1979% | 2.375% |
| Dec-17 | 220,703.62 | $436.81 | 0.1979% | 2.375% |
| Jan-18 | 221,140.43 | $483.74 | 0.2188% | 2.625% |
| Feb-18 | 221,624.17 | $484.80 | 0.2188% | 2.625% |
| Mar-18 | 222,108.97 | $485.86 | 0.2188% | 2.625% |
| Apr-18 | 222,594.84 | $486.93 | 0.2188% | 2.625% |
| May-18 | 223,081.76 | $487.99 | 0.2188% | 2.625% |
| Jun-18 | 223,569.75 | $489.06 | 0.2188% | 2.625% |
| Jul-18 | 224,058.81 | $653.50 | 0.2917% | 3.50% |
| Aug-18 | 224,712.32 | $655.41 | 0.2917% | 3.50% |
| Sep-18 | 225,367.73 | $657.32 | 0.2917% | 3.50% |
| Oct-18 | 226,025.05 | $659.24 | 0.2917% | 3.50% |
| Nov-18 | 226,684.29 | $661.16 | 0.2917% | 3.50% |
| Dec-18 | 227,345.45 | $663.09 | 0.2917% | 3.50% |
| Jan-19 | 228,008.54 | $688.78 | 0.3021% | 3.625% |
| Feb-19 | 228,697.32 | $690.86 | 0.3021% | 3.625% |
| Mar-19 | 229,388.18 | $692.94 | 0.3021% | 3.625% |
| Apr-19 | 230,081.12 | $695.04 | 0.3021% | 3.625% |
| May-19 | 230,776.16 | $697.14 | 0.3021% | 3.625% |
| Jun-19 | 231,473.29 | $699.24 | 0.3021% | 3.625% |
| Jul-19 | 232,172.54 | $507.88 | 0.2188% | 2.625% |
| Aug-19 | 232,680.41 | $508.99 | 0.2188% | 2.625% |
| Sep-19 | 233,189.40 | $510.10 | 0.2188% | 2.625% |
| Oct-19 | 233,699.50 | $511.22 | 0.2188% | 2.625% |
| Nov-19 | 234,210.72 | $512.34 | 0.2188% | 2.625% |
| Dec-19 | 234,723.06 | $513.46 | 0.2188% | 2.625% |
| Jan-20 | 235,236.51 | $416.56 | 0.1771% | 2.125% |
| Feb-20 | 235,653.08 | $417.30 | 0.1771% | 2.125% |
| Mar-20 | 236,070.38 | $418.04 | 0.1771% | 2.125% |
| Apr-20 | 236,488.42 | $418.78 | 0.1771% | 2.125% |
| May-20 | 236,907.20 | $419.52 | 0.1771% | 2.125% |
| Jun-20 | 237,326.73 | $420.27 | 0.1771% | 2.125% |
| Jul-20 | 237,746.99 | $421.01 | 0.1771% | 2.125% |
| Aug-20 | 238,168.00 | $421.76 | 0.1771% | 2.125% |
| Sep-20 | 238,589.76 | $422.50 | 0.1771% | 2.125% |
| Total Interest | | $31,451.96 | | |

### 2014 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Apr-15 | 510,192.39 | $903.47 | 0.1771% | 2.125% |
| May-15 | 511,095.86 | $905.07 | 0.1771% | 2.125% |
| Jun-15 | 511,999.48 | $906.67 | 0.1771% | 2.125% |
| Jul-15 | 512,907.59 | $1,015.13 | 0.1979% | 2.375% |
| Aug-15 | 513,922.72 | $1,017.14 | 0.1979% | 2.375% |
| Sep-15 | 514,939.86 | $1,019.15 | 0.1979% | 2.375% |
| Oct-15 | 515,959.01 | $1,021.17 | 0.1979% | 2.375% |
| Nov-15 | 516,980.18 | $1,023.19 | 0.1979% | 2.375% |
| Dec-15 | 518,003.37 | $1,025.22 | 0.1979% | 2.375% |
| Jan-16 | 519,028.58 | $1,081.31 | 0.2083% | 2.50% |
| Feb-16 | 520,109.89 | $1,083.56 | 0.2083% | 2.50% |
| Mar-16 | 521,193.46 | $1,085.82 | 0.2083% | 2.50% |
| Apr-16 | 522,279.28 | $1,088.08 | 0.2083% | 2.50% |
| May-16 | 523,367.36 | $1,090.35 | 0.2083% | 2.50% |
| Jun-16 | 524,457.71 | $1,092.62 | 0.2083% | 2.50% |
| Jul-16 | 525,550.33 | $821.17 | 0.1563% | 1.875% |
| Aug-16 | 526,371.50 | $822.46 | 0.1563% | 1.875% |
| Sep-16 | 527,193.95 | $823.74 | 0.1563% | 1.875% |
| Oct-16 | 528,017.69 | $825.03 | 0.1563% | 1.875% |
| Nov-16 | 528,842.72 | $826.32 | 0.1563% | 1.875% |
| Dec-16 | 529,669.04 | $827.61 | 0.1563% | 1.875% |
| Jan-17 | 530,496.65 | $1,105.20 | 0.2083% | 2.50% |
| Feb-17 | 531,601.85 | $1,107.50 | 0.2083% | 2.50% |
| Mar-17 | 532,709.35 | $1,109.81 | 0.2083% | 2.50% |
| Apr-17 | 533,819.16 | $1,112.12 | 0.2083% | 2.50% |
| May-17 | 534,931.29 | $1,114.44 | 0.2083% | 2.50% |
| Jun-17 | 536,045.73 | $1,116.76 | 0.2083% | 2.50% |
| Jul-17 | 537,162.49 | $1,063.13 | 0.1979% | 2.375% |
| Aug-17 | 538,225.62 | $1,065.24 | 0.1979% | 2.375% |
| Sep-17 | 539,290.86 | $1,067.35 | 0.1979% | 2.375% |
| Oct-17 | 540,358.21 | $1,069.46 | 0.1979% | 2.375% |
| Nov-17 | 541,427.67 | $1,071.58 | 0.1979% | 2.375% |
| Dec-17 | 542,499.24 | $1,073.70 | 0.1979% | 2.375% |
| Jan-18 | 543,572.94 | $1,189.07 | 0.2188% | 2.625% |
| Feb-18 | 544,762.00 | $1,191.67 | 0.2188% | 2.625% |
| Mar-18 | 545,953.67 | $1,194.27 | 0.2188% | 2.625% |
| Apr-18 | 547,147.94 | $1,196.89 | 0.2188% | 2.625% |
| May-18 | 548,344.83 | $1,199.50 | 0.2188% | 2.625% |
| Jun-18 | 549,544.33 | $1,202.13 | 0.2188% | 2.625% |
| Jul-18 | 550,746.46 | $1,606.34 | 0.2917% | 3.50% |
| Aug-18 | 552,352.81 | $1,611.03 | 0.2917% | 3.50% |
| Sep-18 | 553,963.84 | $1,615.73 | 0.2917% | 3.50% |
| Oct-18 | 555,579.56 | $1,620.44 | 0.2917% | 3.50% |
| Nov-18 | 557,200.00 | $1,625.17 | 0.2917% | 3.50% |
| Dec-18 | 558,825.17 | $1,629.91 | 0.2917% | 3.50% |
| Jan-19 | 560,455.08 | $1,693.04 | 0.3021% | 3.625% |
| Feb-19 | 562,148.12 | $1,698.16 | 0.3021% | 3.625% |
| Mar-19 | 563,846.27 | $1,703.29 | 0.3021% | 3.625% |
| Apr-19 | 565,549.56 | $1,708.43 | 0.3021% | 3.625% |
| May-19 | 567,257.99 | $1,713.59 | 0.3021% | 3.625% |
| Jun-19 | 568,971.58 | $1,718.77 | 0.3021% | 3.625% |
| Jul-19 | 570,690.35 | $1,248.39 | 0.2188% | 2.625% |
| Aug-19 | 571,938.74 | $1,251.12 | 0.2188% | 2.625% |
| Sep-19 | 573,189.85 | $1,253.85 | 0.2188% | 2.625% |
| Oct-19 | 574,443.71 | $1,256.60 | 0.2188% | 2.625% |
| Nov-19 | 575,700.30 | $1,259.34 | 0.2188% | 2.625% |
| Dec-19 | 576,959.65 | $1,262.10 | 0.2188% | 2.625% |
| Jan-20 | 578,221.74 | $1,023.93 | 0.1771% | 2.125% |
| Feb-20 | 579,245.68 | $1,025.75 | 0.1771% | 2.125% |
| Mar-20 | 580,271.43 | $1,027.56 | 0.1771% | 2.125% |
| Apr-20 | 581,298.99 | $1,029.38 | 0.1771% | 2.125% |
| May-20 | 582,328.37 | $1,031.21 | 0.1771% | 2.125% |
| Jun-20 | 583,359.58 | $1,033.03 | 0.1771% | 2.125% |
| Jul-20 | 584,392.61 | $1,034.86 | 0.1771% | 2.125% |
| Aug-20 | 585,427.48 | $1,036.69 | 0.1771% | 2.125% |
| Sep-20 | 586,464.17 | $1,038.53 | 0.1771% | 2.125% |
| Total Interest | | $77,310.31 | | |

### 2015 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Apr-15 | 163,388.38 | $289.35 | 0.1771% | 2.125% |
| May-15 | 163,677.71 | $289.85 | 0.1771% | 2.125% |
| Jun-15 | 163,967.56 | $290.36 | 0.1771% | 2.125% |
| Jul-15 | 164,257.92 | $325.09 | 0.1979% | 2.375% |
| Aug-15 | 164,583.01 | $325.74 | 0.1979% | 2.375% |
| Sep-15 | 164,908.75 | $326.38 | 0.1979% | 2.375% |
| Oct-15 | 165,235.13 | $327.03 | 0.1979% | 2.375% |
| Nov-15 | 165,562.16 | $327.68 | 0.1979% | 2.375% |
| Dec-15 | 165,889.83 | $328.32 | 0.1979% | 2.375% |
| Jan-16 | 166,218.16 | $346.29 | 0.2083% | 2.50% |
| Feb-16 | 166,564.45 | $347.01 | 0.2083% | 2.50% |
| Mar-16 | 166,911.46 | $347.73 | 0.2083% | 2.50% |
| Apr-16 | 167,259.19 | $348.46 | 0.2083% | 2.50% |
| May-16 | 167,607.64 | $349.18 | 0.2083% | 2.50% |
| Jun-16 | 167,956.83 | $349.91 | 0.2083% | 2.50% |
| Jul-16 | 168,306.74 | $262.98 | 0.1563% | 1.875% |
| Aug-16 | 168,569.72 | $263.39 | 0.1563% | 1.875% |
| Sep-16 | 168,833.11 | $263.80 | 0.1563% | 1.875% |
| Oct-16 | 169,096.91 | $264.21 | 0.1563% | 1.875% |
| Nov-16 | 169,361.12 | $264.63 | 0.1563% | 1.875% |
| Dec-16 | 169,625.75 | $265.04 | 0.1563% | 1.875% |
| Jan-17 | 169,890.79 | $353.94 | 0.2083% | 2.50% |
| Feb-17 | 170,244.73 | $354.68 | 0.2083% | 2.50% |
| Mar-17 | 170,599.40 | $355.42 | 0.2083% | 2.50% |
| Apr-17 | 170,954.82 | $356.16 | 0.2083% | 2.50% |
| May-17 | 171,310.98 | $356.90 | 0.2083% | 2.50% |
| Jun-17 | 171,667.87 | $357.64 | 0.2083% | 2.50% |
| Jul-17 | 172,025.52 | $340.47 | 0.1979% | 2.375% |
| Aug-17 | 172,365.98 | $341.14 | 0.1979% | 2.375% |
| Sep-17 | 172,707.12 | $341.82 | 0.1979% | 2.375% |
| Oct-17 | 173,048.94 | $342.49 | 0.1979% | 2.375% |
| Nov-17 | 173,391.43 | $343.17 | 0.1979% | 2.375% |
| Dec-17 | 173,734.60 | $343.85 | 0.1979% | 2.375% |
| Jan-18 | 174,078.45 | $380.80 | 0.2188% | 2.625% |
| Feb-18 | 174,459.25 | $381.63 | 0.2188% | 2.625% |
| Mar-18 | 174,840.88 | $382.46 | 0.2188% | 2.625% |
| Apr-18 | 175,223.34 | $383.30 | 0.2188% | 2.625% |
| May-18 | 175,606.64 | $384.14 | 0.2188% | 2.625% |
| Jun-18 | 175,990.78 | $384.98 | 0.2188% | 2.625% |
| Jul-18 | 176,375.76 | $514.43 | 0.2917% | 3.50% |
| Aug-18 | 176,890.19 | $515.93 | 0.2917% | 3.50% |
| Sep-18 | 177,406.12 | $517.43 | 0.2917% | 3.50% |
| Oct-18 | 177,923.56 | $518.94 | 0.2917% | 3.50% |
| Nov-18 | 178,442.50 | $520.46 | 0.2917% | 3.50% |
| Dec-18 | 178,962.96 | $521.98 | 0.2917% | 3.50% |
| Jan-19 | 179,484.93 | $542.19 | 0.3021% | 3.625% |
| Feb-19 | 180,027.13 | $543.83 | 0.3021% | 3.625% |
| Mar-19 | 180,570.96 | $545.47 | 0.3021% | 3.625% |
| Apr-19 | 181,116.43 | $547.12 | 0.3021% | 3.625% |
| May-19 | 181,663.56 | $548.78 | 0.3021% | 3.625% |
| Jun-19 | 182,212.33 | $550.43 | 0.3021% | 3.625% |
| Jul-19 | 182,762.77 | $399.79 | 0.2188% | 2.625% |
| Aug-19 | 183,162.56 | $400.67 | 0.2188% | 2.625% |
| Sep-19 | 183,563.23 | $401.54 | 0.2188% | 2.625% |
| Oct-19 | 183,964.77 | $402.42 | 0.2188% | 2.625% |
| Nov-19 | 184,367.19 | $403.30 | 0.2188% | 2.625% |
| Dec-19 | 184,770.50 | $404.19 | 0.2188% | 2.625% |
| Jan-20 | 185,174.68 | $327.53 | 0.1771% | 2.125% |
| Feb-20 | 185,502.22 | $328.10 | 0.1771% | 2.125% |
| Mar-20 | 185,831.09 | $329.08 | 0.1771% | 2.125% |
| Apr-20 | 186,160.17 | $329.26 | 0.1771% | 2.125% |
| May-20 | 186,489.83 | $330.24 | 0.1771% | 2.125% |
| Jun-20 | 186,820.07 | $330.83 | 0.1771% | 2.125% |
| Jul-20 | 187,150.89 | $331.41 | 0.1771% | 2.125% |
| Aug-20 | 187,482.31 | $332.00 | 0.1771% | 2.125% |
| Sep-20 | 187,814.31 | $332.59 | 0.1771% | 2.125% |
| Total Interest | | $24,758.52 | | |

# EXHIBIT D

# SETTLEMENT FEES

# NET PAYMENT AMOUNT SUMMARY

**ACLR, LLC Civil Action**  
**No. 15-767 16-309**  
**Settlement Proposal**

Settlement Fees  
Net Payment Amount  
Exhibit D

Summary  
1 of 1

| Year | Phase I Costs | | | Phase II Costs | | | | Total Costs | Treasury Rate Interest | Net Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| | Attorney Fees | ACLR Personnel | Total Phase I | Attorney Fees | Accountant Fees | ACLR Fees | Total Phase II | | | |
| 2015 | 23,874 | 89,763 | 113,638 | | | | 0 | 113,638 | 3,582 | 117,219 |
| 2016 | 48,187 | 256,924 | 305,111 | | | | 0 | 305,111 | 5,638 | 310,748 |
| 2017 | 281,283 | 408,973 | 690,256 | | | | 0 | 690,256 | 59,187 | 749,443 |
| 2018 | 179,581 | 379,526 | 559,107 | | | | 0 | 559,107 | 39,622 | 598,729 |
| 2019 | 85,971 | 64,948 | 150,919 | | | | 0 | 150,919 | 4,526 | 155,445 |
| 2020 | 630 | 0 | 630 | 19,300 | 2,500 | 55,867 | 77,667 | 78,297 | 0 | 155,964 |
| Totals | 619,526 | 1,200,133 | 1,819,660 | 19,300 | 2,500 | 55,867 | 77,667 | 1,897,327 | 112,554 | 2,087,548 |

**EXHIBIT D-1**

**PHASE I ATTORNEY FEES**

**NET PAYMENT AMOUNT SUMMARY**

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

Settlement Fees
Net Payment Amount
Exhibit D-1

Attorney Fees
1 of 1

| Trans # | Type | Date | Num | Name | Account | Amount | Attorney Adjus | Net Legal Fees |
|---|---|---|---|---|---|---|---|---|
| 5,077 | Check | 01/28/2015 | 2204 | David, Brody & Dondershine, LLP | Legal Fees | 410.00 | 0.00 | 410.00 |
| 5,078 | Check | 02/10/2015 | 2206 | David, Brody & Dondershine, LLP | Legal Fees | 933.10 | 0.00 | 933.10 |
| 5,119 | Check | 03/17/2015 | 2212 | David, Brody & Dondershine, LLP | Legal Fees | 2,257.50 | 0.00 | 2,257.50 |
| 5,128 | Check | 04/09/2015 | 2215 | David, Brody & Dondershine, LLP | Legal Fees | 3,728.10 | 0.00 | 3,728.10 |
| 5,167 | Check | 05/05/2015 | 2222 | David, Brody & Dondershine, LLP | Legal Fees | 1,969.40 | 0.00 | 1,969.40 |
| 5,194 | Check | 06/09/2015 | 2228 | David, Brody & Dondershine, LLP | Legal Fees | 2,184.40 | 0.00 | 2,184.40 |
| 5,225 | Check | 07/31/2015 | 2234 | David, Brody & Dondershine, LLP | Legal Fees | 6,161.90 | 0.00 | 6,161.90 |
| 5,240 | Check | 08/26/2015 | 2240 | David, Brody & Dondershine, LLP | Legal Fees | 4,601.10 | 0.00 | 4,601.10 |
| 5,256 | Check | 09/29/2015 | 2242 | David, Brody & Dondershine, LLP | Legal Fees | 119.60 | 0.00 | 119.60 |
| 5,270 | Check | 10/26/2015 | 2246 | David, Brody & Dondershine, LLP | Legal Fees | 1,509.30 | 0.00 | 1,509.30 |
| 5,282 | Check | 11/23/2015 | 2249 | David, Brody & Dondershine, LLP | Legal Fees | 2,850.90 | -2,850.90 | 0.00 |
| 5,296 | Check | 12/21/2015 | 2252 | David, Brody & Dondershine, LLP | Legal Fees | 468.70 | 0.00 | 468.70 |
| 5,314 | Check | 01/26/2016 | 2254 | David, Brody & Dondershine, LLP | Legal Fees | 503.10 | 0.00 | 503.10 |
| 5,331 | Check | 02/24/2016 | 2262 | David, Brody & Dondershine, LLP | Legal Fees | 818.90 | 0.00 | 818.90 |
| 5,348 | Check | 03/29/2016 | 2267 | David, Brody & Dondershine, LLP | Legal Fees | 971.80 | -971.80 | 0.00 |
| 5,375 | Check | 04/26/2016 | 2270 | David, Brody & Dondershine, LLP | Legal Fees | 7,426.90 | -7,426.90 | 0.00 |
| 5,404 | Check | 05/24/2016 | 1007 | David, Brody & Dondershine, LLP | Legal Fees | 10,178.60 | 0.00 | 10,178.60 |
| 5,420 | Check | 06/21/2016 | 2280 | David, Brody & Dondershine, LLP | Legal Fees | 10,465.65 | 0.00 | 10,465.65 |
| 5,447 | Check | 07/26/2016 | 2286 | David, Brody & Dondershine, LLP | Legal Fees | 2,025.18 | 0.00 | 2,025.18 |
| 5,466 | Check | 08/29/2016 | 2291 | David, Brody & Dondershine, LLP | Legal Fees | 3,001.40 | 0.00 | 3,001.40 |
| 5,495 | Check | 09/26/2016 | 2293 | David, Brody & Dondershine, LLP | Legal Fees | 5,634.80 | 0.00 | 5,634.80 |
| 5,501 | Check | 10/11/2016 | 1008 | David, Brody & Dondershine, LLP | Legal Fees | 5,634.76 | 0.00 | 5,634.76 |
| 5,520 | Check | 11/30/2016 | 1013 | David, Brody & Dondershine, LLP | Legal Fees | 5,462.60 | 0.00 | 5,462.60 |
| 5,540 | Check | 12/20/2016 | 1016 | David, Brody & Dondershine, LLP | Legal Fees | 3,809.80 | 0.00 | 3,809.80 |
| 5,561 | EFT | 12/31/2016 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 652.29 | 0.00 | 652.29 |
| 5,554 | Check | 01/24/2017 | 1019 | David, Brody & Dondershine, LLP | Legal Fees | 13,633.58 | 0.00 | 13,633.58 |
| 5,570 | Check | 02/17/2017 | 1024 | David, Brody & Dondershine, LLP | Legal Fees | 20,896.65 | 0.00 | 20,896.65 |
| 5,586 | Check | 03/28/2017 | 1027 | David, Brody & Dondershine, LLP | Legal Fees | 15,564.98 | 0.00 | 15,564.98 |
| 5,599 | Check | 04/19/2017 | 1033 | David, Brody & Dondershine, LLP | Legal Fees | 11,452.75 | 0.00 | 11,452.75 |
| 5,616 | Check | 05/25/2017 | 1041 | David, Brody & Dondershine, LLP | Legal Fees | 21,559.03 | 0.00 | 21,559.03 |
| 5,641 | Check | 06/28/2017 | 1045 | David, Brody & Dondershine, LLP | Legal Fees | 21,804.07 | -10,253.90 | 11,550.17 |
| 5,651 | Check | 07/25/2017 | 1047 | David, Brody & Dondershine, LLP | Legal Fees | 23,088.67 | -450.00 | 22,638.67 |
| 5,667 | Check | 08/22/2017 | 1050 | David, Brody & Dondershine, LLP | Legal Fees | 10,883.00 | 0.00 | 10,883.00 |
| 5,688 | Check | 09/29/2017 | 1055 | David, Brody & Dondershine, LLP | Legal Fees | 25,647.75 | -75.75 | 25,572.00 |
| 5,750 | EFT | 11/30/2017 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 836.00 | 0.00 | 836.00 |
| 5,763 | Check | 12/31/2017 | 1066 | David, Brody & Dondershine, LLP | Legal Fees | 29,960.90 | 0.00 | 29,960.90 |
| 5,759 | EFT | 12/31/2017 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 82,518.44 | -783.07 | 81,735.37 |
| 5,760 | EFT | 12/31/2017 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 15,000.00 | 0.00 | 15,000.00 |
| 5,812 | EFT | 01/31/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | -358.00 | 0.00 | -358.00 |
| 5,810 | EFT | 02/28/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 2,601.30 | 0.00 | 2,601.30 |
| 5,845 | EFT | 03/31/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 6,680.25 | 0.00 | 6,680.25 |
| 5,846 | EFT | 04/30/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 31,805.92 | -1,846.26 | 29,959.66 |
| 5,867 | EFT | 05/31/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 63,583.07 | 0.00 | 63,583.07 |
| 5,868 | EFT | 05/31/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 3,355.00 | 0.00 | 3,355.00 |
| 5,889 | EFT | 07/31/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 45,621.00 | 0.00 | 45,621.00 |
| 5,920 | Check | 08/20/2018 | 1099 | David, Brody & Dondershine, LLP | Legal Fees | 500.00 | 0.00 | 500.00 |
| 5,905 | EFT | 08/21/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 25,557.00 | 0.00 | 25,557.00 |
| 5,946 | EFT | 09/30/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 1,857.00 | 0.00 | 1,857.00 |
| 5,979 | EFT | 11/30/2018 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 225.00 | 0.00 | 225.00 |
| 6,013 | EFT | 01/31/2019 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 37,443.00 | 0.00 | 37,443.00 |
| 6,069 | EFT | 04/30/2019 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 1,035.00 | 0.00 | 1,035.00 |
| 6,099 | EFT | 07/31/2019 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 1,215.00 | 0.00 | 1,215.00 |
| 6,104 | Check | 09/22/2019 | 1160 | David, Brody & Dondershine, LLP | Legal Fees | 650.00 | 0.00 | 650.00 |
| 6,151 | Check | 12/10/2019 | EFT | David, Brody & Dondershine, LLP | Legal Fees | 2,000.00 | 0.00 | 2,000.00 |
| 6,139 | EFT | 12/31/2019 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 1,935.00 | -1,935.00 | 0.00 |
| 6,140 | EFT | 12/31/2019 | J/E | David, Brody & Dondershine, LLP | Legal Fees | 43,627.50 | 0.00 | 43,627.50 |
| Billed - To Be Paid | | | | David, Brody & Dondershine, LLP | Legal Fees | 670.00 | -670.00 | 0.00 |
| Billed - To Be Paid | | | | David, Brody & Dondershine, LLP | Legal Fees | 630.00 | 0.00 | 630.00 |
| Billed - To Be Paid | | | | David, Brody & Dondershine, LLP | Legal Fees | 540.00 | -540.00 | 0.00 |
| Billed - To Be Paid | | | | David, Brody & Dondershine, LLP | Legal Fees | 3,105.00 | -3,105.00 | 0.00 |
| Billed - To Be Paid | | | | David, Brody & Dondershine, LLP | Legal Fees | 15,210.00 | -487.50 | 14,722.50 |
| Totals | | | | | | 666,113.64 | -31,396.08 | 634,717.56 |

# EXHIBIT D-2

# PHASE I ACLR PERSONNEL

# NET PAYMENT AMOUNT SUMMARY

ACLR, LLC Civil Action  
No. 15-767 16-309  
Settlement Proposal

Settlement Fees  
Net Payment Amount  
Exhibit D-2

ACLR Personnel Hours  
1 of 1

### 2015 Hours: Phase I Settlement Fees

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 20 | 60 | 30 | 15 | 15 | 20 | 60 | 10 | 0 | 0 | 50 | 0 | 280 |
| Mucke | Gil | 20 | 40 | 15 | 0 | 25 | 40 | 0 | 0 | 0 | 0 | 0 | 8 | 148 |
| Totals | | 40 | 100 | 45 | 15 | 40 | 60 | 60 | 10 | 0 | 0 | 50 | 8 | 428 |

### GSA Rate Schedules: 06/17/14 - 06/16/15; 06/17/15 - 06/16/16

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 227.23 | 227.23 | 227.23 | 227.23 | 227.23 | 227.23 | 231.33 | 231.33 | 231.33 | 231.33 | 231.33 | 231.33 |
| Mucke | Gil | 173.12 | 173.12 | 173.12 | 173.12 | 173.12 | 173.12 | 176.24 | 176.24 | 176.24 | 176.24 | 176.24 | 176.24 |

### 2015 Phase I Settlement Fees GSA Rate Costs

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|
| Mucke | Chris | 4,545 | 13,634 | 6,817 | 3,408 | 3,408 | 4,545 | 13,880 | 2,313 | 0 | 0 | 11,567 | 0 | 64,116 |
| Mucke | Gil | 3,462 | 6,925 | 2,597 | 0 | 4,328 | 6,925 | 0 | 0 | 0 | 0 | 0 | 1,410 | 25,647 |
| Totals | | 8,007 | 20,559 | 9,414 | 3,408 | 7,736 | 11,469 | 13,880 | 2,313 | 0 | 0 | 11,567 | 1,410 | 89,763 |

### 2016 Hours: Phase I Settlement Fees

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 40 | 0 | 35 | 120 | 120 | 45 | 60 | 40 | 115 | 60 | 160 | 80 | 875 |
| Mucke | Gil | 8 | 0 | 15 | 20 | 10 | 10 | 20 | 30 | 80 | 30 | 50 | 20 | 293 |
| Totals | | 48 | 0 | 50 | 140 | 130 | 55 | 80 | 70 | 195 | 90 | 210 | 100 | 1168 |

### GSA Rate Schedules: 06/17/15 - 06/16/16; 06/17/16 - 06/16/17

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 231.33 | 231.33 | 231.33 | 231.33 | 231.33 | 231.33 | 235.49 | 235.49 | 235.49 | 235.49 | 235.49 | 235.49 |
| Mucke | Gil | 176.24 | 176.24 | 176.24 | 176.24 | 176.24 | 176.24 | 179.41 | 179.41 | 179.41 | 179.41 | 179.41 | 179.41 |

### 2016 Phase I Settlement Fees GSA Rate Costs

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|
| Mucke | Chris | 9,253 | 0 | 8,097 | 27,760 | 27,760 | 10,410 | 14,129 | 9,420 | 27,081 | 14,129 | 37,678 | 18,839 | 204,556 |
| Mucke | Gil | 1,410 | 0 | 2,644 | 3,525 | 1,762 | 1,762 | 3,588 | 5,382 | 14,353 | 5,382 | 8,971 | 3,588 | 52,367 |
| Totals | | 10,663 | 0 | 10,740 | 31,284 | 29,522 | 12,172 | 17,718 | 14,802 | 41,434 | 19,512 | 46,649 | 22,427 | 256,924 |

### 2017 Hours: Phase I Settlement Fees

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 150 | 150 | 120 | 160 | 10 | 0 | 40 | 160 | 180 | 200 | 80 | 40 | 1290 |
| Mucke | Gil | 100 | 120 | 20 | 60 | 0 | 0 | 25 | 60 | 80 | 80 | 20 | 0 | 565 |
| Totals | | 250 | 270 | 140 | 220 | 10 | 0 | 65 | 220 | 260 | 280 | 100 | 40 | 1855 |

### GSA Rate Schedules: 06/17/16 - 06/16/17; 06/17/17 - 06/16/18

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 235.49 | 235.49 | 235.49 | 235.49 | 235.49 | 235.49 | 239.73 | 239.73 | 239.73 | 239.73 | 239.73 | 239.73 |
| Mucke | Gil | 179.41 | 179.41 | 179.41 | 179.41 | 179.41 | 179.41 | 182.64 | 182.64 | 182.64 | 182.64 | 182.64 | 182.64 |

### 2017 Phase I Settlement Fees GSA Rate Costs

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|
| Mucke | Chris | 35,324 | 35,324 | 28,259 | 37,678 | 2,355 | 0 | 9,589 | 38,357 | 43,151 | 47,946 | 19,178 | 9,589 | 306,750 |
| Mucke | Gil | 17,941 | 21,529 | 3,588 | 10,765 | 0 | 0 | 4,566 | 10,958 | 14,611 | 14,611 | 3,653 | 0 | 102,223 |
| Totals | | 53,265 | 56,853 | 31,847 | 48,443 | 2,355 | 0 | 14,155 | 49,315 | 57,763 | 62,557 | 22,831 | 9,589 | 408,973 |

### 2018 Hours: Phase I Settlement Fees

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 140 | 140 | 140 | 140 | 40 | 120 | 200 | 0 | 0 | 0 | 10 | 120 | 1050 |
| Mucke | Gil | 120 | 120 | 120 | 120 | 20 | 80 | 30 | 0 | 0 | 0 | 0 | 80 | 690 |
| Totals | | 260 | 260 | 260 | 260 | 60 | 200 | 230 | 0 | 0 | 0 | 10 | 200 | 1740 |

### GSA Rate Schedules: 06/17/17 - 06/16/18; 06/17/18 - 06/16/19

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 239.73 | 239.73 | 239.73 | 239.73 | 239.73 | 239.73 | 244.05 | 244.05 | 244.05 | 244.05 | 244.05 | 244.05 |
| Mucke | Gil | 182.64 | 182.64 | 182.64 | 182.64 | 182.64 | 182.64 | 185.93 | 185.93 | 185.93 | 185.93 | 185.93 | 185.93 |

### 2018 Phase I Settlement Fees GSA Rate Costs

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|
| Mucke | Chris | 33,562 | 33,562 | 33,562 | 33,562 | 9,589 | 28,768 | 48,810 | 0 | 0 | 0 | 2,441 | 29,286 | 253,142 |
| Mucke | Gil | 21,917 | 21,917 | 21,917 | 21,917 | 3,653 | 14,611 | 5,578 | 0 | 0 | 0 | 0 | 14,874 | 126,384 |
| Totals | | 55,479 | 55,479 | 55,479 | 55,479 | 13,242 | 43,379 | 54,388 | 0 | 0 | 0 | 2,441 | 44,160 | 379,526 |

### 2019 Hours: Phase I Settlement Fees

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 0 | 0 | 0 | 0 | 0 | 0 | 30 | 140 | 0 | 0 | 0 | 0 | 170 |
| Mucke | Gil | 0 | 0 | 0 | 0 | 0 | 0 | 20 | 100 | 0 | 0 | 0 | 0 | 120 |
| Totals | | 0 | 0 | 0 | 0 | 0 | 0 | 50 | 240 | 0 | 0 | 0 | 0 | 290 |

### GSA Rate Schedules: 06/17/18 - 06/16/19; 06/17/19 - 06/16/20

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|
| Mucke | Chris | 244.05 | 244.05 | 244.05 | 244.05 | 244.05 | 244.05 | 248.44 | 248.44 | 248.44 | 248.44 | 248.44 | 248.44 |
| Mucke | Gil | 185.93 | 185.93 | 185.93 | 185.93 | 185.93 | 185.93 | 189.28 | 189.28 | 189.28 | 189.28 | 189.28 | 189.28 |

### 2019 Phase I Settlement Fees GSA Rate Costs

| Last | First | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Totals |
|------|-------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|--------|
| Mucke | Chris | 0 | 0 | 0 | 0 | 0 | 0 | 7,453 | 34,782 | 0 | 0 | 0 | 0 | 42,235 |
| Mucke | Gil | 0 | 0 | 0 | 0 | 0 | 0 | 3,786 | 18,928 | 0 | 0 | 0 | 0 | 22,714 |
| Totals | | 0 | 0 | 0 | 0 | 0 | 0 | 11,239 | 53,710 | 0 | 0 | 0 | 0 | 64,948 |

1,200,133

# EXHIBIT D-3

# TREASURY RATE INTEREST

# NET PAYMENT AMOUNT SUMMARY

ACLR, LLC Civil Action
No. 15-767 16-309
Settlement Proposal

Settlement Fees
Net Payment Amount
Exhibit D-3

Treasury Rate Interest
1 of 1

### 2015 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Jan-15 | 450.00 | $0.73 | 0.1771% | 2.125% |
| Feb-15 | 1,343.83 | $2.38 | 0.1771% | 2.125% |
| Mar-15 | 3,603.71 | $6.38 | 0.1771% | 2.125% |
| Apr-15 | 7,338.19 | $12.99 | 0.1771% | 2.125% |
| May-15 | 9,320.58 | $16.51 | 0.1771% | 2.125% |
| Jun-15 | 11,521.49 | $20.40 | 0.1771% | 2.125% |
| Jul-15 | 17,703.79 | $35.04 | 0.1979% | 2.375% |
| Aug-15 | 22,339.93 | $44.21 | 0.1979% | 2.375% |
| Jul-15 | 22,503.74 | $44.54 | 0.1979% | 2.375% |
| Oct-15 | 24,057.58 | $47.61 | 0.1979% | 2.375% |
| Nov-15 | 24,105.20 | $47.71 | 0.1979% | 2.375% |
| Dec-15 | 24,621.60 | $48.73 | 0.1979% | 2.375% |
| Jan-16 | 24,670.33 | $51.40 | 0.2083% | 2.50% |
| Feb-16 | 24,731.73 | $51.50 | 0.2083% | 2.50% |
| Mar-16 | 24,773.23 | $51.61 | 0.2083% | 2.50% |
| Apr-16 | 24,824.85 | $51.72 | 0.2083% | 2.50% |
| May-16 | 24,876.56 | $51.83 | 0.2083% | 2.50% |
| Jun-16 | 24,928.39 | $51.93 | 0.2083% | 2.50% |
| Jul-16 | 24,980.32 | $39.03 | 0.1563% | 1.875% |
| Aug-16 | 25,019.36 | $39.09 | 0.1563% | 1.875% |
| Sep-16 | 25,058.45 | $39.15 | 0.1563% | 1.875% |
| Oct-16 | 25,097.60 | $39.22 | 0.1563% | 1.875% |
| Nov-16 | 25,136.82 | $39.28 | 0.1563% | 1.875% |
| Dec-16 | 25,176.09 | $39.34 | 0.1563% | 1.875% |
| Jan-17 | 25,215.43 | $52.53 | 0.2083% | 2.50% |
| Feb-17 | 25,267.96 | $52.64 | 0.2083% | 2.50% |
| Mar-17 | 25,320.60 | $52.75 | 0.2083% | 2.50% |
| Apr-17 | 25,373.36 | $52.86 | 0.2083% | 2.50% |
| May-17 | 25,426.22 | $52.97 | 0.2083% | 2.50% |
| Jun-17 | 25,479.19 | $53.08 | 0.2083% | 2.50% |
| Jul-17 | 25,532.27 | $50.53 | 0.1979% | 2.375% |
| Aug-17 | 25,582.80 | $50.63 | 0.1979% | 2.375% |
| Sep-17 | 25,633.44 | $50.73 | 0.1979% | 2.375% |
| Oct-17 | 25,684.17 | $50.83 | 0.1979% | 2.375% |
| Nov-17 | 25,735.00 | $51.03 | 0.1979% | 2.375% |
| Dec-17 | 25,785.94 | $51.03 | 0.1979% | 2.375% |
| Jan-18 | 25,836.97 | $56.52 | 0.2188% | 2.625% |
| Feb-18 | 25,893.49 | $56.64 | 0.2188% | 2.625% |
| Mar-18 | 25,950.13 | $56.76 | 0.2188% | 2.625% |
| Apr-18 | 26,006.90 | $56.89 | 0.2188% | 2.625% |
| May-18 | 26,063.79 | $57.01 | 0.2188% | 2.625% |
| Jun-18 | 26,120.80 | $57.14 | 0.2188% | 2.625% |
| Jul-18 | 26,177.94 | $76.35 | 0.2917% | 3.50% |
| Aug-18 | 26,254.29 | $76.58 | 0.2917% | 3.50% |
| Sep-18 | 26,330.87 | $76.80 | 0.2917% | 3.50% |
| Oct-18 | 26,407.67 | $77.02 | 0.2917% | 3.50% |
| Nov-18 | 26,484.69 | $77.25 | 0.2917% | 3.50% |
| Dec-18 | 26,561.94 | $77.47 | 0.2917% | 3.50% |
| Jan-19 | 26,639.41 | $80.47 | 0.3021% | 3.625% |
| Feb-19 | 26,719.88 | $80.72 | 0.3021% | 3.625% |
| Mar-19 | 26,800.60 | $80.96 | 0.3021% | 3.625% |
| Apr-19 | 26,881.56 | $81.20 | 0.3021% | 3.625% |
| May-19 | 26,962.76 | $81.45 | 0.3021% | 3.625% |
| Jun-19 | 27,044.21 | $59.34 | 0.2188% | 2.625% |
| Jul-19 | 27,125.91 | $59.34 | 0.2188% | 2.625% |
| Aug-19 | 27,185.25 | $59.47 | 0.2188% | 2.625% |
| Sep-19 | 27,244.59 | $59.60 | 0.2188% | 2.625% |
| Oct-19 | 27,304.31 | $59.73 | 0.2188% | 2.625% |
| Nov-19 | 27,364.04 | $59.86 | 0.2188% | 2.625% |
| Dec-19 | 27,423.90 | $59.99 | 0.2188% | 2.625% |
| Jan-20 | 27,483.89 | $48.67 | 0.1771% | 2.125% |
| Feb-20 | 27,532.56 | $48.76 | 0.1771% | 2.125% |
| Mar-20 | 27,581.31 | $48.84 | 0.1771% | 2.125% |
| Apr-20 | 27,630.16 | $48.93 | 0.1771% | 2.125% |
| May-20 | 27,679.08 | $49.02 | 0.1771% | 2.125% |
| Jun-20 | 27,728.10 | $49.10 | 0.1771% | 2.125% |
| Jul-20 | 27,777.21 | $49.19 | 0.1771% | 2.125% |
| Aug-20 | 27,826.39 | $49.28 | 0.1771% | 2.125% |
| Sep-20 | 27,875.67 | $49.36 | 0.1771% | 2.125% |
| Total Interest | | $3,581.93 | | |

### 2016 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Jan-16 | 503.10 | $1.05 | 0.2083% | 2.50% |
| Feb-16 | 1,323.05 | $2.76 | 0.2083% | 2.50% |
| Mar-16 | 1,325.80 | $2.76 | 0.2083% | 2.50% |
| Apr-16 | 1,328.57 | $2.77 | 0.2083% | 2.50% |
| May-16 | 11,509.93 | $23.98 | 0.2083% | 2.50% |
| Jun-16 | 21,999.56 | $45.83 | 0.2083% | 2.50% |
| Jul-16 | 24,070.58 | $37.61 | 0.1563% | 1.875% |
| Aug-16 | 27,109.59 | $42.36 | 0.1563% | 1.875% |
| Sep-16 | 32,786.74 | $51.23 | 0.1563% | 1.875% |
| Oct-16 | 38,472.73 | $60.11 | 0.1563% | 1.875% |
| Nov-16 | 43,995.45 | $68.74 | 0.1563% | 1.875% |
| Dec-16 | 48,526.28 | $75.82 | 0.1563% | 1.875% |
| Jan-17 | 48,602.10 | $101.25 | 0.2083% | 2.50% |
| Feb-17 | 48,703.36 | $101.47 | 0.2083% | 2.50% |
| Mar-17 | 48,804.82 | $101.68 | 0.2083% | 2.50% |
| Apr-17 | 48,906.50 | $101.89 | 0.2083% | 2.50% |
| May-17 | 49,008.39 | $102.10 | 0.2083% | 2.50% |
| Jun-17 | 49,110.49 | $102.31 | 0.2083% | 2.50% |
| Jul-17 | 49,212.80 | $97.40 | 0.1979% | 2.375% |
| Aug-17 | 49,310.20 | $97.59 | 0.1979% | 2.375% |
| Sep-17 | 49,407.80 | $97.79 | 0.1979% | 2.375% |
| Oct-17 | 49,505.58 | $97.98 | 0.1979% | 2.375% |
| Nov-17 | 49,603.56 | $98.17 | 0.1979% | 2.375% |
| Dec-17 | 49,701.74 | $98.37 | 0.1979% | 2.375% |
| Jan-18 | 49,800.10 | $108.94 | 0.2188% | 2.625% |
| Feb-18 | 49,909.04 | $109.18 | 0.2188% | 2.625% |
| Mar-18 | 50,018.22 | $109.41 | 0.2188% | 2.625% |
| Apr-18 | 50,127.63 | $109.65 | 0.2188% | 2.625% |
| May-18 | 50,237.29 | $109.89 | 0.2188% | 2.625% |
| Jun-18 | 50,347.18 | $110.13 | 0.2188% | 2.625% |
| Jul-18 | 50,457.31 | $147.17 | 0.2917% | 3.50% |
| Aug-18 | 50,604.48 | $147.60 | 0.2917% | 3.50% |
| Sep-18 | 50,752.08 | $148.03 | 0.2917% | 3.50% |
| Oct-18 | 50,900.11 | $148.46 | 0.2917% | 3.50% |
| Nov-18 | 51,048.56 | $148.89 | 0.2917% | 3.50% |
| Dec-18 | 51,197.46 | $149.33 | 0.2917% | 3.50% |
| Jan-19 | 51,346.78 | $155.11 | 0.3021% | 3.625% |
| Feb-19 | 51,501.89 | $155.58 | 0.3021% | 3.625% |
| Mar-19 | 51,657.47 | $156.05 | 0.3021% | 3.625% |
| Apr-19 | 51,813.52 | $156.52 | 0.3021% | 3.625% |
| May-19 | 51,970.04 | $156.99 | 0.3021% | 3.625% |
| Jun-19 | 52,127.03 | $114.54 | 0.2188% | 2.625% |
| Jul-19 | 52,284.50 | $114.37 | 0.2188% | 2.625% |
| Aug-19 | 52,398.87 | $114.62 | 0.2188% | 2.625% |
| Sep-19 | 52,513.49 | $114.87 | 0.2188% | 2.625% |
| Oct-19 | 52,628.37 | $115.12 | 0.2188% | 2.625% |
| Nov-19 | 52,743.49 | $115.38 | 0.2188% | 2.625% |
| Dec-19 | 52,858.87 | $115.63 | 0.2188% | 2.625% |
| Jan-20 | 52,974.50 | $93.81 | 0.1771% | 2.125% |
| Feb-20 | 53,068.31 | $93.98 | 0.1771% | 2.125% |
| Mar-20 | 53,162.28 | $94.14 | 0.1771% | 2.125% |
| Apr-20 | 53,256.42 | $94.31 | 0.1771% | 2.125% |
| May-20 | 53,350.73 | $94.48 | 0.1771% | 2.125% |
| Jun-20 | 53,445.21 | $94.64 | 0.1771% | 2.125% |
| Jul-20 | 53,539.85 | $94.81 | 0.1771% | 2.125% |
| Aug-20 | 53,634.66 | $94.98 | 0.1771% | 2.125% |
| Sep-20 | 53,729.64 | $95.15 | 0.1771% | 2.125% |
| Total Interest | | $5,637.70 | | |

### 2017 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Jan-17 | 13,633.58 | $28.40 | 0.2083% | 2.50% |
| Feb-17 | 91,411.33 | $190.44 | 0.2083% | 2.50% |
| Mar-17 | 139,013.75 | $289.61 | 0.2083% | 2.50% |
| Apr-17 | 199,199.12 | $415.00 | 0.2083% | 2.50% |
| May-17 | 223,528.04 | $465.68 | 0.2083% | 2.50% |
| Jun-17 | 235,543.90 | $490.72 | 0.2083% | 2.50% |
| Jul-17 | 272,828.48 | $539.97 | 0.1979% | 2.375% |
| Aug-17 | 333,566.66 | $660.18 | 0.1979% | 2.375% |
| Sep-17 | 417,561.44 | $826.42 | 0.1979% | 2.375% |
| Oct-17 | 480,945.06 | $951.87 | 0.1979% | 2.375% |
| Nov-17 | 505,564.13 | $1,000.60 | 0.1979% | 2.375% |
| Dec-17 | 642,850.20 | $1,272.31 | 0.1979% | 2.375% |
| Jan-18 | 644,122.51 | $1,409.02 | 0.2188% | 2.625% |
| Feb-18 | 645,531.53 | $1,412.10 | 0.2188% | 2.625% |
| Mar-18 | 646,943.63 | $1,415.19 | 0.2188% | 2.625% |
| Apr-18 | 648,358.82 | $1,418.28 | 0.2188% | 2.625% |
| May-18 | 649,777.10 | $1,421.39 | 0.2188% | 2.625% |
| Jun-18 | 651,198.49 | $1,424.50 | 0.2188% | 2.625% |
| Jul-18 | 652,622.98 | $1,903.48 | 0.2917% | 3.50% |
| Aug-18 | 654,526.47 | $1,909.04 | 0.2917% | 3.50% |
| Sep-18 | 656,435.50 | $1,914.60 | 0.2917% | 3.50% |
| Oct-18 | 658,350.11 | $1,920.19 | 0.2917% | 3.50% |
| Nov-18 | 660,270.30 | $1,925.79 | 0.2917% | 3.50% |
| Dec-18 | 662,196.08 | $1,931.41 | 0.2917% | 3.50% |
| Jan-19 | 664,127.49 | $2,006.22 | 0.3021% | 3.625% |
| Feb-19 | 666,133.71 | $2,012.28 | 0.3021% | 3.625% |
| Mar-19 | 668,145.99 | $2,018.36 | 0.3021% | 3.625% |
| Apr-19 | 670,164.34 | $2,024.45 | 0.3021% | 3.625% |
| May-19 | 672,188.80 | $2,030.57 | 0.3021% | 3.625% |
| Jun-19 | 674,219.37 | $2,036.70 | 0.3021% | 3.625% |
| Jul-19 | 676,256.07 | $1,479.31 | 0.2188% | 2.625% |
| Aug-19 | 677,735.38 | $1,482.55 | 0.2188% | 2.625% |
| Sep-19 | 679,217.93 | $1,485.79 | 0.2188% | 2.625% |
| Oct-19 | 680,703.72 | $1,489.04 | 0.2188% | 2.625% |
| Nov-19 | 682,192.76 | $1,492.30 | 0.2188% | 2.625% |
| Dec-19 | 683,685.05 | $1,495.56 | 0.2188% | 2.625% |
| Jan-20 | 685,180.62 | $1,213.34 | 0.1771% | 2.125% |
| Feb-20 | 686,393.96 | $1,215.49 | 0.1771% | 2.125% |
| Mar-20 | 687,609.45 | $1,217.64 | 0.1771% | 2.125% |
| Apr-20 | 688,827.09 | $1,219.80 | 0.1771% | 2.125% |
| May-20 | 690,046.89 | $1,221.96 | 0.1771% | 2.125% |
| Jun-20 | 691,268.84 | $1,224.12 | 0.1771% | 2.125% |
| Jul-20 | 692,492.97 | $1,226.29 | 0.1771% | 2.125% |
| Aug-20 | 693,719.26 | $1,228.46 | 0.1771% | 2.125% |
| Sep-20 | 694,947.72 | $1,230.64 | 0.1771% | 2.125% |
| Total Interest | | $59,587.05 | | |

### 2018 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Jan-18 | 55,121.00 | $120.58 | 0.2188% | 2.625% |
| Feb-18 | 113,321.88 | $247.89 | 0.2188% | 2.625% |
| Mar-18 | 175,729.02 | $384.41 | 0.2188% | 2.625% |
| Apr-18 | 261,552.09 | $572.13 | 0.2188% | 2.625% |
| May-18 | 342,304.30 | $748.79 | 0.2188% | 2.625% |
| Jun-18 | 386,431.89 | $845.32 | 0.2188% | 2.625% |
| Jul-18 | 487,286.11 | $1,421.25 | 0.2917% | 3.50% |
| Aug-18 | 514,764.36 | $1,501.40 | 0.2917% | 3.50% |
| Sep-18 | 518,122.76 | $1,511.19 | 0.2917% | 3.50% |
| Oct-18 | 519,633.95 | $1,515.60 | 0.2917% | 3.50% |
| Nov-18 | 523,815.05 | $1,527.79 | 0.2917% | 3.50% |
| Dec-18 | 569,503.24 | $1,661.05 | 0.2917% | 3.50% |
| Jan-19 | 571,164.29 | $1,725.39 | 0.3021% | 3.625% |
| Feb-19 | 572,889.69 | $1,730.60 | 0.3021% | 3.625% |
| Mar-19 | 574,620.29 | $1,735.83 | 0.3021% | 3.625% |
| Apr-19 | 576,356.12 | $1,741.08 | 0.3021% | 3.625% |
| May-19 | 578,097.20 | $1,746.34 | 0.3021% | 3.625% |
| Jun-19 | 579,843.53 | $1,751.61 | 0.3021% | 3.625% |
| Jul-19 | 581,595.14 | $1,272.24 | 0.2188% | 2.625% |
| Aug-19 | 582,867.38 | $1,275.02 | 0.2188% | 2.625% |
| Sep-19 | 584,142.41 | $1,277.81 | 0.2188% | 2.625% |
| Oct-19 | 585,420.22 | $1,280.61 | 0.2188% | 2.625% |
| Nov-19 | 586,700.82 | $1,283.41 | 0.2188% | 2.625% |
| Dec-19 | 587,984.23 | $1,286.22 | 0.2188% | 2.625% |
| Jan-20 | 589,270.45 | $1,043.50 | 0.1771% | 2.125% |
| Feb-20 | 590,313.95 | $1,045.35 | 0.1771% | 2.125% |
| Mar-20 | 591,359.30 | $1,047.20 | 0.1771% | 2.125% |
| Apr-20 | 592,406.49 | $1,049.05 | 0.1771% | 2.125% |
| May-20 | 593,455.55 | $1,050.91 | 0.1771% | 2.125% |
| Jun-20 | 594,506.46 | $1,052.77 | 0.1771% | 2.125% |
| Jul-20 | 595,559.23 | $1,054.64 | 0.1771% | 2.125% |
| Aug-20 | 596,613.87 | $1,056.50 | 0.1771% | 2.125% |
| Sep-20 | 597,670.37 | $1,058.37 | 0.1771% | 2.125% |
| Total Interest | | $39,621.86 | | |

### 2019 Hours

| Date | Amount | Interest | Interest Monthly | Treasury Rate |
|---|---|---|---|---|
| Jan-19 | 37,443.00 | $113.11 | 0.3021% | 3.625% |
| Feb-19 | 37,556.11 | $113.45 | 0.3021% | 3.625% |
| Mar-19 | 37,669.56 | $113.79 | 0.3021% | 3.625% |
| Apr-19 | 38,818.35 | $117.26 | 0.3021% | 3.625% |
| May-19 | 38,935.62 | $117.62 | 0.3021% | 3.625% |
| Jun-19 | 39,053.24 | $117.97 | 0.3021% | 3.625% |
| Jul-19 | 51,625.01 | $112.93 | 0.2188% | 2.625% |
| Aug-19 | 105,447.54 | $230.67 | 0.2188% | 2.625% |
| Sep-19 | 106,328.20 | $232.59 | 0.2188% | 2.625% |
| Oct-19 | 106,560.80 | $233.10 | 0.2188% | 2.625% |
| Nov-19 | 106,793.90 | $233.61 | 0.2188% | 2.625% |
| Dec-19 | 152,655.01 | $333.93 | 0.2188% | 2.625% |
| Jan-20 | 152,988.94 | $270.92 | 0.1771% | 2.125% |
| Feb-20 | 153,259.86 | $271.40 | 0.1771% | 2.125% |
| Mar-20 | 153,531.26 | $271.88 | 0.1771% | 2.125% |
| Apr-20 | 153,803.14 | $272.36 | 0.1771% | 2.125% |
| May-20 | 154,075.50 | $272.84 | 0.1771% | 2.125% |
| Jun-20 | 154,348.34 | $273.33 | 0.1771% | 2.125% |
| Jul-20 | 154,621.66 | $273.81 | 0.1771% | 2.125% |
| Aug-20 | 154,895.47 | $274.29 | 0.1771% | 2.125% |
| Sep-20 | 155,169.77 | $274.78 | 0.1771% | 2.125% |
| Total Interest | | $4,525.65 | | |

ACLR, LLC Civil Action                    Settlement Fees              Treasury Rate Calculation - Monthly Costs
No. 15-767 16-309                        Net Payment Amount                              1 of 2
Settlement Proposal                          Exhibit D-3A

| Dates | Phase 1 Attorney Fees | Phase 1 - ACLR Personnel | Total Expenses |
|---|---|---|---|
| 01/31/15 | 410 | 8,007 | 8,417 |
| 02/28/15 | 933 | 20,559 | 21,492 |
| 03/31/15 | 2,258 | 9,414 | 11,671 |
| 04/30/15 | 3,728 | 3,408 | 7,137 |
| 05/31/15 | 1,969 | 7,736 | 9,706 |
| 06/30/15 | 2,184 | 11,469 | 13,654 |
| 07/31/15 | 6,162 | 13,880 | 20,042 |
| 08/31/15 | 4,601 | 2,313 | 6,914 |
| 09/30/15 | 120 | 0 | 120 |
| 10/31/15 | 1,509 | 0 | 1,509 |
| 11/30/15 | 0 | 11,567 | 11,567 |
| 12/31/15 | 469 | 1,410 | 1,879 |
| 01/31/16 | 503 | 10,663 | 11,166 |
| 02/29/16 | 819 | 0 | 819 |
| 03/31/16 | 0 | 10,740 | 10,740 |
| 04/30/16 | 0 | 31,284 | 31,284 |
| 05/31/16 | 10,179 | 29,522 | 39,701 |
| 06/30/16 | 10,466 | 12,172 | 22,638 |
| 07/31/16 | 2,025 | 17,718 | 19,743 |
| 08/31/16 | 3,001 | 14,802 | 17,803 |
| 09/30/16 | 5,635 | 41,434 | 47,069 |
| 10/31/16 | 5,635 | 19,512 | 25,146 |
| 11/30/16 | 5,463 | 46,649 | 52,112 |
| 12/31/16 | 4,462 | 22,427 | 26,889 |
| 01/31/17 | 13,634 | 53,265 | 66,898 |
| 02/28/17 | 20,897 | 56,853 | 77,749 |
| 03/31/17 | 15,565 | 31,847 | 47,412 |
| 04/30/17 | 11,453 | 48,443 | 59,896 |
| 05/31/17 | 21,559 | 2,355 | 23,914 |
| 06/30/17 | 11,550 | 0 | 11,550 |
| 07/31/17 | 22,639 | 14,155 | 36,794 |
| 08/31/17 | 10,883 | 49,315 | 60,198 |
| 09/30/17 | 25,572 | 57,763 | 83,335 |
| 10/31/17 | 0 | 62,557 | 62,557 |
| 11/30/17 | 836 | 22,831 | 23,667 |
| 12/31/17 | 126,696 | 9,589 | 136,285 |
| 01/31/18 | -358 | 55,479 | 55,121 |
| 02/28/18 | 2,601 | 55,479 | 58,080 |
| 03/31/18 | 6,680 | 55,479 | 62,159 |
| 04/30/18 | 29,960 | 55,479 | 85,439 |
| 05/31/18 | 66,938 | 13,242 | 80,180 |
| 06/30/18 | 0 | 43,379 | 43,379 |

**ACLR, LLC Civil Action**
**No. 15-767 16-309**
**Settlement Proposal**

**Settlement Fees**
**Net Payment Amount**
**Exhibit D-3A**

**Treasury Rate Calculation - Monthly Costs**
**2 of 2**

| Dates | Phase 1 Attorney Fees | Phase 1 - ACLR Personnel | Total Expenses |
|---|---|---|---|
| 07/31/18 | 45,621 | 54,388 | 100,009 |
| 08/31/18 | 26,057 | 0 | 26,057 |
| 09/30/18 | 1,857 | 0 | 1,857 |
| 10/31/18 | 0 | 0 | 0 |
| 11/30/18 | 225 | 2,441 | 2,666 |
| 12/31/18 | 0 | 44,160 | 44,160 |
| 01/31/19 | 37,443 | 0 | 37,443 |
| 02/28/19 | 0 | 0 | 0 |
| 03/31/19 | 0 | 0 | 0 |
| 04/30/19 | 1,035 | 0 | 1,035 |
| 05/31/19 | 0 | 0 | 0 |
| 06/30/19 | 0 | 0 | 0 |
| 07/31/19 | 1,215 | 11,239 | 12,454 |
| 08/31/19 | 0 | 53,710 | 53,710 |
| 09/30/19 | 650 | 0 | 650 |
| 10/31/19 | 0 | 0 | 0 |
| 11/30/19 | 0 | 0 | 0 |
| 12/31/19 | 45,628 | 0 | 45,628 |
| Totals | 619,365 | 1,200,133 | 1,819,498 |

**EXHIBIT D-4**

**PHASE II ACLR PERSONNEL**

**NET PAYMENT AMOUNT SUMMARY**

**ACLR, LLC Civil Action** | **Settlement Fees** | **Phase II - ACLR Personnel**
**No. 15-767 16-309** | **Net Payment Amount** | **1 of 1**
**Settlement Proposal** | **Exhibit D-4** |

| 2015 Hours: Phase I Settlement Fees | | | | | |
|------|-------|------|------|------|--------|
| Last | First | Mar | Apr | May | Totals |
| Mucke | Chris | 15 | 60 | 90 | 165 |
| Mucke | Gil | 10 | 40 | 30 | 80 |
| Totals | | 25 | 100 | 120 | 245 |

| GSA Rate Schedules: 06/17/19 - 06/16/20 | | | | |
|------|-------|--------|--------|--------|
| Last | First | Jan | Apr | Feb |
| Mucke | Chris | 248.44 | 248.44 | 248.44 |
| Mucke | Gil | 185.93 | 185.93 | 185.93 |

| 2015 Phase II Settlement Fees GSA Rate Costs | | | | | |
|------|-------|-------|--------|--------|--------|
| Last | First | Jan | Apr | Feb | Totals |
| Mucke | Chris | 3,727 | 14,906 | 22,360 | 40,993 |
| Mucke | Gil | 1,859 | 7,437 | 5,578 | 14,874 |
| Totals | | 5,586 | 22,344 | 27,938 | 55,867 |

# EXHIBIT E

# ACLR GSA SCHEDULES

# ACLR, LLC

## GENERAL SERVICES ADMINISTRATION
## FINANCIAL & BUSINESS SOLUTIONS

### GSA FEDERAL SUPPLY SERVICE
**Authorized Federal Supply Schedule Price List**

*SCHEDULE TITLE:*      FSC Group 520 - Financial Management & Audit Services

*SIN CODES:*      520-9 Recovery Audits
520-11 Accounting
520-14 Audit and Financial Training Services / GS-23F-0053X
<div align="right">(SMALL BUSINESS SET ASIDE)</div>

*CONTRACT NUMBER:*      GS-23F-0074W
GS-23F-0053X

*CONTRACT TERM:*      June 17, 2010 - June 16, 2015

*CONTRACTOR:*      ACLR, LLC
550 Forest Avenue, Suite 15-2
Plymouth, MI 48375

*CONTACT:*      Kristen Barnes
W: 734.207.0400
F: 734.207.0410
kbarnes@aclrsbs.com

*NEGOTIATOR:*      Christopher Mucke, CPA
W: 734.207.0404
F: 734.207.0410
cmucke@aclrsbs.com

*SET ASIDE:*      Small Business

*DATE:*      Current as of March 24, 2011.

*Company Websites:*      www.aclrsbs.com (company website)
www.willyancey.com (resource website)

For more information on ordering from Federal Supply Schedules click on the FSS Schedules at fss.gsa.gov. On-line access to contract ordering information, terms and conditions, up-to-date pricing, and the option to create an electronic delivery order are available through GSA Advantage!, a menu driven database system. The INTERNET address for GSA Advantage! is: GSAAdvantage.gov.

# ACLR, LLC

## CUSTOMER INFORMATION PAGE

| | | |
|---|---|---|
| 1a. | Awarded Special Item Numbers | 520-9, 520-11, 520-14 |
| 1b. | Awarded Pricing | See Page 11 |
| 1c. | Labor Category Descriptions | See Page 6 |
| 2. | Maximum order: | $1,000,000 |
| 3. | Minimum order: | $100.00 |
| 4. | Geographic coverage | Domestic |
| 5. | Point(s) of Production | Plymouth, Wayne County, Michigan Atlanta, Fulton County, Georgia |
| 6. | Discount from List Prices | Not Applicable |
| 7. | Quantity discounts: | Negotiated at task order level. |
| 8. | Prompt payment terms: | 1%, Net 15 |
| 9a. | Government Purchase Cards Below Micro-Purchase Threshold | Yes |
| 9b. | Government Purchase Cards Above Micro-Purchase Threshold | No |
| 10. | Foreign items: | Not Applicable |
| 11a. | Time of delivery: | Per Task Order |
| 11b. | Expedited delivery: *Items available for expedited delivery are noted in this price list.* | Per Task Order |
| 11c. | Overnight and 2-day delivery: | Not Applicable |
| 11d. | Urgent requirements: | Contact POC |

*In accordance with contract clause I-FSS-14-B ACLR, LLC will reply to any inquiry for accelerated delivery within 3 business days after receipt of inquiry. Any telephone inquiries will be confirmed by ACLR, LLC in writing.*

| | | |
|---|---|---|
| 12. | F.O.B. Point(s): | Destination |

2

| | | |
|---|---|---|
| 13a. | Ordering Address: | ACLR, LLC<br>550 Forest Avenue<br>Suite 15-2<br>Plymouth, MI 48375 |

13b.   Ordering procedures:
*For supplies and services, the ordering procedures, information on blanket purchase agreements (BPA's), and a sample BPA can be found at the GSA/FSS schedule homepage (fss.gsa.gov/schedules).*

| | | |
|---|---|---|
| 14. | Payment address: | ACLR, LLC<br>550 Forest Avenue<br>Suite 15-2<br>Plymouth, MI 48375 |
| 15. | Warranty Provision: | Not Applicable |
| 16. | Export packing charges: | Not Applicable |
| 17. | Terms & Conditions of Government Purchase Card Acceptance | Not Applicable |
| 18. | Terms & Conditions of Rental Maintenance, and Repair | Not Applicable |
| 19. | Terms & Conditions of Installation | Not Applicable |
| 20. | Terms & Conditions of Repair Parts | Not Applicable |
| 20a. | Terms & Conditions for Any Other Services | Not Applicable |
| 21. | List of Service & Distribution Points | Not Applicable |
| 22. | List of Participating Dealers | Not Applicable |
| 23. | Preventative Maintenance | Not Applicable |
| 24a. | Special Attributes | Not Applicable |
| 24b. | Section 508 Compliance Information | Not Applicable |
| 25. | Data Universal Number System (DUNS) Number | 78-027-2873 |
| 26. | Central Contractor Registration Notification | 5QKV2<br>Registered<br>Valid - 05/20/2011 |

3

*Letter from the Managing Principal:*

*ACLR, LLC is pleased to provide you with our capabilities and price list for the GSA Financial and Business Solutions Schedule.*

*The negative impact of the current economic environment has taken a toll on the budgets of government agencies and now, more than ever, it is important to maximize the value of each dollar expended.  Over the past several years, federal and state auditors have routinely demonstrated that 10 - 35 percent of government program expenditures were improperly paid. Recovering these amounts to replace budget deficits should be the top priority of all government agencies.*

*As a management consulting company, ACLR specializes in the identification and recovery of overpayments.  ACLR professionals are experts at reviewing, developing and implementing the internal controls necessary to mitigate and eliminate future improper payments.  In addition, our professionals are adept at developing and executing sampling methodologies designed to comply with the most rigorous of auditing programs as well as the Improper Payments Information Act of 2002.*

*We look forward to assisting you in achieving departmental goals and maximizing budgetary value.*

*Very truly yours,*

*Christopher A. Mucke, CPA*
*Managing Principal*

4

# FIRM OVERVIEW

ACLR evolved from a large corporation centric accounting and indirect tax consulting service to a complete business solutions service provider designed to meet the needs of government, major publically owned corporations, and small privately owned businesses. Specializing in a wide range of business solutions from accounting, regulatory compliance, and management consulting, the extensive experience of ACLR professionals have translated into the identification, design, and implementation of best practices for numerous businesses including the retrieval of over $100 million in recoveries and cost reductions for our clients.

With a staff that includes some of the top consultants in the industry, ACLR is right sized to directly provide audit recovery and management consulting services to any size business. The value of ACLR is our core business support structure to and our ability to meet your cost needs with the added support of the best in industry.

# SERVICES

## SIN 520-9 - RECOVERY AUDITS:

ACLR audit recovery professionals are adept at identifying overpayment opportunities and obtaining the necessary evidence to ensure swift resolution of refund claims. Whether conducting a comprehensive review of supplier payments or sampling program purchases to ensure compliance with the Improper Payments Information Act of 2002 and the Recovery Auditing Act we seek to accurately quantify, verify, and recover improper payments. By analyzing contracts, contract changes, supplier invoices, and payments to ensure that all terms of the contract are followed throughout the duration of the contract and locating, reviewing, and verifying source documentation for each transaction and reconciling each bill to total contract charges we have secured over $100 million in refunds for our clients and, in many instances, more than quadrupled refunds identified by our competition.

## 520-11 ACCOUNTING:

ACLR professionals are well versed in the use of numerous accounting systems utilized today and are adept at identifying information risk and areas for improvement. By performing baseline and on-going accounting system reviews and special studies to include design, development, operation and inspection of accounting requirements, installed systems, controls, and processes, ACLR professionals can provide management level evaluation and recommend needed changes to improve management data processing and control. ACLR professionals are also experienced in reviewing, analyzing, and summarizing clients' transactional data and are adept at resolving accounting issues, implementing process improvements, recommending and implementing efficiency matrices, and providing related services to maintain and improve financial reporting operations.

**520-14 AUDIT AND FINANCIAL TRAINING SERVICES:**

ACLR professionals are experienced in providing a myriad of training services including development and instruction required to support audit, review, financial assessment and financial management.  These services can be unique to on-going audits and associated after action training requirements or can be detailed to the initial design of training to support all of our client's financial training needs.  ACLR professionals have the experience to design and perform training that can directly improve our client's capabilities and bottom line.

# LABOR CATEGORIES

**MANAGING PRINCIPAL:**

- *General Education/Experience:* Four-year degree in Accounting. Licensed CPA. Twenty plus years related field experience.

- *Technical Experience:* Managing Principal with over eight years experience leading a financial and office service's corporation. Over twenty years experience in major corporation national recovery audits and successfully negotiating multi-million dollar recoveries. Extensive experience as an expert witness in various court cases related to auditing and associated statutory and regulatory compliance.

- *Duties:* Directly responsible for complete management of all contracts assigned to the business and ensuring high standards are achieved on all deliverables. Represents business by actively collaborating with prospective and existing clients by overseeing project management and providing technical input as required to meet and exceed contract requirements. Works directly with the complete management team to ensure client retention and a successful cost-wise relationship. Ensures that all staff personnel receive appropriate training and ongoing performance reviews to achieve maximum potential in the best interest of servicing client needs.

**PRINCIPAL:**

- *General Education/Experience:* Minimum of four-year degree in Accounting. Degree with ten to twelve plus years related field experience. Licensed CPA.

- *Technical Experience:* Minimum of eight years of executive experience in the private and/or public sector or in government. Exceptional experience in business financial systems, contract management, financial reviews, and audit recoveries.

- *Duties:* Provides the overall authority for the conduct of assigned contacting arrangements and is responsible for all work performed included in the review of task order planning, direct supervision of assigned personnel, and final review and completion of work tasking. Monitors the status of all contracts and is responsible for client communication, overall project management and the presentation of the final deliverables. Has full executive financial analysis capabilities to include accounting

6

conformity, budget performance improvements, integrated budgets development and analysis, and forensic and recovery audits. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

**DIRECTOR:**

- ***General Education/Experience:*** Master's Degree or Bachelor's Degree and ten to twelve plus years related field experience.

- ***Technical Experience:*** Minimum of eight years of executive experience in the private and/or public sector or in government. Exceptional experience in business financial systems, contract management, financial reviews, and audit recoveries.

- ***Duties:*** Provides the overall authority for the conduct of assigned contacting arrangements and is responsible for all work performed included in the review of task order planning, direct supervision of assigned personnel, and final review and completion of work tasking. Monitors the status of all contracts and is responsible for client communication, overall project management and the presentation of the final deliverables. Has full executive financial analysis capabilities to include accounting conformity, budget performance improvements, integrated budgets development and analysis, and forensic and recovery audits. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

**SENIOR MANAGER:**

- ***General Education/Experience:*** Master's Degree and six years related field experience or Bachelor's Degree and seven years related field experience.

- ***Technical Experience:*** Concentrated experience in financial management with demonstrated management capability ability to supervise or lead financial management teams. Multifaceted executive experience in the field of financial management, business and contract accounts management, and forensic and recovery audits. Intricate experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications.

- ***Duties:*** Performs direct daily oversight of all contract support operations including multiple projects and personnel at multiple locations. Provides corporate authority and responsibility to identify and commit resources needed to support all task orders. This position will also perform associated tasking of assigned Manager and Senior Associate personnel labor categories as required. May also work independently in support of a wide-range of contract tasking to support the delivery order.

**MANAGER:**

- ***General Education/Experience:*** Master's Degree and five years related field experience or Bachelor's Degree and six years related field experience.

- ***Technical Experience:*** Direct experience in financial management with demonstrated management capability ability to supervise or lead financial management teams. Executive experience in the field of financial management, business and contract accounts management, and forensic and recovery audits. In-depth working experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications. May also work independently in support of a wide-range of contract tasking to support the delivery order.

- ***Duties:*** Provides direct daily contract support personnel management for one or more projects as required in support of delivery orders. The Manager will also perform associated tasking of assigned Senior Associate and Associate personnel labor category and has directional authority over all assigned.

**SENIOR ASSOCIATE:**

- ***General Education/Experience:*** Master's Degree and four years related field experience or Bachelor's Degree and five years related field experience.

- ***Technical Experience:*** Experience in the field of financial management, business and contract accounting management, and forensic and recovery audits. In-depth working experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications.

- ***Duties:*** Provides complete financial analysis to include in-depth accounting conformity, complete budget performance improvements, and invoice to contract reviews for compliance. Conducts complete auditing of contract invoicing to include forensic and recovery audits to include reports development to support recoveries. Ensures direct compliance to various government directives, statutory and regulatory requirements, and contract deliverables. Has extensive experience in business operations throughout government and corporate entities. Works as part of a team, in support of a wide-range of contract tasking to support the delivery order.

**ASSOCIATE (LEVEL 1, 2, AND 3):**

- ***General Education/Experience:***

  - Associate (Level 1): Bachelor's Degree and one year related field experience.
  - Associate (Level 2): Master's Degree and two years related field experience or Bachelor's Degree and three years related field experience.
  - Associate (Level 3): Master's Degree and three years related field experience or Bachelor's Degree and four years related field experience.

- **Technical Experience:** Corporate familiarity and working knowledge of integrated budgets to include direct experience in planning, formulation; and post analysis. Possesses direct experience in audit recovery and associated research to support forensic reviews. Has a direct working knowledge of task orders and associated contract deliverables.

- **Duties:** Provides direct financial analysis to include accounting conformity and performance improvements as required. Performs in-depth audit analysis and reports development for compliance to contract, statutory and regulatory requirements. Ensures compliance to various government directives with minimal direction and has direct experience in business operations. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

## JUNIOR ASSOCIATE:

- **General Education/Experience:** Bachelor's Degree or four years related field experience.

- **Technical Experience:** Basic education or experience in the field of financial management and auditing. Can have direct experience in budget and audit management and related research requirements in the field.

- **Duties:** Work in concert with other associates in the performance of financial management to include audit research, invoice and budget analysis, and required reports development. With minimal direction, ensures compliance to various government directives and has baseline knowledge of business operations.

## ADMINISTRATIVE SUPERVISOR:

- **General Education/Experience:** High School Diploma and six years of related field experience or Associate's degree and four years of related field experience.

- **Technical Experience:** Experience in direct supervision and management of administrative support personnel. In-depth business computer based software experience including innate ability to support final administrative review of all deliverables, complete business schedule management, inter-office training support for specific task order direction, payroll management, and financial research requirements. Experience with JFTR travel regulations and documentation.

- **Duties:** Directly supervises and manages all on-site and off-site administrative support personnel as required. Maintains direct control of executive level office functions, interpreting and processing all task requests ensuring appropriate staff assignment, implementing and maintaining tracking databases, and managing final review schedules. Proofs all outgoing deliverables for executive approval and summarizes incoming materials including required technical research to minimize senior staff review times. Provides direct management of all staff travel requirements maintaining schedules and

9

ensuring JFTR requirements and associated task invoicing. Provides overall payroll management and reports processing for task invoicing. The Administrative Supervisor will also perform associated tasking of assigned Administrative Assistances and Clerical Support personnel labor categories as required.

**ADMINISTRATIVE ASSISTANT:**

- ***General Education/Experience:*** High School Diploma and four years of related field experience or Associate's degree and two years of related field experience

- ***Technical Experience:*** Corporate knowledge in business computer software including experience in supporting administrative review of deliverables, business schedule updating and tracking, and monitoring associated task order requirements. Core experience in reports preparations, developing and finalizing correspondence, and complete database management. Experienced in scheduling travel and ensuring JFTR requirements.

- ***Duties:*** Performs administrative support including developing and processing correspondence, preparing reports and databases, and maintains office filing systems. Maintains complete office schedules, processes travel requirements and tracks task order deliverables providing complete contract management as required. Handles recurring office procedures including processing routine telephone requests, mail handling, and general financial research as required. Can provide support of office payrolls and associated problem resolution. The Administrative Assistant will also perform associated tasking of assigned Clerical Support personnel labor category as required.

**CLERICAL SUPPORT:**

- ***General Education/Experience:*** High School Diploma or equivalent. One to two years of related field experience.

- ***Technical Experience:*** Basic understanding of business computer based software to support word processing, spreadsheet development, and presentation support. Has experience in basic web research including basic financial research.

- ***Duties:*** Provides administrative support including typing correspondence and reports, updating databases, and maintaining office files. Supports recurring office procedures as directed including processing routine telephone requests, mail handling, appointment scheduling, report reviews, and general research in support of tasking. Assist other staff personnel in various administrative duties as assigned.

10

# PRICING OPTIONS

## June 17, 2010 - June 16, 2015
### (Includes 0.75% IFF)

**OPTION 1: OFFSITE LABOR RATES (BASE PERIOD; 1.8% ESCALATION):**

| Offsite Labor Category (SINs 520-9, 520-11, 520-14) | June 17 2010 - June 16 2011 | June 17 2011 - June 16 2012 | June 17 2012 - June 16 2013 | June 17 2013 - June 16 2014 | June 17 2014 - June 16 2015 |
|---|---|---|---|---|---|
| Managing Principal | $211.58 | $215.39 | $219.27 | $223.21 | $227.23 |
| Principal | $186.39 | $189.75 | $193.16 | $196.64 | $200.18 |
| Director | $161.20 | $164.10 | $167.06 | $170.06 | $173.12 |
| Sr. Manager | $151.13 | $153.85 | $156.62 | $159.44 | $162.31 |
| Manager | $100.75 | $102.56 | $104.41 | $106.29 | $108.20 |
| Senior Associate | $80.60 | $82.05 | $83.53 | $85.03 | $86.56 |
| Associate (Level 3) | $75.56 | $76.92 | $78.30 | $79.71 | $81.15 |
| Associate (Level 2) | $70.53 | $71.80 | $73.09 | $74.41 | $75.75 |
| Associate (Level 1) | $65.49 | $66.67 | $67.87 | $69.09 | $70.33 |
| Junior Associate | $60.45 | $61.54 | $62.65 | $63.77 | $64.92 |
| Administrative Supervisor | $53.40 | $54.36 | $55.34 | $56.34 | $57.35 |
| Administrative Assistant | $48.36 | $49.23 | $50.12 | $51.02 | $51.94 |
| Clerical Support | $38.29 | $38.98 | $39.68 | $40.40 | $41.12 |

**OPTION 2: ONSITE LABOR RATES (BASE PERIOD; 1.8% ESCALATION):**

| Onsite Labor Category (SINs 520-9, 520-11, 520-14) | June 17 2010 - June 16 2011 | June 17 2011 - June 16 2012 | June 17 2012 - June 16 2013 | June 17 2013 - June 16 2014 | June 17 2014 - June 16 2015 |
|---|---|---|---|---|---|
| Principal | $151.13 | $153.85 | $156.62 | $159.44 | $162.31 |
| Director | $136.01 | $138.46 | $140.95 | $143.49 | $146.07 |
| Sr. Manager | $120.90 | $123.08 | $125.29 | $127.55 | $129.84 |
| Manager | $90.68 | $92.31 | $93.97 | $95.67 | $97.39 |
| Senior Associate | $70.53 | $71.80 | $73.09 | $74.41 | $75.75 |
| Associate (Level 3) | $65.49 | $66.67 | $67.87 | $69.09 | $70.33 |
| Associate (Level 2) | $60.45 | $61.54 | $62.65 | $63.77 | $64.92 |
| Associate (Level 1) | $55.41 | $56.41 | $57.42 | $58.46 | $59.51 |
| Junior Associate | $50.38 | $51.29 | $52.21 | $53.15 | $54.11 |
| Administrative Supervisor | $45.34 | $46.16 | $46.99 | $47.83 | $48.69 |
| Administrative Assistant | $38.29 | $38.98 | $39.68 | $40.40 | $41.12 |
| Clerical Support | $28.21 | $28.72 | $29.23 | $29.76 | $30.30 |

**OPTION 3: CONTINGENCY FEE RATE (INCLUDES 0.75% IFF):**

Services are provided under SIN 520-9 (offsite only) on a pay for performance basis with a contingency fee of 15% paid on the actual amounts recovered.

# ACLR, LLC

## GENERAL SERVICES ADMINISTRATION
## FINANCIAL & BUSINESS SOLUTIONS

### GSA FEDERAL SUPPLY SERVICE
**Authorized Federal Supply Schedule Price List**

| | |
|---|---|
| *SCHEDULE TITLE:* | FSC Industrial Group: 00CORP – Professional Services Schedule & Audit Services |
| *SIN CODES:* | 520-9(RC)   Recovery Audits<br>520-11(RC)  Accounting |
| *CONTRACT NUMBER:* | GS-23F-0074W<br>MOD PO-0013 |
| *CONTRACT TERM:* | June 17, 2015 - June 16, 2020 |
| *CONTRACTOR:* | ACLR, LLC<br>43000 Nine Mile Rd, Suite 108<br>Novi, MI 48375 |
| *CONTACT:* | Kristen Barnes<br>W: 734.744.4400<br>F: 734.744.4150<br>kbarnes@aclrsbs.com |
| *NEGOTIATOR:* | Christopher Mucke, CPA<br>W: 734.744.4401<br>F: 734.744.4150<br>cmucke@aclrsbs.com |
| *SET ASIDE:* | Small Business |
| *DATE:* | Current as of June 28, 2017. |
| *Company Websites:* | www.aclrsbs.com (company website)<br>www.willyancey.com (resource website) |

For more information on ordering from Federal Supply Schedules click on the FSS Schedules at GSA.gov. On-line access to contract ordering information, terms and conditions, up-to-date pricing, and the option to create an electronic delivery order are available through GSA Advantage!, a menu driven database system. The INTERNET address for GSA Advantage! is: GSAAdvantage.gov.

# ACLR, LLC

## CUSTOMER INFORMATION PAGE

| | | |
|---|---|---|
| 1a. | Awarded Special Item Numbers | 520-9(RC), 520-11(RC) |
| 1b. | Awarded Pricing | See Page 11 |

*The Service Contract Act (SCA) is applicable to this contract and it includes SCA applicable labor categories. The prices for the cited SCA labor categories are based on the U.S. Department of Labor WD Number(s) identified in the SCA matrix. The prices offered are based on the preponderance of where work is performed and should the Contractor perform in an area with lower SCA rates, resulting in lower wages being paid, the task order prices will be discounted accordingly.*

| | | |
|---|---|---|
| 1c. | Labor Category Descriptions | See Page 6 |
| 2. | Maximum order: | $1,000,000 |
| 3. | Minimum order: | $100.00 |
| 4. | Geographic coverage | Domestic |
| 5. | Point(s) of Production | Livonia, Wayne County, Michigan<br>Atlanta, Fulton County, Georgia |
| 6. | Discount from List Prices | Not Applicable |
| 7. | Quantity discounts: | Negotiated at task order level. |
| 8. | Prompt payment terms: | 1%, Net 15 |
| 9a. | Government Purchase Cards Below Micro-Purchase Threshold | Yes |
| 9b. | Government Purchase Cards Above Micro-Purchase Threshold | No |
| 10. | Foreign items: | Not Applicable |
| 11a. | Time of delivery: | Per Task Order |
| 11b. | Expedited delivery: | Per Task Order |

*Items available for expedited delivery are noted in this price list.*

| | | |
|---|---|---|
| 11c. | Overnight and 2-day delivery: | Not Applicable |
| 11d. | Urgent requirements: | Contact POC |

2

*In accordance with contract clause I-FSS-14-B ACLR, LLC will reply to any inquiry for accelerated delivery within 3 business days after receipt of inquiry.  Any telephone inquiries will be confirmed by ACLR, LLC in writing.*

| | | |
|---|---|---|
| 12. | F.O.B. Point(s): | Destination |
| 13a. | Ordering Address: | ACLR, LLC<br>43000 Nine Mile Rd<br>Suite 108<br>Novi, MI 48375 |

13b.   Ordering procedures:

*For supplies and services, the ordering procedures, information on blanket purchase agreements (BPA's), and a sample BPA can be found at the GSA/FSS schedule homepage (fss.gsa.gov/schedules).*

| | | |
|---|---|---|
| 14. | Payment address: | ACLR, LLC<br>43000 Nine Mile Rd<br>Suite 108<br>Novi, MI 48375 |
| 15. | Warranty Provision: | Not Applicable |
| 16. | Export packing charges: | Not Applicable |
| 17. | Terms & Conditions of Government Purchase Card Acceptance | Not Applicable |
| 18. | Terms & Conditions of Rental Maintenance and Repair | Not Applicable |
| 19. | Terms & Conditions of Installation | Not Applicable |
| 20. | Terms & Conditions of Repair Parts | Not Applicable |
| 20a. | Terms & Conditions for Any Other Services | Not Applicable |
| 21. | List of Service & Distribution Points | Not Applicable |
| 22. | List of Participating Dealers | Not Applicable |
| 23. | Preventative Maintenance | Not Applicable |
| 24a. | Special Attributes | Not Applicable |
| 24b. | Section 508 Compliance Information | Not Applicable |
| 25. | Data Universal Number System (DUNS) Number | 78-027-2873 |
| 26. | System for Award Management | 5QKV2<br>Registered<br>Valid - 06/28/2018 |

3

*Letter from the Managing Principal:*

*ACLR, LLC is pleased to provide you with our capabilities and price list for the GSA Financial and Business Solutions Schedule.*

*The negative impact of the current economic environment has taken a toll on the budgets of government agencies and now, more than ever, it is important to maximize the value of each dollar expended. Over the past several years, federal and state auditors have routinely demonstrated that 10 - 35 percent of government program expenditures were improperly paid. Recovering these amounts to replace budget deficits should be the top priority of all government agencies.*

*As a management consulting company, ACLR specializes in the identification and recovery of overpayments. ACLR professionals are experts at reviewing, developing and implementing the internal controls necessary to collect, mitigate and eliminate future improper payments. In addition, our professionals are adept at developing and executing sampling methodologies designed to comply with the most rigorous of auditing programs as well as the Improper Payments Information Act of 2002.*

*We look forward to assisting you in achieving departmental goals and maximizing budgetary value.*

*Very truly yours,*

*Christopher A. Mucke, CPA*
*Managing Principal*

4

# FIRM OVERVIEW

ACLR evolved from a large corporation centric accounting and indirect tax consulting service to a complete business solutions service provider designed to meet the needs of government, major publically owned corporations, and small privately owned businesses. Specializing in a wide range of business solutions from accounting, regulatory compliance, and management consulting, the extensive experience of ACLR professionals have translated into the identification, design, and implementation of best practices for numerous businesses including the retrieval of over $100 million in recoveries and cost reductions for our clients.

With a staff that includes some of the top consultants in the industry, ACLR is right sized to directly provide audit recovery and management consulting services to any size business. The value of ACLR is our core business support structure to and our ability to meet your cost needs with the added support of the best in industry.

# SERVICES

### SIN 520-9(RC) - Recovery Audits:

ACLR audit recovery professionals are adept at identifying overpayment opportunities and obtaining the necessary evidence to ensure swift resolution of refund claims. Whether conducting a comprehensive review of supplier payments or sampling program purchases to ensure compliance with the Improper Payments Information Act of 2002 and the Recovery Auditing Act we seek to accurately quantify, verify, and recover improper payments. By analyzing contracts, contract changes, supplier invoices, and payments to ensure that all terms of the contract are followed throughout the duration of the contract and locating, reviewing, and verifying source documentation for each transaction and reconciling each bill to total contract charges we have secured over $100 million in refunds for our clients and, in many instances, more than quadrupled refunds identified by our competition.

### 520-11(RC) - Accounting:

ACLR professionals are well versed in the use of numerous accounting systems utilized today and are adept at identifying information risk and areas for improvement. By performing baseline and on-going accounting system reviews and special studies to include design, development, operation and inspection of accounting requirements, installed systems, controls, and processes, ACLR professionals can provide management level evaluation and recommend needed changes to improve management data processing and control. ACLR professionals are also experienced in reviewing, analyzing, and summarizing clients' transactional data and are adept at resolving accounting issues, implementing process improvements, recommending and implementing efficiency matrices, and providing related services to maintain and improve financial reporting operations.

# LABOR CATEGORIES

**MANAGING PRINCIPAL:**

- *General Education/Experience:* Four-year degree in Accounting. Licensed CPA. Twenty plus years related field experience.

- *Technical Experience:* Managing Principal with over eight years experience leading a financial and office service's corporation. Over twenty years experience in major corporation national recovery audits and successfully negotiating multi-million dollar recoveries. Extensive experience as an expert witness in various court cases related to auditing and associated statutory and regulatory compliance.

- *Duties:* Directly responsible for complete management of all contracts assigned to the business and ensuring high standards are achieved on all deliverables. Represents business by actively collaborating with prospective and existing clients by overseeing project management and providing technical input as required to meet and exceed contract requirements. Works directly with the complete management team to ensure client retention and a successful cost-wise relationship. Ensures that all staff personnel receive appropriate training and ongoing performance reviews to achieve maximum potential in the best interest of servicing client needs.

**PRINCIPAL:**

- *General Education/Experience:* Minimum of four-year degree in Accounting. Degree with ten to twelve plus years related field experience. Licensed CPA.

- *Technical Experience:* Minimum of eight years of executive experience in the private and/or public sector or in government. Exceptional experience in business financial systems, contract management, financial reviews, and audit recoveries.

- *Duties:* Provides the overall authority for the conduct of assigned contacting arrangements and is responsible for all work performed included in the review of task order planning, direct supervision of assigned personnel, and final review and completion of work tasking. Monitors the status of all contracts and is responsible for client communication, overall project management and the presentation of the final deliverables. Has full executive financial analysis capabilities to include accounting conformity, budget performance improvements, integrated budgets development and analysis, and forensic and recovery audits. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

**DIRECTOR:**

- *General Education/Experience:* Master's Degree or Bachelor's Degree and ten to twelve plus years related field experience.

6

- *Technical Experience:* Minimum of eight years of executive experience in the private and/or public sector or in government. Exceptional experience in business financial systems, contract management, financial reviews, and audit recoveries.

- *Duties:* Provides the overall authority for the conduct of assigned contacting arrangements and is responsible for all work performed included in the review of task order planning, direct supervision of assigned personnel, and final review and completion of work tasking. Monitors the status of all contracts and is responsible for client communication, overall project management and the presentation of the final deliverables. Has full executive financial analysis capabilities to include accounting conformity, budget performance improvements, integrated budgets development and analysis, and forensic and recovery audits. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

## SENIOR MANAGER:

- *General Education/Experience:* Master's Degree and six years related field experience or Bachelor's Degree and seven years related field experience.

- *Technical Experience:* Concentrated experience in financial management with demonstrated management capability ability to supervise or lead financial management teams. Multifaceted executive experience in the field of financial management, business and contract accounts management, and forensic and recovery audits. Intricate experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications.

- *Duties:* Performs direct daily oversight of all contract support operations including multiple projects and personnel at multiple locations. Provides corporate authority and responsibility to identify and commit resources needed to support all task orders. This position will also perform associated tasking of assigned Manager and Senior Associate personnel labor categories as required. May also work independently in support of a wide-range of contract tasking to support the delivery order.

## MANAGER:

- *General Education/Experience:* Master's Degree and five years related field experience or Bachelor's Degree and six years related field experience.

- *Technical Experience:* Direct experience in financial management with demonstrated management capability ability to supervise or lead financial management teams. Executive experience in the field of financial management, business and contract accounts management, and forensic and recovery audits. In-depth working experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications. May also work independently in support of a wide-range of contract tasking to support the delivery order.

7

- *Duties:* Provides direct daily contract support personnel management for one or more projects as required in support of delivery orders. The Manager will also perform associated tasking of assigned Senior Associate and Associate personnel labor category and has directional authority over all assigned.

**SENIOR ASSOCIATE:**

- *General Education/Experience:* Master's Degree and four years related field experience or Bachelor's Degree and five years related field experience.

- *Technical Experience:* Experience in the field of financial management, business and contract accounting management, and forensic and recovery audits. In-depth working experience throughout corporate budget analysis for statutory and regulatory compliance. Comprehensive knowledge of new and legacy accounting software applications.

- *Duties:* Provides complete financial analysis to include in-depth accounting conformity, complete budget performance improvements, and invoice to contract reviews for compliance. Conducts complete auditing of contract invoicing to include forensic and recovery audits to include reports development to support recoveries. Ensures direct compliance to various government directives, statutory and regulatory requirements, and contract deliverables. Has extensive experience in business operations throughout government and corporate entities. Works as part of a team, in support of a wide-range of contract tasking to support the delivery order.

**ASSOCIATE (LEVEL 1, 2, AND 3):**

- *General Education/Experience:*

    - Associate (Level 1): Bachelor's Degree and one year related field experience.
    - Associate (Level 2): Master's Degree and two years related field experience or Bachelor's Degree and three years related field experience.
    - Associate (Level 3): Master's Degree and three years related field experience or Bachelor's Degree and four years related field experience.

- *Technical Experience:* Corporate familiarity and working knowledge of integrated budgets to include direct experience in planning, formulation; and post analysis. Possesses direct experience in audit recovery and associated research to support forensic reviews. Has a direct working knowledge of task orders and associated contract deliverables.

- *Duties:* Provides direct financial analysis to include accounting conformity and performance improvements as required. Performs in-depth audit analysis and reports development for compliance to contract, statutory and regulatory requirements. Ensures compliance to various government directives with minimal direction and has direct

8

experience in business operations. May also work independently, or as part of team, in support of a wide-range of contract tasking to support the delivery order.

JUNIOR ASSOCIATE:

- *General Education/Experience:* Bachelor's Degree or four years related field experience.

- *Technical Experience:* Basic education or experience in the field of financial management and auditing. Can have direct experience in budget and audit management and related research requirements in the field.

- *Duties:* Work in concert with other associates in the performance of financial management to include audit research, invoice and budget analysis, and required reports development. With minimal direction, ensures compliance to various government directives and has baseline knowledge of business operations.

ADMINISTRATIVE SUPERVISOR:

- *General Education/Experience:* High School Diploma and six years of related field experience or Associate's degree and four years of related field experience.

- *Technical Experience:* Experience in direct supervision and management of administrative support personnel. In-depth business computer based software experience including innate ability to support final administrative review of all deliverables, complete business schedule management, inter-office training support for specific task order direction, payroll management, and financial research requirements. Experience with JFTR travel regulations and documentation.

- *Duties:* Directly supervises and manages all on-site and off-site administrative support personnel as required. Maintains direct control of executive level office functions, interpreting and processing all task requests ensuring appropriate staff assignment, implementing and maintaining tracking databases, and managing final review schedules. Proofs all outgoing deliverables for executive approval and summarizes incoming materials including required technical research to minimize senior staff review times. Provides direct management of all staff travel requirements maintaining schedules and ensuring JFTR requirements and associated task invoicing. Provides overall payroll management and reports processing for task invoicing. The Administrative Supervisor will also perform associated tasking of assigned Administrative Assistances and Clerical Support personnel labor categories as required.

ADMINISTRATIVE ASSISTANT:

- *General Education/Experience:* High School Diploma and four years of related field experience or Associate's degree and two years of related field experience

- ***Technical Experience:*** Corporate knowledge in business computer software including experience in supporting administrative review of deliverables, business schedule updating and tracking, and monitoring associated task order requirements. Core experience in reports preparations, developing and finalizing correspondence, and complete database management. Experienced in scheduling travel and ensuring JFTR requirements.

- ***Duties:*** Performs administrative support including developing and processing correspondence, preparing reports and databases, and maintains office filing systems. Maintains complete office schedules, processes travel requirements and tracks task order deliverables providing complete contract management as required. Handles recurring office procedures including processing routine telephone requests, mail handling, and general financial research as required. Can provide support of office payrolls and associated problem resolution. The Administrative Assistant will also perform associated tasking of assigned Clerical Support personnel labor category as required.

### CLERICAL SUPPORT:

- ***General Education/Experience:*** High School Diploma or equivalent. One to two years of related field experience.

- ***Technical Experience:*** Basic understanding of business computer based software to support word processing, spreadsheet development, and presentation support. Has experience in basic web research including basic financial research.

- ***Duties:*** Provides administrative support including typing correspondence and reports, updating databases, and maintaining office files. Supports recurring office procedures as directed including processing routine telephone requests, mail handling, appointment scheduling, report reviews, and general research in support of tasking. Assist other staff personnel in various administrative duties as assigned.

# PRICING OPTIONS

## June 17, 2015 - June 16, 2020
### (Includes 0.75% IFF)

**OPTION 1: OFFSITE LABOR RATES (BASE PERIOD; 1.8% ESCALATION):**

| Onsite Labor Category (SINs 520-9, 520-11) | June 17 2015 - June 16 2016 | June 17 2016 - June 16 2017 | June 17 2017 - June 16 2018 | June 17 2018 - June 16 2019 | June 17 2019 - June 16 2020 |
|---|---|---|---|---|---|
| Managing Principal | 231.33 | 235.49 | 239.73 | 244.05 | 248.44 |
| Principal | 203.79 | 207.46 | 211.19 | 214.99 | 218.86 |
| Director | 176.24 | 179.41 | 182.64 | 185.93 | 189.28 |
| Sr. Manager | 165.23 | 168.20 | 171.23 | 174.31 | 177.45 |
| Manager | 110.15 | 112.13 | 114.15 | 116.20 | 118.29 |
| Senior Associate | 88.12 | 89.71 | 91.32 | 92.96 | 94.63 |
| Associate (Level 3) | 82.60 | 84.09 | 85.60 | 87.14 | 88.71 |
| Associate (Level 2) | 77.11 | 78.50 | 79.91 | 81.35 | 82.81 |
| Associate (Level 1) | 71.60 | 72.89 | 74.20 | 75.54 | 76.90 |
| Junior Associate | 66.10 | 67.29 | 68.50 | 69.73 | 70.99 |
| Administrative Supervisor | 58.38 | 59.43 | 60.50 | 61.59 | 62.70 |
| Administrative Assistant | 52.87 | 53.82 | 54.79 | 55.78 | 56.78 |
| Clerical Support | 41.86 | 42.61 | 43.38 | 44.16 | 44.95 |

**OPTION 2: ONSITE LABOR RATES (BASE PERIOD; 1.8% ESCALATION):**

| Onsite Labor Category (SINs 520-9, 520-11) | June 17 2015 - June 16 2016 | June 17 2016 - June 16 2017 | June 17 2017 - June 16 2018 | June 17 2018 - June 16 2019 | June 17 2019 - June 16 2020 |
|---|---|---|---|---|---|
| Principal | 165.23 | 168.20 | 171.23 | 174.31 | 177.45 |
| Director | 148.70 | 151.38 | 154.10 | 156.87 | 159.69 |
| Sr. Manager | 132.18 | 134.56 | 136.98 | 139.45 | 141.96 |
| Manager | 99.14 | 100.92 | 102.74 | 104.59 | 106.47 |
| Senior Associate | 77.11 | 78.50 | 79.91 | 81.35 | 82.81 |
| Associate (Level 3) | 71.60 | 72.89 | 74.20 | 75.54 | 76.90 |
| Associate (Level 2) | 66.09 | 67.28 | 68.49 | 69.72 | 70.97 |
| Associate (Level 1) | 60.58 | 61.67 | 62.78 | 63.91 | 65.06 |
| Junior Associate | 55.08 | 56.07 | 57.08 | 58.11 | 59.16 |
| Administrative Supervisor | 49.57 | 50.46 | 51.37 | 52.29 | 53.23 |
| Administrative Assistant | 41.86 | 42.61 | 43.38 | 44.16 | 44.95 |
| Clerical Support | 30.85 | 31.41 | 31.98 | 32.56 | 33.15 |

**OPTION 3: CONTINGENCY FEE RATE (INCLUDES 0.75% IFF):**

Services are provided under SIN 520-9 (offsite only) on a pay for performance basis with a contingency fee of 15% paid on the actual amounts recovered. In cases where the contractual arrangement requires delays in recovery audit performance or restricted recovery audit efforts, contingency fees can be adjusted upward as required based on agreement with the contracting entity.