# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ACLR, LLC** ) | |
| ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **Nos. 15-767 and 16-309C** |
| ) | (Judge Campbell-Smith) |
| **THE UNITED STATES** ) | |
| ) | |
| Defendant ) | |
| ) | |

## PLAINTIFF ACLR, LLC'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGEMENT

Plaintiff ACLR, LLC ("ACLR"), by its undersigned counsel and pursuant to Rule 56 of the United States Court of Federal Claims and this Court's February 8, 2020 Scheduling Order, respectfully submits the following proposed findings of uncontroverted facts setting forth all of the material facts upon which ACLR bases its motion for summary judgment and as to which ACLR believes there is no genuine dispute.

## UNCONTROVERTED FACTS

1.  In connection with the Plan Year ("PY") 2007 Duplicate Payment Audit, the Recovery Audit Services in Support of Medicare Part D Task Order ("Part D RAC") required ACLR to develop an infrastructure necessary to secure billions of prescription drug payment transactions. Exhibit 1 at ¶ 8, A0003.

2.  The Part D RAC also required ACLR to develop and implement recovery audit processes, Part D RAC stakeholder communication processes, and project plans and

implementation schedules.  *Id.* at ¶ 9, A0003.  All of these actions were necessary for the PY 2007 Duplicate Payment Audit.  *Id.*

3. Under the terms of the Part D RAC, ACLR was required to maintain key personnel throughout the base period of the contract.  *Id.* at ¶ 10, A0003.

4. On January 31, 2012, CMS executed a contract modification that removed ACLR's requirement to maintain key personnel and required ACLR to conduct and recover improper payments using audit processes designed by a separate contractor during the Part D RAC base period.  *Id.* at ¶ 11, A0003-A0004.

5. ACLR's payroll costs for the PY 2007 Duplicate Payment Audit totaled $408,462.83.  *Id.* at ¶¶ 12 and 13, A0004; Exhibit B, A0059-A0065; Exhibit B-1, A0066-0571.

6. As the owner of ACLR, Chris Mucke was not an employee and did not take a salary despite working extensively on the Part D RAC.  Exhibit 1 at ¶ 14, A0004.

7. Chris Mucke was the Project Director for ACLR as defined in the Part D RAC.  *Id.* at ¶ 15, A0004.

8. During the base period of the Part D RAC, Chris Mucke's efforts were solely directed to executing the Part D RAC necessary to complete the PY 2007 Duplicate Payment Audit and he typically worked 15-18 hour days.  *Id.* at ¶ 16, A0004.

9. Given that the Part D RAC was a contingency fee contract, Chris Mucke did not record the hours he worked during the base period of the Part D RAC.  *Id.* at ¶ 17, A0004.

10. Chris Mucke devoted approximately 3,023 hours to the PY 2007 Duplicate Payment Audit effort in the base period.  *Id.* at ¶ 18, A0004-A0005.

11.     The value of Chris Mucke's efforts on the PY 2007 Duplicate Payment Audit total $645,730.  *Id.* at ¶¶ 19-20; Exhibit C, A0572-A0575; Exhibit C-1, A0576-A0589.

12.     At the time of the award of the Part D RAC, ACLR maintained office space at 550 Forest Avenue, Suite 15-2, Plymouth, Michigan 48170 ("Plymouth Office") as that office did not have sufficient space for the additional personnel that ACLR would need to hire for the Part D RAC.  Exhibit 1 at ¶ 21, A0005.

13.     The monthly lease payments for the Plymouth Office were $575 and the other office expense was monthly electricity payments averaging $100.  *Id.* at ¶ 22, A0005.

14.     On April 11, 2011, ACLR executed a multiyear lease for expanded office space located at 38705 Seven Mile Road, Suite 460, Livonia, Michigan 48152 ("Livonia Office") with SMC Investors, LLC.  *Id.* at ¶ 23, A0005; Exhibit D-1, A0595-A0964.

15.     The lease for the Livonia Office was executed for the sole purpose of obtaining additional space to house audit and key personnel to work on the PY 2007 Duplicate Payment Audit in accordance with the Part D RAC.  Exhibit 1 at ¶ 24, A0005.

16.     The monthly lease and electricity payments for the Livonia Office averaged $9,200 and $1,300, respectively.  *Id.* at ¶ 25, A0005.

17.     To mitigate costs associated with the Livonia Office, ACLR negotiated a sublease with WorkForce Software, Inc. on March 19, 2013 and ACLR moved in 2013 to a smaller office located in Suite 251 ("Livonia Office 2") of the same building.  *Id.* at ¶ 26, A0006.

18.     The monthly lease and electricity payments for the Livonia Office 2 averaged $2,204 and $316, respectively.  *Id.* at ¶ 27, A0006.

19. The Livonia Office lease expired on October 31, 2016 and ACLR moved in 2016 to a smaller office. *Id.* at ¶ 28, A0006.

20. ACLR's office lease costs for its Livonia, Michigan office were $295,775.80. *Id.* at ¶ 29, A0006; Exhibit D, A0590-A0594; Exhibit D-1, A0595-A0964.

21. On June 10, 2011, ACLR executed a business loan agreement with PNC Bank, National Association in the amount of $600,000 to fund ACLR's work under the Part D RAC. Exhibit 1 at ¶ 30, A0006; Exhibit E-2, A0976-A0997.

22. This initial maturity date of June 13, 2013 for this loan was extended on June 7, 2013 due to ACLR's inability to make loan payments as a result of CMS's delays in executing the Part D RAC. Exhibit 1 at ¶ 31, A0006.

23. The funds derived from this loan were used solely to pay for items associated with completing all activities necessary to conduct the PY 2007 Duplicate Payment Audit. *Id.* at ¶ 32, A0006.

24. The final principal and interest payments for this loan were paid on August 24, 2018. *Id.* at ¶ 33, A0006.

25. ACLR's interest payments on this loan totaled $176,426.46. *Id.* at ¶ 34, A0007; Exhibit E, A0965-A0966; Exhibit E-1, A0967-A0975; Exhibit E-2, A0976-A0997.

26. In connection with the PY 2007 Duplicate Payment Audit, ACLR expended amounts associated with travel to CMS for training and project implementation, information technology, computer equipment, professional services, and other miscellaneous office expenses. Exhibit 1 at ¶ 35; A0007.

27. ACLR's general and administration costs for the PY 2007 Duplicate Payment Audit totaled $505,569.23. *Id.* at ¶ 36, A0007; Exhibit A, A0012-A0058; Exhibit F, A0998-A1002.

28. ACLR's reasonable profit for costs for the PY 2007 Duplicate Payment Audit is $304,885.03, based upon a 15% profit rate, which is significantly lower than ACLR's profit percentages earned from clients in previous years. Exhibit 1 at ¶ 51, A0010; Exhibit L, A1680-A1692.

29. On December 9, 2011, CMS provided ACLR with its internal duplicate payment recovery audit process that was used as the basis for the PY 2010 duplicate payment audit. Exhibit 1 at ¶ 37, A0007.

30. CMS required that ACLR run reports, analyze data, provide feedback to CMS personnel, and conduct special studies designed to confirm the veracity of CMS's duplicate payment audit methodology during calendar years 2012 and 2013. *Id.* at ¶ 38, A0007.

31. On December 31, 2013, CMS executed a modification to ACLR's Part D RAC ("OY 1 SOW"). *Id.* at ¶ 39, A0007.

32. ACLR continued its work efforts on the PY 2010 Duplicate Payment Audit after the OY1 SOW was issued. *Id.* at ¶ 40, A0007.

33. ACLR was conducting additional audits for CMS while ACLR was performing the PY 2010 Duplicate Payment Audit. *Id.* at ¶ 41, A0007.

34. ACLR personnel worked approximately 4,376 hours on the PY 2010 duplicate payment audit. *Id.* at ¶¶ 42-43, A0008.

35. ACLR's costs for the termination for convenience of the PY10 Duplicate Payment Audit were $923,558.62. *Id.* at ¶ 44, A0008; Exhibit G, A1470-A1475.

36. ACLR made multiple attempts to recover costs from CMS due to its actions related to the PY 2007 and 2010 duplicate payment audits. Exhibit 1 at ¶ 46, A0009.

37. On April 26, 2012, CMS denied ACLR's request for equitable adjustment to recover base period expenditures on the grounds that "payments would be made only on a contingency fee basis" and that Section 5 specifically states "the recovery audit contractor shall not receive any payments for the identification of the underpayments or overpayments not recovered/collected." *Id.* at ¶ 47, A0009; Exhibit I, A1520-A1521.

38. On June 15, 2015, CMS denied ACLR's claim for amounts associated with the PY 2007 and PY 2010 duplicate payment audits on the basis that there were "no provisions in the contract allowing CMS to reimburse ACLR's costs or otherwise pay ACLR for performing audit recovery work for CMS in any manner other than on a contingency fee basis." Exhibit 1 at ¶ 48, A0009; Exhibit J, A1522-A1530.

39. ACLR would not have obtained any ability to recover costs associated with the CMS's actions directed towards the PY 2007 and 2010 Duplicate Payment Audits had it not filed a lawsuit against CMS. Exhibit 1 at ¶ 49, A0009.

40. Prior to the Court's March 23, 2020 Opinion and Order, ACLR paid its law firm $617,307.56 in connection with this lawsuit. *Id.* at ¶ 50, A0009-A0010; Exhibit K-1, A1535-A1679.

41. Prior to the Court's March 23, 2020 Opinion and Order, Chris Mucke and other ACLR personnel devoted approximately 5,481 hours to this lawsuit. The cost of those hours was $1,200,133.39  Exhibit 1 at ¶ 50, A0009-A0010; Exhibit K, A1531-A1534.

42.     ACLR has paid its law firm $29,025 since this Court's March 23, 2020 Opinion and Order in an effort to recover ACLR's constructive termination for convenience costs and is continuing to incur legal expenses in this process.  Exhibit 1 at ¶ 45, A0008-A0009; Exhibit H-1, A1483-A1519.

43.     Since this Court's March 23, 2020 Opinion and Order, Chris Mucke and other ACLR personnel devoted 678 hours through December 31, 2020 to recover ACLR's constructive termination for convenience costs and is continuing to incur additional time and effort in this process.  Exhibit 1 at ¶ 45, A0008-A0009; Exhibit H, A1476-A1482.

44.     The total cost of ACLR's hours from March 23, 2020 through December 31, 2020 to recover ACLR's constructive termination for convenience costs is $154,408.83.  *Id.*

45.     Interest on costs arising from the PY 2007 and PY 2010 Duplicate Payment Audits through December 31, 2020 was estimated at $834,835.74.  Exhibit 1 at ¶ 52, A0010; Exhibit M, A1693-A1711.

46.     The total costs and interest ACLR is seeking for the constructive termination for convenience of the PY 2007 and 2010 Duplicate Payment Audits through December 31, 2020 is $6,095,118.35.  Exhibit 1 at ¶ 53, A0010; Exhibit N, A1712-A1713.


Dated:  January 27, 2021

                                                                DAVID, BRODY &
                                                                DONDERSHINE, LLP


                                                                _____/s/_____

Thomas K. David
John A. Bonello
2100 Reston Parkway
Suite 370
Reston, VA 20191
Phone:  703-264-2220
Fax: 703-264-2226
tdavid@dbd-law.com
jbonello@dbd-law.com

Attorneys for Plaintiff ACLR, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January 2021, I caused a copy of the foregoing document to be emailed via the ECF system to the following:

Joseph Pixley
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

_____/s/_____
Thomas K. David