**IN THE UNITED STATES COURT
OF FEDERAL CLAIMS**

**ACLR, LLC**                    )
                                 )
                                 )
        Plaintiff                )
                                 )
        **v.**                   )        **Nos. 15-767 and 16-309C**
                                 )        (Judge Campbell-Smith)
**THE UNITED STATES**            )
                                 )
        Defendant                )
                                 )

**PLAINTIFF ACLR, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION
<u>FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

QUESTIONS PRESENTED.............................................................................1

STATEMENT OF THE CASE............................................................................1

STATEMENT OF FACTS..............................................................................1

PROCEDURAL HISTORY ...............................................................................5

SUMMARY JUDGMENT STANDARD........................................................... 7

ARGUMENT.................................................................................................8

    I.     PY 2007 DUPLICATE PAYMENT AUDIT COSTS ……………………9

        A. PY 2007 Duplicate Payment Audit Background……………………..9

        B. PY 2007 Duplicate Payment Costs…………………………………..10

            1.  Personnel Costs…………………………………………………10

            2.  Managing Principal Costs………………………………………10

            3.  General and Administrative Costs………………………………11

            4.  Office Lease Costs………………………………………………12

            5.  Loan Interest Costs………………………………………………13

            6.  Reasonable Profit………………………………………………14

    II.    PY 2010 DUPLICATE PAYMENT AUDIT COSTS…………………15

        A. PY 2010 Duplicate Payment Audit Background…………………15

        B. PY 2010 Duplicate Payment Costs…………………………………...15

    III.   SETTLEMENT FEES………………………………………………16

        A. Phase One – Pre-March 23, 2020 Settlement Costs………………17

        B. Phase Two – Post March 23, 2020 Settlement Costs………………18

IV.    INTEREST…………………………………………………………18

CONCLUSION........................................................................................................19

CERTIFICATE OF SERVICE......................................................................................20

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986).......................................................................................... 7
*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)......................................................................................... 7
*First Nat'l Bank of Ariz. v. Cities Serv. Co.,*
   391 U.S. 253 (1968).......................................................................................... 8
 *In Re Grumman Aerospace Corp. Ex Rel. Rohr Corp.*
   ASBCA No. 50090, 01-1 B.C.A. (CCH) ¶ 31316 (Feb. 12, 2001)…………………14
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)....................................................................................... 7,8
*United States v. Diebold, Inc.,*
   369 U.S. 654 (1962)........................................................................................ 7
*White Buffalo Const., Inc. v. United States,*
   101 Fed. Cl. 1, 22 (2011)…………………………………………………………14

<u>Statutes</u>

41 U.S.C. § 7109 .............................................................................................. 18

<u>Rules</u>

RCFC 56(c)(1)(A) ............................................................................................. 8
RCFC 56(a)…………………………………………………………………………….7

<u>Regulations</u>

48 C.F.R. § 52.212-4(l)……………………………………………………………….8
48 C.F.R. § 52.249-2(g)(2)(i)………………………………………… 10, 11, 12, 13
48 C.F.R. § 52.249-2(g)(2)(iii)……………………………………………………….14
48 C.F.R. § 52.249-(g)(3)(i)………………………………………………………….16
48 C.F.R. § 52.249-(g)(3)……………………………………………………………17

## QUESTIONS PRESENTED

1.      What termination for convenience damages is ACLR, LLC ("ACLR")
entitled to for its Plan Year ("PY") 2007 Duplicate Payment Audit.

2.      What termination for convenience damages is ACLR entitled to for its PY
2010 Duplicate Payment Audit.

## STATEMENT OF THE CASE

ACLR seeks a ruling in its favor from this Court on ACLR's Motion for Summary
Judgment as to its termination for convenience damages.

## STATEMENT OF FACTS

On June 17, 2010, ACLR entered into a federal supply schedule contract for
financial and business solutions issued by the General Services Administration ("GSA"),
Contract No. GS-23F-0074W.  ECF 76 at 3.  Pursuant to the terms and conditions of
Contract No. GS-23F-0074W, CMS awarded ACLR task order HHSM-500-2011-00006G
("Part D RAC") on January 13, 2011, to identify improper payments and to recover
overpayments made under the Medicare Part D program.  *Id.* at 4.  Under the terms of the
Part D RAC, ACLR was to perform the work required in accordance with the attached
Performance Work Statement ("PWS").  ECF 76 at 5.  The period of performance of the
Part D RAC was a "12 month base period" from "January 13, 2011 through January 12,
2012" including four "12-month optional periods."  ECF 50-3 at A158.  The PWS generally
described the audit process and provided for a review of duplicate payments.  ECF 76 at 5.

In connection with the PY 2007 Duplicate Payment Audit, the Part D RAC
required ACLR to develop an infrastructure necessary to secure billions of prescription
drug payment transactions.  Exhibit 1 at ¶ 8, A0003.  The Part D RAC also required ACLR

1

to develop and implement recovery audit processes, Part D RAC stakeholder communication processes, and project plans and implementation schedules. *Id.* at ¶ 9, A0003. All of these actions were necessary for the PY 2007 Duplicate Payment Audit. *Id.*

Chris Mucke, ACLR's owner and the Project Director under the Part D RAC, devoted significant efforts to execute the Part D RAC and complete the PY 2007 Duplicate Payment Audit. *Id.* at ¶¶ 14-15, A0004. During the base period of the Part D RAC, Mr. Mucke's efforts were solely directed to executing the Part D RAC necessary to complete the PY 2007 Duplicate Payment Audit. *Id.* at ¶ 16, A0004. In these efforts, Mr. Mucke typically worked 15-18 hour days and devoted approximately 3,023 hours to the PY 2007 Duplicate Payment Audit. *Id.* at ¶¶ 16 and 18, A0004-A0005.

Under the terms of the Part D RAC, ACLR was required to maintain key personnel throughout the base period of the contract. *Id.* at ¶10, A0003. In addition, ACLR needed personnel to perform the work necessary for the PY 2007 Duplicate Payment Audit. It was not until January 31, 2012 that CMS executed a contract modification that removed ACLR's requirement to maintain key personnel and required ACLR to conduct and recover improper payments using audit processes designed by a separate contractor during the Part D RAC base period. *Id.* at ¶ 11, A0003-A0004. ACLR paid its personnel $408,462.83 for their work on the PY 2007 Duplicate Payment Audit. *Id.* at ¶ 13, A0004; Exhibit B, A0059-A0065; Exhibit B-1, A0066-A0571.

ACLR's general and administrative costs in connection with the PY 2007 Duplicate Payment Audit included training, information technology services, computer equipment, professional services, travel, and other miscellaneous general and administrative expenses from the period January 2011 through January 2012. Exhibit 1 at

2

¶ 35, A0007; Exhibit F-1, A1003-A1469.  ACLR's general administrative costs for the PY

2007 Duplicate Payment Audit totaled $505,569.23.  Exhibit 1 at ¶ 36, A0007; Exhibit A,

A0012-A0058; Exhibit F, A0998-A1002.

At the time of the award of the Part D RAC, ACLR maintained office space at

550 Forest Avenue, Suite 15-2, Plymouth, Michigan 48170.  Exhibit 1 at ¶ 21, A0005.

This office space was not sufficient to support the additional personnel that ACLR needed

to hire to support the PY 2007 Duplicate Payment Audit.  *Id*.  On April 11, 2011, ACLR

executed a multiyear lease for expanded office space located at 38705 Seven Mile Road,

Suite 460, Livonia, Michigan 48152 ("Livonia Office") with SMC Investors, LLC.  *Id*. at

¶ 23, A0005.  A multiyear lease was required for the size of the space that ACLR needed.

*Id.*  The monthly lease and electricity payments for the Livonia Office averaged $9,200

and $1,300, respectively.  *Id*. at ¶ 25, A0005.  To mitigate costs associated with the Livonia

Office, ACLR negotiated a sublease with WorkForce Software, Inc. on March 19, 2013

and ACLR moved in 2013 to a smaller office located in Suite 251 ("Livonia Office 2") of

the same building.  *Id*. at ¶ 26, A0006.  The monthly lease and electricity payments for the

Livonia Office 2 averaged $2,204 and $316, respectively.  *Id*. at ¶ 27, A0006.  The Livonia

Office lease expired on October 31, 2016 and ACLR moved in 2016 to a smaller office.

*Id*. at ¶ 28, A0006. ACLR's office lease costs were $295,775.80.  *Id.* at ¶ 29, A0006;

Exhibit D, A0590-A0594.

On June 10, 2011, ACLR executed a business loan agreement with PNC Bank,

National Association in the amount of $600,000 to fund ACLR's work under the Part D

RAC.  *Id*. at ¶ 30, A0006.  The funds derived from this loan were used solely to pay for

items associated with completing all activities necessary to conduct the PY 2007 Duplicate

Payment Audit.  *Id*. at ¶ 32, A0006.  The initial maturity date of June 13, 2013 for this loan was extended on June 7, 2013 due to ACLR's inability to make loan payments as a result of CMS's delays in executing the Part D RAC.  *Id*. at ¶ 31, A0006.  The final principal and interest payments for this loan were paid on August 24, 2018.  *Id*. at ¶ 33, A0006.  ACLR's interest cost on this loan was $176,426.46.  *Id.* at ¶ 34, A0007; Exhibit E, A0965-A0966.

A reasonable profit rate for ACLR on the termination for convenience of its PY 2007 Duplicate Payment Audit is 15%.  *See* Exhibit 1 at ¶ 51, A0010.  Applying a 15% profit rate to ACLR's PY 2007 Duplicate Payment Audit costs results in a reasonable profit of $304,885.03.  Exhibit 1 at ¶ 51, A0010; Exhibit L, A1680-A1692.

On December 9, 2011, CMS provided ACLR with its internal duplicate payment recovery audit process that was used as the basis for the PY 2010 Duplicate Payment Audit.  *Id.* at ¶ 37, A0007.  CMS required that ACLR run reports, analyze data, provide feedback to CMS personnel, and conduct special studies designed to confirm the veracity of CMS's duplicate payment audit methodology during calendar years 2012 and 2013.  *Id.* at ¶ 38, A0007.  On April 26, 2012, CMS denied ACLR's request for equitable adjustment to recover base period expenditures on the grounds that "payments would be made only on a contingency fee basis" and that Section 5 specifically states "the recovery audit contractor shall not receive any payments for the identification of the underpayments or overpayments not recovered/collected."  *Id.* at ¶ 47, A0009; Exhibit I, A1520-A1521. On December 31, 2013, CMS executed a modification to ACLR's Part D RAC ("OY 1 SOW").  *Id.* at ¶ 39, A0007.  ACLR's work efforts related to the PY 2010 Duplicate Payment Audit occurred over the period January 2012 until April 24, 2015.  *Id.* at ¶¶ 37-40, A0007.  CMS terminated the PY 2010 Duplicate Payment Audit on April 24, 2015.

4

ECF 76 at 7.   ACLR's costs for the termination for convenience of the PY 2010 Duplicate

Payment Audit were $923,558.62.   Exhibit 1 at ¶ 44, A0008; Exhibit G, A1470-A1475.

On June 15, 2015, CMS denied ACLR's claim for amounts associated with the

PY 2007 and PY 2010 Duplicate Payment Audits on the basis that there were "no

provisions in the contract allowing CMS to reimburse ACLR's costs or otherwise pay

ACLR for performing audit recovery work for CMS in any manner other than on a

contingency fee basis."   *Id.* at ¶ 48, A0009; Exhibit J, A1522-A1530.

ACLR's reasonable costs of settlement for the termination of the PY 2007 and

2010 Duplicate Payment Audits total $2,001,874.78 through December 31, 2020.   Exhibit

1 at ¶¶ 45 and 50; Exhibit H, A1476-A1482; Exhibit H-1, A1483-A1519; Exhibit K,

A1531-A1534; Exhibit K-1, A1535-A1679.   ACLR is entitled to interest of $834,835.74

through December 31, 2020 on its PY 2007 and 2010 Duplicate Payment Audit costs.

Exhibit 1 at ¶ 51, A0010; Exhibit M, A1693-A1711.   Overall, ACLR is entitled to

$6,095,118.35 through December 31, 2020 for CMS's constructive termination for

convenience of ACLR's PY 2007 and 2010 Duplicate Payment Audits.   Exhibit 1 at ¶ 53;

Exhibit N, A1712-A1713.

## PROCEDURAL HISTORY

On July 22, 2015, ACLR filed a Complaint against CMS alleging claims of

breach of contract and breach of duty of good faith and fair dealing.   After a lengthy period

of discovery, ACLR filed a motion for partial summary judgment and CMS filed a cross-

motion for summary judgment.   On March 23, 2020, this Court denied ACLR's motion for

partial summary judgment and granted CMS's cross-motion for summary judgment, ruling,

in part, that "the termination of the 2007 and 2010 audits effected constructive terminations for convenience."  ECF 76 at 16.

In its March 23, 2020 Opinion and Order, this Court wrote "under the terms of the contract, defendant is liable to plaintiff for 'a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the ordering activity using its standard record keeping system, [that] resulted from the termination.'"  *Id.*  The Court further noted "[t]he parties have not presented sufficient evidence and argument regarding the percentage of work performed by plaintiff, or its reasonable charges resulting from a termination for convenience, to enable the court to determine the amount of compensation to which plaintiff is entitled. . . . The court will, therefore, require additional submissions from the parties on this issue."  *Id.*

This Court remanded the matter to the United States Department of Health and Human Services for a decision on the costs ACLR was entitled to based upon the finding of a constructive termination for convenience.  ECF 82.  ACLR submitted a termination for convenience settlement proposal on a cost basis to the designated agency contracting officer on May 15, 2020.  ECF 101 at Exhibit A.  On May 28, 2020, the contracting officer requested the proposal be based on percentage of work performed.  Pursuant to the contracting officer's request, ACLR submitted the revised proposal on June 26, 2020.  ECF 101 at Exhibit B.  On September 3, 2020, the contracting officer issued a response to ACLR stating the response is pending OMB approval.  The contracting officer's settlement sum contained in her response represented less than three percent of ACLR's cost basis proposal and percentage of work performed proposal.  ECF 101 at Exhibit C.

On October 7, 2020, ACLR received from CMS what it characterized as a "final decision issued pursuant to the Court's April 21, 2020 remand order." That document contained changes to the contracting officer's response and similarly represented less than three percent of ACLR's cost basis proposal and percentage of work performed proposal. As a result of the parties having reached an impasse on the amounts owed to ACLR under its termination for convenience settlement proposals, ACLR filed an Amended Complaint against CMS seeking termination for convenience damages.  ECF 101.  On December 16, 2020, this Court granted ACLR the right to file a dispositive motion.  ECF 104.

## SUMMARY JUDGMENT STANDARD

A grant of summary judgment is appropriate if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC").  A material fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.  The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To establish "that a fact cannot be or is genuinely disputed," a party must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

7

declarations, stipulations ..., admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). If the record taken as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## <u>ARGUMENT</u>

According to this Court's March 23, 2020 ruling, ACLR is entitled to compensation for CMS's termination for convenience of the PY 2007 and 2010 Duplicate Payment Audits.  ECF 76 at 16.  48 C.F.R. § 52.212-4(l) provides that "the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the ordering activity using its standard record keeping system have resulted from the termination."

This Court's March 23, 2020 Opinion and Order confirmed that CMS "does not argue that the terminations at issue were, at the time, called terminations for convenience by the contracting officer."  ECF 76 at 10.  The Court found that CMS's "uncertainty about the workability of the PWS as it pertained to the 2007 audit, constitute changed circumstances that would have supported a termination for convenience by defendant at the time and therefore, may be constructively effected now."  *Id.* at 12.  Consequently, ACLR continued to incur costs under the PWS and rightly did so to comply with its contractual obligations with the belief that it had a continuing contractual obligation with CMS.  ACLR was not in a position to avoid performing works or avoid incurring costs

given the timing of the termination for convenience that was only "constructively effected" as of March 23, 2020.

## I.     PY 2007 DUPLICATE PAYMENT AUDIT COSTS

### A.  PY 2007 Duplicate Payment Audit Background

In connection with the PY 2007 Duplicate Payment Audit, the Part D RAC required ACLR to develop an infrastructure necessary to secure billions of prescription drug payment transactions. Exhibit 1 at ¶ 8, A0003. The Part D RAC also required ACLR to develop and implement recovery audit processes, Part D RAC stakeholder communication processes, and project plans and implementation schedules. *Id.* at ¶ 9, A0003. All of these actions were necessary for the PY 2007 Duplicate Payment Audit. *Id.*

Chris Mucke, ACLR's owner and the Project Director under the Part D RAC, devoted significant efforts to execute the Part D RAC and complete the PY 2007 Duplicate Payment Audit. *Id.* at ¶¶ 14-15, A0004. Under the terms of the Part D RAC, ACLR was required to maintain key personnel throughout the base period of the Part D RAC. *Id.* at ¶ 10, A0003. To meet its contractual requirements, ACLR, among other things, leased office space, hired additional personnel, installed information technology infrastructure, completed both internal and CMS required training requirements, and secured a loan to help fund these initial efforts. *Id.* at ¶¶ 12-27, A0004-A0005. ACLR considered 100% of its costs during the period of January 13, 2011 and January 31, 2012 to be reasonable charges resulting from the termination for convenience of the PY 2007 Duplicate Payment Audit as this was the only audit conducted during that time period.

**B. PY 2007 Duplicate Payment Costs**

There are six components underlying ACLR's PY 2007 Duplicate Payment Audit damages calculation. Those components include the following: personnel costs, managing principal costs, general administrative costs, rental space costs, loan interest, and reasonable profit. Each component is discussed in greater detail below.

1. Personnel Costs

ACLR is entitled to its payroll costs of $408,462.83 for its PY 2007 Duplicate Payment Audit efforts. *See* Exhibit 1, ¶¶ 12 and 13 A0004; Exhibit B, A0059-A0065. 48 C.F.R. 52.249-2(g)(2)(i) provides that ACLR should be entitled to recover the "costs incurred in the performance of the work terminated." Under the terms of the Part D RAC, ACLR was required to maintain key personnel throughout the base period of the contract. Exhibit 1 at ¶ 10, A0003. In addition, ACLR needed personnel to perform the work necessary for the PY 2007 Duplicate Payment Audit. It was not until January 31, 2012 that CMS executed a contract modification that removed ACLR's requirement to maintain key personnel and required ACLR to conduct and recover improper payments using audit processes designed by a separate contractor during the Part D RAC base period. *Id.* at ¶ 11, A0003-A0004. ACLR paid its personnel $408,462.83 for their work on the PY 2007 Duplicate Payment Audit and these costs should be recoverable based upon CMS's constructive termination for convenience of the PY 2007 Duplicate Payment Audit. Exhibit 1, ¶¶ 12 and 13, A0004; Exhibit B, A0059-A0065.

2. Managing Principal Costs

ACLR should be awarded its managing principal costs of $654,064. Chris Mucke is the Managing Principal of ACLR. Exhibit 1 at ¶ 1, A0002. Since he is not an

employee, he does not receive a salary. *Id.* at ¶ 14, A0004. For the Part D RAC, Mr. Mucke served as the Project Director as defined in the Part D RAC. *Id.* at ¶ 15, A0004. During the base period of the Part D RAC, Mr. Mucke's efforts were solely directed to executing the Part D RAC necessary to complete the PY 2007 Duplicate Payment Audit. *Id.* at ¶ 16, A0004. In these efforts, Mr. Mucke typically worked 15-18 hour days. *Id.*

ACLR should be compensated for the work Mr. Mucke performed on the PY 2007 Duplicate Payment Audit. Under a fixed-fee or cost plus contract, Mr. Mucke's work would be a recoverable cost and so too should it be recoverable here. Otherwise, CMS would be receiving Mr. Mucke's work efforts without any compensation. If Mr. Mucke had not devoted his time and attention to the PY 2007 Duplicate Payment Audit, he would have devoted his time and attention to other business efforts that would have generated revenue for ACLR.

Mr. Mucke did not specifically track his hours worked on the contract because the contract was a contingency fee contract. *Id.* at ¶ 17, A0004. To determine costs associated with his efforts, Mr. Mucke estimated the number of hours he worked during the relevant time period and then multiplied those hours by his contracted GSA schedule rate. *Id.* at ¶¶ 18-20, A0004-A0005. This approach resulted in a calculation of $645,730 for Mr. Mucke's work on the PY 2007 Duplicate Payment Audit and is the amount this Court should award ACLR for its managing principal costs. *Id.* at ¶¶ 19-20, A0005; Exhibit C, A0572-A0575; Exhibit C-1, A0576-A0589.

3.   General and Administrative Costs

ACLR is entitled to recover $505,569.23 in general and administrative costs it incurred in connection with the PY 2007 Duplicate Payment Audit. 48 C.F.R. 52.249-

2(g)(2)(i) provides that ACLR should be entitled to recover the "costs incurred in the performance of the work terminated."   These costs consist of travel, information technology services, computer equipment, professional services, and other miscellaneous office expense from the period January 2011 through January 2012.   Exhibit 1 at ¶ 35, A0007.   A comprehensive compilation of these expenses is set forth in Exhibits F and F-1 of Mr. Mucke's Affidavit.   Exhibit 1 at ¶ 36, A0007; Exhibit F, A0998-A1002; Exhibit F-1, A1003-A1469.   Accordingly, this Court should award ACLR $505,569.23 in general and administrative costs for CMS's constructive termination of the PY 2007 Duplicate Payment Audit.   *Id.*

> 4.   Office Lease Costs

ACLR incurred $295,775.80 in office lease costs for the PY 2007 Duplicate Payment Audit.   ACLR is entitled to an award of these office lease costs.   *See* 48 C.F.R. 52.249-2(g)(2)(i).   At the time of the award of the Part D RAC, ACLR maintained office space at 550 Forest Avenue, Suite 15-2, Plymouth, Michigan 48170.   Exhibit 1 at ¶ 21, A0005.   This office space was not sufficient to support the additional personnel that ACLR needed to hire to support the PY 2007 Duplicate Payment Audit.   *Id.*   On April 11, 2011, ACLR executed a multiyear lease for expanded office space located at 38705 Seven Mile Road, Suite 460, Livonia, Michigan 48152 ("Livonia Office") with SMC Investors, LLC. *Id*. at ¶ 23, A0005; Exhibit D-1, A0595-A0964.   A multiyear lease was required for the size of the space that ACLR needed.   *Id.*   The monthly lease and electricity payments for the Livonia Office averaged $9,200 and $1,300, respectively.   *Id*. at ¶ 25, A0005.   To mitigate costs associated with the Livonia Office, ACLR negotiated a sublease with WorkForce Software, Inc. on March 19, 2013 and ACLR moved in 2013 to a smaller office

located in Suite 251 ("Livonia Office 2") of the same building.  *Id*. at ¶ 26, A0006.  The monthly lease and electricity payments for the Livonia Office 2 averaged $2,204 and $316, respectively.  *Id*.  The Livonia Office lease expired on October 31, 2016 and ACLR moved in 2016 to a smaller office.  *Id*. at ¶ 28, A0006.  A comprehensive compilation of ACLR's office lease costs is set forth in Exhibits D and D-1 of Mr. Mucke's Affidavit.  Exhibit 1 at ¶ 29, A0006; Exhibit D, A0590-A0594; Exhibit D-1, A0595-A0964.  Accordingly, this Court should award ACLR $295,775.80 in office lease costs for CMS's constructive termination of the PY 2007 Duplicate Payment Audit.  *Id.*

     5.  Loan Interest Costs

ACLR incurred loan interest payment costs of $176,426.46 in connection with the PY 2007 Duplicate Payment Audit.  ACLR is entitled to an award of these loan interest costs.  *See* 48 C.F.R. 52.249-2(g)(2)(i).  On June 10, 2011, ACLR executed a business loan agreement with PNC Bank, National Association in the amount of $600,000 to fund ACLR's work under the Part D RAC.  Exhibit 1 at ¶ 30, A0006; Exhibit E-2, A0976-A0997.  The funds derived from this loan were used solely to pay for items associated with completing all activities necessary to conduct the PY 2007 Duplicate Payment Audit.  *Id*. at ¶ 32, A0006.  The initial maturity date of June 13, 2013 for this loan was extended on June 7, 2013 due to ACLR's inability to make loan payments as a result of CMS's delays in executing the Part D RAC.  *Id*. at ¶ 31, A0006.  The final principal and interest payments for this loan were paid on August 24, 2018.  *Id*. at ¶ 33, A0006.  A summary reflecting interest payments on this loan of $176,426.46 and the supporting documentation are attached as Exhibits E, E-1, and E-2 to Mr. Mucke's Affidavit.  Exhibit 1 at ¶ 34, A0007; Exhibit E, A0965-A0966; Exhibit E-1, A0967-A0975; Exhibit E-2, A0976-A0997.  This

Court should award ACLR $176,426.46 in loan interest costs for CMS's constructive termination of the PY 2007 Duplicate Payment Audit.

      6.  Reasonable Profit

      ACLR should be awarded reasonable profits of $304,885.03 on the costs incurred in the performance of the work terminated. *See* 48 C.F.R. 52.249-2(g)(2)(iii). A reasonable profit on the PY 2007 Duplicate Payment Audit should be 15%. A 15% profit rate is significantly lower than ACLR's profit percentages earned from clients in previous years. Exhibit 1 at ¶ 51, A0010. The contingency fee in the Part D RAC contract ranged from a low of 7.5% to a high of 20%. *See* ECF 50-11 at ¶¶ 38 and 44. Given the magnitude of potential improper payments that ACLR could have collected if CMS would have would have allowed ACLR to execute the Part D RAC, a 15% profit rate is completely reasonable. A 15% profit rate was also applied by the Armed Services Board of Contract Appels in *In Re Grumman Aerospace Corp. Ex Rel. Rohr Corp.*, ASBCA No. 50090, 01-1 B.C.A. (CCH) ¶ 31316 (Feb. 12, 2001). A 19% profit rate was applied by this Court in *White Buffalo Const., Inc. v. United States*, 101 Fed. Cl. 1, 22 (2011), *aff'd in part, vacated in part, remanded*, 546 F. App'x 952 (Fed. Cir. 2013).

      ACLR's reasonable profit was calculated by multiplying ACLR's PY 2007 Duplicate Payment Audit costs as described above by a profit rate of 15%.[1] Exhibit 1 at ¶ 51, A0010; Exhibit L, A1680-A1692. ACLR's reasonable profits on the PY 2007 Duplicate Payment Audit costs total $304,885.03 and these profits should be awarded to ACLR for CMS's termination for convenience of the PY 2007 Duplicate Payment Audit. *Id.*

---

[1] Managing principal costs were not included in the calculation as Mr. Mucke's GSA rate already contained a profit component. Exhibit 1 at ¶ 51, A0010.

II.     **PY 2010 DUPLICATIVE PAYMENT AUDIT COSTS**

    **A.  PY 2010 Duplicate Payment Audit Background**

On December 9, 2011, CMS provided ACLR with its internal duplicate payment recovery audit process that was used as the basis for the PY 2010 Duplicate Payment Audit.  Exhibit 1 at ¶ 37, A0007.  CMS required that ACLR run reports, analyze data, provide feedback to CMS personnel, and conduct special studies designed to confirm the veracity of CMS's duplicate payment audit methodology during calendar years 2012 and 2013.  *Id.* at ¶ 38, A0007.  On December 31, 2013, CMS executed the OY 1 SOW.  *Id.* at ¶ 39, A0007.  According to this Court's March 23, 2020 Opinion and Order, CMS terminated the PY 2010 Duplicate Payment Audit on April 24, 2015.  ECF 76 at 7.  ACLR's work efforts related to the PY 2010 Duplicate Payment Audit occurred over the period January 2012 until April 24, 2015.  Exhibit 1 at ¶¶ 38-40, A0007.  During that time, ACLR was also conducting additional audits for CMS while ACLR was performing the PY 2010 Duplicate Payment Audit.  *Id.* at ¶ 41, A0007.

    **B.  PY 2010 Duplicate Payment Costs**

ACLR seeks $923,558.62 for CMS's constructive termination of the PY 2010 Duplicate Payment Audit.  To determine the costs attributable to ACLR's PY 2010 Duplicate Payment Audit, ACLR analyzed the number of hours that ACLR personnel worked on the PY 2010 Duplicate Payment Audit.  Exhibit 1 at ¶ 42, A0008.  ACLR's personnel did not maintain time sheets that attributed work to a particular project given that the Part D RAC was a contingency fee contract.  To assess the hours that ACLR personnel worked on the PY 2010 Duplicate Payment Audit, Mr. Mucke analyzed over 1,958 email communications and 161,877 documents that ACLR personnel had compiled, analyzed, and reviewed for the PY 2010 Duplicate Payment Audit.  *Id.*  Mr. Mucke estimated that

ACLR personnel had worked 4,376 hours on the PY 2010 Duplicate Payment Audit.  *Id.* at ¶ 43, A0008.  Mr. Mucke then multiplied the estimated 4,376 hours by each person's corresponding GSA schedule rate.  *Id.* at ¶ 44, A0008; Exhibit G, A1470-A1475.  A detailed summary of Mr. Mucke's calculations are attached as Exhibit G to his Affidavit.  *Id.*  Based upon this calculation, ACLR's costs for the termination of the PY 2010 Duplicate Payment Audit was $923,558.62.  *Id.*  Accordingly, this Court should award ACLR $923,558.62 in costs related to the PY 2010 Duplicate Payment Audit.

## III.   SETTLEMENT FEES

ACLR is also entitled to the reasonable costs of settlement of the work terminated.  Those costs include "[a]ccounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data."  48 C.F.R. 52.249-2(g)(3)(i).  ACLR should be entitled to recover its legal fees as well as its principals time and effort in this lawsuit that preceded the Court's March 23, 2020 Opinion and Order.

CMS only raised the argument of a constructive termination for convenience in its briefings to this Court on August 3, 2018 after ACLR filed its Partial Motion for Summary Judgment on April 26, 2018.  ECF 61 at 16-17.  Prior to August 3, 2018, CMS had consistently taken the position that there was no termination for convenience.  On April 26, 2012, CMS denied ACLR's request for equitable adjustment to recover base period expenditures on the grounds that "payments would be made only on a contingency fee basis" and that Section 5 specifically states "the recovery audit contractor shall not receive any payments for the identification of the underpayments or overpayments not recovered/collected."  Exhibit 1 at ¶ 47, A0009; Exhibit I, A1520-A1521.  On June 15, 2015, CMS denied ACLR's claim for amounts associated with the PY 2007 and PY 2010

16

Duplicate Payment Audits on the basis that there were "no provisions in the contract allowing CMS to reimburse ACLR's costs or otherwise pay ACLR for performing audit recovery work for CMS in any manner other than on a contingency fee basis." Exhibit 1 at ¶ 48, A0009; Exhibit J, A1522-A1530. On August 16, 2017, CMS testified that its actions in connection with the PY 2007 and 2010 Duplicate Payment Audits were not terminations for convenience. ECF 65-1, A1014.

Without this lawsuit, CMS would not have taken the position that there was a constructive termination for convenience of the PY 2007 and 2010 Duplicative Payment Audits and would not have been required to pay any settlement costs. Thus, ACLR's legal fees and time and effort were a necessary precursors to obtaining the costs for the PY 2007 and 2010 Duplicative Payment Audits. If ACLR is not allowed to recover these costs, it will not be fairly compensated for the costs it has incurred. One could properly characterize ACLR's costs in this lawsuit as "reasonable costs of settlement of the work terminated." 48 C.F.R. 52.249-2(g)(3).

### A.  Phase One – Pre-March 23, 2020 Settlement Costs

ACLR seeks $1,818,440.95 in costs attributable to this lawsuit prior to the Court's March 23, 2020 Opinion and Order. The two components to this amount are payments to ACLR's law firm and ACLR's internal work efforts. ACLR paid its law firm $617,307.56 in connection with this lawsuit prior to March 23, 2020. Exhibit 1 at ¶ 50, A0009-A0010; Exhibit K-1, A1535-A1679. For ACLR's internal work effort, Mr. Mucke reviewed email and legal communications and other documentation reviewed and revised by him and ACLR personnel. Exhibit 1 at ¶ 50, A0009-A0010. Based upon this analysis, Mr. Mucke estimated a total of 5,481 hours that he and ACLR personnel dedicate to this

lawsuit.  *Id.*  These hours were multiplied by their respective GSA schedule rates and totaled $1,200,133.39.  *Id.*; Exhibit K, A1531-A1534.  A detailed summary of these costs are attached as Exhibit K to Mr. Mucke's Affidavit.  *Id.*  Thus, this Court should award ACLR $1,818,440.95 in pre-March 23, 2020 settlement costs.

### B.  Phase Two – Post March 23, 2020 Settlement Costs

ACLR seeks $183,433.83 in post March 23, 2020 settlement costs through December 31, 2020.[2]  The two components to this amount are payments to ACLR's law firm and ACLR's internal work efforts.  ACLR paid its law firm $29,025 in connection with settlement costs after March 23, 2020.  Exhibit 1 at ¶ 45, A0008-A0009; Exhibit H-1, A1483-A1519.  All time spent by Mr. Mucke and other ACLR personnel was noted and tracked in ACLR's accounting system and reflected 678 hours.  Exhibit 1 at ¶ 45, A0008-A0009.  Those hours were then multiplied by their respective GSA Schedule Rates for a total of $154,408.83.  *Id.*; Exhibit H, A1476-A1482.  A detailed summary of the calculation of ACLR's work efforts are attached as Exhibit H to Mr. Mucke's Affidavit.  *Id.*  This Court should award ACLR $1,818,440.95 in post March 23, 2020 settlement costs.

## IV.  INTEREST

Under the Contract Disputes Act, CMS should be required to pay interest on ACLR's costs for the PY 2007 and 2010 Duplicate Payment Audits.  41 U.S.C. § 7109.  The interest on ACLR's costs through December 31, 2020 totals $834,835.74 and should be awarded to ACLR.  Exhibit 1 at ¶ 52, A0010; Exhibit M, A1693-A1711.

---

[2] ACLR also seeks settlement costs for activity after December 31, 2020 but does not yet have a final settlement cost amount that it can calculate.

## **CONCLUSION**

There are no disputed issues of material facts and ACLR as a matter of law is entitled to summary judgment on its termination for convenience damages in the amount of $6,095,118.35 through December 31, 2020.  Exhibit 1 at ¶ 53; Exhibit N, A1712-A1713.

Dated:  January 27, 2021

DAVID, BRODY &
DONDERSHINE, LLP

_____/s/_____
Thomas K. David
John A. Bonello
2100 Reston Parkway
Suite 370
Reston, VA 20191
Phone:  703-264-2220
Fax: 703-264-2226
tdavid@dbd-law.com
jbonello@dbd-law.com

Attorneys for Plaintiff ACLR,
LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January 2021, I caused a copy of the foregoing document to be emailed via the ECF system to the following:

Joseph Pixley
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044


_____/s/_____
Thomas K. David

20