# In the United States Court of Federal Claims

No. 15-767C
(consolidated with No. 16-309C)

(E-Filed: December 15, 2021)[1]

|  |  |  |
|---|---|---|
| ACLR, LLC, | ) | |
| | ) | Summary Judgment; RCFC 56; |
| Plaintiff, | ) | Constructive Termination for |
| | ) | Convenience; Damages. |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Thomas K. David, Reston, VA, for plaintiff.  John A. Bonello, of counsel.

Joseph A. Pixley, Trial Attorney, with whom were Brian M. Boynton, Acting Assistant Attorney General, Martin F. Hockey, Jr., Acting Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Robyn Littman, United States Department of Health and Human Services, Baltimore, MD, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

      Plaintiff's motion for summary judgment as to its damages made pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), is currently before the court.  See ECF No. 107.  Defendant responded to the motion, see ECF No. 115, and plaintiff replied, see ECF No. 119.  The motion is now fully briefed, and ripe for

---

[1] This opinion and order issued under seal on November 19, 2021.  See ECF No. 120.  The parties were invited to identify proprietary or confidential material subject to deletion on the basis that the material is protected/privileged.  No redactions were proposed by the parties.  See ECF No. 124.  Thus, the sealed and this public version of this opinion and order are identical, except for the publication date and this footnote.

decision. The parties did not request oral argument, and the court deems such argument unnecessary.

The court has considered all of the parties' arguments and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, plaintiff's motion for summary judgment is **DENIED**.

I.   Background

   A.   Contract Background[2]

To identify and recover improper Medicare Part D payments, the Centers for Medicare & Medicaid Services (CMS), a component of the United States Department of Health and Human Services (HHS), entered into a task order with plaintiff pursuant to a General Services Administration (GSA) federal supply schedule contract for "recovery audit" services. See ECF No. 107-2 at 5 (plaintiff's memorandum in support of its motion for summary judgment); see also ECF No. 51-3 at 154 (task order). Pursuant to the task order, the attached performance work statement, and later the statement of work, plaintiff was to conduct recovery audits for particular calendar years. See ECF No. 51-3 at 152-54. Plaintiff conducted seven audits for which it was paid contingency fees. See ECF No. 115 at 12; ECF No. 119 at 7-8. The audits at issue here, which the court determined were constructively terminated, are the 2007 and 2010 duplicate payment audits. See ECF No. 76 at 11-12 (March 23, 2020 opinion, reported at ACLR, LLC v. United States, 147 Fed. Cl. 548 (2020)).

The task order stated that plaintiff was to be paid a firm, fixed-price contingency fee for audit work detailed in a performance work statement. See ECF No. 51-3 at 152-54. Any payments to plaintiff were contingent upon the recovery of improper payments from plan sponsors and were to be fixed as a percentage of such recoveries. See id. at 155. Federal Acquisition Regulation (FAR) provision 52.212-4(l), addressing termination for the government's convenience, was included in the task order pursuant to the federal supply schedule contract. See id. at 154 (incorporating the terms of the GSA federal supply schedule contract); ECF No. 70-1 at 21 (GSA federal supply schedule contract incorporating the language of FAR § 52.212-4(l)). Under the contract's termination for convenience clause, should the agency elect to terminate the contract for

---

[2]   The court detailed the extensive procedural and factual background of this case in its opinion on the parties' cross-motions for summary judgment, and will, therefore, only reiterate the facts necessary to this opinion. See ECF No. 76 (March 23, 2020 opinion, reported at ACLR, LLC v. United States, 147 Fed. Cl. 548 (2020)). The court notes that the contract documents associated with this case were not attached to the motion currently before the court; therefore, the court cites to the documents filed with the parties' prior cross-motions for partial summary judgment.

convenience, plaintiff would be owed "a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor [could] demonstrate to the satisfaction of the ordering [agency] using its standard record keeping system, [to] have resulted from the termination."[3] Id.

B.  Procedural History

Plaintiff filed this Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, suit on July 22, 2015, contesting the denial of its certified claim for $28,506,591, see ECF No. 1 (complaint), associated with two duplicate payment audits—the 2007 and 2010 audits at issue here—and filed a second suit on March 9, 2016, contesting the denial of its second certified claim for $79,314,795, see Case No. 16-309, ECF No. 1 (complaint), associated with a separate audit. Following discovery, the two cases were consolidated. See ECF No. 48 (order). The parties filed cross-motions for partial summary judgment in 2018. See ECF No. 51 (plaintiff's motion), ECF No. 52 (defendant's cross-motion).

On March 23, 2020, this court issued its opinion on the motions and found that defendant "effected constructive terminations for convenience" of plaintiff's 2007 and 2010 audits.[4] ECF No. 76 at 16. Consequently, the court held that plaintiff is entitled to damages amounting to "'a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the ordering activity using its standard record keeping system, [that] resulted from the termination.'" Id. (alteration in original) (citing ECF No. 70-1 at 21 (GSA contract)).

Because the parties had not presented "sufficient evidence and argument regarding the percentage of work performed by plaintiff, or its reasonable charges resulting from a termination for convenience," the court required the parties to confer and make additional submissions on the issue. Id. The parties agreed that the plaintiff should submit a termination for convenience settlement proposal to the agency for approval and requested

---

[3] The court notes the language of the termination for convenience provision incorporated in plaintiff's contract differs slightly from that in 48 C.F.R. § 52.212-4(l), but the differences are de minimus and do not change the meaning of the provision. The court will therefore refer to FAR § 52.212-4(l) throughout the opinion interchangeably with the provision in the contract.

[4] The court also found that defendant had not breached the contract or its duty of good faith and fair dealing regarding the audit about which plaintiff filed the second suit. See ECF No. 76 at 13-16. The court therefore denied plaintiff's motion for summary judgment as to the claim in case number 16-309 and granted defendant's cross-motion on the same. See id. at 14, 16. Although the cases remain consolidated, because the court granted defendant's motion for summary judgment, no claims are still pending in plaintiff's second suit, case number 16-309. The court will therefore deconsolidate this matter, and will issue judgment in favor of defendant in case no. 16-309 in due course, pursuant to the court's March 23, 2020 opinion.

3

that the court remand the case to CMS, which the court did on April 21, 2020. See ECF No. 82 (remand order).

Plaintiff submitted a termination for convenience settlement proposal to the agency requesting $10,418,948. See ECF No. 101-2 at 4 (revised settlement proposal). The agency denied plaintiff's claim related to the 2007 audit in its entirety and denied all but $157,318 for the 2010 audit. See ECF No. 98 at 9, 12 (CMS decision on remand). The court then lifted the stay in this matter, see ECF No. 100 (order), and plaintiff filed an amended complaint, see ECF No. 101. Therein, plaintiff seeks termination for convenience damages of "at least $5,923,754 plus interest and additional legal fees incurred in this proceeding," which was, according to plaintiff, an amount "based upon actual costs incurred." Id. at 4.

    C.    Plaintiff's Damages Claim

Plaintiff has now filed a motion for summary judgment arguing that it is entitled to a total of $6,095,118.35 in termination for convenience damages "through December 31, 2020." ECF No. 107-2 at 22. According to plaintiff, because the agency did not call its termination of the audits a termination for convenience at the time, plaintiff "continued to incur costs under the PWS and rightly did so to comply with its contractual obligations with the belief that it had a continuing contractual obligation with CMS" until March 23, 2020, when the court found that the termination was "'constructively effected.'" Id. at 11-12. Plaintiff alleges that "100% of its costs during the period of January 13, 2011 [through] January 31, 2012" are "reasonable charges resulting from the termination for convenience" of the 2007 audit because "this was the only audit conducted during that time period." Id. at 12. Likewise, plaintiff argues that the time period for its "work efforts" on the 2010 audit was January 2012 to April 24, 2015. Id. at 18. Plaintiff acknowledges, however, that it "was also conducting additional audits for CMS" during that time period. Id.

For the 2007 audit, plaintiff argues that it is entitled to six types of damages: "personnel costs, managing principal costs, general administrative costs, rental space costs, loan interest, and reasonable profit." Id. at 13. For the 2010 audit, plaintiff seeks $923,558.62 of personnel costs. Id. at 18. Plaintiff also seeks settlement fees, including its legal fees and "its principal[']s time and effort in this lawsuit," id., and interest on its claim pursuant to the CDA, id. at 21. In support of its claims, plaintiff attached an affidavit from Christopher Mucke, plaintiff's managing principal, and twenty-two exhibits containing plaintiff's bank statements, payroll documentation, lease documentation, loan documentation, various cost summaries and calculations, and legal expense documentation. See ECF No. 107-3 through 107-13 (exhibits); 107-3 at 1 (appendix table of contents).

II.   Legal Standards

According to RCFC 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).

A genuine dispute of material fact is one that could "affect the outcome" of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." Dairyland Power, 16 F.3d at 1202 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. Celotex, 477 U.S. at 324.

The Supreme Court of the United States has instructed that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for [the fact-finder] to return a verdict for that party." Id. at 249 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." Dairyland Power, 16 F.3d at 1202 (citing Celotex, 477 U.S. at 323).

III.   Analysis

A.   FAR § 52.212-4(l) Governs Plaintiff's Damages Claim

As an initial matter, defendant argues that plaintiff's argument is "fatally flawed" and its motion should be denied because plaintiff based its request for damages on the wrong FAR provision. ECF No. 115 at 19. Throughout its motion, plaintiff cites to 48 C.F.R. § 52.249-2(g)—the FAR termination for convenience provision for fixed-price, non-commercial item contracts. See, e.g., ECF No. 107-2 at 13-17. Plaintiff's contract, however, contains FAR § 52.212-4(l)—the termination for convenience provision for commercial item contracts. See ECF No. 76 at 4 (citing ECF No. 70-1 at 21 (GSA federal supply schedule contract)). Plaintiff explains that, because of the "lack of precedent on termination for convenience damages for contingency fee contracts," it

5

"utilized the methodology of FAR § 52.249-2 to determine the costs associated with the terminations."  ECF No. 119 at 12.

Although neither party cites to—and the court could not locate—binding precedent involving termination for convenience damages on a contingency fee contract, there is precedent for applying FAR § 52.212-4(l) when plaintiff is not due any payment under the contract.[5]  See, e.g., SWR, Inc., ABSCA No. 56708, 15-1 BCA ¶ 35,832; First Division Design, LLC, ASBCA No. 60049, 18-1 BCA ¶ 37,201.  In SWR, the plaintiff had a requirements contract in which services were to be ordered by delivery orders.  See SWR, 15-1 BCA ¶ 35,832 at 175,225.  The Board noted that the agency never issued any delivery orders, so the plaintiff never performed any services for which the plaintiff could recover under the contract price prong of FAR § 52.212-4(l).  See id.  The Board went on, however, to award the plaintiff damages under the second prong of the provision, for "reasonable charges" resulting from the termination.  Id.  The court finds persuasive the reasoning and analysis of the Board in SWR that FAR § 52.212-4(l)—the provision contained in plaintiff's contract—may be applied when plaintiff is ultimately due no payment under the contract.

The court does not agree, however, with defendant that plaintiff's citation to FAR § 52.249-2(g) is fatal to its argument.  Although the court will not apply that provision in its analysis of plaintiff's damages claims, the court does not perceive plaintiff's argument to be premised on application of FAR § 52.249-2(g) such that it must fail if the provision does not apply.  Thus, the court will examine plaintiff's damages claim using the framework of FAR § 52.212-4(l).

FAR § 52.212-4(l) provides that, upon termination for convenience, "the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination."  48 C.F.R. § 52.212-4(l).  The purpose of this payment is to "fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work."  Nicon, Inc. v. United States, 331 F.3d 878, 885 (Fed. Cir. 2003) (citation omitted); see also Jacobs Eng'g Grp. v. United States, 434 F.3d 1378, 1381 (Fed. Cir. 2006) (quoting Kasler Elec. Co., DOTCAB 1425, 84-2 BCA ¶ 17,374) ("A contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate.").

---

[5]  While it is not binding precedent, the court finds the reasoning of the Armed Services Board of Contract Appeals persuasive here, and "carefully considers the Board's expertise in interpreting government contracts."  Grumman Aerospace Corp. v. Wynne, 497 F.3d 1350, 1356 (Fed. Cir. 2007).

The termination for convenience provision clearly provides for the contractor to be paid for the "percentage of the work performed prior to the notice of termination." FAR § 52.212-4(l). It also provides for payment of "reasonable charges" resulting from the termination. Id. The contract appeals boards have construed "reasonable charges" to be costs separate from those charges associated directly with the completed work, and to refer to such things as "start-up costs; unrecovered running expense; preventive maintenance; settlement charges; and other charges that are normally paid pursuant to a long form termination for convenience provision to fairly compensate a contractor." SWR, 15-1 BCA ¶ 35,832 at 175,223 (citing cases construing the word "charges"). Thus, the boards have found "three general categories of recovery," including: "(1) [t]he price of work performed under the contract prior to a notice of termination . . . ; (2) settlement expenses . . . ; and (3) . . . costs resulting from the termination." Dellew Corp., ASBCA No. 58538, 15-1 BCA ¶ 35,975 at 175,783; accord Red River Holdings, LLC v. United States, 802 F. Supp. 2d 648, 662 (D. Md. 2011) (holding that FAR § 52.212-4(l) entitles a contractor to "(1) payment of 'a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination'; and (2) a payment as compensation for settlement costs or costs <u>reasonably</u> incurred in anticipation of contract performance, <u>provided such costs are not adequately reflected as a percentage of the work performed</u>, and <u>provided such costs could not have been reasonably avoided</u>") (emphasis in original). The court finds the reasoning and conclusions of the boards to be persuasive and will apply this framework in analyzing plaintiff's claim.

> B.  Plaintiff Is Not Entitled to Compensation for a Percentage of the Contract Price, but May Be Able to Recover Its Reasonable Charges

The first category of recovery—the work performed prior to termination—is "'calculated based on contract price, i.e., as a percentage of contract price reflecting percentage of work performed prior to termination.'" Dellew, 15-1 BCA ¶ 35,975 at 175,783 (quoting SWR, 15-1 BCA ¶ 35,832 at 175,224). Where there is no payment due pursuant to the contract, as in the case of a requirements contract where no orders were made or where work was not authorized under the contract, the contractor cannot recover under the first category. See id.; SWR, 15-1 BCA ¶ 35,832 at 175,225.

Defendant argues that plaintiff has failed to present evidence of its contract price, the total work to be performed, the percentage of work actually performed, and the date of termination of the 2007 and 2010 audits. See ECF No. 115 at 26. Thus, according to defendant, plaintiff is entitled to no recovery under the first category of compensation. See id. at 27. Citing Red River Holdings, defendant further argues that because the first category is "controlling," and the "bulk" of plaintiff's claimed costs "would necessarily be captured in the first prong" of the termination provision, plaintiff cannot recover under the reasonable charges prong. Id. at 27 (citing Red River Holdings, 802 F. Supp. 2d at 662).

The court agrees with defendant that plaintiff cannot recover under the first category of compensation. The court previously held that the agency terminated plaintiff's 2007 and 2010 audits for convenience after plaintiff had reviewed the data for each and presented defendant with its findings. See ECF No. 76 at 11. Thus, plaintiff had performed some portion of the work under the contract. However, plaintiff's contract price was to be paid based on a contingency fee—a portion of plaintiff's recovery of any improper payments. See id. at 4-5. Because plaintiff's work had not yet reached the stage of recovering improper payments, but was terminated at the data analysis stage, it did not collect any fees. See id. at 5-7. Therefore, although plaintiff had performed some of the work under the contract, the amount to which plaintiff was technically entitled under the terms of the contract remained at zero. The court cannot, then, pursuant to the plain language of the FAR provision, award plaintiff compensation under the first category of recovery—any percentage of zero is zero. See Dellew, 15-1 BCA ¶ 35,975 at 175,783; SWR, 15-1 BCA ¶ 35,832 at 175,225.

Plaintiff is not precluded, however, from recovering its reasonable charges and settlement costs. The reasonable charges category is designed to capture those costs that "are not adequately reflected as a percentage of the work performed." Red River Holdings, 802 F. Supp. 2d at 662 (emphasis in original); see also SWR, 15-1 BCA ¶ 35,832 at 175,223. This is in keeping with the well-established principle that the purpose of compensation for a termination for convenience is to "fairly compensate the contractor and to make the contractor whole for the costs incurred in connection with the terminated work." Nicon, 331 F.3d at 885.

### C. Genuine Disputes of Material Fact Remain Regarding Plaintiff's Claims for Its Reasonable Charges

To recover its reasonable charges, plaintiff bears the burden of "proving the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation." Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 767 (Fed. Cir. 1987) (quoting Willems Indus., Inc. v. United States, 295 F.2d 811, 831 (Ct. Cl. 1961)). The plain language of the FAR provision also requires that plaintiff prove its reasonable charges "using its standard record keeping system." FAR § 52.212-4(l).

Defendant argues generally that plaintiff failed to carry its burden. See ECF No. 115 at 28-40. According to defendant, plaintiff's claimed charges are unreasonable. See id. at 28. This is so, defendant contends, because plaintiff claims more than five million dollars in termination for convenience damages for two audits, while it received just over three million dollars total in contingency fees under the contract for seven completed audits. See id. Specifically, defendant argues for each of plaintiff's claimed costs that plaintiff requests far more than is reasonable given the time frame of the contracts, and that plaintiff fails to prove its charges using its standard record keeping system as

8

required by FAR § 52.212-4(l). See id. at 28-40. The court will address each of plaintiff's requests in turn.

1. Personnel Costs

i. 2007 Audit

Plaintiff first claims that it is entitled to its payroll costs of $408,462.83 for the full year of 2011. See ECF No. 107-2 at 13. In support of the claimed amount, plaintiff cites to the affidavit of its managing principal, Mr. Mucke, and a payroll summary attached to Mr. Mucke's affidavit as Exhibit B. See id. (citing ECF No. 107-3 at 5, 60-66).

Plaintiff also argues that it is entitled to its "managing principal costs" for Mr. Mucke's time working as the project director, as defined by the contract. See id. at 13-14. Plaintiff argues without citation that "[u]nder a fixed-fee or cost plus contract, Mr. Mucke's work would be a recoverable cost," and "[i]f Mr. Mucke had not devoted his time and attention to the [2007 audit], he would have devoted his time and attention to other business efforts that would have generated revenue for [plaintiff]." Id. at 14. Noting that, because he is an owner and not an employee, Mr. Mucke does not receive a salary, and that he did not specifically track his hours worked on the contract, plaintiff states that "[t]o determine costs associated with his efforts, Mr. Mucke estimated the number of hours he worked during the relevant time period and then multiplied those hours by his contracted GSA schedule rate" to arrive at a total of $645,730.[6] Id. (citing ECF No. 107-3 at 5-6; ECF No. 107-5).

Defendant responds by arguing that the period of performance for the 2007 audit began on August 25, 2011, "when CMS asked [plaintiff] to draft a proposed audit plan," and ran to November 30, 2011, "when CMS 'killed the review.'" ECF No. 115 at 29 (citations omitted). According to defendant, plaintiff's personnel costs include the full year of 2011 for eight employees and Mr. Mucke as managing principal. See id. at 29-33. Further, defendant contends, plaintiff's calculation of personnel costs is not based on data from its standard record keeping system, but is "ginned up 'summaries'" and "over 500 pages of year-end W-2s and payroll reports" that are not specific to the 2007 audit. Id. at 30. Likewise, plaintiff's managing principal costs, according to defendant, are not supported by "any contemporaneous documentation from [plaintiff's] 'standard record keeping system,'" and rely instead on "the self-serving testimony of Mr. Mucke of the 'estimated' hour[s] he worked." Id. at 32 (citations omitted) (emphasis in original).

Plaintiff replies that the time period for its personnel costs is reasonable because the 2007 audit was the only audit it performed in 2011, and it was "developing secure

---

[6] Plaintiff also, contradictorily, stated that its managing principal costs totaled $654,064. See ECF No. 107-2 at 13.

systems, developing audit and payment calculation processes, communication documents, and training materials for Part D contractors that [were] all related to the [2007 audit]." ECF No. 119 at 16. Further, plaintiff argues, it was contractually required to retain its "key personnel" until January 31, 2012, when the key personnel requirement in its contract was eliminated. See id. Plaintiff also contends that the estimates and summaries it provided were appropriate because it had no "other mechanism by which [plaintiff] could prove its managing principal's work efforts." Id. at 15. Plaintiff provided the summaries rather than "the over 1,958 email communications and 161,877 documents analyzed to make these estimates." Id.

Plaintiff's personnel costs fall under the reasonable charges category of recovery, and plaintiff is entitled to recover those personnel costs for the period of performance of the 2007 audit that it can prove using its standard record keeping system. See SWR, 15-1 BCA ¶ 35,832 at 175,228. However, the parties dispute what the relevant period of performance was: plaintiff argues it was the time from the award of the task order to termination of the 2007 audit—January 13, 2011 to November 30, 2011—and defendant argues it was from the time the agency asked plaintiff to begin developing a process for review to termination—August 2011 to November 30, 2011. See ECF No. 119 at 6, 16; ECF No. 115 at 29. The only evidence plaintiff presents in support of its claim that the entirety of its work in 2011 was directed at the 2007 audit is Mr. Mucke's affidavit. See ECF No. 119 at 16 (citing ECF No. 107-3 at 4). Defendant disputes plaintiff's assertion, stating that plaintiff did not demonstrate that its "'infrastructure' was used solely 'in connection with' the [2007 audit] as opposed to the 20 total audits that [plaintiff] participated in." ECF No. 115-2 at 2 (quoting ECF No. 107-1 at 1 (plaintiff's statement of uncontroverted facts)). According to defendant, plaintiff did not begin work on the 2007 audit until the agency requested that plaintiff draft a proposed audit plan. See ECF No. 115 at 29 (citing ECF No. 54-2 at 21 (email to plaintiff requesting that it draft an audit process)).

In the court's view, the agency did not award plaintiff the task order specifically to conduct the 2007 audit—it awarded plaintiff the task order to conduct audits for multiple years. See ECF No. 51-3 at 182-93 (PWS). Plaintiff's bare statement that it expended its efforts in 2011 solely for the 2007 audit, without more, is insufficient to prove its claim. See SWR, 15-1 BCA ¶ 35,832 at 175,230 ("An unsupported claim document that is submitted by a party seeking money is not proof of the claim that the party asserts.") (citation omitted). Without evidence from plaintiff's "standard record keeping system" connecting the claimed personnel costs to the 2007 audit, the court cannot find that no dispute of material fact exists here. 48 C.F.R. § 52.212-4(l); see also Anderson, 477 U.S. at 248.

Likewise, without support from plaintiff's standard record keeping system for plaintiff's managing principal costs, the court cannot award plaintiff summary judgment on this issue. "[T]estimony of costs incurred without support from the contractor's

10

standard record keeping system, is not sufficient to find recoverable costs." First Division Design, 18-1 BCA ¶ 37,201 at 181,102 (citing SWR, 15-1 BCA ¶ 35,832 at 175,230). Mr. Mucke's affidavit, without more, therefore, is insufficient to support plaintiff's claim for managing principal costs. Emails demonstrating that Mr. Mucke worked on the contract are also insufficient—they do not reflect hours recorded in a standard record keeping system. See id. at 181,103 (denying a claim for personnel compensation because the employee did not take a salary and the plaintiff could not demonstrate the hours he worked in a standard record keeping system). Because "a party seeking summary judgment always bears the initial responsibility of informing the [ ] court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," and because plaintiff has failed to properly support its motion here, the court must deny plaintiff's motion on the issue of personnel costs for the 2007 audit. Celotex, 477 U.S. at 323.

                ii.        2010 Audit

Plaintiff argues that it is entitled to $923,558.62 for the 2010 audit, based on "the number of hours that [plaintiff's] personnel worked" on the audit. ECF No. 107-2 at 18. Plaintiff states that its "personnel did not maintain time sheets that attributed work to a particular project," so Mr. Mucke "analyzed over 1,958 email communications and 161,877 documents that [plaintiff's] personnel had compiled, analyzed, and reviewed" for the 2010 audit to estimate that plaintiff's personnel had worked 4,376 hours on the audit, which he then multiplied by "each person's corresponding GSA schedule rate." Id. at 18-19 (citing ECF No. 107-3 at 9; ECF No. 107-11 at 1-6).

Defendant once again argues that plaintiff failed to support its claims with "any contemporaneous documentation" from its standard record keeping system. ECF No. 115 at 39. Defendant notes that plaintiff's only support for its claim is Mr. Mucke's affidavit in which he "'estimated'" the hours his employees worked by analyzing documents, which plaintiff did not attach to the affidavit. Id. Defendant further argues that plaintiff's use of the GSA schedule rate is inappropriate because it "reflects a 'price,' not a cost, and includes wages, benefits, overhead and profit." Id. at 40 (citation omitted). Plaintiff replies to this point by noting that its contract was a GSA schedule contract, so its use of the rate was appropriate. See ECF No. 119 at 20.

The court agrees with defendant that plaintiff's claim fails for lack of support. "[T]estimony of costs incurred without support from the contractor's standard record keeping system, is not sufficient to find recoverable costs." First Division Design, 18-1 BCA ¶ 37,201 at 181,102 (citing SWR, 15-1 BCA ¶ 35,832 at 175,230). Mr. Mucke's affidavit, without more, therefore, is insufficient to support plaintiff's claim for personnel costs. Emails and documents demonstrating the employees' work on the contract are likewise insufficient—they do not reflect hours recorded in a standard record keeping

11

system.  See id. (denying a claim for personnel compensation because the plaintiff could not demonstrate the hours worked in a standard record keeping system).  Because "a party seeking summary judgment always bears the initial responsibility of informing the [ ] court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," and because plaintiff has failed to properly support its motion here, the court must deny plaintiff's motion on the issue of personnel costs for the 2010 audit. Celotex, 477 U.S. at 323.

2.  General and Administrative Costs[7]

Citing 48 C.F.R. § 52.249-2(g)—the FAR termination for convenience provision for fixed-price, non-commercial item contracts—plaintiff claims that it is entitled to $505,569.23 in general and administrative (G&A) costs for the 2007 audit.  See ECF No. 107-2 at 14-15.  According to plaintiff, these costs include "travel, information technology services, computer equipment, professional services, and other miscellaneous office expense from the period January 2011 through January 2012."  Id. at 15 (citing ECF No. 107-3 at 8; ECF No. 107-8; ECF No. 107-9; ECF No. 107-10).

Defendant responds that plaintiff's claimed costs are "not from its standard record keeping system" but are again summaries and a "data dump" of check registers and invoices that are not linked to the 2007 audit.  ECF No. 115 at 33-34.  Defendant argues that plaintiff bears the burden of proving its damages with "clear records from its standard record keeping system," and it has not met that burden here.  Id. at 34.  Plaintiff does not reply specifically about its G&A costs, but argues generally that it "has provided income statements, check registers, and other financial reports generated from its standard record keeping system, QuickBooks."  ECF No. 119 at 14.

G&A charges may be appropriate charges for compensation pursuant to FAR § 52.212-4(l).  See SWR, 15-1 BCA ¶ 35,832 at 175,231.  In SWR, the Board noted that in performing a contract, a contractor incurs both direct and indirect costs—costs that can be attributed to a specific contract and those, such as "home office overhead," that cannot—and concluded that indirect costs are appropriate for inclusion as reasonable charges.  Id. (citing Nicon, 331 F.3d at 878).  The charges, however, must be supported by documentation and an explanation of how they are allocated to the contract at issue. See First Division Design, 18-1 BCA ¶ 37,201 at 181,104.

---

[7] Plaintiff's only claim pertaining to the 2010 audit appears to be its personnel costs related to that audit.  Thus, the remaining costs addressed in this opinion all relate only to the 2007 audit.

Here, in support of its claim, plaintiff provided a spreadsheet listing its claimed G&A charges and 464 pages of invoices, but failed to provide any explanation connecting the charges to the 2007 audit. ECF No. 107-2 at 15 (citing ECF No. 107-8; ECF No. 107-9). The court also notes that plaintiff included charges for "Travel," "Contractor Wages," "Misc G&A Exp," and "Legal Fees," in addition to the more standard G&A charges for "IT Services" and "Equipment & Fixtures" in its G&A documentation. ECF No. 107-8 at 3-5. Because plaintiff failed to provide any "explanation for how these indirect charges are allocated" to the 2007 audit, the court has "insufficient information to ascertain how these charges are recoverable as fair compensation" for the 2007 audit. First Division Design, 18-1 BCA ¶ 37,201 at 181,104. Thus, plaintiff has failed to properly support its motion, and the court cannot grant plaintiff's motion for summary judgment on the issue. See Celotex, 477 U.S. at 323.

### 3. Office Lease Costs

Plaintiff argues that it is entitled to its office lease costs of $295,775.80 for the 2007 audit. See ECF No. 107-2 at 15 (citing 48 C.F.R. § 52.249-2(g)(2)(i)). According to plaintiff, to house the employees needed for the 2007 audit, it "executed a multiyear lease for expanded office space" in April 2011, with a monthly lease cost of $9,200 and a monthly electricity cost of $1,300. Id. In 2013, plaintiff moved to a smaller office and executed a sublease of its larger office, and in 2016, the lease expired and plaintiff once again moved to a smaller space. See id. at 15-16. Plaintiff calculated its lease costs based on its various leases, which it attached to its motion. See ECF No. 107-2 at 15-16 (citing ECF No. 107-6).

Defendant responds that plaintiff failed to demonstrate its claimed lease costs were directly and singly tied to the 2007 audit. See ECF No. 115 at 35. Defendant argues that plaintiff "cannot demonstrate that at the time it signed the five-year lease, it reasonably expected the 2007 audit would require five years to perform," nor can it tie the full amount of the lease costs to the term of 2007 audit. Id. According to defendant, the first five months of the lease were rent-free and were followed by a reduced lease rate for ten additional months, making the cost of the lease for the month of November 2011—the month plaintiff worked on the 2011 audit—only $4,957.88. See id. (citing ECF No. 107-6 at 323 (lease)).

Plaintiff replies that before it signed the office lease, defendant "informed [plaintiff] that 100% of its time would be dedicated to conducting CMS audits and recovering overpayments," and it signed the lease to "meet the terms of its originally proposed PWS that contemplated '20-25 audit teams.'" ECF No. 119 at 19 (quoting without citation). Plaintiff further states that during the course of the contract, defendant "only permitted [plaintiff] to perform three audits covering seven different time periods." Id. Plaintiff therefore argues that its "'incurrence of an obligation to pay'" is sufficient to permit it to recover. Id. (quoting SWR, 15-1 BCA ¶ 35,832 at 175,226).

While plaintiff's lease costs may be reasonable charges compensable under FAR § 52.212-4(l), in the court's view, plaintiff has not provided sufficient evidence from its standard record keeping system to sustain its claimed costs. As defendant points out, and plaintiff confirms, plaintiff signed the lease to "meet the terms" of the PWS, which was not specific to the 2007 audit. ECF No. 119 at 19. In addition to the parties' dispute over the term of the 2007 audit—a material fact—plaintiff failed to explain how its lease costs are allocated to the 2007 audit. Thus, because there remain material facts in dispute, and because plaintiff failed to properly support its motion, the court cannot grant plaintiff's motion for summary judgment on the issue of its office lease costs for the 2007 audit. See Celotex, 477 U.S. at 323.

### 4. Loan Interest Costs

According to plaintiff, it executed a "business loan agreement" for $600,000 to fund its work on the contract and the funds were "used solely to pay for items associated with completing all activities necessary to conduct" the 2007 audit. ECF No. 107-2 at 16. Plaintiff states that the loan's maturity date was extended due to its inability to make payments "as a result of CMS's delays in executing" the contract. Id. Plaintiff asserts that it paid $176,426.46 in interest on the loan to which it claims it is entitled. See id. (citing 48 C.F.R. § 52.249-2(g)(2)(i); ECF No. 107-3 at 8; ECF No. 107-7 (exhibit containing loan cost summary, bank statements, and loan agreement)).

Defendant responds that plaintiff "has no legal basis for this demand." ECF No. 115 at 36. Defendant points out that there is no provision for recovery of interest on borrowed money, and the FAR establishes that interest on borrowings is not an allowable cost. See id. (citing FAR § 31.205-20).

Plaintiff replies that FAR § 31.205-20 only applies to prohibit interest on borrowings "'paid in connection with preparing prospectuses, and costs of preparing and issuing stock rights,'" and notes that a contractor may recover interest on funds borrowed because of the government's delay in payment. ECF No. 119 at 18 (quoting FAR § 31.205-20 and citing Gevyn Constr. Co. v. United States, 827 F.2d 752, 754 (Fed. Cir. 1987)).

The court agrees with defendant that plaintiff has no legal basis to request interest on a loan it executed to fund its work on the contract. Plaintiff's characterization of FAR § 31.205-20 is incorrect—that provision states, "[i]nterest on borrowings (however represented), bond discounts, costs of financing and refinancing capital (net worth plus long-term liabilities), legal and professional fees paid in connection with preparing prospectuses, and costs of preparing and issuing stock rights are unallowable." 48 C.F.R. § 31.205-20. In context, it is clear that the qualifiers plaintiff asserts exist on the payment of interest do not actually apply. The prohibition on the payment of interest on borrowings stands alone in this list; it is not qualified in any way. See id. Similarly, plaintiff has not demonstrated that it borrowed the funds and paid interest because of a

14

delay in payment by defendant.  Plaintiff states that it "executed a business loan agreement . . . to fund [plaintiff's] work under the Part D RAC."  ECF No. 107-2 at 16.  "The cost of financing performance of a contract is unallowable."  First Division Design, 18-1 BCA ¶ 37,201 at 181,103 (citing FAR § 31.205-20).  Plaintiff's claim for loan interest must fail, and its motion for summary judgment must be denied on this issue.

        5.        Reasonable Profit

Citing 48 C.F.R. § 52.249-2(g)(2)(iii), plaintiff argues that it should be awarded reasonable profits of $304,885.03 on the contract.  See ECF No. 107-2 at 17.  Plaintiff argues that, "[g]iven the magnitude of potential improper payments that [plaintiff] could have collected" if it had performed the audit, a profit rate of fifteen percent is "completely reasonable."  Id.  Plaintiff calculated its profit amount by multiplying its costs by fifteen percent, with the exception of the managing principal costs because the "GSA rate already contained a profit component."  Id. at 17 & n.1.

Defendant responds that plaintiff is "seeking anticipatory profits, which are not recoverable in a termination for convenience action."  ECF No. 115 at 36 (citing Praecomm, Inc. v. United States, 78 Fed. Cl. 5, 11 (2007)).  Defendant argues that plaintiff bases its costs on "the entirety of its payroll, Livonia office lease, loan interest, G&A, and 'settlement legal fee' expenses," "without any connection to 'work performed' on the terminated audits."  Id. at 38.  Defendant further asserts that, even if plaintiff is entitled to profits, its claim is "based upon pure speculation," and its profit rate of fifteen percent "contravenes the FAR."  Id.

Plaintiff replies that its use of a fifteen percent profit rate is reasonable because the contracting officer "agreed to apply a profit rate of 7.5% to [plaintiff's] costs."  ECF No. 119 at 19.  Plaintiff further argues that its profits are not anticipatory because they are based on its costs, rather than on the "potential recoveries under the" 2007 and 2010 audits.  Id. at 19-20.

Plaintiff is entitled to receive profits on "charges it recovers as part of its fair compensation, except for settlement expense and G&A indirect cost, which do not represent costs of preparations made for the terminated work."  SWR, 15-1 BCA ¶ 35,832 at 175,233.  Plaintiff, however, in explaining the reasonableness of its profit rate only noted that its contingency fees ranged from 7.5% to 20%, and argued that "[g]iven the magnitude of potential improper payments that [plaintiff] could have collected," its fifteen percent rate is "completely reasonable."  ECF No. 107-2 at 17.  This explanation is, in the court's view, insufficient to justify the reasonableness of plaintiff's profit rate.  And, defendant vigorously disputes the reasonableness of that rate.  See ECF No. 115 at 36-39.  Thus, a reasonable rate of profit is a material fact that remains in dispute in this case, and the court cannot grant plaintiff's motion for summary judgment on this issue.

   D.  Genuine Disputes of Material Fact Remain Regarding Plaintiff's Claims for Compensation for Its Settlement Costs

Settlement costs are those "incurred by the contractor for the preparation and presentation of settlement claims" to the contracting officer. Dellew, 15-1 BCA ¶ 35,975 at 175,783. This includes reasonable attorneys' fees for the preparation of a settlement proposal and negotiating the amicable resolution of the charges presented in the proposal. See SWR, 15-1 BCA ¶ 35,832 at 175,231 (citing Dairy Sales Corp. v. United States, 593 F.2d 1002, 1005 (Ct. Cl. 1979)). "[N]o claim may be made for fees incurred in the preparation of claims which are not compensable." Dairy Sales, 593 F.2d at 1006.

Plaintiff argues, citing to 48 C.F.R. § 52.249-2(g)(3)(i), that it is entitled to its settlement costs, including its "legal fees as well as its principal[']s time and effort in this lawsuit that preceded the [c]ourt's March 23, 2020 Opinion and Order." ECF No. 107-2 at 19. Plaintiff contends that its "legal fees and time and effort" were "necessary precursors" to the agency taking the position that there was a termination for convenience and to plaintiff "obtaining the costs" for the 2007 and 2010 audits. Id. at 20.

Plaintiff separates its costs into two phases—prior to the court's March 2020 opinion and after the March 2020 opinion. See id. at 20-21. Prior to the March 2020 opinion, plaintiff alleges that it paid $617,307.56 to its law firm. See id. at 20 (citing ECF No. 107-12 (attorney invoices)). Plaintiff also asserts that its "internal work effort," consisting of 5,481 hours of Mr. Mucke's review of email and legal communications and "other documentation reviewed and revised by [Mr. Mucke] and [plaintiff's] personnel," cost $1,200,133.39. Id. at 20, 21 (citing ECF No. 107-11 at 62-65 (settlement expenses summary)).

Plaintiff further seeks $183,433.83 for settlement costs between March 23, 2020 and December 31, 2020, noting that it "also seeks settlement costs for activity after December 31, 2020, but does not yet have a final settlement cost amount that it can calculate." Id. at 21 n.2. Similar to the costs identified prior to March 2020, plaintiff asserts that it paid its attorneys $29,025 and tracked 678 hours its employees spent that, according to plaintiff, cost $154,408.83. Id.

Defendant responds that plaintiff has no legal basis on which to request its legal fees. See ECF No. 115 at 40-41. Defendant notes that "the cost to prosecute claims against the United States is not an allowable cost." Id. at 40 (citing FAR § 31.205-47(f)(1)). Defendant argues that "[a]bsent a statute . . . or an express contractual provision, the United States is not liable for attorney fees." Id. at 41.

Plaintiff replies that defendant conflates the "costs pertaining to [plaintiff's] termination settlement claims with that of [its] request for the reimbursement of reasonable charges associated with obtaining a retroactive termination for convenience." ECF No. 119 at 21. Plaintiff argues that its efforts related to obtaining the court's ruling

16

that the agency terminated its audits for convenience were "reasonably necessary" to allow it to prepare and present a claim to the contracting officer. Id. at 23 (quoting Dellew, 15-1 BCA ¶ 35,975). The balance of its costs, according to plaintiff, are permissible because they are "associated with finalizing a termination settlement." Id.

The court agrees with defendant that the costs associated with prosecuting a claim against the United States are not allowable costs, absent a waiver of sovereign immunity by statute or contractual provision. Plaintiff's attempt to overcome the broad prohibition on the award of attorneys' fees by casting the fees as reasonable charges necessary to allow it to present its claim to the contracting officer is unavailing. The path to an award of attorneys' fees is narrow—the only compensable fees are those that are incurred in the preparation of a termination settlement proposal and its presentation to the contracting officer, excluding any fees incurred for the preparation of claims that are not compensable. Dairy Sales, 593 F.2d at 1006; SWR, 15-1 BCA ¶ 35,832 at 175,231; see also 48 C.F.R. § 31.205-42(g)(1)(i)(A) (providing for the recovery of settlement expenses, including "[t]he preparation and presentation, including supporting data, of settlement claims to the contracting officer").

Plaintiff, however, has not properly supported its motion for summary judgment on this issue. While plaintiff provided a significant number of legal invoices, it failed to separate out the costs associated with the preparation of its termination settlement proposal and explain how those invoices are connected to that preparation. See ECF No. 107-2 at 21. Because the court cannot make a determination of either the reasonableness of plaintiff's legal fees or their relation to the preparation of its termination settlement proposal, plaintiff's motion for summary judgment must be denied.

Plaintiff's claim for the cost of its "internal work effort" must also fail. ECF No. 107-2 at 20. As with its legal fees, plaintiff has not parsed out the costs of preparing its termination settlement proposal, nor has it made any argument about the reasonableness of those costs. See ECF No. 107-2 at 20-21. In the court's view, plaintiff's claim that its internal work effort cost more than double that of its legal fees requires an explanation of the reasonableness of those costs that plaintiff simply has not provided. Therefore, the court must deny plaintiff's motion for summary judgment on this issue.

      E.      Genuine Disputes of Material Fact Remain Regarding Plaintiff's Claims for Interest Pursuant to the Contract Disputes Act

Finally, plaintiff argues that it is entitled to interest under the CDA. See ECF No. 107-2 at 21. Plaintiff asserts that the interest on its costs through December 31, 2020, amounts to $834,835.74. See id. (citing ECF No. 107-13 at 14-32 (exhibit containing plaintiff's CDA interest calculations)). Defendant responds that plaintiff both failed to prove its underlying claim and failed to properly calculate the date from which interest began to accrue. See ECF No. 115 at 42. Plaintiff responds that "[w]here there is a constructive termination for convenience finding years after [plaintiff] incurred

significant costs, it is only proper for the CDA interest to accrue from the date of the constructive termination for convenience as [plaintiff] was not in a position to submit a claim any earlier." ECF No. 119 at 24.

The court has not yet determined whether plaintiff is entitled to any compensation for the termination for convenience of the 2007 or 2010 audit, nor has it determined the amount of such compensation. Therefore, whether plaintiff is entitled to CDA interest and, if so, how much remains a disputed issue of fact, and the court cannot grant plaintiff's motion for summary judgment on this issue.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Plaintiff's motion for summary judgment, ECF No. 107, is **DENIED**;

(2) On or before **December 3, 2021**, the parties shall **CONFER** and **FILE** a **notice** attaching the parties' **proposed redacted version** of this opinion, with any protectable information blacked out; and

(3) On or before **December 3, 2021**, the parties shall **CONFER** and **FILE** a **joint status report** proposing next steps in this litigation, and should the parties desire to pursue alternative dispute resolution, the parties shall indicate as much in their joint status report.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge