IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACLR, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-767 |
| | ) | (Judge Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL:


LUCY Mac GABHANN
Office of the General Counsel
U.S. Department of Health and Human Servs.
7500 Security Boulevard
Central Bldg. – Mailstop C2-05-23
Baltimore, MD 21244

JOSEPH A. PIXLEY
AUGUSTUS J. GOLDEN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0843
Facsimile: (202) 307-0972

October 19, 2022

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE ISSUES.......................................................................... 5

SUMMARY OF UNDISPUTED FACTS ............................................................ 6

I.    The Termination For Convenience Clause In The Contract: FAR 52-212-4(l)....... 6

II.   ACLR Did Not Track The Hours Of Its Managing Principal And Employees ....... 7

III.  ACLR's Proffered Exhibits Fail To Identify Costs Allocable To The 2007 And
      2010 Audits............................................................................................... 7

      A.  Emails (303 exhibits) – PX 1-3, 5, 6, 9, 10, 12-17, 19, 21-32, 34-49, 52-62,
          65, 67-71, 73-86, 92, 104, 112, 117, 119, 123-26, 128-36, 141-43, 146, 148,
          150-53, 156-59, 161-75, 177-82, 184, 185, 188-240, 242-46, 248, 250-57,
          259, 261-63, 265, 267, 270, 273-300, 314-22, 324-36, 339-46, 348, 355, 356,
          358-68, 375, 376, 386, 387, 393-416, 418, 427................................................. 7

      B.  Technical Data (21 exhibits) – PX 272, 302-04, 307, 308, 310, 312, 313, 338,
          347, 353, 354, 372-74, 379, 380, 383, 384, 389 ................................................. 9

      C.  Computer File Directories (19 exhibits) – PX 183, 241, 247, 271, 301, 305,
          309, 337, 350, 351, 357, 369-371, 377, 378, 385, 391, 392 ............................. 9

      D.  C MS Documents (17 exhibits) – PX 4, 7, 8, 91, 94-100, 102, 105, 115, 264,
          268, 269....................................................................................................... 10

      E.  Summary Tables (11 exhibits) – PX 433, 437, 440, 442-44, 446, 448, 450,
          452, 454....................................................................................................... 10

      F.  ACLR Notes & Data (7 exhibits) – PX 66, 87-90, 101, 103. ........................... 11

      G.  W-2s – PX 431 ............................................................................................ 11

      H.  Other Documents (32 exhibits) – PX 11, 64, 72, 93, 106-09, 113, 306, 311, 349,
          352, 381, 382, 388, 390, 419, 430, 432, 434-36, 438, 439, 445, 447, 449, 451,
          453, 455, 456................................................................................................ 11

      I.  G & A - PX 441 ........................................................................................... 12

RELEVANT PROCEDURAL BACKGROUND ................................................... 14

ARGUMENT ...................................................................................................... 16

i

I.   Standard Of Review For Summary Judgment ............................................... 16

II.   Termination For Convenience Is Governed By FAR § 52.212-4(l) ............................ 19

    A. FAR § 52.2124(l) Must Be Interpreted By Its Plain Language ..................... 20

    B. A Standard Record Keeping System Must Demonstrate A Contractor's Reasonable Charges ........................................................................... 21

    C.  ACLR's System Fails To Satisfy The Legal Requirements Of FAR § 52.212-4(l) .................................................................................. 22

III. ACLR's Categories Of Supporting Evidence Fail To Satisfy The Legal Requirements FAR § 52.212-4(l) ........................................................................... 26

    A.  ACLR Bears The Burden Of Proving Its Reasonable Charges Using Its Standard Record Keeping System ..................................................... 26

    B. Personnel Costs And Managing Principal Costs: 2007 And 2010 Audits ..... 26

    C. General And Administrative Costs ................................................... 30

    D. Loan Interest Costs ...................................................................... 31

    E. Settlement Fees ........................................................................... 31

CONCLUSION ............................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**                                                                                                                          **Page(s)**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ........................................................................................ 32

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................ 16, 17

*Armitage v. United States*,
    991 F.2d 746 (Fed. Cir. 1993) ............................................................................ 18

*Avant Assessment, LLC*,
    ASBCA No. 61358, 18-1 BCA ¶ 37,158........................................................ 25, 30

*Baude v. United States*,
    955 F.3d 1290 (Fed. Cir. 2020) ........................................................................ 20, 21

*Bubble Room, Inc. v. United States*,
    159 F.3d 553 (Fed. Cir. 1998) ............................................................................ 17

*Campus Management Corporation*,
    ASBCA Nos. 59924 ............................................................................ 25, 26

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................ 17, 18, 19

*Coast Fed. Bank v. United States*,
    323 F.3d 1035 (Fed. Cir. 2003) ............................................................................ 20

*Corley v. United States*,
    556 U.S. 303 (2009) ............................................................................ 20

*Dairyland Power Coop. v. United States*,
    16 F.3d 1197 (Fed. Cir. 1994) ............................................................ 17, 18

*DJ Mfg. Corp. v. United States*,
    86 F.3d 1130 (Fed. Cir. 1996) ............................................................................ 18

*DMS Imaging, Inc. v. United States*,
    123 Fed. Cl. 645 (2015).................................................................................... 32

*Dream Mgmt., Inc., v. Dep't of Homeland Sec.*,
    CBCA 5517, 17-1 BCA ¶ 36,716 ............................................................ 24

*ESCGov, Inc.*,
  ASBCA No. 58852, 17-1 BCA 36,772 ........................................................................ 25, 29, 30

*Filtroil, N.A., Inc. v. Maupin*,
  178 F.3d 1310 (Fed. Cir. 1998) ................................................................................ 19

*First Division Design*,
  ASBCA No. 60049, 18-1 BCA ¶ 37,201 ........................................................... *passim*

*Henke v. United States*,
  43 Fed. Cl. 15 (1999) ................................................................................................ 19

*Krygoski v. United States*,
  9 F.3d 1537, 1540, 1545 (Fed. Cir. 1996) ............................................................... 19

*Lisbon Constructors, Inc. v. United States*,
  828 F.2d 759 (Fed. Cir. 1987) ................................................................................. 26

*Long Island Sav. Bank, FSB v. United States*,
  503 F.3d 1234 (Fed. Cir. 2007) ................................................................................ 16

*Massachusetts Mut. Life Ins. Co. v. United States*,
  782 F.3d 1354 (Fed. Cir. 2015) ............................................................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................. 18

*Mingus Constructors, Inc. v. United States*,
  812 F.2d 1387 (Fed. Cir. 1987) ............................................................................... 18

*NantKwest, Inc. v. Lee*,
  686 F. App'x 864 (Fed. Cir. 2017) ........................................................................... 17

*O'Connor v. United States*,
  308 F.3d 1233 (Fed. Cir. 2002) ................................................................................ 17

*Raitport v. United States*,
  74 F.3d 1259 (Fed. Cir. 1996) ................................................................................. 19

*Scott Timber Co. v. United States*,
  333 F.3d 1358 (Fed. Cir. 2003) ................................................................................ 17

*Scott v. Harris*,
  550 U.S. 372 (2007) ................................................................................................. 17

*Servidone Construction Corp. v. United States*,
   931 F.2d 860 (Fed. Cir. 1991) ................................................................ 31

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
   833 F.2d 1560 (Fed. Cir. 1987) ............................................................... 18

*SWR, Inc.*
   ASBCA No. 56708, 15-1 BCA ¶ 35,832............................................ *passim*

*Tabbaa v. Dep't of Homeland Security*,
   509 F.3d 89 (2d Cir. 2007) ..................................................................... 17

*Tesoro Hawaii Corp. v. United States*,
   405 F.3d 1339 (Fed. Cir. 2005) ............................................................... 21

*Univ. of W. Virginia Bd. of Trustees v. VanVoorhies*,
   278 F.3d 1288 (Fed. Cir. 2002) ............................................................... 19

*Varilease Tech Group, Inc. v. United States*,
   289 F.3d 795 (Fed. Cir. 2002) ................................................................. 21

**Statutes**

Equal Access to Justice Act,
   28 U.S.C. § 2412 ...................................................................................... 32

**Rules**

Fed. R. Civ. P. 56............................................................................... 16, 17, 18

FRCP 56 .............................................................................................. 16, 17

RCFC 56 .......................................................................................... 1, 17, 18

RCFC 56(a)............................................................................................... 16

RCFC 56(e)............................................................................................... 18

**Regulations**

48 C.F.R. § 52.2124(l) ..................................................................... *passim*

FAR § 31.205-20 ............................................................................................................... 31

FAR § 31.205-47(f) ........................................................................................................... 32

FAR § 52.212-4 ................................................................................................................. 27

FAR § 52.2124(l) ......................................................................................................... *passim*

## Other Authorities

*Charges*, Black's Law Dictionary (5th ed 1979) ......................................................... 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ACLR, LLC,                            )
                                      )
          Plaintiff,                  )
                                      )
          v.                          )     No. 15-767
                                      )     (Judge Campbell-Smith)
THE UNITED STATES,                    )
                                      )
          Defendant.                  )

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's October 12, 2022 order (ECF No. 166), and Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this motion for summary judgment upon the grounds that plaintiff ACLR, LLC (ACLR) fails to present sufficient, relevant evidence to prove its termination for convenience costs based upon a standard record keeping system, as that term is used in Federal Acquisition Regulation (FAR) § 52.212-4(l), and allocable to the 2007 and 2010 audits at issue.

## INTRODUCTION

In this case, the sole issue for trial is whether ACLR can prove its legitimate termination for convenience damages for the 2007 and 2010 audits. Specifically, in its recent order, the Court identified three predicate questions that must be answered before any trial to consider ACLR's evidence of claimed costs:

1. What is, as a factual matter, plaintiff's standard record keeping system?

2. Does that system comport with the legal requirements of 48 C.F.R. § 52.212-4(l)?

3. Do the categories of supporting evidence that plaintiff intends to present at trial satisfy the relevant legal requirements?

*See* ECF No. 164.

On October 14, 2022, ACLR filed a declaration from its managing principal, Christopher

Mucke, that purports to answer the first question posed by the Court.  *See* ECF No. 167-1.

ACLR asserts that its "standard record keeping system," includes the use of Quickbooks

(accounting software), Microsoft File Explorer (used to store "vendor invoices, client work

product, and achieved communications data"), Microsoft Outlook (used to store e-mails),

"various external file storage devices" (backup storage) and "paper files" (for "contract

information").  ECF No. 167-1 (¶ 3).

　　　　In this brief, the United States will answer the Court's second and third questions.  As a

starting point, ACLR's purported "standard record keeping system," is so vastly overbroad as to

include *every conceivable document in its possession,* from electronically saved documents to

"paper files," rendering the term "standard record keeping system" in FAR § 52.212-4(l)

essentially meaningless.  ACLR's proffer fails to satisfy the requirements of a standard record

keeping system which should, at a minimum, reflect "reasonable charges" that the contractor can

prove, allocable to the 2007 and 2010 audits at issue.  ACLR's self-described "standard record

keeping system" does none of this.

　　　　We will demonstrate, based upon undisputed facts — *i.e.*, ACLR's own proffered trial

exhibits, admissions, and pre-trial filings — that ACLR lacks sufficient evidence to prove

entitlement to the costs that it claims under FAR § 52.212-4(l).

　　　　At the heart of ACLR's problem of proof is its failure to demonstrate a claim for

reasonable charges, with relevant supporting documents allocated to the two audits at issue

"using its standard record keeping system," as required by the termination for convenience

clause in the contract, FAR § 52.212-4(l).  Specifically, ACLR has filed an exhibit list consisting

of 465 exhibits, many of which are hundreds and even thousands of pages long.  *See* ECF 144-1.

Yet, in ACLR's tens of thousands of pages of exhibit documents, few, if any of plaintiff's exhibits, show costs allocated to the 2007 and 2010 audits.  Instead, ACLR proffers a data dump of well over 100,000 pages of non-relevant evidence that show neither costs, nor reference the two audits at issue.  *See* ECF 144-1.

This voluminous documentation shows what is missing from ACLR's case: ACLR did not maintain a standard record keeping system as it was obligated to do; ACLR admittedly *did not keep contemporaneous records* reflecting the hours its officers and employees worked on particular audits, tasks, or projects under the contract; and ACLR *did not keep contemporaneous records* of costs incurred that are allocable to particular audits, tasks, or projects under the contract.[1]  Instead, ACLR intends at trial to have its witnesses go page by page through the voluminous documents and make rough estimates of the hours of work performed on the subject audits based on those documents (which lack this information), and then make estimates of the costs allegedly incurred by the constructive termination of the two audits.  This is inappropriate and insufficient to prove ACLR's costs.

The vast majority of ACLR's proffered exhibits do not identify charges or costs of any kind but rather, consist of myriad e-mails, contract documents, agency documents, and general work product. For the hundreds of pages of ACLR's exhibits that do identify financial information, virtually none allocate costs to the two audits at issue.  Even more egregious, ALCR

---

[1] We cannot know what motivated ACLR (a highly experienced audit firm staffed by accountants), not to maintain a standardized approach to record keeping, but note that this case began based upon a theory that the Government deprived ACLR of its share of purported overpayments as identified in ACLR's audits, in other words a contingent theory of recovery based upon collected receipts.  Such an approach to costs is not inconsistent with a failure to maintain actual records of activity.

seeks costs, and proffers evidence, for ineligible items such as loan interest costs and certain

legal fees (relating to ACLR's prosecution of its claims against the United States in this lawsuit)

that the Court has already ruled are not allowable. *Compare* ECF No. 125 at 14, 17 *with* ECF

No. 150 at ¶¶ 72-75, 101-106.  It does not appear from its proffered evidence that ACLR has

made any real attempt to parse out reasonable termination for convenience charges, including

from charges it has been specifically and explicitly told by the Court are inappropriate.   *See* ECF

No. 150 at ¶¶ 94-100.

Specifically, ALCR's proffered documentary evidence may be broken down into roughly

four categories: (1)  plaintiff's exhibits (PX) 1-430 (approximately), are tens of thousands of

pages of documents consisting of e-mails, technical data, computer file directories, agency

documents, note, and third-party correspondence, *none* of which show any costs or charges, or

fail to even reference the 2007 and 2010 audits at issue; (2) PX 431-432, 455, and 457-464

(approximately), consist of various bank statements, W-2's, invoices, and receipts, *none* of

which identify, reference, or mention the 2007 and 2010 audits at issue, nor reflect reasonable

charges allocable to those audits; (3) PX 439-440, 456 consist of documents related to loan

interest costs and legal billings associated with costs incurred in ACLR's prosecution of its claim

against the United States, costs that the Court has already ruled that ACLR is not legally entitled

to; and (4) PX 433-438 and 441-454 (approximately), are summary tables generated by ACLR

for this litigation, but based upon witness estimates of claimed costs.

We will provide representative exemplars of ACLR's proffered documents in an

appendix attached to this brief, which self-evidently demonstrate, that the vast majority of

documents fail to identify charges or costs of *any kind*, and none of which identify reasonable

4

charges allocable to the 2007 and 2010 audits at issue.[2]

At the heart of its case, ACLR intends to rely upon witness testimony to speculate as to hours worked and costs incurred — based upon a post-facto review at trial of e-mails and other documents — hours and costs that the documents do not actually identify.  In the absence of any actual evidence suitable to satisfy ACLR's requirement of demonstrating its claim for reasonable charges using its standard record keeping system, the Court should refuse to entertain such a speculative exercise.  The language of FAR § 52.212-4(l) requires ACLR to demonstrate its reasonable charges from its standard record keeping system, not to attempt to circumvent that requirement by stitching together a Frankenstein-esque mess of irrelevant documents, post-facto testimony, and estimates, which is what ACLR's case amounts to.

In sum, ACLR's case suffers from a major problem of proof due to its failure to demonstrate a claim for reasonable charges, with relevant supporting documents allocated to the two audits at issue "using its standard record keeping system," as required by the termination for convenience clause in the contract, FAR § 52.212-4(l).

## STATEMENT OF THE ISSUES

1.      Whether ACLR's proffer of its standard record keeping system comports with the legal requirements of 48 C.F.R. § 52.212-4(l).

2.      Whether the categories of supporting evidence that ACLR intends to present at trial satisfy the relevant legal requirements under FAR § 52.212-4(l).

3.      Whether ACLR has met its burden of providing sufficient evidence to

---

[2] All example exhibits identified in this motion are provided in the appendix to this motion, identified as "App__."  In the appendix documents "App_" is located in the left lower margin of the page.  Defendant has noted where lengthy exhibits have been excerpted.

demonstrate termination for convenience damages pursuant to FAR § 52.212-4(l).

## SUMMARY OF UNDISPUTED FACTS

I.   **The Termination For Convenience Clause In The Contract: FAR 52-212-4(l)**

On June 17, 2010, ACLR entered into a Federal Supply Schedule Financial and Business

Solutions (FABS) contract for financial and business solutions issued by the General Services

Administration (GSA), contract number GS-23F-0074W (GSA Contract).  App1 (GSA Contract

excerpt).  The GSA Contract included a contract clause from the FAR titled "Contract Terms and

Conditions-Commercial Items (March 2009) (Deviation February 2007).  App2.  That clause

contained a clause entitling the ordering agency, *e.g.*, CMS, to terminate the contract at its

convenience:

> *Termination for the Ordering Activity's convenience*. The ordering activity
> reserves the right to terminate this contract, or any part hereof, for its sole
> convenience. In the event of such termination, the Contractor shall immediately
> stop all work hereunder and shall immediately cause any and all of its suppliers
> and subcontractors to cease work. *Subject to the terms of this contract, the
> Contractor shall be paid a percentage of the contract price reflecting the
> percentage of the work performed prior to the notice of termination, plus
> reasonable charges the Contractor can demonstrate, to the satisfaction of the
> Government using its standard record keeping system, have resulted from the
> termination*. The Contractor shall not be required to comply with the cost
> accounting standards or contract cost principles for this purpose. This paragraph
> does not give the ordering activity any right to audit the Contractor's records. The
> Contractor shall not be paid for any work performed or costs incurred that
> reasonably could have been avoided.

App3 (emphasis added); *see also* 48 C.F.R. § 52.212-4(l)).

On January 13, 2011, pursuant to the GSA Contract, the Centers for Medicare &

Medicaid Services (CMS), a unit of the United States Department of Health and Human Services

(HHS) awarded ACLR task order HHSM-500-2011-00006G (task order) to identify improper

payments and to recover overpayments made under the Medicare Part D program.  App4-5 (task

order excerpt).  The task order provided for a base period of performance of January 13, 2011, through January 12, 2012, along with four 12-month option periods.  App6.

The termination for convenience clause, FAR § 52.212-4(l)), *see* App3, was included in the task order, pursuant to the Federal Supply Schedule Contract.  App6 (incorporating the terms of GSA Contract GS-23F0074W under the FABS Schedule).

## II.    ACLR Did Not Track The Hours Of Its Managing Principal And Employees

ACLR's Managing Principal, Christopher Mucke, did not receive a salary and did not track the hours he worked on the Part D RAC contract.  ECF No. 150 ¶¶ 52-53, 56.  Mr. Mucke "estimates" that he worked "approximately 3,023 hours" on the 2007 Duplicate payment audit. *Id.* ¶ 56-57.

ACLR's "personnel did not maintain time sheets that attributed work to a particular project." *Id.* ¶ 81.  ACLR estimated that its managing principal, Mr. Mucke, and other personnel worked "approximately 4,376 hours on the 2010 audit," which involved "prepar[ing] and exchang[ing] thousands of email communications internally and with CMS," and "compil[ing], analyz[ing], and review[ing] thousands of other documents" for the 2010 audit. *Id.* ¶¶ 82-84.

## III.   ACLR's Proffered Exhibits Fail To Identify Costs Allocable To The 2007 And 2010 Audits

**A.  Emails (303 exhibits) – PX 1-3, 5, 6, 9, 10, 12-17, 19, 21-32, 34-49, 52-62, 65, 67-71, 73-86, 92, 104, 112, 117, 119, 123-26, 128-36, 141-43, 146, 148, 150-53, 156-59, 161-75, 177-82, 184, 185, 188-240, 242-46, 248, 250-57, 259, 261-63, 265, 267, 270, 273-300, 314-22, 324-36, 339-46, 348, 355, 356, 358-68, 375, 376, 386, 387, 393-416, 418, 427.**

In its exhibit list, *see* ECF No. 144-1, ACLR proffered over 300 documents consisting of email records, some of which, in turn, are lengthy.  *Not one* of these email documents, as

7

identified above, show charges or costs of any kind.  Nor do these email documents demonstrate any charges or costs allocable to the 2007 and 2010 audits at issue.

Given the vast number of documents in question, it is impractical to describe each of these documents, or to attach them in an appendix.  A few exemplars to illustrate the irrelevancy of these documents is provided, below.

PX 53 (App9) is an email consisting of a single line of text: "Tanette has yet to get back to us on reporting formats. Please upload into the RAC Portal."

PX 178 (App10) is an email from Jason Barnes of ACLR to Christopher Mucke of ACLR.  The email contains no text in its body at all.  The subject of the email is "Updated Part D Liability Calculation.Outreach - Subsequent Issues Calculation" and the email purports to have an attachment, but the attachment was not included as part of PX 178 or any other exhibit.

PX 265 (App11) is an email from Christopher Mucke of ACLR to optinference@gmail.com.  The email is dated March 28, 2012.  The email discusses an "internal control issue" and purports to have an attachment, but the attachment was not included as part of PX 265 or any other exhibit.

PX 360 (App12)[3] is a 38-page document that consists of multiple, identical email notifications that an email was not delivered to its intended recipient.  All of the notifications appear to be from July 2014.

---

[3] Due to PX 360's size, an excerpt has been provided

### B.  Technical Data (21 exhibits) – PX 272, 302-04, 307, 308, 310, 312, 313, 338, 347, 353, 354, 372-74, 379, 380, 383, 384, 389

In its exhibit list, *see* ECF No. 144-1, ACLR proffered hundreds of pages of native excel files containing raw technical data.  *Not one* of these technical data documents, as identified above, show charges or costs of any kind.  Nor do these documents demonstrate any charges or costs allocable to the 2007 and 2010 audits at issue.

As a representative example, PX 308 (App13)[4] consists of two worksheets, each of which has 57 columns and 14,863 rows of cells with data entered (reflecting a total of 1,694,382 cells worth of raw data), none of which reflects charges or costs of any kind, allocable to either the 2007 or 2010 audits.

### C.  Computer File Directories (19 exhibits) – PX 183, 241, 247, 271, 301, 305, 309, 337, 350, 351, 357, 369-371, 377, 378, 385, 391, 392

In its exhibit list, *see* ECF No. 144-1, ACLR proffered hundreds of pages of file directory documents that state the directory's location and provide a date and title for each file within the directory.  *Not one* of these director documents, as identified above, show charges or costs of any kind.  Nor do these documents demonstrate any charges or costs allocable to the 2007 and 2010 audits at issue.

A representative example, PX 392 (App14)[5] is a 1,582 page document that lists the files within the "C:\Users\msiadmin\Desktop\PY10 DP Files\4 Audit\13 IPRP Submission\DVC Evidence Submission" directory and its subfolders.  *Id*.  According to PX 392, it contains the

---

[4] Due to PX 308's size, an excerpt has been provided.  If the entire file were printed to a pdf document it would be 7,952 pages long.

[5] Due to PX 392's size, an excerpt has been provided.

dates and names of 30,667 files.  A search of PX 392 resulted in zero hits for the word "cost" in any file name.  None of these records reflect charges or costs of any kind, allocable to either the 2007 or 2010 audits.

      **D.**      **CMS Documents (17 exhibits) – PX 4, 7, 8, 91, 94-100, 102, 105, 115, 264, 268, 269.**

In its exhibit list, *see* ECF No. 144-1, ACLR proffered documents prepared by CMS.  *Not one* of these documents, as identified above, show charges or costs of any kind.  Nor do these agency documents demonstrate work performed by ACLR, or reflect charges or costs allocable to the 2007 and 2010 audits at issue.

For example, PX 96 (App15-24)[6] is CMS published guidance regarding debt collection in the context of Medicare financial management.  None of these documents reflect charges or costs of any kind, allocable to either the 2007 or 2010 audits.

      **E.**      **Summary Tables (11 exhibits) – PX 433, 437, 440, 442-44, 446, 448, 450, 452, 454.**

In its exhibit list, *see* ECF No. 144-1, ACLR proffered summary tables that were generated for this litigation, and do not reflect contemporaneous cost documents.  For example, PX 443 (App25-26) purports to be a "Managing Principal T4C Cost Summary" that sets forth ACLR's estimates as to the number of hours Mr. Mucke supposedly worked from January 13, 2011, through January 31, 2012.  PX 443, however, contains no support for the figures claimed, merely referencing "Exhibit 10."[7]  *See* App15.

---

[6] Due to PX 96's size, an excerpt has been provided.

[7] Exhibit 10 is, presumably, supposed to be PX 10 (App7-8).  PX 10 (App7-8) is an email from Mr. Mucke to Jessica Sanders of CMS, expressing that Mr. Mucke's team is looking forward to working with CMS.  It contains no cost data, and no evidence of the time Mr. Mucke

10

### F.        ACLR Notes & Data (7 exhibits) – PX 66, 87-90, 101, 103.

In its exhibit list, *see* ECF No. 144-1, ACLR proffered documents consisting of a random assortment of notes, presumably by ACLR employees and officers.  *Not one* of these documents, as identified above, show charges or costs of any kind.  Nor do these documents demonstrate work performed by ACLR, or reflect charges or costs allocable to the 2007 and 2010 audits at issue.  For example, PX 88 (App27-28) is a two-page document consisting of notes on "Introduction to Project[,]" "Systems and tools to conduct audit[,]" "Audit Processes[,]" "Process for conducting Part D over/under payment review[,]" and "Recurring Activities[.]"

### G.        W-2s – PX 431

In its exhibit list, *see* ECF No. 144-1, ACLR proffered PX 431 (App29-39) consisting of 11 pages of W-2 documents from 2011.  ACLR redacted the employees' names—as well as other details—from each of the documents in PX431.  It is thus impossible to tell which employees' wages these W-2 forms represent.  Furthermore, PX 431 shows wages and tax withholding of unknown employees, but make *no mention* of the 2007 or 2010 audits at issue, or reflect *any* costs incurred with respect to the two audits.

### H.        Other Documents (32 exhibits) – PX 11, 64, 72, 93, 106-09, 113, 306, 311, 349, 352, 381, 382, 388, 390, 419, 430, 432, 434-36, 438, 439, 445, 447, 449, 451, 453, 455, 456.

In its exhibit list, *see* ECF No. 144-1, ACLR proffered hundreds of miscellaneous documents, that defy easy categorization.  *Not one* of these documents, as identified above, show charges or costs of any kind.  Nor do these documents demonstrate work performed by ACLR, or reflect charges or costs allocable to the 2007 and 2010 audits at issue.

---

spent working on the 2007 or 2010 audits.

A representative example, PX 349 (App40-48)[8] is a 1,109 page document that consists of largely duplicate form letters from CMS to various third parties.  PX 390 (App49-61) consists of a 13 page phone log.  None of these documents reflect charges or costs of any kind, allocable to either the 2007 or 2010 audits.

I.    G & A - PX 441

In its exhibit list, *see* ECF No. 144-1, ACLR proffered PX 441 which is a 465 page proposed exhibit, identified by ACLR  as "G&A Invoices," that contains a multitude of individual documents of various types inside itself.  PX 431 shows a hodgepodge of receipts and invoices, *none of which mention* the 2007 or 2010 audits at issue, or reflect *any* costs incurred, reasonable or otherwise, with respect to the two audits.  Representative examples from this exhibit are as follows:

- PX 441 at 50 (T4C01008; App62) features a receipt for $179.94 of flowers sent for Valentine's Day to Riley Mucke, Lauren Mucke, and Courtney Mucke.

- PX 441 at 153 (T4C01111; App63) includes a $778.92 receipt from a Costco in Livonia, Michigan.  Two of the line items on this receipt are eight gift cards for two restaurants — Flemings and Andiamo — valued at a total of $639.92.  The other items on this receipt include bottles of wine, salmon, and flowers.

- PX 441 at 156 (T4C01114; App64) includes a receipt for $77.41 annotated with "Jason's [birthday] lunch."

---

[8] Due to PX 349's size, an excerpt has been provided.

- PX 441 at 170 (T4C01128; App65) includes a $254.55 receipt for a party of 11 people at Outback Steakhouse, annotated with "Happy Birthday!"

- PX 441 at 180 (T4C01138; App66) includes a receipt for at least $350.81 from a store called the great indoors, including line items for a toaster and an item called "Amsterdam, MDS" valued at $139.99.

- PX 441 at 227 (T4C01185; App67) includes a $2,012.94 receipt for an espresso machine and coffee beans from Sur La Table.

- PX 441 at 230 (T4C01188; App68) includes a receipt for—among other things— jam, margarine, eggo waffles, frozen pizzas, muffins, and string cheese.

- PX441 at 253 (T4C01211; Appx69) includes a receipt for $73.68 worth of sardines.

- PX 441 at 255 (T4C01213; App70) includes a receipt from Bed Bath & Beyond for a candle warmer.

- PX 441 at 285 (T4C01243; App71) features a receipt from Kroger for various groceries, including, snickers ice cream bars, soup, and bread, as well as a receipt from Busch's Fresh Food Market for 1.75 liters of Gilbeys Gin.

- PX 441 at 306-09 (T4C01264-68; App72-75) features two legal invoices from the law firm Clark Hill P.L.C. for legal services provided to ACLR, including for "Review of GSA schedule and CMs task award," and "possible breach of CMS task order," and "Receipt and review of VA solicitation."

- PX 441 at 313-30 (T4C01271-88); features legal invoices from Greensfelder Attorneys at Law regarding a range of legal advice, including "social media

13

issues" (T4C01272; Appx76), "review of lease" (T4C01274; App77), "Review

lease re: installation of telecommunication service" (T4C01276; App78), protest

of VA procurement and bid protest by Allpro (T4C01278; Appx79), a review of

documents regarding a credit card agreement (T4C01281; App80), and issues

regarding a fraudulent credit report (T4C01287; App81).

- PX 441 at 340 (T4C01298; App82) features a receipt from Ironwood for $50.00

  annotated with "Mucke anniversary gift[.]"

- PX 441 at 380 (T4C01338; App83) includes a receipt from Meijer for—among

  other things—$51.98 worth of "AMMO," *e.g.*, ammunition.[9]

## **RELEVANT PROCEDURAL BACKGROUND**

On January 27, 2021, ACLR moved for summary judgment, seeking $6,095,118.35 in

---

[9] On October 19, 2022, ACLR notified defendant's counsel via email of the following:

"ACLR has reviewed its G&A costs and identified four inadvertent inclusions.  These four include the following:

1) May 17, 2011 - $63.50 of alcohol during a lunch charge was included in the costs.  The tip was 22% of the overall bill so the portion of the tip allocated to the alcohol was $13.97.  ACLR will reduce its G&A costs for this lunch by $77.47.
2) September 28, 2011 - $20.11 of alcohol was inadvertently included in the costs.  ACLR will reduce its G&A costs for this charge of $20.11.
3) October 26, 2011 – A $73.79 expense was inadvertently included in the costs.  ACLR will reduce its G&A costs for this charge of $73.59.
4) November 9, 2011 – A charge of $185.76 was inadvertently included in the costs.  ACLR will reduce its G&A costs for this charge of $185.76.

Accordingly, ACLR will reduce its G&A costs by $356.93."

We note, however, that none of the charges we have identified in PX 441, above, have been withdrawn.

damages for the constructive termination of the 2007 and 2010 Duplicate Payment audits.  *See* ECF 107 (plaintiff's opening summary judgment brief).  Following briefing on the matter by the parties, *see* ECF 115 (defendant's responsive summary judgment brief), and ECF 119 (plaintiff's summary judgment reply), the Court denied ACLR's motion.  *See* ECF No. 120 (November 19, 2021 sealed Opinion and Order) and ECF No. 125 (December 15, 2021 public Opinion and Order).[10]  The Court subsequently scheduled the case for trial, to commence on November 10, 2022.  *See* ECF No. 166.

By order dated October 5, 2022, the Court identified three predicate questions that must be answered before any trial to consider ACLR's evidence of claimed costs:

1.      What is, as a factual matter, plaintiff's standard record keeping system?

2.      Does that system comport with the legal requirements of 48 C.F.R. § 52.212-4(l)?

3.      Do the categories of supporting evidence that plaintiff intends to present at trial satisfy the relevant legal requirements?

*See* ECF No. 164.

In response to the Court's order, on October 14, 2022, ACLR filed a declaration from its managing principal, Christopher Mucke, that purports to answer the first question posed by the Court.  *See* ECF No. 167-1.  ACLR asserts that its "standard record keeping system," includes the use of Quickbooks (accounting software), Microsoft File Explorer (used to store "vendor invoices, client work product, and achieved communications data"), Microsoft Outlook (used to

---

[10] As the Court has noted, because the parties had no redactions to the sealed opinion, that opinion, and the public opinion, are otherwise identical.  *See* ECF 125 at 1 n.1.  In this memorandum, any citation to the Court's prior ruling denying ACLR's motion for summary judgment on the termination for convenience claim will be to the public opinion, ECF 125.

store e-mails), "various external file storage devices" (backup storage) and "paper files" (for

"contract information").  ECF No. 167-1 (¶ 3).

By order dated October 12, 2022, the Court authorized the United States to file a motion

for summary judgment, and set a briefing schedule therein, explaining that, "a motion for

summary judgment is warranted because the contours of plaintiff's standard record-keeping

system are central to the resolution of this case." *See* ECF No. 166.

This motion follows.

<u>**ARGUMENT**</u>

I.   <u>**Standard Of Review For Summary Judgment**</u>

"A party may move for summary judgment, identifying each claim or defense – or the

part of each claim or defense – on which summary judgment is sought."  RCFC 56(a).  "The

[C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

"By its very terms, this standard provides that the mere existence of some alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis supplied, interpreting Fed. R. Civ. P.

56).[11]  A dispute is "genuine" only if a reasonable fact-finder could resolve a factual matter in

favor of either party.  *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998)

---

[11] "The Court of Federal Claims applies the same summary judgment standard as that of federal district courts."  *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007) (citing RCFC 56 and Fed. R. Civ. P. 56); *accord* RCFC 56 Rules Committee's Note (July 15, 2011) ("RCFC 56 has been rewritten in its entirety to reflect the corresponding revision of FRCP 56 that became effective December 1, 2010.").

(citing *Anderson*, 477 U.S. at 247).  A fact qualifies as "material" only if it would affect "the outcome of the case."  *Id.*

When considering a motion for summary judgment, the Court draws in favor of the non-movant all "justifiable factual inferences" based upon the "evidence of record."  *Scott Timber Co. v. United States*, 333 F.3d 1358, 1369-70 (Fed. Cir. 2003).  The Court's obligation to draw justifiable "inferences in favor of [the non-movant] does not mean [that it] must credit a version of the facts that is belied by the record."  *Tabbaa v. Dep't of Homeland Security*, 509 F.3d 89, 93 n.1 (2d Cir. 2007) (interpreting Fed. R. Civ. P. 56).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (same); *NantKwest, Inc. v. Lee*, 686 F. App'x 864, 874 (Fed. Cir. 2017) (quoting *Scott*, 550 U.S. at 380).

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (interpreting Fed. R. Civ. P. 56)); *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (same).  "When a party moves for summary judgment on an issue as to which the other party bears the burden of proof, the moving party need not offer evidence, but may obtain summary judgment merely by pointing out to the court 'that there is an absence of evidence to support the nonmoving party's case."  *DJ Mfg. Corp. v. United States*, 86 F.3d 1130, 1135 (Fed. Cir. 1996) (quoting *Celotex*, 477 U.S. at 325); *accord Dairyland Power*, 16 F.3d at 1202 (same).

After the moving party has met its burden, the burden "shifts" to the non-movant, who

must produce countering evidence sufficient to create "a genuine issue of factual dispute."

*Armitage v. United States*, 991 F.2d 746, 751 (Fed. Cir. 1993).  The non-movant "may not rest

upon the mere allegations or denials of his pleading, but his response, by affidavits or as

otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine

issue for trial."  RCFC 56(e).  "If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party."  *Id.*

      To survive a motion for summary judgment, the non-movant may not rely upon "mere

assertions of counsel," "mere denials," or "conclusory statements."  *Mingus Constructors, Inc. v.*

*United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987) ("mere denials or conclusory

statements"); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir.

1987) ("mere assertions of counsel," interpreting Fed. R. Civ. P. 56).  The non-movant also

"must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (interpreting Fed.

R. Civ. P. 56).  "A nonmoving party's failure of proof concerning the existence of an element

essential to its case on which the nonmoving party will bear the burden of proof at trial

necessarily renders all other facts immaterial and entitles the moving party to summary judgment

as a matter of law."  *Dairyland Power*, 16 F.3d at 1202 (citing *Celotex*, 477 U.S. at 323).

      The United States Court of Appeals for the Federal Circuit has opined that

summary judgment must be granted against a party who "has not introduced evidence

sufficient to establish the existence of an essential element of that party's case, on which the

party would bear the burden of proof at trial."  *See Univ. of W. Virginia Bd. of Trustees v.*

*VanVoorhies*, 278 F.3d 1288, 1295 (Fed. Cir. 2002) (citing *Celotex,* 477 U.S. at 322);  *see also*

*Filtroil, N.A., Inc. v. Maupin*, 178 F.3d 1310, *3 (Fed. Cir. 1998) ("a promise to produce evidence at trial is not sufficient to forestall summary judgment"); *Raitport v. United States*, 74 F.3d 1259, *2 (Fed. Cir. 1996) (appellant "had an opportunity to submit evidence to rebut the presumption of laches. Because he did not introduce sufficient evidence, the Court of Federal Claims correctly granted the United States summary judgment motion for laches.").

Likewise, this Court has held that when a plaintiff fails to present sufficient evidence to create an issue of material fact or to carry its burden to prove an element of its claim, summary judgment must be granted.  *See Henke v. United States*, 43 Fed. Cl. 15, 28 (1999) ("There is not sufficient evidence presented by plaintiff to create an issue of material fact with respect to the formation of a contract or to show ratification by an authorized individual. Defendant's supplemental motion for summary judgment must, therefore, be granted").

## II.   Termination For Convenience Is Governed By FAR § 52.212-4(l)

The applicable termination for convenience clause that governs this action, as set forth in the GSA Contract and task order, is FAR § 52.212-4(l).  DX3 at SA778; DX4 at A158; *see* ECF 125 at 1, 5-7 (holding same); *see also Krygoski v. United States*, 9 F.3d 1537, 1540, 1545 (Fed. Cir. 1996) (the termination for convenience clause in a contract "governs the legal relations of the parties").

The three threshold questions that the Court has ordered the parties answer, *e.g.*, (1) what is, as a factual matter, plaintiff's standard record keeping system; (2) whether that system comports with the legal requirements of 48 C.F.R. § 52.212-4(l); and (3) whether the categories of supporting evidence that plaintiff intends to present at trial satisfy the relevant legal requirements, *see* ECF No. 164, clearly derive from the second, so called "reasonable charges"

19

prong of the termination for convenience clause, FAR § 52.212-4(l).  That clause states, in

relevant part that a contractor shall be paid, "reasonable charges the Contractor can demonstrate

to the satisfaction of the Government using its *standard record keeping system*, have resulted

from the termination." 48 C.F.R. § 52.212-4(l) (emphasis added).

ACLR attempted to answer the first question.  *See* ECF No. 167-1.  The answer to

the Court's second and third questions are unequivocally, "no," as we will demonstrate.

A.      <u>FAR § 52.2124(l) Must Be Interpreted By Its Plain Language</u>

The applicable termination clause is both a regulation, 48 C.F.R. § 52.212-4(l), and a

contract clause.  *See* App3.  The standard for interpreting both are comparable.  The Court must

read a regulation to give full meaning to all of its provisions.  *Baude v. United States*, 955 F.3d

1290, 1305 (Fed. Cir. 2020) ("A statute or regulation should be interpreted by its plain language,

and "'should be construed so that effect is given to all its provisions, so that no part will be

inoperative or superfluous, void or insignificant . . . .'") (quoting *Corley v. United States*, 556

U.S. 303, 314 (2009)).

Relatedly, where the provisions of a contract "are phrased in clear and unambiguous

language, they must be given their plain and ordinary meaning, and [the court] may not resort to

extrinsic evidence to interpret them."  *See Coast Fed. Bank v. United States*, 323 F.3d 1035,

1038 (Fed. Cir. 2003) (*en banc*).  Moreover, the contract "must be considered as a whole and

interpreted as to harmonize and give reasonable meaning to all of its parts."  *Id*.; *see also*

*Varilease Tech Group, Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) ("[c]ontract

interpretation is a question of law generally amenable to summary judgment").

**B.     A Standard Record Keeping System Must Demonstrate A Contractor's Reasonable Charges**

In this context, the clause "standard record keeping system," cannot be interpreted or understood in isolation, but must be considered in relation to the other language in the "reasonable charges" prong of the termination clause.  *See Baude*, 955 F.3d at 1305; *Coast Fed. Bank*, 323 F.3d at 1038.  The plain language "reasonable *charges* the Contractor can *demonstrate . . . using* its standard record keeping system, have resulted from the termination," 48 C.F.R. § 52.2124(l) (emphasis added), manifests that a contractor's "standard record keeping system" must, at a minimum, demonstrate or reflect "charges" and must somehow connect those charges to the relevant termination.

FAR § 52.212-4(l) does not define the terms "charges" or "standard record keeping system," nor does any other provision of the FAR that we are aware.  The Armed Services Board of Contract Appeals (ASBCA), however, has defined the term "'charge' in FAR § 52.212-4(l) [to] 'mean[]' '[an] expenditure or incurred expense.'" *See SWR, Inc.,* ASBCA No. 56708, 15-1 BCA ¶ 35,832 at p. 23.  Black's Law Dictionary defines "charges" as, the "expenses which have been incurred, or disbursement made, in connection with a contract."  *Charges*, Black's Law Dictionary (5th ed 1979).

The "reasonable charges" language in FAR § 52.212-4(l), therefore, which is not ambiguous, can be interpreted to mean a plaintiff must prove its "reasonable expenses" incurred "using its standard record keeping system."  *See e.g.*, *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346-47 (Fed. Cir. 2005) (regulatory interpretation, like statutory interpretation, is determined by its plain language, and consider the terms in accordance with their common meaning); *see also Massachusetts Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed.

21

Cir. 2015) (a court may look to a regulation's plain language, and need not defer to agency interpretation of a regulation, where the regulation is unambiguous).   As we demonstrate, below, the vast majority of ACLR's proffered trial exhibits fail to meet even the minimal requirement of a "standard record keeping system," as the documents fail to indicate "charges" of any kind.

The inclusion of the "reasonable charges" language in FAR § 52.2124(l) manifests an express regulatory intent that a plaintiff must do more than gather documents from disparate and unrelated sources — such as email programs, file explorer systems, and paper files — to guess at its costs, which is what ACLR's "system" reflects.  *See* ECF No. 167-1.  Similarly, the inclusion of language in FAR § 52.2124(l) requiring a plaintiff to show the charges "have resulted from the termination" manifests further regulatory intent that a plaintiff must provide proof that any claimed charge was incurred in connection with the terminated contract.

Furthermore, the language "standard record keeping system" used in conjunction with "reasonable charges" suggests that the records were kept contemporaneously with their creation. In other words, when the charge is incurred, a record is created reflecting that charge and its relationship to the contract.  ACLR's post hoc collection of random documents does not meet the terms or even the spirit of a standard record keeping system.

## C.    ACLR's System Fails To Satisfy The Legal Requirements Of FAR § 52.212-4(l)

ACLR admits that its documents were not produced from a unified system, but rather were collected from multiple sources:  Quickbooks, Microsoft Outlook, Microsoft File Explorer, "external suppliers and various external file storage devices," and "paper files."  *See* ECF No. 167-1.  ACLR states that it tracks costs by inputting individual amounts paid or incurred into

Quickbooks. *Id*. at 2.[12]  But ACLR does not identify Quickbooks as its standard record keeping system for costs, instead claiming that its practice is to keep records for costs in a variety of sources including Microsoft File Explorer and paper files.

ACLR's claimed "system" does not meet the definition of a "standard record keeping system."  By including Outlook (storage of emails), Microsoft File Explorer (which encompasses all files saved to a computer system), external storage devices, and "paper files" in its definition, ACLR is asking the Court to find that *anything and everything* in ACLR's possession is part of its standard record keeping system.  *See* ECF No. 167-1.

ACLR's purported "standard record keeping system," is so exceedingly overbroad as to include *every conceivable document that it saved and intends to introduce into evidence,* from electronically saved documents to "paper files," as to render the term "standard record keeping system" in FAR § 52.2124(l) essentially meaningless.  The clause "standard record keeping system" is not a talisman.  Simply labeling any random document with the imprimatur of "standard record keeping system" does not make it so.  Here, ACLR has not identified a standard record keeping system, but merely listed sources of where it turned in its post-hoc effort to create a basis for this Court to award termination for convenience costs.  No contractor should be allowed to evade the requirement of responsible cost collecting that this contract, through the termination provision, requires, but this is particularly the case for this contractor, one retained to review the alleged costs incurred by others, yet unable to maintain its own record-keeping system.

---

[12] ACLR does not explain why it failed to allocate or track these costs by project when inputting them into Quickbooks.  *Id*.

In fact, there is a body of highly persuasive authority from the boards of contract appeal which holds that the term "standard record keeping system," is not all inclusive, but excludes certain types of documents.  Boards have weighed in on situations where a contractor has failed to meet its proof burden of demonstrating costs from a standard record keeping system.  These decisions provide relevant examples of when a plaintiff's evidence failed to exceed the level of mere speculation:

- "vague estimates of time" spent performing activities such as sending emails. *See First Division Design*, ASBCA No. 60049, 18-1 BCA, ¶ 37,201 at p. 13.

- estimated labor hours without documentation of a rate of compensation (such as when personnel does not take a salary), or documentation of the time expended by personnel on the relevant task.  *See First Division Design*; 18-1 BCA ¶ 37,201 at p. 13-14; *see also Dream Mgmt., Inc., v. Dep't of Homeland Sec.*, CBCA 5517, 17-1 BCA ¶ 36,716 at p. 12 ("DMI has failed to meet its burden of proving that it is entitled to the $4816 in costs it claims for setting up the line. DMI only estimated the time expended after-the-fact and failed to maintain a log or keep track of the time claimed. DMI also failed to provide any payroll records, canceled checks, or project documentation to support these costs or hourly rates.").

- collections of email traffic that purport to show that time was spent communicating about a relevant task, as such collections of emails "do not . . . reflect hours recorded in a standard record keeping system, nor provide support for the labor rate applied to the hours[.]"  *First Division Design*, 18-1 BCA ¶

37,201 at p. 14 (citing *Campus Management Corporation*, ASBCA Nos. 59924, 59925, 17-1 BCA ¶ 36,727 at 178,875).

- costs for third parties such as consultants without contemporaneous documentation showing the agreement for work performed, the work product, or the results of the work performed. *First Division Design,* 18-1 BCA ¶ 37,201 at p. 14 (citing *SWR*, 15-1 BCA ¶ 35,832 at 175,230).

- travel costs, even if supported by documentation of the amount of costs, without contemporaneous documentation showing a link between the travel and the relevant activity. *First Division Design*, 18-1 BCA ¶ 37,201 at p. 14.

- tables purporting to show employees' compensation rates, but without any indication of the work performed by those individuals. *Avant Assessment, LLC*, ASBCA No. 61358, BCA ¶ 37,158 at 4.

- invoices that leave it to the trier of fact to conduct calculations to determine the amount of any charges. *Id*.

- testimony regarding compensation rates or number of hours worked contemporaneous documentation to support the claimed charges. *See Escgov, Inc.*, ASBCA No. 58852, 17-1 BCA 36,772 at p. 11 ("However, a contractor may not rely upon testimony alone to support its claim to charges resulting from a commercial items convenience termination; it must, at least, point to contemporaneous documentation supporting the claimed charge.") (citing *SWR*, 15-1 BCA ¶ 35,832 at 175,230-31 (applying FAR 52.212-4(1)).).

- testimony, even testimony under oath, without supporting documentation.

*Campus Mgmt. Corp.*, ASBCA No. 59924, 17-1 BCA ¶ 36,727 at p. 6 ("We take [the requirements of FAR 52.212-4(1))] to mean that a contractor must provide documentation of its costs and that testimony under oath by a company officer without any such documentation does not suffice to prove such costs.") (citing SWR, 15-1 BCA ¶ 35,832 at 175,230).

## III. ACLR's Categories Of Supporting Evidence Fail To Satisfy The Legal Requirements FAR § 52.212-4(l)

In answer to the third question posed by the Court, *see* ECF No. 164, the answer is no – the categories of supporting evidence that ACLR intends to present at trial do not satisfy the legal requirements of FAR § 52.212-4(1).  ACLR's proffered evidence is insufficient to support the termination for convenience costs that it claims.

### A. ACLR Bears The Burden Of Proving Its Reasonable Charges Using Its Standard Record Keeping System

As the plaintiff in this lawsuit, ACLR bears the burden of "proving the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation."  *See Lisbon Constructors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987) (citation omitted); *see also* ECF 125 at 8 (quoting same).  ACLR fails to satisfy this standard.  As previously demonstrated, the plain language of FAR § 52.212-4(l), as this Court has opined, "requires that [ACLR] prove its reasonable charges 'using its standard record keeping system.'"  ECF 125 at 8 (quoting FAR § 52.212-4(l)).  ACLR fails to meet this requirement.

### B. Personnel Costs And Managing Principal Costs: 2007 And 2010 Audits

ACLR seeks damages for personnel costs, and managing principal costs, for the 2007 and

2010 audits.  Each of these cost claims is based upon the "hours" that ACLR personnel and Mr. Mucke allegedly worked on the two audits.  Due to the absence of supporting documentation, ACLR's claimed hours and related costs are nothing more than speculative estimates.

First, ACLR concedes that its "personnel did not maintain time sheets that attributed work to a particular project."  *See* ECF No. 150 ¶ 81.  ACLR concedes that Mr. Mucke "did not specifically track his hours worked on the Part D RAC Contract."  *Id*. ¶ 56.  This necessarily means that any claim to hours worked by ACLR employees and Mr. Mucke are estimates, a fact that ACLR does not dispute.  *Id*. ¶ 113 ("ACLR may use estimates to support its cost claims").

ACLR estimated the that its managing principal, Mr. Mucke, and other personnel worked "approximately 4,376 hours on the 2010 audit," which involved "prepar[ing] and exchang[ing] thousands of email communications internally and with CMS," and "compil[ing], analyz[ing], and review[ing] thousands of other documents" for the 2010 audit.  *Id*. ¶¶ 82-84.

ACLR's personnel cost claims are immediately questionable because ACLR does not support them with *any* contemporaneous documentation of expenditures or charges from ACLR's "standard record keeping system" as required by FAR § 52.212-4, or any record keeping system for that matter.  Instead, ACLR relies entirely upon a speculative determination of "estimated hours" its officers and staff worked.  *Id*. ¶ 81 (admitting that ACLR did not maintain "time sheets" to record the hours of its personnel); *see First Division Design*, 18-1 BCA ¶ 37,201 at 181,104 (claims charges were "unrecoverable because the termination settlement claim should be based upon actual costs," not estimates).

 ACLR's "estimates" are based upon the following:

Emails exhibits – PX 1-3, 5, 6, 9, 10, 12-17, 19, 21-32, 34-49, 52-62, 65, 67-71, 73-86,

92, 104, 112, 117, 119, 123-26, 128-36, 141-43, 146, 148, 150-53, 156-59, 161-75, 177-82, 184, 185, 188-240, 242-46, 248, 250-57, 259, 261-63, 265, 267, 270, 273-300, 314-22, 324-36, 339-46, 348, 355, 356, 358-68, 375, 376, 386, 387, 393-416, 418, 427;

Technical Data exhibits – PX 272, 302-04, 307, 308, 310, 312, 313, 338, 347, 353, 354, 372-74, 379, 380, 383, 384, 389;

Computer File Directory exhibits – PX 183, 241, 247, 271, 301, 305, 309, 337, 350, 351, 357, 369-371, 377, 378, 385, 391, 392;

CMS Document exhibits – PX 4, 7, 8, 91, 94-100, 102, 105, 115, 264, 268, 269;

ACLR Notes & Data exhibits – PX 66, 87-90, 101, 103;

Miscellaneous Document exhibits – PX 11, 64, 72, 93, 106-09, 113, 306, 311, 349, 352, 381, 382, 388, 390, 419, 430, 432, 434-36, 438, 439, 445, 447, 449, 451, 453, 455, 456.
*See* ECF No. 144-1.

*Not one* of ACLR's proffered exhibits, as identified above, show charges or costs of any kind.  Nor do these documents reflect charges or costs allocable to the 2007 and 2010 audits at issue.  *See also* Appendix (exemplars).  In short, the vast majority of ACLR's 465 exhibits are "thousands of emails" and "thousands of other documents," that its managing principal and staff purportedly worked on, *see* ECF No. 150 ¶¶ 82-83, but which fail to show expenses, costs, or charges of any kind.

This Court has opined, "[e]mails and documents demonstrating the employees' work on the contract are likewise insufficient – they do not reflect hours recorded in a standard record keeping system."  *See* ECF No. 125 at 11-12 (citing *First Division Design*, 18-1 BCA ¶ 37,201 at 181,102 (citing *SWR*, 15-1 BCA ¶ 35,832 at 175,230)).  Likewise, this Court has opined that

such evidence is insufficient to support a claim for managing principal costs.  *See* ECF 125 at 11

(citing *SWR*, 15-1 BCA ¶ 35,832 at 175,230) ("Emails demonstrating that Mr. Mucke worked on

the contract are also insufficient - - they do not reflect hours recorded in a standard record

keeping system").  Ignoring the Court's ruling, ACLR appears intent on presenting the same

insufficient evidence, which the Court has already rejected.

With respect to ACLR's W-2 records, PX 431, the documents show wages and tax

withholding of unknown[13] employees, but make *no mention* of the 2007 or 2010 audits at issue,

or reflect *any* costs incurred with respect to the two audits.  *See First Division Design*, 18-1 BCA

¶ 37,201 at 181,104 (claimed charges must be supported by documentation, allocable to the

contract at issue); *see also ESCGov, Inc.*, 17-1 BCA ¶ 36,772 at 11 ("a contractor may not rely

upon testimony alone to support its claim to charges resulting from a commercial items

convenience termination; it must, at least, point to contemporaneous documentation supporting

its claimed charge"); *see also* ECF No. 125 at 10-11 ("'[T]estimony of costs incurred without

support from the contractor's standard record keeping system, is not sufficient to find

recoverable costs'").

ACLR's use of the GSA rate schedule to calculate Mr. Mucke's "hourly rate" is also

suspect, as it does not reflect direct labor costs actually incurred, even assuming he worked the

incredible hours he claims, and assuming he actually worked those 15-hour days solely on the

2007 audit at issue (none of which ACLR can actually prove).  *See* ECF No. 159 ¶ 56 ("Mr.

Mucke did not specifically track his hours").  The GSA rate is not equivalent to actual labor cost.

---

[13] ACLR redacted the names of the employees for each W-2, making it impossible to understand which employee each W-2 represents and whether there was any connection between their compensation and the relevant audits.

The GSA rate schedule reflects a "price," not a cost, and includes wages, benefits, G&A and profit. ACLR has offered no evidence that it actually paid Mr. Mucke anything close to the amounts claimed as a cost. The ASBCA's opinion in *First Division Design*, is illustrative on this point. The board held that,

> FDD [Fist Division Design] relies upon rates established by the Bureau of Labor Statistics to formulate an approximation of [employee's] compensation. These costs are without support from a standard record keeping system. They are unrecoverable because the termination settlement claim should be based on actual costs.

*See First Division Design*, 18-1 BCA ¶ 37,201 at 181,102. ACLR's use of a GSA rate, to "approximate," Mr. Mucke's and other ACLR's employees' rate of compensation is similarly unrecoverable and legally insufficient.

### C.  General And Administrative Costs

Next, ACLR claims G&A costs in connection with the 2007 audit. *See* ECF No. 150 ¶¶ 60-61. PX 431, ACLR's proffered exhibit for G & A charges, shows a hodgepodge of receipts and invoices, *none of which mention* the 2007 or 2010 audits at issue, or reflect *any* costs incurred, reasonable or otherwise, with respect to the two audits. *See First Division Design*, 18-1 BCA ¶ 37,201 at 181,104 (claimed charges must be supported by documentation, allocable to the contract at issue); *see also ESCGov, Inc.*, 17-1 BCA ¶ 36,772 . Furthermore, ACLR's proffered exhibit of its G&A claims, PX 441, reflects charges for such obviously inappropriate items as alcohol, anniversary gifts, and gun ammunition, and is inherently "unreasonable." *See* FAR 52.212-4(l). Going through PX441, which is over 400 pages, it is impossible to discern any reasonable charges connected to the two audits. *See Avant Assessment, LLC*, BCA ¶ 37,158 (a plaintiff does not satisfy its burden of proof by presenting invoices and leaving it to the trier of

fact to conduct calculations to determine the amount of any reasonable charges).

### D.   Loan Interest Costs

ACLR next claims $176,426.46 in loan interest costs in connection with the 2007 audit. *See* ECF No. 150 ¶75; PX440.  ACLR has no legal basis for this demand, as the Court has already held.  *See* ECF No. 125 at 14 ("The Court agrees with defendant that [ACLR] has no legal basis to request interest on a loan it executed to fund its work on the contract") (citations omitted); *see also Servidone Construction Corp. v. United States*, 931 F.2d 860, 863 (Fed. Cir. 1991) (citations omitted) (a court "may not award interest on monetary claims against the Government unless specifically authorized by statute or contract"); *see also*, *e.g.*, FAR § 31.205-20 (interest on borrowings is not an allowable cost).

Ignoring the Court's prior ruling, ACLR brings a claim for loan interest costs anyway. ACLR thus fails to meet its burden of demonstrating that $176,426.46 in claimed interest cost is a reasonable charge it incurred for the termination for convenience of the 2007 audit.  *See* FAR 52.212-4(l).

### E.   Settlement Fees

Next, ACLR claims a total of $731,658.56 in legal fees "attributable to this lawsuit", and $1,456,160.31 for ACLR's "internal work efforts" on its legal claims.  *See* ECF 150 ¶¶ 96, 99, 101, 105 at 16-18.  ACLR makes clear that these are costs incurred to litigate its legal claims that ACLR brought against the United States.  *See*, *e.g.*, ECF  ¶¶ 97-99, 124 ("Without this lawsuit, CMS would not have taken the position that there was a constructive termination for convenience . . .").  ACLR ignores that the cost to prosecute claims against the United States is not an allowable cost:

> Costs not covered elsewhere in this subsection are unallowable if incurred in
> connection with: (1) Defense against Federal Government claims or appeals or the
> *prosecution of claims or appeals against* the Federal Government.

*See* FAR § 31.205-47(f)(1) (emphasis added).

Furthermore, the Government must affirmatively waive its sovereign immunity from suit for a plaintiff to obtain attorney fees. Absent a statute, such as the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, or an express contractual provision, the United States is not liable for attorney fees. *See DMS Imaging, Inc. v. United States*, 123 Fed. Cl. 645, 661 (2015) ("This comports with the default 'American Rule' that each litigant bear its own legal costs absent a statute or express contractual language to the contrary") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.s. 240, 247 (1975)).

The Court has ruled upon this issue, stating that it "agrees with defendant that the costs associated with prosecuting a claim against the United States are not allowable costs, absent a waiver of sovereign immunity by statute or contractual provision." *See* ECF No. 125 at 17.

ACLR's exhibit of legal billings makes clear that its claimed settlement costs include charges incurred to litigate its legal claims against the United States. *See* ECF No. 144-1 (PX 456). Once again, ACLR ignores the Court's ruling, and seeks reimbursement for the *entirety* of its costs incurred litigating its claims against the Government, including through August of 2020, and including future "attorneys' fees incurred but not yet paid." *See* ECF No. 150 ¶¶ 94-106 and n.2.

Although defendant recognizes that reasonable costs incurred for the preparation of a termination for convenience settlement proposal may be recoverable, as this Court has held, *see* ECF No. 125 at 16-17 (citations omitted), ACLR has made no effort to segregate such costs. As

with its motion for summary judgment, ACLR once again "fail[s] to separate out the costs associated with its termination settlement proposal," *see* ECF No. 125 at 17, for both its claimed legal fees and "internal work effort" claims.  ECF No. 144-1 (PX456).

## **CONCLUSION**

ACLR fails to prove its claim for termination for convenience damages with sufficient evidence.  Accordingly, we respectfully request that the Court grant the United States' motion for summary judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/ Martin F. Hockey, Jr.
_____
MARTIN F. HOCKEY, JR.
Deputy Director

s/ Joseph A. Pixley
_____

OF COUNSEL:

LUCY Mac GABHANN
Office of the General Counsel
U.S. Department of Health and Human Servs.
7500 Security Boulevard
Central Bldg. – Mailstop C2-05-23
Baltimore, MD 21244

October 19, 2022

JOSEPH A. PIXLEY
AUGUSTUS J. GOLDEN
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0843
Facsimile: (202) 307-0972

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on the 19th day of October, 2022, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically.  I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


_____s/Joseph A. Pixley_____