IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ACLR, LLC,                          )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        No. 15-767
                                    )        (Judge Campbell-Smith)
THE UNITED STATES,                  )
                                    )
                Defendant.          )

---

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
### TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL:

JOSEPH A. PIXLEY
AUGUSTUS J. GOLDEN
LUCY Mac GABHANN                    Trial Attorneys
Office of the General Counsel       Commercial Litigation Branch
U.S. Department of Health and Human Servs.   Civil Division
7500 Security Boulevard             Department of Justice
Central Bldg. – Mailstop C2-05-23   P.O. Box 480
Baltimore, MD 21244                 Ben Franklin Station
                                    Washington, D.C. 20044
                                    Telephone: (202) 307-0843
                                    Facsimile: (202) 307-0972

October 27, 2022                    Attorneys for Defendant

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.    Termination For Convenience Is Governed By FAR § 52.212-4(l) ............................... 1

II.   ACLR's System And Its Categories Of Supporting Evidence Fail To Satisfy The
      Legal Requirements FAR § 52.212-4(l) .......................................................................... 5

III.  ACLR Misses A Key Opportunity To Support Its Case ................................................ 11

IV.   ACLR Is An Experienced Contractor Not Deserving Of A Lower Burden Of Proof As
      To What Constitutes A Standard Record Keeping System ........................................... 11

V.    ACLR Is Not Entitled To Loan Interest Costs ............................................................. 15

VI.   ACLR Is Not Entitled To Settlement Fees .................................................................... 16

CONCLUSION ..................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ............................................................................................................ 17

*CSI Aviation v. Dep't of Homeland Security v. United States*,
  31 F. 4th 1349 (Fed Cir. 2021) ......................................................................................... 4

*DMS Imaging, Inc. v. United States*,
  123 Fed. Cl. 645 (2015) ..................................................................................................... 17

*ESCGov, Inc.*,
  ASBCA No. 5882, 17-1 BCA ¶ 36,772 ......................................................................... 10

*First Division Design*,
  ASBCA No. 60049, 18-1 BCA ¶ 37,201 .................................................................... 9, 10

*Gevyn Constr. Co. v. United States*,
  827 F.2d 752 (Fed. Cir. 1987) ........................................................................................ 16

*Group Seven Assoc., LLC v. United States*,
  68 Fed. Cl. 28 (2005) ........................................................................................................ 4

*Grumman Aerospace Corp. v. Wynne*,
  497 F.3d 1350 (Fed. Cir. 2007) ...................................................................................... 12

*JKB Solutions and Services, LLC v. United States*,
  18 F.4th 704 (Fed. Cir. 2021) .................................................................................. 2, 3, 4

*Perfect Form Mfg. LLC v. United States*,
  142 Fed. Cl. 778 (2019) ..................................................................................................... 8

*Servidone Construction Corp. v. United States*,
  931 F.2d 860 (Fed. Cir. 1991) ........................................................................................ 16

*SWR Inc.*,
  ASBCA No. 56708, 15-1 BCA ¶ 35,832 n.4 ........................................................... 12, 13

*Triad Techs., Inc.*,
  ASBCA No. 58855, 15-1 BCA ¶ 35898 ................................................................... 12, 13

**Statutes**

Equal Access to Justice Act,
  28 U.S.C. § 2412 ............................................................................................................... 17

**Rules**

RCFC 56 ................................................................................................................. 1, 11

RCFC 56(c) ................................................................................................................. 11

**Regulations**

48 C.F.R. § 12.403(d) ................................................................................................. 3

48 C.F.R. § 49.201(a) ................................................................................................. 5

48 C.F.R. § 52.212-4 ................................................................................................. 2

48 C.F.R. § 52.212-4(a) ............................................................................................. 3

48 C.F.R. § 52.212-4(l) ........................................................................................ 8, 15

FAR § 2.101 ............................................................................................................... 4

FAR § 12.403 ............................................................................................................. 3

FAR § 12.403(a) ......................................................................................................... 3

FAR § 31.205-20 ...................................................................................................... 16

FAR § 31.205-47(f) .................................................................................................. 17

FAR § 52.212-4 ..................................................................................................... 2, 3

FAR § 52.212-4(a) ...................................................................................................... 3

FAR § 52.212-4(l) ............................................................................................. *passim*

FAR § 52.249-2(g) ................................................................................................... 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ACLR, LLC,                              )
                                       )
            Plaintiff,                 )
                                       )
            v.                         )        No. 15-767
                                       )        (Judge Campbell-Smith)
THE UNITED STATES,                     )
                                       )
            Defendant.                 )

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply to plaintiff ACLR, LLC's (ACLR) opposition to defendant's motion for summary judgment (ECF No. 169 (Oct. 24, 2022)).

As demonstrated in defendant's opening brief (ECF No. 168 (Oct. 19, 2022)), ACLR, LLC (ACLR) fails to present sufficient, relevant evidence to satisfy its burden of proving its termination for convenience costs based upon a standard record keeping system, as that term is used in Federal Acquisition Regulation (FAR) § 52.212-4(l) and the contract.[1]  Accordingly, the Court should grant summary judgment because there are no meaningful facts in dispute and the Government is entitled to judgment as a matter of law.

## ARGUMENT

### I.    Termination For Convenience Is Governed By FAR § 52.212-4(l)

As we demonstrated in our opening brief, and as this Court has expressly held in two prior rulings, the applicable termination for convenience clause that governs this action, as set forth in the General Services Administration (GSA), Federal Supply Schedule and Business

---

[1] The Government's opening brief is referred to as "Def. Br.__, " ECF No. 168.  The Government's appendix attached to our opening brief is referred to as "App__" (ECF No. 168-1).  Plaintiff's response brief is referred to as "Pl. Br.__," ECF No. 169.

Solutions (FABS) Contract (GSA Contract), is Federal Acquisition Regulation (FAR) § 52.212-4(l).  *See* ECF No. 80  at 4, 16 (unsealed April 6, 2020 Opinion and Order) (citing ECF No. 70-1 at 21 (GSA Contract); *see also* ECF 125 at 5-7 (unsealed December 15, 2021 Opinion and Order) (citing ECF No. 70-1 at 21 (GSA Contract); *see also*  Def. Br. at 6-7, 19-20 (ECF No. 168 at 13-14, 26-27 of 42); *see* ECF No. 168-1 (App1-6).

In its response, ACLR does not deny that the GSA Contract included FAR § 52.212-4(l), and that this Court held that FAR § 52.212-4(l) is the termination for convenience clause that governs ACLR's claims.  *See* Pl. Br. at 11 (citing ECF No. 80).  Instead, for the first time, ACLR argues, citing *JKB Solutions and Services, LLC v. United States*, that FAR § 52.212-4(l) is not applicable to its termination for convenience claim, because that FAR provision purportedly does not apply to service contracts.  *See* Pl. Br. at 10-14 (citing *JKB Solutions and Services, LLC v. United States*, 18 F.4th 704 (Fed. Cir. 2021)).  ACLR's argument lacks merit.  ACLR misreads *JKB Solutions*, whose narrow holding is limited to the specific contract at issue in that case.

In *JKB Solutions*, the United States Court of Appeals for the Federal Circuit stated, in relevant part:

> Because FAR 52.212-4[2] applies only to commercial item contracts and because, for purposes of this summary judgment motion, JKB Solutions is *not a commercial items contract*, the Claims Court erred in relying on FAR 52.212-4 to supply an applicable termination for convenience clause.

*See JKB Solutions*, 18 F.4th at 710 (emphasis added); *see also id*. at n.2 (noting that at oral argument "for purposes of its summary judgment motion, the government did not dispute JKB

---

[2] *See* App2 (FAR § 52.212-4 *Contract Terms and Conditions - - Commercial Items* (Mar. 2009) (Deviation Feb 2007); *see also* 48 C.F.R. § 52.212-4.

2

Solutions characterization of the contract as a service contract (and not a commercial item contract))."

ACLR argues that *JKB Solutions* renders FAR § 52.212-4 broadly "inapplicable" to *service* contracts and to its contract in particular. *See* Pl. Br. at 10-13. ACLR's argument lacks merit and its interpretation of *JKB Solutions* is overbroad and incorrect. In fact, the FAR § 12.403 defines the scope of FAR § 52.212-4 as expressly allowing for the termination of commercial *service* contracts: "The clause at 52.214-4 permits the Government to terminate a contract for commercial products or commercial *services* either for the *convenience of the Government* or for cause." *See* FAR § 12.403 (a) (emphasis added); *see also JKB Solutions*, 18 F.th at 710 (citing FAR § 12.403).[3]

Indeed, the term "commercial items," as used in FAR § 52.212-4 includes both supplies (products) and services. This is apparent from the plain language of the FAR clause, which states, in relevant part, "The ordering activity reserves the right to inspect or test any supplies or *services*. . . " *See* App2 (ECF No. 168-1 at 2) (ECF No. 70-1 at 18 (same) (FAR § 52.212-4 (a)) (emphasis added); *see also*  48 C.F.R. § 52.212-4 (a). In addition, the GSA Contract expressly

---

[3] ACLR also cites to FAR § 12.403 in its response brief, completely ignoring that this FAR provision contradicts ACLR's *JKB Solutions* argument, as we have demonstrated, *i.e.*, FAR § 52.212-4 (l) *is applicable* to the termination of commercial service contracts. *See* FAR § 12.403 (a); *see also* Pl. Br. at 14 (citing 48 C.F.R. § 12.403(d)(ii)(2) (highlighting language regarding the importance of "having a simple and expeditious settlement"). In doing so, ACLR ignores the first part of the sentence that it cites: "*The parties must balance the Government's need to obtain sufficient documentation to support payment to the contractor* against the goal of having a simple and expeditious settlement." *See* 48 C.F.R. § 12.403(d)(ii)(2) (emphasis added). Plainly, the intent of the regulation is that there cannot be a "simple and expeditious settlement" of a termination for convenience claim without "sufficient documentation to support payment to the contractor." *Id*.

3

defines commercial item to include services: "'Commercial item' means a product or *service* that satisfies the definition of commercial item in section 2.101 of the Federal Acquisition Regulation." *See* Defendant's Exhibit (Def. Ex.) A at 8 (excerpt of GSA Contract)[4]; *see also* ECF 70-1 at 40 (same); *see also* FAR § 2.101 *Definitions* (defining "Commercial service"); *see also Group Seven Assoc., LLC v. United States*, 68 Fed. Cl. 28, 31 n.6 (2005) ( noting that "commercial items" include services).

Seen in this light, *e.g.,* that the definition of "commercial item" includes *services*, the Federal Circuit's holding in *JKB Solutions* is extremely limited, *i.e.*, limited to the specific contract at issue in that case, which for purposes of summary judgment briefing in that case the parties' agreed was not a "commercial items" contract. *See JKB Solutions*, 18 F.4th at 710 and n.2. Contrary to ACLR's suggestion, the Federal Circuit did *not* hold that FAR § 52.212-4 (l) was inapplicable to service contracts generally.

Nor can there be any question that GSA Supply Schedule Contracts, such as the GSA Contract at issue in this case, expressly include "commercial services." *See CSI Aviation v. Dep't of Homeland Security v. United States*, 31 F. 4th 1349, 1350 (Fed Cir. 2021) (explaining that GSA "'acts as the contracting agent for the federal government' and negotiates 'base contracts with suppliers of commercial products and *services*[]'") (citations omitted) (emphasis added). Unquestionably, FAR § 52.212-4(l), pertaining to "commercial item" service contracts, is the termination for convenience clause that governs this case.[5]

_____

[4] Def. Ex. A are relevant documents provided to supplement the Government's appendix submitted with our opening brief, and provided specifically in response to ACLR's opposition brief.

[5] ACLR argues that the appropriate termination for convenience clause is 48 C.F.R.

## II. ACLR's System And Its Categories Of Supporting Evidence Fail To Satisfy The Legal Requirements FAR § 52.212-4(l)

In our opening brief, we answered two of the three predicate questions that the Court identified and directed the parties to before any trial to consider ACLR's evidence of claimed costs:

1.  What is, as a factual matter, plaintiff's standard record keeping system?[6]

2.  Does that system comport with the legal requirements of 48 C.F.R. § 52.2124(l)?

3.  Do the categories of supporting evidence that plaintiff intends to present at trial satisfy the relevant legal requirements?

*See* Def. Br. at 1-2, 21-33 (citing ECF No. 164).

As we demonstrated, ACLR's purported "standard record keeping system," is so vastly overbroad as to include *every conceivable document in its possession,* from electronically saved documents to "paper files," as to render the term "standard record keeping system" in FAR § 52.212-4(l) essentially meaningless.  ACLR's proffer fails to satisfy the requirements of a standard record keeping system which should, at a minimum, reflect "reasonable charges" that

---

§ 49.201(a), a clause not found in the GSA Contract, but offers no authority or explanation for its assertion.  *See* Pl. Br. at 13-14.  Alternatively, assuming, for argument's sake, the Court agrees with ACLR, the appropriate remedy would be for the Court to remand the case to the contracting agency to undertake a complete audit of ACLR's termination for convenience claims - - which the Government is not allowed to demand under FAR § 52.212-4(l) ("This paragraph does not give the Government any right to audit the Contractor's records []").

[6] ACLR attempted to answer the first question via a declaration from its managing principal, Christopher Mucke, that purports to answer the first question posed by the Court.  *See* ECF No. 167-1.  ACLR asserts that its "standard record keeping system," includes the combined use of QuickBooks (accounting software), Microsoft File Explorer (used to store "vendor invoices, client work product, and achieved communications data"), Microsoft Outlook (used to store e-mails), "various external file storage devices" (backup storage) and "paper files" (for "contract information).  ECF No. 167-1 (¶ 3).

the contractor can prove, are allocable to the termination at issue.  ACLR's self-described "standard record keeping system" does none of this.

The inclusion of the "reasonable charges" language in FAR § 52.2124(l) manifests an express regulatory intent that a plaintiff must do more than gather documents from disparate and unrelated sources — such as email programs, file explorer systems, and paper files  — to invite the Court to guess at its costs, which is what ACLR's "system" reflects.  *See* ECF No. 167-1. Similarly, the inclusion of language in FAR § 52.2124(l) requiring a plaintiff to show the charges "have resulted from the termination" manifests further regulatory intent that a plaintiff must provide proof that any claimed charge was incurred in connection with the terminated contract.

Furthermore, the language "standard record keeping system" used in conjunction with "reasonable charges" suggests that the records must have been kept contemporaneously with the charges they reflect. In other words, when the charge is incurred, a record is created reflecting that charge and its relationship to the contract.  ACLR's post hoc collection of random documents and post hoc creation of charts does not meet the terms or even the spirit of a standard record keeping system.

In its response, ACLR fails to overcome our demonstration, but doubles down on its overbroad definition of a standard record keeping system, and argues that every conceivable type of document it saved, from emails to paper files, is part of its "system."  *See* Pl. Br. at 3-9.  In this endeavor, ACLR starts off well enough, citing to, among other things, an on-line Internal Revenue Service publication for "Recordkeeping," *e.g.*, https://www.irs.gov/businesses/small-businesses-self-employed/recordkeeping, which states, but does not legally require, that a recordkeeping system should show "income and *expenses*," for "federal tax purposes."  *See* Pl.

Br. at 14-15 (citation to online publication omitted) (emphasis added).[7]

ACLR then suggests that "email" fits the bill of a standard record keeping system, *see id.* at 15 ("Email has evolved over time into a standard record keeping system when utilized through an email platform such as Outlook"), but offers no authority for its assertion. ACLR does not explain how email records, let alone emails that contains *zero* expense information, would be of any possible use to the IRS for "federal tax purposes." *See id.* The same holds true for ACLR's other proffered exhibits, *i.e.*, technical data exhibits, computer file directory exhibits, CMS document exhibits, ACLR notes and data exhibits, none of which reflect "expenses" of any kind. *See* Pl. Br. 3-7.

ACLR admits that its documents were not produced from a unified system, but rather were collected from multiple sources: QuickBooks, Microsoft Outlook, Microsoft File Explorer, "external suppliers and various external file storage devices," and "paper files." *See* Pl. Br. at 17-18 (citing ECF No. 167-1). ACLR states that it tracks costs by inputting individual amounts paid or incurred into QuickBooks. *Id.* at 2.[8] But ACLR does not identify QuickBooks as its standard record keeping system for costs, instead claiming that its practice is to keep records for

---

[7] The IRS webpage that ACLR cites, however, provides specific guidance for record keeping of documents related to expenses, stating that "Your supporting documents should identify the payee, the amount paid, proof of payment, the date incurred, ***and include a description of the item purchased or service received that shows the amount was for a business expense*.**" *See* https://www.irs.gov/businesses/small-businesses-selfemployed/recordkeeping. That same webpage links to further IRS guidance on the specifics of maintaining documents to prove that certain expenses are deductible, which states that records must be kept that prove claimed expenses had a "business purpose." *See* https://www.irs.gov/pub/irs-pdf/p463.pdf at 24-26 ("You must generally provide a written statement of the business purpose of an expense").

[8] ACLR does not explain why it failed to allocate or track these costs by project when inputting them into Quickbooks. *Id.*

7

costs in a variety of sources including Microsoft File Explorer and paper files.

Regarding QuickBooks, ACLR cites to *Perfect Form Mfg. LLC v. United States*, 142 Fed.

Cl. 778 (2019), claiming that in that case "the Court recognized QuickBooks as a standard record

keeping system for financial information."  *See* Pl. Br. at 15 (citing *Perfect Form*, 142 Fed. Cl. at

790, n.9).  *Perfect Form*, however, does not refer to QuickBooks as a "standard record keeping

system."  To the contrary, *Perfect Form* described the plaintiff using QuickBooks in that case as

a company "without a sophisticated recordkeeping system[.]" *See Perfect Form Mfg. LLC v.

United States*, 142 Fed. Cl. 778, 787 (2019); *see also id*., at 787 n. 5 (describing the plaintiff

using QuickBooks as having a "lack of [] sufficient recordkeeping").[9]

Indeed, ACLR fully concedes, as it must, that the documents it seeks to introduce do not

contain cost information or provide the Court with any way of determining what reasonable costs

resulted from the termination of the 2007 and 2010 audits.  *See* Pl. Br. at 5 (admitting "ACLR

did not track or otherwise assign costs to individual documents" and that such documents are

only able to "demonstrate the efforts of ACLR personnel").  ACLR further acknowledges that

the only purpose of these documents was to impress upon the Court a general sense of the

"magnitude" of ACLR's work, *see* Pl. Br. at 6, but that none of its proffered exhibit documents

contain any specific time and cost tracking information necessary to carry plaintiff's burden

under 48 C.F.R. § 52.212-4(l).  *See* Pl. Br. at 3 ("ACLR will offer numerous emails into evidence

to demonstrate the work that was done"), 6 (acknowledging computer file directories "were

---

[9] Indeed, Perfect Form itself, the party using QuickBooks, admitted that it "was a startup company without a sophisticated recordkeeping system[.]"  *Perfect Form*. at 787.  Defendant pointed out to ACLR that ACLR had misread *Perfect Form*'s holding in the pre-trial briefing.  *See* ECF No. 155 at 22, n. 9.  ACLR appears to have ignored this information in favor of continuing to present a misleading argument to the Court.

generated to demonstrate the magnitude of ACLR's work efforts" and CMS documents' purpose is to be "evidence of the magnitude of ACLR's work efforts").

In fact, ACLR frankly concedes the weakness of its position when discussing the notes and data exhibits identified by defendant as irrelevant to costs: "While the exhibits referenced by Defendant in this category do not specifically reference any cost, they support ACLR's cost claim because they demonstrate work that ACLR did on the PY 2007 and 2010 duplicate payment audits during the time period ACLR is seeking costs." *Id.* at 7. As this Court has already instructed plaintiff: "Emails and documents demonstrating the employees' work on the contract are likewise insufficient [to meet plaintiff's burden to demonstrate costs]—they do not reflect hours recorded in a standard record keeping system." ECF No. 125 at 11-12 (citing *First Division Design*, ASBCA No. 60049, 18-1 BCA ¶ 37,201).

Elsewhere, ACLR acknowledges and admits that it purposefully included irrelevant documents within compound exhibits, rather than performing the necessary work to ensure an appropriate record, leaving it to defendant and the Court to attempt to segregate ACLR's actual claims from completely irrelevant charges. *See* Pl. Br. at 9 (admitting PX 441 "includes charges that ACLR is not seeking to recover").

As we have demonstrated, the gravamen of ACLR's argument, and the vast bulk of its exhibits attempt to generally impress upon the Court that ACLR "worked" on the two audits. *See, e.g.*, Pl. Br. at 24 ("In connection with the PY 2010 duplicate payment audit, ACLR personnel prepared and exchanged thousands of email communications internally and with CMS"). None of this, however, provides the actual evidence that ACLR is required to produce to carry its burden showing ACLR's actual costs, including the actual hours its personnel

devoted to the 2007 and 2010 audits.  The "cost" element of ACLR's case is to be supplied with witness estimates and guesses as to what costs incurred and how much is allocable to the two contracts at issue, because the documents show no such thing.  *See*, *e.g.*, Pl. Br. at 23 ("Mr. Mucke did not specifically track his hours"); *id*. ("ACLR may use estimates to support its cost claims").

ACLR asserts that it "paid its personnel $408,462.83 on the PY 2007 audit as reflected on their W-2s," *see* Pl. Br. at 22-23, but the W-2s "reflect" no such thing.  ACLR's W-2 records, PX 431, show wages and tax withholding for the entirety of calendar year 2011, but make *no mention whatsoever* of the 2007 or 2010 audits at issue, or reflect *any* costs incurred with respect to the two audits.  *See* App29-39 (ECF No. 168-1).  ACLR argues that these personnel charges are "not estimates," *see* Pl. Br. at 23, but they most certainly are with respect to how much of the charges should be allocated to the audits at issue.  The W-2's do not show that the employees actually "worked" on anything, only that they received wages and had taxes withheld.  *See* App29-39 (ECF No. 168-1).  The W-2's do not show projects or tasks.  *Id*.  Any evidence of what "work" the employees performed must necessarily come from unsupported testimony.  *See First Division Design*, 18-1 BCA ¶ 37,201 at 181,104 (claimed charges must be supported by documentation, allocable to the contract at issue); *see also ESCGov, Inc.*, ASBCA No, 5882, 17-1 BCA ¶ 36,772 at 11 ("a contractor may not rely upon testimony alone to support its claim to charges resulting from a commercial items convenience termination; it must, at least, point to contemporaneous documentation supporting [its] claimed charge"); *see also* ECF No. 125 at 10-11 ("'[T]estimony of costs incurred without support from the contractor's standard record keeping system, is not sufficient to find recoverable costs'").

10

III. <u>__ACLR Misses A Key Opportunity To Support Its Case__</u>

On summary judgment, pursuant to RCFC 56, a party asserting a factual position may

cite to a variety of materials, including "electronically stored information."  *See* RCFC

56(c)(1)(A).  The shear evidentiary weakness of ACLR's case is exemplified by the appendix of

exhibits it submitted with its response brief.  *See* ECF No. 169-1.  Not *one* of the documents that

ACLR submitted in its appendix reflects "charges" or costs incurred, allocable to the 2007 and

2010 audits at issue.  *See id.*[10]  In other words, ACLR, the party unquestionably most familiar

with its own voluminous records and exhibits, had an opportunity to demonstrate "reasonable

charges" from its "standard record keeping system," assuming it has any, with actual examples -

- and has utterly failed to do so:  not including a single relevant example in its opposition.  *See*

ECF No. 169-1.  To the contrary, ACLR's appendix actually supports the Government's case by

continuing to present further irrelevant evidence that fails to demonstrate any reasonable costs

allocable to the termination at issue.

IV. **ACLR Is An Experienced Contractor Not Deserving Of A Lower Burden Of Proof**
**<u>As To What Constitutes A Standard Record Keeping System</u>**

In its response, ACLR attempts to skirt the "standard record keeping requirement" by

citing to dicta in an ASBCA decision, wherein the board stated, "[w]e do not interpret the

---

[10] In its appendix, ACLR includes an email document, reflecting that it reduced its claimed G&A costs by $356.92.  *See* ECF No. 169-1 at 21. ACLR also included PX 442, its "General Administrative T4C Cost Summary."  *See* ECF No. 169-1 at 25.  As we demonstrated in our opening brief, the actual documents that support ACLR's ginned-up G&A Cost Summary (PX 442) are found in PX 441 - - which includes a host of highly questionable items such as receipts for birthday and anniversary gifts, alcohol, and gun ammunition.  *See* Def. Br. at 12-14, 30-31; *see also* App62-83 (ECF No. 168-1).  ACLR now admits that PX 441 "includes charges that ACLR is not seeking to recover," *see* Pl. Br. at 9, leaving what G&A charges it does seek to recover anyone's guess.

language 'using its standard record keeping system' so narrowly as to preclude recovery if a contractor's 'standard record keeping system' is *lacking sophistication*[.]"  *See* Pl. Br. at 15-16 (emphasis added) (quoting *Triad Techs., Inc.*, ASBCA No. 58855, 15-1 BCA ¶ 35898).  ACLR argues, thereby, that it should be permitted to make "estimates" of its costs based upon e-mails and other documents that do not constitute "'contractor record[s].'"  *See* Pl. Br. at 15-16. (citations omitted).  ACLR's argument lacks merit and its reliance upon *Triad* is misplaced.

First, while board of contract appeal cases may be persuasive on certain issues, such authority is not binding upon this Court.  *See Grumman Aerospace Corp. v. Wynne*, 497 F.3d 1350, 1356 (Fed. Cir. 2007).  In any event, *Triad* is distinguishable from the instant case.  In *Triad*, the plaintiff was a company that built flight simulators.  *See Triad.,* 15-1 BCA ¶ 35898 at p. 2**.**  A company that builds flight simulators might be excused for having an "unsophisticated" record keeping system for tracking termination for convenience costs, as it does not specialize in financial records; but ACLR, a company in the specific business of financial accounting and auditing cost records, should not be similarly excused.

Furthermore, in *Triad*, citing *SWR, Inc.,* the board discussed the types of "'records other than the contractor's own standard record keeping system[]'" that the board may consider when a contractor does not have a sophisticated record keeping system:  records that clearly identify specific, claimed costs, *e.g.*, "contemporaneous Army and SWR [contractor] emails" that "allowed SWR [contractor] to recover a $15,000 payment to end a lease[]" as an allocable cost. *See Triad.,* 15-1 BCA ¶ 35,898, 2015 WL 1009677, at p. 14 (citing *SWR Inc.,* ASBCA No. 56708, 15-1 BCA ¶ 35,832 at *104 n.4)  By contrast, ACLR's enormous compilation of over 100,000 pages of exhibit documents contain no such specificity in seeking its over $5.5 million

12

in claimed charges relating to personnel costs, managing principal costs, general and administrative costs, office lease costs, loan interest costs, reasonable profit, settlement fees, and interest costs, and do not clearly allocate costs to the two audits at issue. *See* ECF No. 144-1.

In short, the board's decisions in *Triad* and *SWR* do not stand for the proposition that a contractor plaintiff has broad license to "testify" about emails and other documents, and make "estimates" of its costs based upon those documents (where the documents do not actually identify allocable costs), as ACLR seems to think. *Compare* Pl. Br. at 23 ("ACLR may use estimates to support its costs"); *with SWR*, 15-1 BCA ¶ 35,832 at p. 27 ("Under the clause, a contractor is entitled to payment of charges it can 'demonstrate to the satisfaction of the Government using its standard record keeping system,' not any charges asserted under oath by a company official[]"). As the board has held, a contractor such as ACLR, "must at a minimum show 'using its standard record keeping system' that it *actually incurred such cost[s]*," that it claims. *See id.* at 26 (emphasis added).

As the evidence of ACLR's own proposal shows, ACLR did not hold itself out as "unsophisticated" in any way. Rather, ACLR described itself as a highly experienced and professional audit firm, experienced in such areas as forensic accounting. *See* Def. Ex. A at 3-6 (excerpt of ACLR's proposal). If any contractor should be held to the requirement of having to prove its reasonable termination charges using a standard record keeping system, it is an audit firm staffed with experienced accountants. *See* Def. Ex. A at 4 (ACLR self-describing as "a firm employing recovery audit professionals with decades of varied and layered improper payment experience."). Given ACLR's self-professed background as an experienced audit firm, as well as the nature of the contract at issue in this case – determining the appropriateness of other

13

business's charges, its failure to appropriately track reasonable claimed termination for convenience charges in a standard record keeping system is inexcusable.

In addition, the GSA contract that ACLR executed with the Government specifically included the termination for convenience clause, FAR § 52.212-4(l).  App3 (ECF No. 168-1 at 4); *see also* ECF No. 70-1 at 21 (same).  The December 2, 2010 request for quotations (RFQ), and ACLR's own December 16, 2010 proposal, included the following identical language: "the Government may [] terminate for convenience if it deems such termination to be in the best interest of the Government."  *See* Def. Ex. A at 1, 2 (excerpt of RFQ) (first ¶, top of page); *see also* ECF No. 54-1 at 33 (same); *see* Def. Ex. A at 7 ¶ (F) (1) (excerpt of ACLR proposal) (same).  ACLR knew, or should have known, that a termination for convenience was a possibility.

The uncontroverted evidence shows that in 2010, ACLR knew, or should have known, before it ever began work on the contract in January 2011 when the task order was issued, and before it performed a single audit, that it should have maintained a standard record keeping system to track its costs in the eventuality that a termination for convenience might occur. Furthermore, ACLR is a sophisticated auditing firm, well familiar with the simple process of tracking costs and personnel time.[11]  ACLR should be held to the full requirement to "prove its reasonable charges 'using its standard record keeping system,'" as this Court has previously held.  *See* ECF No. 125 at 8 (quoting FAR § 52.212-4(l)).  ACLR unequivocally failed to do so,

---

[11] Indeed, ACLR acknowledges it is fully able to track its personnel's time to a specific project when it chooses to do so, as it claims to have tracked the time spent by personnel regarding this litigation.  *See* Pl. Br. at 28 ("All time spent by Mr. Mucke and other ACLR personnel on post March 23, 2020 settlement costs was noted and tracked in ACLR's accounting system and reflected 1,255 hours through August 20, 2022.").

and offers no satisfactory explanation for its failure.

ACLR argues that "[d]efendant has requested the Court to void ACLR's request for compensation arguing that it fails to comply with certain contract costs principles and cost accounting standards." ECF No. 169 at 14 (citing ECF No. 168). This is false. The Government's motion does not point to cost accounting standards or contract cost principles to help the Court understand what counts as a "standard record keeping system," but instead directed the Court's attention to a number of persuasive decisions by other courts and boards that have attempted to interpret this term. *See generally* Def. Br. at 24-26. We are not arguing that a standard record keeping system must comply with accounting principles such as Generally Accepted Accounting Principles (GAAP), but instead we are appropriately demonstrating that the terms of 48 C.F.R. § 52.212-4(l) place certain minimal requirements on a contractor to prove its costs, namely that they must be demonstrated to be reasonable and related to the termination using a standard record keeping system. ACLR has manifestly failed to meet these minimal requirements.

## V.   ACLR Is Not Entitled To Loan Interest Costs

As we demonstrated in our opening brief, ACLR has no legal basis to demand reimbursement of loan interest costs, as the Court has already held. *See* Def. Br. at 31 (citing ECF No. 125 at 14 ("The Court agrees with defendant that [ACLR] has no legal basis to request interest on a loan it executed to fund its work on the contract")) (citations omitted).

In its response, ACLR argues that the Court's prior ruling should not be construed as summary judgment in the Government's favor. *See* Pl. Br. at 26.[12] ACLR misses the point of

---

[12] We point out the Court's prior ruling because ACLR flatly ignores it, bringing a claim

our summary motion.  The present motion asks the Court to bar ACLR's claim to loan interest

costs as an original matter and cites competent, controlling authority for this purpose.  *See* Def.

Br. at 31 (citing *Servidone Construction Corp. v. United States*, 931 F.2d 860, 863 (Fed. Cir.

1991) (citations omitted) (a court "may not award interest on monetary claims against the

Government unless specifically authorized by statute or contract[]") and FAR

§ 31.205-20 (interest on borrowings is not an allowable cost)).  Thus, this issue is properly and

presently before the Court.

Next, ACLR cites the purported holding of *Gevyn Constr. Co. v. United States*, to argue

that it is entitled to interest on its loan.  *See* Pl. Br. at 26 (citing *Gevyn Constr. Co. v. United

States*, 827 F.2d 752, 754 (Fed. Cir. 1987) (case quotation omitted).  ACLR apparently read only

part of *Gevyn*, which discussed earlier, distinguishable cases.  ACLR ignores the actual holding

of the *Gevyn* Court, which held that the appellant, Gevyn, and its subcontractor, were *not* legally

entitled to claim loan interest costs.  *See Gevyn*, 827 F.2d at 754 ("in rejecting Gevyn's claim for

imputed interest the Claims Court adhered to binding precedent, its judgment denying the claim

was correct as a matter of law[]").  ACLR is not entitled to loan interest costs and the Court

should reject that claim.

## VI.   ACLR Is Not Entitled To Settlement Fees

In our opening brief, we demonstrated that ACLR was not entitled to reimbursement of

legal fees "attributable to this lawsuit", and costs attributable to "internal work efforts" on its

legal claims.  *See* Def. Br. at 31-33.  ACLR makes clear that these are costs incurred to litigate

---

for loan interest costs after the Court already ruled, properly, that ACLR was not legally entitled
to do so.

its legal claims that ACLR brought against the United States.  *See*, *e.g.*, ECF  ¶¶ 97-99, 124

("Without this lawsuit, CMS would not have taken the position that there was a constructive

termination for convenience . . .").  ACLR ignores that the cost to prosecute claims against the

United States is not an allowable cost:

> Costs not covered elsewhere in this subsection are unallowable if incurred in
> connection with: (1) Defense against Federal Government claims or appeals or the
> *prosecution of claims or appeals against* the Federal Government[.]

*See* FAR § 31.205-47(f)(1) (emphasis added).

Furthermore, the Government must affirmatively waive its sovereign immunity from suit

for a plaintiff to obtain attorney fees.  Absent a statute, such as the Equal Access to Justice Act

(EAJA), 28 U.S.C. § 2412, or an express contractual provision, the United States is not liable for

attorney fees.  *See DMS Imaging, Inc. v. United States*, 123 Fed. Cl. 645, 661 (2015) ("This

comports with the default 'American Rule' that each litigant bear its own legal costs absent a

statute or express contractual language to the contrary[]") (citing *Alyeska Pipeline Serv. Co. v.*

*Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

The Court has ruled upon this issue, stating that it "agrees with defendant that the costs

associated with prosecuting a claim against the United States are not allowable costs, absent a

waiver of sovereign immunity by statute or contractual provision."  *See* ECF No. 125 at 17.

ACLR's exhibit of legal billings makes clear that its claimed settlement costs include

charges incurred to litigate its legal claims against the United States.  *See* ECF No. 144-1 (PX

456).  Once again, ACLR ignores the Court's ruling, and seeks reimbursement for the *entirety* of

its costs incurred litigating its claims against the Government, including through August of 2022,

and including future "attorneys' fees incurred but not yet paid."  *See* ECF No. 150 ¶¶ 94-106 and

n.2.

In its response, ACLR fails to rebut our demonstration.  ACLR argues simply that, it "is entitled to its costs in prosecuting its claims against Defendant because those costs resulted from the constructive termination for convenience," but fails to demonstrate why that is so.  *See* Pl. Br. at 26-29.  In lieu of citing to an applicable statutory waiver of sovereign immunity that would permit such a claim, which there is not, ACLR cites to FAR § 52.249-2 (g)(3), *see* Pl. Br. at 28, which is a termination for convenience clause not found in the GSA Contract, and not relevant here. The Court should deny ACLR's claim.

## **<u>CONCLUSION</u>**

ACLR has failed to prove its claim for termination for convenience damages with sufficient evidence.  For the reasons set forth above and in our opening brief, we respectfully request that the Court grant the United States summary judgment, accordingly.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General


PATRICIA M. McCARTHY
Director

s/ Martin F. Hockey, Jr.
_____
MARTIN F. HOCKEY, JR.
Deputy Director

s/ Joseph A. Pixley
_____

OF COUNSEL:                            JOSEPH A. PIXLEY
                                       AUGUSTUS J. GOLDEN
                                       Trial Attorneys
LUCY Mac GABHANN                       Commercial Litigation Branch
Office of the General Counsel          Civil Division
U.S. Department of Health and Human Servs.   Department of Justice
7500 Security Boulevard                P.O. Box 480
Central Bldg. – Mailstop C2-05-23      Ben Franklin Station
Baltimore, MD 21244                    Washington, D.C. 20044
                                       Telephone: (202) 307-0843
                                       Facsimile: (202) 307-0972

October 27, 2022                       Attorneys for Defendant

19

**CERTIFICATE OF FILING**

I hereby certify that on the 27th day of October, 2022, a copy of the foregoing

"DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION

FOR SUMMARY JUDGMENT" was filed electronically.  I understand that notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.


_____s/Joseph A. Pixley_____